1  LOCKE LORD BISSELL & LIDDELL LLP
   MICHAEL V. POWELL (TX SBN 16204400) (*pro hac vice* admission pending)
2    mpowell@lockelord.com
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas 75201-6776
   Telephone: (214) 740-8520
4  Facsimile: (214) 756-8520

5  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
6    skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
7    jchou@cwclaw.com
   201 California Street, 17th Floor
8  San Francisco, California 94111
   Telephone:   (415) 433-1900
9  Facsimile:   (415) 433-5530

10 Attorneys for Defendant, American Airlines, Inc.

11

12                    **UNITED STATES DISTRICT COURT**

13     **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

14

15 KATHLEEN HANNI, individually and on          CASE NO. C08-00732BZ
   behalf of all others similarly situated,
16                                               **NOTICE OF PENDENCY OF OTHER**
                  Plaintiff,                     **ACTION OR PROCEEDING**
17
         vs.
18
   AMERICAN AIRLINES, INC., and DOES 1
19 through 20, inclusive,

20                Defendants.

21

22        Pursuant to Local Rule 3-13, defendant American Airlines, Inc. ("American") gives the

23 Court notice of the following parallel proceeding:

24        (1)      **Description of the Other Action**. The parallel action is styled as *Catherine Ray,*

25 *on behalf of herself and all other similarly situated v. American Airlines, Inc.*, pending as Case

26 No. 5:08-cv-05025-RTD in the United States District Court for the Western District of Arkansas,

27 Fayetteville Division (the "Ray Action"). A true and correct copy of the First Amended

28 Complaint in the Ray Action is attached hereto as Exhibit A. The Ray Action was originally filed

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

595019.1                                                                      C08-00732BZ
                          NOTICE OF PENDENCY OF ACTION

1  in Arkansas state court on December 27, 2007, two days before plaintiff, Kathleen Hanni, filed her

2  action in California Superior Court, County of Napa, which American removed to this court on

3  January 31, 2008. The Ray Action was served on American on January 2, 2008. American has

4  not yet been served with process in this Hanni action. American filed a Motion to Dismiss under

5  Fed. R. Civ. P. 12(b)(6) and 9(b) in the Ray action on February 7, 2008.

6       This action and the Ray Action have the same lead plaintiff's attorney, Mr. Paul S.

7  Hudson, who lists an address in Sarasota, Florida. Mr. Hudson is also listed as the Executive

8  Director of a group called the "Aviation Consumer Action Project" of Washington, D.C.

9       Like this action, the Ray Action is a putative national class action on behalf of all

10  American passengers who were diverted and delayed on airplanes on December 29, 2006, due to

11  dangerous weather that day at the Dallas-Fort Worth, Texas, International Airport ("DFW

12  Airport"). The named plaintiffs in the Ray Action and Hanni action seek to represent the identical

13  class. The causes of action asserted in the two cases are identical. The factual allegations are very

14  similar, with the principal difference being that plaintiff Hanni, in this action, was a passenger on

15  American Flight 1348 on December 29, 2006, from San Francisco to DFW Airport, and plaintiff

16  Ray was a passenger on American Flight 1008, from Oakland to DFW Airport. Both flights were

17  diverted to the airport at Austin, Texas that day due to numerous dangerous thunderstorms in the

18  vicinity of DFW Airport.

19       As shown by the article from the Arkansas Democrat Gazette of February 3, 2008, attached

20  hereto as Exhibit B, the plaintiffs in the two cases, Catherine Ray in Arkansas and Kathleen Hanni

21  in California are "close friends." The article states that the two ladies "stand by one another,

22  through thick and thin, from airplane to the courthouse."

23       **(2)    The title and location of the court in which the other action or proceeding is**

24  **pending**. United States District Court for the Western District of Arkansas, John Paul

25  Hammerschmidt Federal Building, 35 East Mountain Street, Fayetteville, Arkansas  72701-5354.

26       **(3)    A brief statement of**

27            **(A)    The relationship of the other action to the action or proceeding pending**

28  **in this district:**

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1    As described above, the two actions concern the same alleged classes, plaintiffs

2  who are cooperating with each other, substantially the same events on the same day, and the same

3  principal counsel for the two named plaintiffs.

4    **(B)    If the other action is pending in another U.S. District Court whether**

5  **transfer should be effected pursuant to 28 U.S.C. § 1407 (Multi District Litigation**

6  **Procedures) or whether other coordination might avoid conflicts, conserve resources and**

7  **promote an efficient determination of the action:**

8    American's position is that this action, being the second filed action, should be

9  dismissed or transferred to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a) for

10  consolidation with the Ray action under the first-filed rule. *E.g., Alltrade, Inc. v. Uniweld Prods.,*

11  *Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). Although the virtually-identical actions were filed with

12  different named plaintiffs, the first to file rule requires the court in a class action suit to compare

13  the proposed classes, not their representatives. *See, e.g., Persepolis Enterprise v. United Parcel*

14  *Serv., Inc.*, No. C-07-02379 SC, 2007 U.S. Dist. LEXIS 68699 (N.D. Cal., Sept. 7, 2007) at **5-

15  6. The pendency of two parallel actions in coordinate federal district courts creates unnecessary

16  work and duplication for the federal judiciary and also is burdensome to defendant American.

17    If this court does not order the dismissal or transfer this case to the Western District

18  of Arkansas pursuant to its authority under Local Rule 3-13(d), American plans to file a motion to

19  change venue under 28 U.S.C. § 1404(a). American also is in the midst of filing a 28 U.S.C. §

20  1404(a) motion in the Ray Action to seek to have the Ray Action transferred to the United States

21  District Court for the Northern District of Texas on the basis that the injuries alleged by Ray

22  occurred in Texas and because the percipient and third party witnesses are predominately located

23  in Texas.

24  DATED: February 19, 2008                    COOPER, WHITE & COOPER LLP

25

26                                          By:

27                                              Jie-Ming Chou
                                            Attorneys for Defendant American Airlines, Inc.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

595019.1                          3                          C08-00732BZ
NOTICE OF PENDENCY OF ACTION

# EXHIBIT A

## IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

2008 JAN 30  PH 12: 59

WASHINGTON CO AR
CIRCUIT CLERK
B. STAMPS

_____

Catherine Ray, on behalf of herself and  all others
similarly situated,

                    Plaintiff,

   -vs-

FIRST AMENDED CLASS
ACTION COMPLAINT
CASE NO. CV 2007-3082-6

American Airlines, Inc.,

                    Defendant.

_____

Plaintiff Catherine Ray on behalf of herself and all others similarly situated, by and

through her attorneys, the Law Offices of Paul S. Hudson, P.C., and Odom Law Firm,

state and allege as follows:

### Parties and Jurisdiction

1.  Plaintiff is a citizen and resident of Fayetteville, Washington County,

Arkansas.

2.  Defendant American Airlines, Inc. (hereinafter AA) is a corporation organized

under the laws of Delaware with a principal place of business in Fort Worth, Texas. At all

relevant times hereto, AA was doing in business in the state of Arkansas

3. The monetary damages at issue in this case are within the jurisdictional requirements of this court.

### Class Action Allegations

4.    This cause of action is being maintained as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. In that regard, the Plaintiff alleges the following:

a. Approximately 12,000 people were effected by the actions of the Defendants as set forth below and therefore the class is so numerous that joinder of members is impracticable;

b. There are common issues of law and fact common to the class;

c. The claims of Catherine Ray are typical of the claims of the class members;

d. Catherine Ray has agreed to serve as class representative and has agreed to fairly and adequately protect the interests of the class.

5.    In support of the class action allegations, Plaintiff incorporates by reference the statements and allegations that follow.

### Events of December 29th, 2006

6.    Plaintiff and her husband purchased tickets for air transportation on AA flight 1008 departing from Oakland, California to Dallas, Texas departing at 6:15 AM (Pacific Time) scheduled to arrive at 11:30 AM (Central Time) on December 29th, 2006.

7.    Plaintiff boarded the aircraft which timely departed from Oakland, but in route was diverted from Dallas (DFW) Airport to Austin, Texas, by AA allegedly due to bad weather in Dallas.

8.    Plaintiff was confined to the aircraft against her will on the ground in Austin Texas for approximately 9 1/2 hours by Defendant, and was not permitted by AA to exit the aircraft until 9:30 PM (Central Time), over 13 hours after boarding the aircraft.

9.    While confined on the ground in Austin, the toilets became full and would not flush and the stench of human excrement and body odor filled the plane.

10.    While confined, in the aircraft, plaintiff and other passengers were unable to wash their hands due to the aircraft running out of water and not being re-supplied by AA.

11.    Plaintiff and other passengers were provided only two soft drinks and only a few granola bars for food.

12.    Plaintiff and other passengers were also deprived of access to medications, nutritional supplements and needs, and hydration especially needed by infirm, elderly and children.

13.    Plaintiff and other passengers were forced to witness the physical and emotional distress and panic of other passengers causing all passengers to suffer emotional distress and endangering the physical safety of Plaintiff and all passengers.

14.    The distress of the confined passengers in overcrowded conditions in the aircraft was witnessed by AA flight crew employees and was also reported to AA ground personnel and to Austin airport authorities.

15.    Approximately 12,000 passengers involving about 100 flights on December 29th, 2006 were confined to aircraft diverted from Dallas by Defendant to other airports and confined for 3 to 12 hours on the aircraft in poor to deplorable conditions by Defendant.

16.    Plaintiff and other stranded passengers suffered hunger, thirst, anxiety, physical illness, emotional distress and monetary losses as a result of Defendant's failure to permit passengers to exit the aircraft to the airport terminals or to supply the parked aircraft with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures.

17.    Defendant knew or should have known that passengers needed to be supplied with essential rescue and survival conditions on board aircraft, but failed and refused to do so.

18.    Defendant had ample advanced warning of weather conditions at Dallas and knew or should have known that it was not able to land aircraft at Dallas (DFW) airport at the capacity it had scheduled on December 29th, 2006, due to transient thunder storms and could have cancelled or delayed from departing many of the flights that it diverted and stranded, thereby preventing the diversions and confinements.

19.    With the exception of a few passengers whose destination was the Austin Texas area, AA refused to permit passengers to exit the aircraft even though buses and available gates at the terminal were available to AA.

20.    After AA finally permitted Plaintiff and other passengers to exit the aircraft at about 9:30 PM on December 29th, 2007, it "continued" the flight to the next morning and refused to return checked baggage to the passengers.

21.    AA then refused to provide payment for overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding.

22.    The next morning after more delays Plaintiff and passengers were flown to Dallas (DWF) airport, where their baggage had been sent.

23.    Some passengers who had been diverted, confined and stranded overnight were them denied boarding on connecting flights, and were stranded for another day in Dallas.

23a.    Other passengers who had been diverted to Little Rock, Arkansas by AA were denied the right to exit the aircraft even though their final destination was Little Rock and instead after on-aircraft confinements of over 4 hours were forced by AA and fly back to DFW and then to get another flight or other transportation from DFW to Little Rock on December 30th, 2006, at their own expense.

## Pattern and Practice of AA Misconduct

24.    Defendant AA has not provided reimbursement for passenger expenses, ticket refunds and other forms of compensation to passengers that it diverted and confined on December 29th and 30th, 2006, but only a restricted voucher for future travel and a letter of apology.

25.    Defendant did not advise stranded passengers that they could use their AA tickets on another airline for travel to their destinations on December 29th or subsequent thereto, even though an industry convention and rule provides for such when a flight is cancelled or excessively delayed.

26.    Defendant did not provide ticket refunds or other compensation to passengers that it stranded on December 29th and 30th, 2006.

27.    Defendant knowingly misrepresented the reasons for the delays and confinements by falsely asserting to passengers and the public that aircraft were not able to take off due to weather or congestion.

28.    The delays on December 29th, 2007 were actually due to causes within the control of AA and included intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions by AA.

29.    Confinements by AA, upon information and belief, were to avoid expenses and lawful obligations to passengers associated with strandings, diversions and canceled flights and for AA's and its officers, employees, agents and stockholders own pecuniary gain at the expense of Plaintiff and other passengers.

30.    While Plaintiff and other passengers were confined to their aircraft in Austin and other diverted airports, other flights of Defendant and other airlines were taking off and landing without significant delays.

31.    Upon information and belief, the Dallas (DFW) airport was only closed to air traffic for approximately 2.5 hours from 2:00 PM to 4:30 PM on December 29th, 2006.

32.    Upon information and belief, AA has a corporate policy, practice and pattern of confining and imprisoning passengers on aircraft of excessively delayed or

cancelled flights for excessive periods of time to prevent "passenger migration" and this unlawful practice was used against Plaintiff and other similarly situated passengers by Defendant's employees and agents on December 29th, 2007.

33.    Upon information and belief, AA has inflicted its practices of confining and imprisoning passengers for over 3 hours to prevent "passenger migration" on over ten thousand of other passengers since December 29th, 2006, including another mass stranding in April 2007.

34.    By unlawfully confining  Plaintiff and other passengers diverted from Dallas on December 29th, 2007 in inhuman conditions, AA avoided ticket refunds, overnight lodging and meal expenses for passengers, alternate transportation expenses on other airlines that under an industry convention and practice will honor tickets of a defaulting airline and back charge the defaulting airline, ground transportation expenses, terminal employee overtime and staffing expenses, and other expenses normally associated with mass strandings and cancellations.

35.    Defendant could have permitted passengers to exit the aircraft after the diversions on December 29th, 2007 but failed and declined to do so for its own pecuniary gain.

36.    Upon information and belief, some passengers after the confinements ended were forced by Defendant to fly to destinations that they not longer wished to

travel to because the reason for their trip such as a missed meeting or family event no longer existed, but were forced to do so by Defendant not permitting them to exit the aircraft and obtain alternate transportation to another destination or return home.

37.    Other passengers were forced under duress not to abandon their travel with AA on December 29th and 30th, 2006, because AA refused to return their checked baggage, even after promising to do so after finally permitting passengers to exit the aircraft the evening of December 29th, 2006.

38.    Passengers on the Defendant's diverted flights had their travel delayed up to 3 days after December 29th, 2007 due to non-weather conditions that were within the control of Defendant without compensation for passenger expenses and losses by AA.

39.    Upon information and belief, Defendant was not prevented or prohibited from permitting passengers to exit or re-supply and service the aircraft in Austin or other diverted airports by the Federal Aviation Administration air or ground controllers or by airport management, or other government authorities.

## COUNT 1. FALSE IMPRISONMENT

40.    Plaintiff repeats and realleges paragraphs 1 through 39 as if fully stated herein.

41.    Plaintiff and other passengers similarly situated were intentionally deprived of their personal liberty by Defendant for over 3 hours against their will without legal justification.

42.    Defendant is guilty of false imprisonment of Plaintiff and others similarly situated.

43.    The damages of Plaintiff and others similarly situated were proximately caused by the acts and/or omissions of the Defendant.

COUNT 2.    OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS/PRIMA FACIE TORT

44.    Plaintiff repeats and realleges paragraphs 1 through 43 as if fully stated herein.

45.    Defendant intended or knew or should have known that emotional distress to Plaintiff and others similarly situated was the likely result of its conduct.

46.    Defendant's conduct was outrageous, extreme, beyond the bounds of decency and is intolerable in a civilized community.

47.    The acts and/or omissions of the Defendant were the cause of Plaintiff's distress and the distress of others similarly situated.

48.    The emotional distress was so severe that no reasonable person could be
expected to endure it, wherefore Defendant is guilty of the tort of outrage, intentional or
negligent infliction of emotional distress or prima facie tort.

49.    The acts and/or omissions of the Defendant as set forth above were the
proximate cause of damages to Plaintiff and others similarly situated.

## COUNT 3. NEGLIGENCE

50.    Plaintiff repeats and realleges paragraphs 1 through 49 as if fully stated
herein.

51.    Defendant as an operator offering air transportation to the general public
owed a duty to Plaintiff and others similarly situated of due care, to use best efforts to
bring passengers safely to their destinations, to plan for weather related disturbances in its
flight operations, and to refrain from mistreatment of them with unjustified involuntary
confinement, deprivation of passengers' baggage and stranding in remote locations.

52.    Defendant breached its duties to Plaintiff and others similarly situated on
December 29th and 30th, 2006, and its conduct was in reckless disregard its duty owed to
Plaintiff and similarly situated passengers.

53.     Defendant's conduct was the proximate cause of damage and losses to the Plaintiff and others similarly situated.

54.     Defendant is guilty of negligence and/or gross negligence.

## COUNT 4.  BREACH OF CONTRACT

55.     Plaintiff repeats and realleges paragraphs 1 through 54 as if fully stated herein.

56.     Defendant has filed with the US Department of Transportation, published on its web site, and referenced on its tickets "conditions of carriage" and a "Customer Service Plan" . These documents cannot be copied at this time, but will be made available to the Court and the Defendant.

57.     Upon information and belief, the aforementioned documents form a contract between the Defendant and Plaintiff and others similarly situated.

58.     Defendant's conduct on December 29th, 2006 and subsequent thereto breached its Contract with Plaintiff and others similarly situated in various ways, including but not limited to breach of implied covenant of good faith, provisions relating to Delays, Cancellations, and Diversion Events, Essential Customer Needs During

Extraordinary Delays, Ticket Refunds, Flights with Oversales, and Baggage Delivery and Liability.

59.    As a result of Defendant's breach of contract, Plaintiff and others similarly situated have sustained damages as more fully set forth below.

## COUNT 4. DECEIT/FRAUD

60.    Plaintiff repeats and realleges paragraphs 1 through 59 as if fully stated herein.

61.    Plaintiff knowingly deceived Plaintiff and others similarly situated as to the causes and justifications for the diversions, schedule changes confinements, expected departure times, and baggage delivery on December 29th and 30th, 2006 with false statements and concealment of material information.

61a. Defendant had a special relationship with Plaintiff and others similarly situated as it possessed all relevant information and power over the persons and baggage of its passengers.

61b. Defendant had a duty to disclosed material information related to its delays and diversions on December 29th, 2006 to Plaintiff and others similarly situated.

62.    Plaintiff and others similarly situated relied to their detriment on the false and deceptive statements of Defendants.

63.    Defendant sought to deceive and defraud Plaintiff and others similarly situated for Defendant's pecuniary gain, and specifically with intent to fraudulently invoke Force Majeur clause in its contract with Plaintiff by falsely asserting a weather emergency as justification for the extreme delays, confinements, and other mistreatments of passengers and to avoid other liabilities to Plaintiff for its misconduct.

64.    Defendant is guilty of deceit and fraud.

65.    As a result of the above acts and/or omissions of the Defendant, Plaintiff and others similarly situated have sustained damages as more fully set forth below.

## DAMAGES/RELIEF SOUGHT

66.    Plaintiff repeats and realleges paragraphs 1 through 65 as if fully stated herein

67.    Plaintiff is a consumer and class representative of all others similarly situated who suffered losses and were damaged by Defendant's misconduct on December 29th and 30th, 2006 in the aforementioned diversions from Dallas (DFW) airport and the subsequent, delays, injuries, confinements, and indignities suffered as a result of Defendant's conduct.

68.    Each of the plaintiffs suffered individual damages sufficient to satisfy the jurisdictional requirements of the circuit court in Arkansas but insufficient to satisfy the jurisdictional requirements in federal diversity cases as a proximate cause of Defendant's misconduct and breaches and request damages as allowed by law for false imprisonment, intentional infliction of emotional distress, outrage, breach of contract, fraud and deceit, including actual, consequential, exemplary and punitive damages. Punitive damages are warranted in this case as the acts and/or omissions of the Defendant were intentional and the Defendant knew, or in light of the surrounding circumstances ought to have known, that its conduct would naturally and probably result in injury and yet the Defendant continued this course of conduct with malice or in reckless disregard of the consequences from which malice may be inferred. The Defendant, motivated by greed and a desire for profit, continued the actions as set for above in reckless disregard of the consequences from which malice may be inferred. Upon information and belief, the Defendant continues the practices detailed above and therefore punitive damages are necessary in order to deter like conduct in the future.

69.    Plaintiff requests individual damages which are in excess of that required for jurisdiction in the circuit courts of Arkansas but less than that required for jurisdiction in federal diversity cases, and she seeks the opportunity to be heard as to being named representative of a class of all passengers similarly situated.

70.    Wherefore, Plaintiff requests that this honorable Court appoint the Plaintiff as class representative, certify this case a class action pursuant to the Rule 23 of

the Arkansas Rules of Civil Procedure, order the Defendant to preserve all records

relating the incidents complained of, and otherwise issue orders and relief as the court

deems just and proper in the circumstances.


71.     Plaintiff also requests attorney fees, expenses, costs, disbursements, and

interest of this action as provided by law.


JURY TRIAL DEMANDED.


Dated:  January 30, 2008

Bobby Lee Odom, ABA # 70054
Russell Winburn, ABA # 87193
Odom Law Firm
No. 1 East Mountain
P.O. Drawer 1868
Fayetteville, AR 72702
(479) 442-7575

Law Offices of
Paul S. Hudson P.C.
Attorneys for Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934
240-391-1923 fax
Globetrotter1947@hotmail.com

# EXHIBIT B



**NWAnews.com**  Arkansas Democrat 🦅 Gazette
Northwest Arkansas' News Source

NORTHWEST ARKANSAS EDITION

# TRAVELERS' CHECK : Friendship forged as 2 fight airlines

ROBERT J. SMITH

Posted on Monday, January 7, 2008

URL: http://www.nwanews.com/adg/News/213017/

A California real estate agent founded the Coalition for an Airline Passengers' Bill of Rights earlier this year, but behind the scenes is a Fayetteville woman who is a mostly silent partner and an ardent supporter.

Catherine Ray, 48, who's pursuing a double major in political science and international relations at the University of Arkansas at Fayetteville, has become a close friend of Kate Hanni, the real estate agent.

"I've been involved the whole time," Ray said. "I'm just not as outspoken as Kate."

Hanni has no trouble speaking to the media about Flight 1348, a jet bound for Dallas / Fort Worth that was diverted to Austin, Texas, on Dec. 29, 2006. The plane sat for more than nine hours on the Austin airport's tarmac before passengers were allowed to enter the airport.

Eleven American Airlines flights were diverted to Austin that day, said Tim Wagner, an airline spokesman.

Ray was on Flight 1008, and sat on the tarmac just as long as Hanni, but she's talked little about it with the media.

The women filed separate lawsuits in California and Arkansas on Dec. 27, accusing American Airlines of confining them and other passengers to planes. They want the courts to certify the cases as classaction lawsuits, saying about 12, 000 people were affected.

If successful, they believe airlines will think twice about leaving passengers on planes so long with overflowing toilets and little food and drink.

Hanni, a Democrat, and Ray, a Republican, didn't know much about aviation matters, but they both knew how friendship works after they met in Austin. You stand by one another, through thick and thin, from airplane to courthouse.

They sat next to each other on a Dec. 30, 2006, flight from Austin to Dallas / Fort Worth as their long, diverted flight journeys headed toward an end.

They've stayed in touch via e-mail and phone calls. They roomed together in June when Ray made a trip to Washington to support Hanni, who's made lots of trips to Washington.

They both talked to congressmen and the media about the need for a passengers' bill of

rights. Hanni talked lots; Ray said only a little.

By then, Hanni was a pro with the media and those stuffy congressmen. She's been on Nightline, one of The Guru's favorite shows, and quoted in most major newspapers.

Ray, meanwhile, remains a nervous beginner with the media and congressmen. She's done her best to support her friend.

"I waited 30 years to go back to college and this is my senior year," Ray said, "but I've helped Kate every time I could."

Support for Hanni came in Iron Jawed Angels, an HBO movie about Alice Paul, a women's suffragist who wrote the Equal Rights Amendment in 1923. Ray sent Hanni a DVD of the movie in November.

"She thought I was like Alice Paul," Hanni said. "She's given me motivation to keep going."

Ray said she's satisfied to sit back and let Hanni be vocal about what happened in Texas.

"Kate's not on the same scale as Alice Paul, but Kate is a very strong-willed woman and very opinionated and determined," Ray said. "Nothing was going to stop Alice Paul, and that's why Kate reminds me of her.

" I think I've been steady, and that's why Kate asked me to help her with the lawsuit. She knows me. We're friends. She knows I'm reliable." Robert J. Smith's column about people on the move in Northwest Arkansas appears each Monday. He can be reached at rsmith@arkansasonline. com.

Copyright © 2001-2008 Arkansas Democrat-Gazette, Inc. All rights reserved.
Contact: webmaster@nwanews.com

1

## PROOF OF SERVICE

2     I am a resident of the State of California. I am over the age of eighteen years, and not a
party to this action. My business address is 201 California Street, Seventeenth Floor, San

3     Francisco, California 94111-5002.

4     On February 19, 2008, I served the following document(s):

5     **NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING**

6     on each of the parties listed below at the following addresses:

7     Law Offices of Paul S. Hudson P.C.          David G. Ramos, Esq.
      4411 Bee Ridge Road #274                    Law Offices of David G. Ramos

8     Sarasota, Florida 34233                     3266 Villa Lane
                                                  Napa, California 94558

9

10

**BY FIRST CLASS MAIL:** I am readily familiar with the business practice at my place of

11    business for collection and processing of correspondence for mailing with the United States Postal
      Service. Correspondence so collected and processed is deposited with the United States Postal

12    Service that same day in the ordinary course of business. On the date specified above, as to each
      of the parties identified in the above service list, a true copy of the above-referenced document(s)

13    were placed for deposit in the United States Postal Service in a sealed envelope, with postage fully
      prepaid; and on that same date that envelope was placed for collection in the firm's daily mail

14    processing center, located at San Francisco, California following ordinary business practices.

15    I declare under penalty of perjury under the laws of the State of California that the
      foregoing is true and correct.

16
      Executed on February 19, 2008, at San Francisco, California.

17

18

19                                              Gina R. Rivera

20

21

22

23

24

25

26

27

28

594988.1