1   LOCKE LORD BISSELL & LIDDELL LLP
    MICHAEL V. POWELL (TX SBN 16204400) (*pro hac vice* admission pending)
2     mpowell@lockelord.com
    2200 Ross Avenue, Suite 2200
3   Dallas, Texas  75201-6776
    Telephone:  (214) 740-8520
4   Facsimile:  (214) 756-8520

5   COOPER, WHITE & COOPER LLP
    STEPHEN KAUS (SBN 57454)
6     skaus@cwclaw.com
    JIE-MING CHOU (SBN 211346)
7     jchou@cwclaw.com
    201 California Street, 17th Floor
8   San Francisco, California  94111
    Telephone:    (415) 433-1900
9   Facsimile:    (415) 433-5530

10  Attorneys for DEFENDANT AMERICAN
    AIRLINES, INC.
11

12              **UNITED STATES DISTRICT COURT**

13   **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

14

15  KATHLEEN HANNI, individually and on       CASE NO. C 08-00732 CW
    behalf of all others similarly situated,
16                                            **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF**
17              Plaintiff,                     **DEFENDANT AMERICAN AIRLINES,**
                                              **INC.'S MOTION TO DISMISS**
        vs.
18                                            **Fed. R. Civ. Pro. 12(b)(6)**
    AMERICAN AIRLINES, INC., and DOES 1
19  through 20, inclusive,                    Date:  March 27, 2008
                                             Time:  2:00 p.m.
20              Defendants.                   Courtroom: 2, 4th Floor

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    1                        C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................1

III. DISCUSSION .......................................................................................................4

A.    Implied Field Preemption by the Federal Aviation Act and Federal Aviation Regulations ...............................................................................................4

B.    Express Preemption By the Airline Deregulation Act.............................................7

    1.    The ADA Broadly Preempts State Law Related to an Air Carrier's Price, Route, or Service ...............................................................................7

    2.    All Claims in Plaintiff's Complaint "Relate to" American's Prices, Routes, and Services. ...................................................................................8

        (a)    Prices..........................................................................................9

        (b)    Routes .....................................................................................10

        (c)    Services ...................................................................................11

    3.    Plaintiff's Complaint Would Require the Court to "Enact or Enforce" State Law in Violation of the ADA. .............................................14

        (a)    Plaintiff's Intentional Tort Claims for False Imprisonment, Intentional Infliction of Emotional Distress, and Fraud Are Preempted. .......................................................................14

        (b)    Plaintiff's Negligence Claims are Preempted. .................................16

        (c)    Plaintiff's Claim for Punitive Damages is Preempted. .....................17

        (d)    Plaintiff's Alleged Breach of Contract Claims Are Preempted. .......................................................................18

C.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER APPLICABLE TEXAS LAW. ...................................................................................................19

        (a)    False imprisonment..................................................................20

        (b)    Intentional Infliction of Emotional Distress ....................................21

        (c)    Negligence ...............................................................................22

        (d)    Breach of Contract ...................................................................23

        (e)    Fraud. .....................................................................................24

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2

i

C 08-00732 CW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

1  IV. CONCLUSION.................................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

ii                          C 08-00732 CW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**

2
Page(s)

3

Cases

4

*Abourezk v. New York Airlines, Inc.,*
5     895 F.2d 1456 (D.C. Cir. 1990)..................................................................16, 21

6 *Air Transport Ass'n v. City and County of San Francisco,*
    266 F.3d 1064 (9th Cir. 2001) ...........................................................................8
7

8 *American Airlines, Inc. v. Wolens,*
    513 U.S. 219 (1995)..........................................................8, 14, 15, 18, 19

9 *Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. at 1964.............................................................................1, 20
10

11 *Black v. Delta Air Lines, Inc.,*
    116 S.W.3d 745 (Tex. 2003) ...........................................................................16

12 *Botz v. Omni Air Int'l,*
    286 F.3d 488 (8th Cir. 2002)...........................................................................4
13

14 *Branche v. Airtran Airways, Inc.,*
    342 F.3d 1248 (11th Cir. 2003)......................................................................12

15 *Buck v. American Airlines, Inc.,*
    476 F.3d 29 (1st Cir. 2007) ............................................................................10
16

17 *Charas v. Trans World Airlines, Inc.,*
    160 F.3d 1259 (9th Cir. 1998) ...............................................................8, 12, 16

18 *Chrissafis v. Continental Airlines, Inc.,*
    940 F.Supp. 1292 (N.D. Ill. 1996) ..................................................................16
19

20 *Cipollone v. Liggett Group, Inc.,*
    505 U.S. 504  (1992)..........................................................................................4

21 *City of Burbank v. Lockheed Air Terminal, Inc.,*
    411 U.S. 624 (1973)....................................................................................10, 11
22

23 *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.,*
    88 F.3d 347 (5th Cir. 1996) ............................................................................25

24 *Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) ..........................................................................24
25

26 *Creditwatch, Inc. v. Jackson,*
    157 S.W.3d 814 (Tex. 2005) ...........................................................................21

27 *Deerskin Trading Post., Inc. v. UPS of Am.,*
    972 F.Supp. 665 (N.D.Ga. 1997) ...................................................................18
28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2      iii      C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1   *DeWitt County Elec. Cooperative, Inc. v. Parks,*
       1 S.W.3d 96 (Tex. 1999)...................................................................................22

2

3   *Duncan v. Northwest Airlines,*
       208 F.3rd 1112 (9th Cir. 2000) .......................................................................12

4   *Elnajjar v. Northwest Airlines, Inc.,*
       2005 U.S.Dist. LEXIS 36792 (S.D.Tex., Aug. 15, 2005)..................................16

5

6   *Frank v. Delta Airlines, Inc.,*
       314 F.3d 195 (5th Cir. 2002)..............................................................................4

7   *Higginbotham v. State Farm Mutual Auto Ins. Co.,*
       103 F.3d 456 (5th Cir. 1997) ...........................................................................22

8

9   *Hodges v. Delta Airlines, Inc.,*
       44 F.3d 334 (5th Cir. 1995)..............................................................................12

10  *Hoffman-LaRoache Inc. v. Zeltwanger,*
       144 S.W.3d 438 (Tex. 2004)............................................................................21

11

12  *In re Glenfed, Inc. Securities Litigation,*
       42 F.3d 1541 (9th Cir.1994) ............................................................................24

13  *In re JetBlue Airways Corp. Privacy Lit.,*
       379 F.Supp.2d 299 (E.D.N.Y. 2005) ...............................................................18

14

15  *Keith v. Stoelting, Inc.,*
       915 F.2d 996 (5th Cir. 1990) ...........................................................................24

16  *Koutsouradis v. Delta Air Lines, Inc.,*
       427 F.3d 1339 (11th Cir. 2005) .......................................................................19

17

18  *Montalvo v. Spirit Airlines,*
       508 F.3d 464 (9th Cir. 2007) ....................................................................4, 5, 6

19  *Morales v. Trans World Airlines, Inc.,*
       504 U.S. 374 (1992).........................................................................8, 9, 10, 15

20

21  *Nazarian v. Compagnie Nat'l Air France,*
       989 F.Supp. 504 (S.D.N.Y. 1998).....................................................................17

22  *New England Legal Found. v. Mass. Port Auth.,*
       883 F.2d 157 (1st Cir. 1989) ............................................................................11

23

24  *Northwest Airlines, Inc. v. Minnesota,*
       322 U.S. 292 (1944)..........................................................................................11

25  *Parrino v. FHP, Inc.,*
       146 F.3d 699 (9th Cir. 1998).............................................................................18

26

27  *Sanchez v. Liggett & Myers, Inc.,*
       187 F.3d 486 (5th Cir. 1999) ...........................................................................25

28  *Sears, Roebuck & Co. v. Castillo,*

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                iv                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

693 S.W.2d 374 (Tex. 1985)................................................................................20

*Silvas v. E\*TRADE Mortgage Corp.,*
    \_\_F.3d\_\_\_, 2008 WL 239422 (9th Cir., Jan. 30, 2008)........................................4, 7

*Smith v. Comair, Inc.,*
    134 F.3d 254 (4th Cir. 1998) ..........................................................15, 16, 19

*Statland v. American Airlines, Inc.,*
    998 F.2d 539 (7th Cir. 1993) ..............................................................10

*Stewart Title Guaranty Co. v. Aiello,*
    941 S.W.2d 68 (Tex. 1997)................................................................24

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,*
    73 F.3d 1423 (7th Cir. 1996) ....................................................7, 15, 16, 18

*United Airlines, Inc. v. Mesa Airlines, Inc.,*
    219 F.3d 605 (7th Cir. 2000) ...............................................................7, 17

*United States v. Locke,*
    529 U.S. 89 (2000)..........................................................................7

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................24

*Wal-Mart Stores, Inc. v. Rodriguez,*
    92 S.W.3d 502 (Tex. 2002)................................................................20

*Witty v. Delta Air Lines, Inc.,*
    366 F.3d 380 (5th Cir. 2004) ...............................................................5

### Statutes

14 C.F.R. § 121.803 (2001) ...................................................................5

14 C.F.R. § 121.805 (2001) ...................................................................5

14 C.F.R. § 382.51 (1996) ...................................................................5

14 C.F.R. § 91.3(a) (1989) ...................................................................21

14 C.F.R. § 91.517 (1992) ...................................................................5

14 C.F.R. § 91.519 (2003) ...................................................................5

14 C.F.R. § 91.519(a)(1) (2003) .............................................................5

14 C.F.R. § 91.521 (1989) ...................................................................5

14 C.F.R. §250.5 (2003) ...................................................................10

14 C.F.R. Part 250 (2003) ...................................................................9

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                            v                            C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1   14 C.F.R. Part 252 (2000) ...........................................................................................5

2   14 CFR § 91.11 ..........................................................................................................21

3   14 CFR 91.107(a)(3) ..................................................................................................21

4   28 U.S.C. § 1332(d) .....................................................................................................3

5   28 U.S.C. § 1441(b) .....................................................................................................3

6   49 U.S.C. § 40101 ....................................................................................................1, 4

7   49 U.S.C. § 40101(a)(1) ..............................................................................................7

8   49 U.S.C. § 40103(a)(1) ............................................................................................11

9   49 U.S.C. § 40103(b) ...................................................................................................4

10  49 U.S.C. § 41712(a). ................................................................................................14

11  49 U.S.C. § 41713(b)(1) ...............................................................................1, 7, 8, 16

12  49 U.S.C. § 44701 ........................................................................................................4

13  49 U.S.C. App. §1305(a)(1) .........................................................................................8

14  72 Fed. Reg. 65,233 (Nov. 20, 2007) .........................................................................13

15  72 Fed. Reg. 72,435 (Dec. 20, 2007) .........................................................................14

16  Fed. R. Civ. P. 12(b)(6) ................................................................................................1

17  Fed. R. Civ. Pro. 9(b) .............................................................................................1, 24

18  Rule 12(b)(6) ...............................................................................................1, 4, 20, 25

## Other Authorities

FAA 1958, Pub. L. No. 85-726, 72 Stat. 731 ...................................................................4

PROSSER AND KEETON ON TORTS § 4 at 22 (5th ed. 1984).............................................15

S. REP. NO. 1811, 85th Cong., 2d Sess. 5 (1958) ...........................................................5

U.S. Const. Art. VI, cl. 2...................................................................................................4

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    vi                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

# I. **INTRODUCTION**

Defendant American Airlines, Inc. ("American") hereby moves the Court to dismiss Plaintiff's Class Action Complaint for various torts and breach of contract (the "Complaint") for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The following is the basis of the motion:

    1.    Plaintiffs' causes of action are preempted by federal law in two ways:

    (a) Field preemption by the Federal Aviation Act of 1958 ("FAA") (49 U.S.C. §§ 40101, et seq.) and its implementing Federal Aviation Regulations ("FARs"), which preempt the field of passenger health and safety onboard commercial aircraft, and

    (b) Express preemption under the Airline Deregulation Act ("ADA"), which prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier," 49 U.S.C. § 41713(b)(1).

    2.    The individual causes of action, even if not pre-empted, are deficient under state law and, in the case of the fraud claim, under Fed. R. Civ. Pro. 9(b).

# II. **STATEMENT OF FACTS AND PROCEDURAL HISTORY**[1]

Plaintiff Kathleen Hanni alleges that on December 29, 2006, she was a passenger on American Flight No. 1348, scheduled to fly from San Francisco to Dallas-Fort Worth International Airport, Texas ("DFW Airport") (Complaint ¶ 6). She alleges she was scheduled to connect the same day at DFW Airport to Flight No. 3821, which was operated by American Eagle Airlines, Inc., to Mobile, Alabama (Complaint ¶ 6). Hanni alleges she purchased a ticket for air transportation on Flight 1348 (Complaint ¶ 6) and boarded the flight, which departed San Francisco after a short delay due to mechanical problems (Complaint ¶ 7). She alleges that the

---

[1] American certainly disagrees with many of the alleged "facts" Ms. Hanni alleges. Nevertheless, this is a motion to dismiss under Rule 12(b)(6), and American acknowledges that for the purposes of this motion, the Court assumes Ms. Hanni's allegations of fact to be true. The Supreme Court last year explained the standards for deciding Rule 12(b)(6) motions in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1969 (2007).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2          1          C 08-00732 CW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

1   flight, American Flight 1348 was diverted to Austin, Texas, and that she was told the diversion

2   resulted from weather at DFW Airport (Complaint ¶ 8).  Hanni admits that DFW Airport was

3   completely closed to air traffic for the time period from 2:00 p.m. to 4:30 p.m. on December 29

4   (Complaint ¶ 66), and acknowledges that DFW Airport experienced "transient thunderstorms" on

5   that day (Complaint ¶ 53).

6       Hanni pleads that the need to divert Flight 1348 to Austin from its intended destination of

7   DFW Airport resulted from American's negligent assessment of, and planning for, dangerous

8   weather.  She contends that the delays she encountered on Flight 1348 "were actually due to

9   causes within the control of AA and included intentional or negligent lack of personnel,

10  equipment, and planning [by American] for ordinary weather disruptions" (Complaint ¶ 63).

11  Hanni claims American "had ample advanced warning of weather conditions at Dallas and knew

12  or should have known that it was not able to land aircraft at Dallas (DFW) at the capacity it had

13  scheduled on December 29, 2006, due to transient thunder storms" (Complaint ¶ 53).  She pleads

14  that American "could have cancelled or delayed from departing many of the flights that it diverted

15  and stranded, thereby preventing the diversions and confinements" (Complaint ¶ 53).

16      Ms. Hanni seeks to have this Court utilize state common law causes of action in tort and

17  contract to remedy and correct what she perceives as American's deficient handling of its business

18  as an air carrier on December 29, 2006.  She alleges that American is an operator offering air

19  transportation to the general public (Complaint ¶ 87), and she asserts that American owed a duty

20  to her, presumably arising under the common law, "to use best efforts to bring passengers safely to

21  their destinations, to plan for weather related disturbances in its flight operations, and to refrain

22  from mistreatment of them with unjustified involuntary confinement, deprivation of passengers'

23  baggage, and stranding in remote locations" (Complaint ¶ 87).  Hanni also employs state common

24  tort and contract law to establish standards for, and thereby modify, American's conduct as an air

25  carrier in the future (see Complaint ¶¶ 75-100).  She expressly asks this Court to impose state law

26  punitive damages to deter like conduct in the future (Complaint ¶¶ 78, 85, 100).

27      Hanni asks the court to apply state fraud law because, she says, American knowingly

28  deceived her concerning the "causes and justifications for the diversions, schedule changes,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                           2                      C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1   confinements, expected departure times, and baggage delivery on December 29th and 30th, 2006"

2   (Complaint ¶ 96). Hanni expressly ties alleged misrepresentations to both air safety and to the

3   economics of the air carrier and questions American's stated safety concerns, alleging that

4   American "sought to deceive and defraud Plaintiff for Defendant's pecuniary gain, and

5   specifically with intent to fraudulently invoke Force Majeure clause in its contract with Plaintiff

6   by falsely asserting a weather emergency as justification for the extreme delays, confinements, and

7   other mistreatments of passengers and to avoid other liabilities to Plaintiff for its misconduct"

8   (Complaint ¶ 98). Presumably, plaintiff seeks to have a jury in this Court evaluate, for example,

9   whether there really was a "weather emergency" and whether American truthfully explained the

10  "causes and justifications" for the diversions and delays on Flight 1348.

11      Hanni also asserts state law tort and contract claims directly about provisions for her health

12  and safety that American provided (or, in her view, did not provide) while she was delayed at the

13  Austin airport. She pleads she was confined to the airplane for an unreasonable period of time and

14  that she was not provided with sufficient water, food, fresh air at normal temperatures, and

15  sanitary waste removal during the delay (Complaint ¶¶ 28, 29, 45, 46, 47, 51). She alleges there

16  were foul smells aboard the aircraft (Complaint ¶ 45). She bases her alleged contract claims on

17  American's Customer Service Plan and American's Conditions of Carriage (Complaint ¶¶ 91-94).

18  Indeed, she seeks to utilize state common law to add an implied covenant of good faith and fair

19  dealing into American's Conditions of Carriage (Complaint ¶ 93).

20      Hanni asserts several claims about ticket refunds, overnight lodging and meal expenses,

21  ground transportation expenses, telephone expenses and similar out-of-pocket costs she contends

22  she incurred because of the diversion of Flight 1348 and the alleged "stranding" of that flight

23  overnight in Austin. (Complaint ¶¶ 61, 69).

24      Hanni filed her Complaint in the Superior Court of the State of California in and for the

25  County of Napa against American on December 28, 2007. On January 31, 2008, American filed

26  its Notice of Removal in the U.S. District Court for the Northern District of California and

27  removed the case to the Northern District Court on the basis of diversity of jurisdiction under 28

28  U.S.C. § 1441(b) and the Class Action Fairness Act, 28 U.S.C. § 1332(d).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

### III. DISCUSSION

**A.    Implied Field Preemption by the Federal Aviation Act and Federal Aviation Regulations**

It is well-established that Congress has the power to preempt state law. U.S. Const. Art. VI, cl. 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). It may do so expressly or impliedly. Here, Congress has impliedly preempted the field of governmental regulation pertaining to the health and safety of air carrier passengers during flight by enacting the FAA 1958, Pub. L. No. 85-726, 72 Stat. 731 (codified as amended at 49 U.S.C. §§ 40101, et seq.) and giving the Federal Aviation Administration comprehensive power to issue FARs thereunder.[2] *See, e.g.,* 49 U.S.C. §§40103(b) & 44701; *Montalvo v. Spirit Airlines*, 508 F.3d 464, 472-473 (9th Cir. 2007). As the Court noted in *Montalvo*,

> [W]hen we look to the historical impetus for the FAA, its legislative history, and the language of the Act, it is clear that Congress intended to invest the Administrator of the Federal Aviation Administration with the authority to enact exclusive air safety standards. Moreover, the Administrator has chosen to exercise this authority by issuing such pervasive regulations that we can infer a preemptive intent to displace all state law on the subject of air safety." *Id.* at 472.

Congress's purpose in passing the FAA could not have been clearer: to give the federal government complete and exclusive authority to regulate health and safety onboard commercial aircraft for the benefit and protection of airline passengers and crewmembers through the creation and enforcement of a single unified system of flight rules. *Id.* at 471. As noted in *Montalvo*, Congress and the Federal Aviation Administration have chosen to regulate many aspects of passengers' health and safety on board aircraft, thus demonstrating that the federal government, alone, has power to act in this area. *Id.* at 472-73. The comprehensiveness of the regulations enacted by the Federal Aviation Administration run the gamut from banning smoking aboard

---

[2] Federal preemption is properly raised by a Rule 12(b)(6) motion. *See, e.g., Silvas v. E*TRADE Mortgage Corp.,* __F.3d___, 2008 WL 239422 (9th Cir., Jan. 30, 2008) (affirming Rule 12(b)(6) dismissal based on federal preemption); *Botz v. Omni Air Int'l*, 286 F.3d 488, 489-90 (8th Cir. 2002) (affirming 12(b)(6) dismissal on the basis of ADA preemption); *Frank v. Delta Airlines, Inc.*, 314 F.3d 195 (5th Cir. 2002) (reversing denial of 12(b)(6) motion and rendering judgment on the basis of preemption).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    4                                    C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S MOTION TO DISMISS

1    commercial aircraft, 14 C.F.R. Part 252 (2000), to regulating the transportation of passengers with

2    communicable diseases, 14 C.F.R. § 382.51 (1996).  FARs also require various signs, placards,

3    and oral briefings to inform passengers of the ban on smoking.  *See* 14 C.F.R. §§ 91.517 (1992),

4    91.519(a)(1) (2003).  Other FARs require all aircraft to carry emergency medical equipment and

5    first aid kits.  *See* 14 C.F.R. § 121.803 (2001).  Regulations require air carriers to provide

6    instruction to their crew members in emergency medical event procedures, the content of the

7    medical kit, the proper use of defibrillators, and cardiopulmonary resuscitation.  *See* 14 C.F.R. §

8    121.805 (2001).  Regulations require seat belts, 14 C.F.R. § 91.521 (1989), and passenger

9    briefings concerning the use of safety belts and shoulder harnesses, finding and opening

10   emergency exits, the location of survival equipment, and the use of oxygen equipment installed on

11   the aircraft.  *See* 14 C.F.R. § 91.519 (2003).

12       The Court in *Montalvo* also cited the exceptional nature of the aviation industry as a

13   further reason for the need for a centralized authority.  "Aviation is unique among transportation

14   industries in its relation to the federal government-it is the only one whose operations are

15   conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by

16   States or local authorities." 508 F.3d at 473, *citing*, S. REP. NO. 1811, 85th Cong., 2d Sess. 5

17   (1958).  Regulation on a national basis is required because air transportation is a national

18   operation.  *Id.*

19       The comprehensive regulatory scheme combined with the uniqueness of the aviation

20   industry has led this Circuit, as well as the Fifth Circuit, to hold that the FAA preempts and

21   completely occupies the entire field of regulating on-board airline passenger health and safety.

22   Both Circuits held that the FAA preempts claims that airlines breached state law duties when they

23   failed to warn their passengers about the health risks of deep vein thrombosis, a medical condition

24   in which a blod clot develops in a vein, usually in the leg.  *Montalvo*, 508 F.3d at 474, *Witty v.*

25   *Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004).  As the Ninth Circuit explained:

26       Congress' intent to displace state law is implicit in the pervasiveness of the federal
         regulations, the dominance of the federal interest in this area, and the legislative goal of
27       establishing a single, uniform system of control over air safety.  * * *  The FAA, together
         with federal air safety regulations, establish complete and thorough safety standards for
28       interstate and international air transportation that are not subject to supplementation by, or

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                      5                              C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1    variation among, states.

2    *Montalvo,* 508 F.3d at 473-74.

3    Here, Hanni's Complaint seeks to utilize state law to establish new legal requirements for

4    health and safety services for passengers during lengthy diversions and delays of flights. The

5    genesis of Hanni's claims all surround American's re-routing of Flight 1348 from DFW Airport to

6    Austin due to safety concerns and the shutdown of DFW Airport caused by thunderstorms in that

7    area that ultimately resulted in a multitude of air traffic delays. American has no control over

8    inclement weather or the decisions made by the Federal Aviation Administration's Air Traffic

9    Control Centers; nevertheless Hanni seeks to impose state law standards to govern the length of

10   time passengers may be delayed on aircraft, whether a flight should be cancelled or held on the

11   ground in San Francisco longer, or most audaciously, whether or not the flight should have been

12   flown into DFW Airport, rather than being diverted to Austin, notwithstanding the ongoing

13   thunderstorms occurring in the vicinity of DFW Airport, when it would be safe to take off from

14   Austin for the DFW Airport, as well as the level of services air carriers must provide in the way of

15   food and drink, toilet facilities, light, ambient air, medications, nutritional supplements and

16   hydration while the flight is in an uncertain status. *See* Complaint ¶¶ 8-17, 47, 51, 53, 63. If such

17   standards are to be set, the FAA mandates that they be imposed by the federal government, not by

18   one or more of the fifty States.[3] Applying state law standards to American's safety decisions

19   would be antithetical to the comprehensive regulatory scheme of the FAA and accompanying

20   FARs. As the Court explained in *Montalvo,* allowing each of the fifty states to create a patchwork

21   of laws in airspace would:

22       [C]reate a crazyquilt effect. Congress could not reasonably have intended an airline on a
         Providence-to-Baltimore-to-Miami run to be subject to certain requirements in, for
23       example Maryland, but not in Rhode Island or in Florida. It is equally as doubtful that
         Congress would have intended the sufficiency of the Airlines' warnings to hinge on where
24       each passenger on each flight was likely to file suit. As the district court noted, such a
         result would be an anathema to the FAA.
25

26   _____

27   [3] As discussed below in Section B.2(c), the U.S. Department of Transportation ("DOT") is
     currently considering whether additional regulation is necessary for this field.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                    6                    C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1   508 F.3d at 473.  (Internal citations omitted.)

2     Under federal law, American's decision that weather developments in the vicinity of DFW

3   Airport made it imprudent to proceed there with Flight 1348 and many other flights on December

4   29 outweighs the considerations of delay and inconvenience to passengers and crew, even though

5   American certainly regrets that delay and inconvenience.  Assigning and maintaining safety ranks

6   as the highest priority in air transportation.  49 U.S.C. § 40101(a)(1).  The preemption of federal

7   law protects the national air transportation system from the risk that individual fact finders,

8   applying differing state law concepts, may redraw the balance between safety and delay, safety

9   and convenience, or safety and passenger expense.[4]  As the crux of Hanni's claims in her

10  Complaint relate to safety, they are preempted under the FAA.

11  **B.    Express Preemption By the Airline Deregulation Act**

12    Hanni's state common law causes of action against American are also preempted by the

13  ADA, which states in pertinent part that a "State . . . may not enact or enforce a law, regulation, or

14  other provision having the force and effect of law related to a price, route, or service of an air

15  carrier . . . ."  49 U.S.C. § 41713(b)(1).  When applicable, ADA preemption covers state common

16  law causes of action, as well as state statutes.  *E.g., Travel All Over the World, Inc. v. Kingdom of*

17  *Saudi Arabia*, 73 F.3d 1423, 1435 (7th Cir. 1996) ("States can impose their own substantive

18  standards through the common law as well as through statutory enactments."); *United Airlines,*

19  *Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (state common law is preempted by

20  the ADA).

21    **1.    The ADA Broadly Preempts State Law Related to an Air Carrier's Price, Route, or Service**

22

23    The scope of the ADA's preemption of state laws that "relate to" a price, route, or service

24

25  [4]  There is no "presumption against preemption" . . . "in an area where there is a history of
    significant federal presence."  *E.g., United States v. Locke*, 529 U.S. 89, 108-09 (2000); *Silvas,*
26  2008 U.S. App. LEXIS 1944 at *6.  There can be no doubt that there has been a history of
    significant federal presence in the regulation of the air line industry and interstate air carrier
27  service.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  of an air carrier is broad.  In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374,  (1992), the

2  Supreme Court interpreted the phrase "related to" to mean that "[s]tate enforcement actions having

3  a connection with or reference to airline 'rates, routes, or services' are pre-empted under 49 U.S.C.

4  [§ 41713(b)(1)]."[5]  *Id.*  at 378-39 (emphasis added).  The Supreme Court adhered to that same

5  broad definition of the phrase "related to" when it examined ADA preemption a second time in

6  *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995).

7  　　　In *Air Transport Ass'n v. City and County of San Francisco*, 266 F.3d 1064 (9th Cir.

8  2001), the Ninth Circuit explained that "a local law will have a prohibited connection with a price,

9  route or service if the law binds the air carrier to a particular price, route or service and thereby

10  interferes with competitive market forces within the air carrier industry." *Id.* at 1072.  Drawing

11  guidance from ERISA preemption cases, the Court said state law will be preempted when that law

12  "compels" or "binds" an air carrier to a particular course of action. *Id.* at 1071.

13  　　　**2.　　All Claims in Plaintiff's Complaint "Relate to" American's Prices, Routes, and
         Services.**

14

15  　　　In both of the cases that have come before the Supreme Court, *Morales* and *Wolens*, the

16  Court had no difficulty in concluding that the challenged state laws related to the prices, routes, or

17  services of air carriers.  In *Morales*, the National Association of Attorneys General promulgated a

18  set of guidelines titled the "Air Travel Industry Enforcement Guidelines." *Morales*, 504 U.S. at

19  379.  The Attorney General of Texas notified air carriers that his office considered the guidelines,

20  insofar as they regulated airline advertising, to be enforceable under the Texas Deceptive Trade

21  Practices and Consumer Protection Act. *Id.* at 378-79.  The Supreme Court said one could "not

22  avoid the conclusion" that the state guidelines for air carriers' advertisements about fares "related

23  to" airline rates and were preempted by 16 ADA. *Id.* at 388-91.

24  　　　In *Wolens*, plaintiffs filed state law claims against American challenging modifications

25  American made to its frequent flier program. *Wolens*, 513 U.S. at 224-25.  The Supreme Court

26  _____

    [5]  The ADA's preemption statute formerly was codified as 49 U.S.C. App. §1305(a)(1), but was

27  later recodified as 49 U.S.C. §41713(b)(1). *See Charas v. Trans World Airlines, Inc.*, 160 F.3d
    1259,  262 n.2 (9th Cir. 1998) (en banc).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                        8                                        C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  held that those claims related to air carrier prices, routes, and services, writing:

2  > We need not dwell on the question whether plaintiffs' complaints state claims "relating to
3  > [air carrier] rates, routes, or services." *Morales*, we are satisfied, does not countenance the
4  > Illinois Supreme Court's separation of matters "essential" from matters unessential to
5  > airline operations. Plaintiffs' claims relate to "rates," *i.e.*, American's charges in the form
6  > of mileage credits for free tickets and upgrades, and to "services," *i.e.*, access to flights and
7  > class-of-service upgrades unlimited by retrospectively applied capacity controls and
8  > blackout dates.

6  *Id.* at 226. The Court held that the claims about American's frequent flier program based on the

7  Illinois Consumer Fraud Act were preempted by the ADA because application of that state act

8  would serve "as a means to guide and police the marketing practices of the airlines." *Id.* at 228.

9      Hanni's claims relate to American's prices in seeking passenger remuneration for flight

10  delays, routes in challenging American's routing and diversion of flights to alternate airports due

11  to weather conditions, and services in demanding minimum levels of health and comfort services

12  during diversions or delays. State regulation of these areas that would bind American to a

13  particular course of action is expressly preempted under the ADA and as such, the Complaint must

14  be dismissed.

15      (a)    Prices. Hanni complains that American "has not provided reimbursement

16  for passenger expenses and other forms of compensation to passengers that it diverted and

17  confined on December 29th and 30th, 2006" (Complaint ¶ 59). She alleges that AA "refused to

18  provide payment for overnight lodging, meals, ground transportation, telephone or other passenger

19  expenses and losses caused by its diversion and stranding" (Complaint ¶ 56). Hanni alleges,

20  incredibly, that American sought to preserve economic benefits despite the massive weather-

21  related disruptions it experienced at DFW Airport on December 29, 2006 (Complaint ¶¶ 64, 98).

22      The federal government has published FARs requiring airlines to compensate passengers

23  denied boarding because of *overselling* of flights, 14 C.F.R. Part 250 (2003), but has chosen not to

24  require airlines to compensate passengers for delays, weather diversions, overnight lodging, meals,

25  substitute transportation, or similar expenses.[6] This omission is part of the economic

26  _____

27  [6] In paragraphs 41 and 42 of her Complaint, Hanni alleges that on December 30, 2006, she was
28  denied boarding on American Eagle Airlines' flight from DFW to Mobile, Alabama, and that
   (footnote continued)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                    9                    C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1 "deregulation" of airlines Congress enacted the ADA to bring about. Hanni seeks, however, to

2 have the Court employ state common law to create new legal, state-imposed obligations requiring

3 air carriers to make such payments to passengers in circumstances such as those alleged in the

4 Complaint, which would increase the airlines' costs, and therefore their prices.

5      In *Morales*, the Supreme Court held that the states' attempt to regulate airline marketing

6 and advertising practices "as an economic matter . . . have the forbidden significant effect upon

7 fares." 504 U.S. at 388. Hanni's claims, if imposed by state law, would undoubtedly have an

8 even more direct and significant effect on air carrier prices if airlines are forced to remunerate

9 passengers each time there is a weather related diversion or delay. *See Buck v. American Airlines,*

10 *Inc.*, 476 F.3d 29, 34-36 (1st Cir. 2007) (ADA preempts state law claims for refund of federally-

11 mandated fees collected on airline tickets not used); *Statland v. American Airlines, Inc.*, 998 F.2d

12 539, 541-42 (7th Cir. 1993) (ADA preempts state law claims challenging ticket refund policies).

13           (b)    Routes. Hanni's Complaint seeks to have the Court interpose state law into

14 regulation of air carrier routes. Apparently, she seeks to have a jury determine whether American

15 should have cancelled Flight 1348, or held it on the ground in San Francisco longer, or not

16 diverted it to Austin but rather flown to DFW Airport despite concerns about thunderstorms in the

17 vicinity (Complaint ¶¶ 53, 63). Arguably, her Complaint draws American's decisions with respect

18 to flights throughout its system on December 29, 2006 into question (Complaint ¶ 53).

19      The states simply cannot get into regulation of such matters. By finding that American

20 acted negligently, or otherwise improperly under state law, in charting the route of Flight 1348 on

21 December 29, 2006, the Court would invade federally preempted areas. In *City of Burbank v.*

22 *Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973), the Supreme Court repeated Justice Jackson's

23 explanation of federal control over aircraft routes:

24           "Federal control is intensive and exclusive. Planes do not wander about in the sky like
             vagrant clouds. They move only by federal permission, subject to federal inspection, in

25 _____

26 failure to compensate was a "flagrant violation" of US DOT bumping rules." She apparently seeks

27 to refer to 14 C.F.R. §250.5 (2003), but her Complaint does not allege she was denied boarding on
the American Eagle flight due to any overselling of that flight.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    10                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1    the hands of federally certificated personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and
2    detailed system of controls."

3  *Id.* at 633-34. (*quoting Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303 (1944) (Jackson,

4  J., concurring). The United States Government has exclusive sovereignty of the airspace over the

5  United States. 49 U.S.C. § 40103(a)(1).

6         One can imagine the intolerable confusion from each of the fifty states applying its own

7  laws to regulate airline routing decisions. Passengers on a flight from New York could sue under

8  that state's law, claiming an air carrier negligently cancelled a flight or delayed it on the ground in

9  New York. If the air carrier did not delay the flight in New York and instead took off for DFW

10  Airport, but then diverted to an another airport enroute, the same passengers could sue under

11  another state's law claiming the airline was negligent for not cancelling or delaying the flight in

12  New York. As the First Circuit observed in an ADA preemption case, when Congress enacted the

13  ADA, it "obviously did not intend to leave a vacuum to be filled by the Balkanizing forces of state

14  and local regulation." *New England Legal Found. v. Mass. Port Auth.*, 883 F.2d 157, 173 (1st Cir.

15  1989). Nothing could be more Balkanizing that to introduce state tort and contract law into the

16  decisions of airlines whether to cancel flights, delay takeoffs, divert flights enroute, or reschedule

17  arrivals at intended destinations.

18         (c)    Services. Hanni's complaint also seeks to compel and bind American to

19  standards it must observe when its flights are diverted or delayed by bad weather. She alleges she

20  was kept too long on the aircraft while her flight was delayed in Austin and that American failed

21  to provide adequate food, drink, hand washing water, fresh air, light, and lavatory service

22  (Complaint ¶¶ 46, 47, 51). She asserts that she was deprived of access to medications, nutritional

23  supplements and needs, and hydration (Complaint ¶ 47). She adds claims based on American's

24  handling of her checked baggage (Complaint ¶¶ 34, 35, 39, 43). Hanni seeks to use state tort and

25  contract law to bind American to particular norms or standards for such circumstances and to

26  exact damages from American for failure to meet those alleged norms or standards with respect to

27  Flight 1348.

28         The Ninth Circuit has held that Congress did not intend for the ADA to preempt "run-of-

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                          11                                    C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  the-mill personal injury claims" against air carriers. *Charas*, 160 F.3d at 1261. Unlike most of the

2  other United States Courts of Appeals that have considered the meaning of the word "services"

3  within the ADA's preemption provision, the Ninth Circuit has held that "services" does not

4  include "an airline's provision of in-flight beverages, personal assistance to passengers, the

5  handling of luggage, and similar amenities." *Id.* at 1261, 1266.[7]

6      However, Hanni's claims against American are not "run-of-the-mill" personal injury

7  claims as described in *Charas* or similar cases such as *Duncan v. Northwest Airlines*, 208 F.3rd

8  1112 (9th Cir. 2000). In *Charas*, passengers claimed that during the course of rendering some

9  "service" that an airline had undertaken on its own to provide, the airline was negligent, and as a

10  result, a passengers suffered bodily injury. For example, in one of the cases consolidated under

11  *Charas*, a flight attendant ran a service cart into a passenger and injured the passenger's shoulder.

12  In another, a flight attendant left a piece of luggage in the aircraft aisle, and a passenger tripped

13  over the luggage and suffered injury. In another, a passenger alleged she advised the airline that

14  she needed assistance in disembarking because of a bone disease, but the airline failed to provide

15  the assistance and the passenger fell. 160 F.3d at 1261-62. The Ninth Circuit held that "service"

16  "does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the

17  safe handling and storage of luggage, assistance to passengers in need, or like functions." *Id.* at

18  1266. In *Duncan*, the airline made a business decision to permit smoking on international flights

19  to and from Asia. A flight attendant sued claiming that decision caused her injury and violated the

20  airline's duty under state law to provide a safe work environment.

21

22  [7]  American recognizes this Court is bound by the Ninth Circuit's decision in *Charas*.
Nevertheless, American reserves the right to challenge the Ninth Circuit's holding in *Charas*
should that need arise. *See, e.g., Northwest Airlines, Inc. v. Duncan*, 531 U.S. 1058, 121 (2000)

23  ("O'Connor, J., dissenting from denial of certiorari). The Ninth Circuit's definition of "services"

24  within the ADA conflicts with *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en
banc); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003); and *Travel All Over*

25  *the World*, 73 F.3d at 1433.[7] In *Wolens*, the Supreme Court expressly rejected any attempt to
apply the phrase "air carrier . . . services" only to matters "essential to air carrier services," as

26  opposed to unessential services. 513 U.S. at 226, 115 S.Ct. at 817. Indeed, in *Wolens*, the

27  Supreme Court held that various aspects of an airline's frequent flier program, such as access to
flights and class of service upgrades, related to air carrier services. *Id.*

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1    Hanni's Complaint goes far beyond the "run-of-the-mill" negligence and worker's

2    compensation law claims considered in *Charas* and *Duncan.* Hanni seeks to bind American to

3    meet state law requirements during diversions to other airports and the resulting delays. For

4    example, Hanni seeks to utilize state tort law to impose a limit on the time American may retain

5    passengers on aircraft and create a requirement that American must allow passengers to disembark

6    after that limit, or else pay damages. Hanni's Complaint suggests she believes state law should fix

7    three hours as the limit (Complaint ¶¶ 68, 76). Hanni also seeks to employ state law to impose a

8    new legal requirement that air carriers must provide certain levels or qualities of food, drink, fresh

9    air, and toilet services during diversions and delays, or suffer damages for failure to do so.

10    It is one thing to say, like *Charas*, that if an air carrier undertakes to provide a "service," or

11    amenity, it must use due care in doing so. It is another thing to claim, as does Hanni, that the

12    courts should employ state common law to compel American to meet standards and carry out

13    duties imposed by, and springing from, state common law governing the minimum levels of health

14    and comfort services air carriers must provide in the event of diversions or delays. Such state

15    mandated standards would obviously affect American's prices[8], and would amount to partial

16    economic re-regulation of air carriers. *See Air Transport Ass'n*, 266 F.3d at 1071-72. Federal law

17    covers several aspects of Hanni's complaints, which reinforces the conclusion that mandating

18    additional requirements in these areas is within the scope of the ADA's preemption provision.

19    Recognizing its exclusive responsibility and authority to determine whether there should

20    be additional governmental regulation in the areas covered by Hanni's Complaint, the DOT

21    recently issued an Advance Notice of Proposed Rulemaking seeking comments on whether to

22    require airlines, nationwide, to provide certain types of flight-delay related services. *See*

23    *Enhancing Airline Passenger Protections*, 72 Fed. Reg. 65,233 (Nov. 20, 2007). DOT also

24    recently announced that it would form a national task force to make recommendations for "dealing

25    

---

26    [8] Indeed, Hanni's Complaint contends that American sought to avoid "ground transportation
27    expenses, terminal employee overtime and staffing expenses, and other expenses normally
      associated with mass strandings and cancellations" (Complaint ¶ 69-70).

28    

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                13                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  with lengthy on-board ground delays nationwide." *National Task Force to Develop Model*

2  *Contingency Plans to Deal with Lengthy On-Board Ground Delays*, 72 Fed. Reg. 72,435 (Dec. 20,

3  2007). These DOT actions demonstrate that the federal government is dealing with the subjects

4  raised by Hanni's Complaint, and that it has exclusive authority to do so. Unlike individual states,

5  the federal government is in a position to balance the effect of particular regulations on the

6  national air transportation system as a whole.[9]

7       In sum, all of Ms. Hanni's claims and causes of action at a minimum "relate to" air carrier

8  "prices, routes, or services," which places them within the scope of ADA preemption.

9       **3.     Plaintiff's Complaint Would Require the Court to "Enact or Enforce" State
          Law in Violation of the ADA.**

10      The ADA states that no State shall "enact or enforce any law" that relates to prices, routes,

11  or services; and the Supreme Court has held that statutory provision "stops the States from

12  imposing their own substantive standards with respect to rates, routes, or services." *Wolens*, 513

13  U.S. at 232-33. The ADA does not preempt the utilization of state contract law to "afford[] relief

14  to a party who claims and proves that an airline dishonored a [contractual] term the airline itself

15  stipulated," provided there is "no enlargement or enhancement" of the alleged contractual

16  obligation "based on state laws or policies external to the agreement." *Id.* Because Hanni's

17  alleged causes of action would require this Court to impose state public policies or regulatory

18  theories on airline prices, routes, and services, they are preempted by the ADA.

19      **(a)     Plaintiff's Intentional Tort Claims for False Imprisonment, Intentional
              Infliction of Emotional Distress, and Fraud Are Preempted.**

20

21      To entertain any of plaintiff's intentional tort claims would require this Court to impose

22  normative standards drawn from state common law on air carriers' prices, routes, and services.

23

24  _____

[9] DOT has broad statutory authority to investigate and take action against any unfair or deceptive

25  practice by an air carrier. *See* 49 U.S.C. § 41712(a). Acting under section 41712, DOT recently
    took enforcement action against Comair, Inc., based on a system-wide cancellation of flights

26  Comair experienced on December 24, 2004, as a result of computer failures. By a Consent Order,
    DOT assessed a penalty against Comair. *See* DOT Order No. 2007-5-9, *Comair, Inc., d/b/a Delta*

27  *Connection*, served May 17, 2007, available at 2007 DOT Av LEXIS 376.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                              14                         C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  State tort law identifies, on a jurisdiction by jurisdiction basis, acceptable standards for conduct

2  and imposition of such standards retroactively on the defendant in a particular case and

3  prospectively on others finding themselves in similar circumstances. The common law of tort

4  tends to impose liability based on "fault," which is the "failure to live up to an ideal standard of

5  conduct." PROSSER AND KEETON ON TORTS § 4 at 22 (5th ed. 1984). States impose their own,

6  state-specific standards of conduct through tort law which Hanni seeks to employ to set standards

7  for the services air carriers must provide during incidents of diversion and delay.

8       Intentional tort claims like Hanni's in this action have been held preempted by the ADA.

9  In *Morales*, the Supreme Court held the ADA preempted the Texas Attorney General's attempt to

10 impose state standards on airline advertising by applying the Texas Deceptive Trade Practices and

11 Consumer Protection Act. *Morales*, 504 U.S. at 391. In *Wolens*, the Supreme Court held the

12 Illinois Consumer Fraud Act preempted insofar as private plaintiffs asserted claims against

13 American under that act. The Court saw the Illinois Act as "prescriptive; it controls the primary

14 conduct of those falling within its governance." *Wolens*, 513 U.S. at 227. The Court observed

15 that the state act "serves as a means to guide and police the marketing practices of the airlines."

16 513 U.S. at 228.

17      Hanni's reliance on state intentional tort law has the same forbidden effect as the statutory

18 law in *Morales* and *Wolens*. Hanni seeks to employ state tort law to "guide and police" the

19 alleged diversion and delay practices of the airlines. The federal appellate courts that have

20 considered similar questions have held common law intentional tort claims preempted when

21 plaintiffs have sought to apply them in matters related to airline prices, routes, or services. *Smith*

22 *v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998) (false imprisonment and intentional infliction of

23 emotional distress claims preempted to the extent they related to the passenger's allegation that

24 Comair refused to allow him to board his scheduled flight); *Travel All Over the World*, 73 F.3d at

25 1434, (intentional tort claims based on the airline's alleged refusal to transport passengers were

26 preempted by the ADA). Here, Hanni claims that she was not allowed to disembark, rather than

27 board as in *Smith*, and that American transported her for too long, rather than not at all, as in

28 *Travel All Over the World*. Those differences are not significant, however, because all of the

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    15                              C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  claims—those here, in *Smith*, and in *Travel All Over the World*—have the same prohibited

2  relationship to air carrier prices, routes, and services.[10]

3      The federal appellate decision most factually similar to Hanni's case is *Abourezk v. New*

4  *York Airlines, Inc.*, 895 F.2d 1456 (D.C. Cir. 1990), in which a passenger sued alleging that he

5  demanded, unsuccessfully, to be let off the plane after his flight was delayed for over three hours

6  before taking off.  As does Hanni, *Abourezk* sued for alleged false imprisonment and intentional

7  infliction of emotional distress and sought both actual and punitive damages.  The district court

8  granted the air carrier's motion for summary judgment, holding that the airline had no "duty to

9  release" the passenger.

10     The D.C. Circuit, while affirming, noted that although the defendant air carrier had raised

11  ADA preemption in the district court, the carrier did not present that issue on appeal, choosing

12  instead to defend the district court's opinion on the merits.  Nevertheless, the preemption issue

13  provoked a strong concurring opinion by Judge Edwards, who wrote:

14      I do wish to underscore, however, that our decision today should not be read as a sign that
        we approve of a district court decision on the merits of a claim like the one brought by the
15      appellant.  The preemption question in this case is substantial.  Section [now 41713(b)(1)]
        of Title 49 of the United States Code provides that "no State shall enact or enforce any
16      law, rule, regulation, standard, or other provision having the force and effect of law
        relating to rates [now "price"], routes, or services of any air carrier." [Emphasis in
17      original]. * * * Enacted as part of the 1978 airline deregulation legislation, section
        [41713(b)(1)] communicates unequivocally Congress' will that courts refrain from
18      enforcing any manner of state law in these areas.

19  *Id.* at 1459 (Edwards, Circuit Judge, concurring).

20          (b)    Plaintiff's Negligence Claims are Preempted.

21     Plaintiff does not assert "run-of-the-mill" negligence claims against American, like those at

22  issue in *Charas*.  Rather, Plaintiff's claims of negligence *directly* impact American's routes and

23

---

24  [10]  Other cases in which courts have held false imprisonment, intentional infliction, and fraud
    claims preempted by the ADA include: *Elnajjar v. Northwest Airlines, Inc.*, 2005 U.S.Dist. LEXIS
25  36792 (S.D.Tex., Aug. 15, 2005) (intentional infliction); *Chrissafis v. Continental Airlines, Inc.*,
    940 F.Supp. 1292, 1298 (N.D. Ill. 1996) (intentional tort claims are defined by state law and
26  therefore require enforcement of state law, and false imprisonment claims are preempted when
    plaintiff claims the airline refused or failed to provide service to a passenger);  *Black v. Delta Air*
27  *Lines, Inc.*, 116 S.W.3d 745, 756 (Tex. 2003) (misrepresentation and fraud).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  services, and would do so on a grand scale. Plaintiff alleges that American was negligent in most

2  of what it did as an air carrier on December 29, 2006 – in bringing passengers safely to their

3  destinations, planning for weather-related disturbances in its flight operations, and in dealing with

4  passengers and their baggage (Complaint ¶ 87). In other paragraphs incorporated into her alleged

5  negligence cause of action, Hanni alleges that American had "ample advanced warnings" of

6  weather conditions at DFW Airport, that it knew or should have known it could not land the

7  number of aircraft it had scheduled at DFW Airport due to "transient thunderstorms," and that it

8  was negligent in failing to cancel or delay at their origins one or more of the flights it diverted to

9  other airports because of bad weather at DFW (Complaint ¶ 53). Plaintiff alleges that the delays

10  of December 29, 2006, resulted from "intentional or negligent lack of personnel [or] equipment

11  and planning for ordinary weather disruptions" (Complaint ¶ 63). This is a direct attempt to

12  utilize state negligence law to control the way in which American responds to the possibility of

13  dangerous weather at airports throughout the nation, schedules landings of incoming flights at

14  airports, decides whether to cancel or delay takeoff of flights at departure airports, and decides

15  when to divert aircraft in flight due to weather developments enroute. To quote Judge

16  Easterbrook, "applying the conflicting tort principles of 50 different states to these interstate and

17  international transactions would make a mess of things." *United Airlines*, 219 F.3d at 611.

18      A Court cannot impose one state's standards of conduct on a unified, interdependent

19  national system where state interference is not permitted. In the only case American's counsel

20  have found in which a plaintiff made a negligence claim even remotely analogous to those

21  presented here, the court held that claim preempted by the ADA. In *Nazarian v. Compagnie Nat'l*

22  *Air France*, 989 F.Supp. 504 (S.D.N.Y. 1998), the plaintiffs alleged that Air France was negligent

23  in the operation of its flight schedule, which resulted in their missing a connecting flight in Paris.

24  The court held that negligence claim preempted by the ADA. *Id.* at 510.

25          (c)   Plaintiff's Claim for Punitive Damages is Preempted.

26      State law punitive damages are based on state policy decisions. In many respects, punitive

27  damages serve the same objectives as state criminal law—to punish wrongdoers and prevent or at

28  least deter what the state perceives as improper conduct in the future. To allow state law to

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  impose punitive damages in matters related to air carrier prices, routes, and services certainly

2  would violate the ADA's preemption provision, and several courts have so held. *See, e.g., Travel*

3  *All Over the World*, 73 F.3d at 1432 n. 8; *In re JetBlue Airways Corp. Privacy Lit.*, 379 F.Supp.2d

4  299, 317 (E.D.N.Y. 2005); *Deerskin Trading Post., Inc. v. UPS of Am.*, 972 F.Supp. 665, 673

5  (N.D.Ga. 1997).

6              (d)    Plaintiff's Alleged Breach of Contract Claims Are Preempted.

7          Plaintiff alleges breach of contract claims based on American's Conditions of Carriage and

8  American's Customer Service Plan.[11]  Although the Conditions of Carriage is a contract and

9  covers many of the same topics and subjects that are addressed in the Customer Service Plan,

10  Hanni cannot base an alleged breach of contract claim on American's Customer Service Plan itself

11  because it expressly states that, "the Customer Service Plan does not create contractual or legal

12  rights.  Rather our contractual rights and obligations are set out in our conditions of carriage,

13  applicable tariffs, and ticket jacket . . . ."  Accordingly, the Complaint states no alleged contract

14  claim based on the Customer Service Plan.  Any effort to create from state law principles a

15  contract from the Customer Service Plan would be preempted because such an effort obviously

16  would surpass any contractual obligation American voluntarily accepted.

17          Hanni's contract claims must be based on, if anything, the four corners of American's

18  Conditions of Carriage.  Plaintiff's alleged claims based on American's Conditions of Carriage are

19  thus preempted by the ADA because plaintiff seeks to go outside the four corners of that contract

20  and utilize state law to expand American's obligations under the Conditions of Carriage.

21          *ADA Preemption.*  In *Wolens*, the Supreme Court held that the ADA's preemption

22  provision does not preempt state contract law if the plaintiff's breach of contract action is confined

23

24  ───────────────

[11]  American's Conditions of Carriage and Customer Service Plan are attached as Exhibits A and
25  B respectively to the Declaration of John Terrell in Support of Defendant's Motion to Dismiss,
which authenticates the Conditions of Carriage and Customer Service Plan in effect on December
26  29, 2006.  Because these documents are expressly referred to in Plaintiff's Complaint and form the
basis for one of plaintiff's alleged claims for relief, the Court may examine them on a Rule
27  12(b)(6) motion to dismiss. *See, e.g., Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    18                                    C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  "to the parties' bargain, with no enlargement or enhancement based on state laws or policies

2  external to the agreement." 513 U.S. at 233. At the very outset, plaintiff Hanni's alleged breach

3  of contract claim exceeds the scope of the *Wolens* exception because Hanni asserts contract claims

4  based on an alleged "implied covenant of good faith and fair dealing" (Complaint ¶ 93). If there

5  were such an implied covenant of good faith, it would have to be imported into American's

6  Conditions of Carriage by the external force of state law; and Hanni's claims thereby stand

7  preempted. As the Fourth Circuit wrote, "when a contract claim cannot be adjudicated without

8  resort to outside sources of law, the claim is still preempted by the ADA." *Smith*, 134 F.3d at 257.

9  *See also Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339 (11th Cir. 2005) (contract claim

10  preempted when plaintiff sought to add state law-imposed obligations to Delta's contract of

11  carriage).

12      Hanni's expansive claims regarding American's actions in response to dangerous weather

13  – such as Hanni's claims about whether American should have delayed or cancelled Flight 1348,

14  or cancelled other flights from other airports so Flight 1348 could have proceeded into DFW

15  Airport, or her claims that American overscheduled the number of flights at DFW Airport that date

16  – would also, of necessity, require supplementation of the Conditions of Carriage with state law

17  policies and regulatory principles and therefore enlarge American's self-imposed contractual

18  obligations. American must be free from state law constraints to honor its federally-imposed

19  obligations to rank safety as its first priority, to comply with federal airspace restrictions, and to

20  operate within other areas of unique federal concern such as airport and runway capacities, control

21  by Air Traffic Control, maintenance of flight patterns, maximum crew on-duty times, minimum

22  fuel loads, etc. Accordingly, Hanni's claims of this type are preempted even to the extent she may

23  attempt to cast them as contract claims. *See, e.g., Smith*, 134 F.3d at 258-59 (contract claims

24  preempted).

25  **C.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
       RELIEF CAN BE GRANTED UNDER APPLICABLE TEXAS LAW.**

26

27      In the event the Court were to conclude that one or more of Hanni's claims survive federal

28  preemption, those claims still will fail to state a claim upon which relief can be granted. Plaintiff's

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                      19                              C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1    Complaint is replete with legal conclusions, but short on the necessary factual allegations to state

2    viable causes of action. As the Supreme Court recently emphasized, on a Rule 12(b)(6) motion, "a

3    plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

4    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

5    *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65. On a motion to dismiss, courts "are not bound to accept

6    as true a legal conclusion couched as a factual allegation." *Id.* at 1965.

7         Hanni admits that the acts and omissions of which she complains occurred entirely within

8    Texas. Hanni was enroute from California to DFW Airport, Texas, on December 29, 2006, when

9    her flight was diverted to Austin, Texas. The flight remained in Austin overnight and then Hanni

10   flew on another American flight into DFW Airport the next morning, where Hanni makes claims

11   about her missed flight from DFW Airport to Mobile (Complaint ¶¶ 6, 8, 33, 37, 38, 39, 43).

12   Hanni's complaints pertain to events she alleges occurred during the delay in Austin and the

13   following morning at DFW Airport. The Complaint reveals no nexus with California other than

14   Hanni lives here and her flight originally departed from San Francisco (Complaint ¶¶ 1, 6).

15        Assuming *arguendo* that this is a matter for state law concern, Texas would have the

16   greater interest in policing diversions and delays of interstate aircraft that occur within its borders.

17   Furthermore, it would be entirely unworkable and unpredictable to subject an air carrier on a

18   single flight to the laws of all states and foreign jurisdictions of which the passengers are residents.

19   Accordingly, American believes that if any state's law were to govern Hanni's claims regarding

20   Flight 1348, the proper choice of law for those claims will be that of the State of Texas.

21             (a)    <u>False imprisonment</u>. The essential elements of a cause of action for false

22   imprisonment are (1) willful detention, (2) without consent, and (3) without authority of law.

23   *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). The plaintiff must plead and

24   prove all three elements, including the element of "without authority of law." *Sears, Roebuck &*

25   *Co. v. Castillo*, 693 S.W.2d 374, 376 (Tex. 1985).

26        Plaintiff has failed to plead facts that, if she could prove them true, would entitle her to

27   relief for alleged false imprisonment. Her pleadings of alleged false imprisonment are nothing

28   more than the "formulaic recitation" of the elements of a cause of action that is condemned by

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                          20                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1   *Twombly.* Plaintiff admits she boarded Flight 1348 (Complaint ¶ 7); thus she consented to being

2   in the aircraft and under the control of American's pilot and crew for the duration of the flight.

3   American's Conditions of Carriage gave notice of the possibility of delays in the flight, even

4   "extraordinary" delays. Hanni alleges no facts from which it could be determined that (1) she

5   validly withdrew her consent to remaining on the aircraft, (2) a duty arose on American's part to

6   release her (apparently onto the tarmac in Austin), or (3) that American lacked federal legal

7   authority over its aircraft and those on board until the flight crew opened the passenger door of the

8   aircraft, released the fasten seat belt warnings, and notified passengers that it was safe to deplane.

9   *See, e.g., Abourezk,* 895 F.2d at 1458.[12]

10         (b)   <u>Intentional Infliction of Emotional Distress</u>. The tort of intentional

11   infliction of emotional distress in Texas is a carefully circumscribed tort. A plaintiff must plead

12   and prove that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was

13   extreme and outrageous, meaning that it was "so outrageous in character, and so extreme in

14   degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

15   utterly intolerable in a civilized community," (3) the defendant's actions caused the plaintiff

16   emotional distress; and (4) the resulting emotional distress was severe. *See Hoffman-LaRoache*

17   *Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004). Under Texas law, it is for the Court in the

18   first instance to determine whether particular conduct is extreme and outrageous within the

19   meaning of the intentional infliction tort. *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 817

20   (Tex. 2005).

21        Putting aside the mere conclusions in paragraphs 81 and 83 of Hanni's Complaint, it fails

22   to state a claim for intentional infliction of emotional distress. American did not divert Flight

23

24   ―――――――――――――――

    [12] The pilot in command of the aircraft "is directly responsible for, and is the final authority as to,

25   the operation of that aircraft." 14 C.F.R. § 91.3(a) (1989). No person may operate an aircraft in a

    careless or reckless manner so as to endanger the life or property of another." *Id.* at § 91.13(a),

26   and no one may interfere with a crew member in the performance of his or her duties aboard the

    aircraft. *Id.* at § 91.11. Passengers are required to occupy their seats and use safety belts. *Id.* at

27   91.107(a)(3).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2        21        C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1    1348 or delay it in Austin intentionally for the purpose of causing Ms. Hanni emotional distress.

2    As Hanni admits, there were "transient thunderstorms" at DFW Airport. Hanni's Complaint

3    concedes DFW Airport was closed for several hours that day, and that many other flights

4    scheduled to land at DFW Airport were diverted to other airports for safety reasons. Admittedly,

5    it is unpleasant to remain on an aircraft for many hours, but people do that all the time. Being on a

6    modern airliner, even for thirteen hours, simply cannot be described as being in a location or

7    condition that is intolerable in a civilized society. Ms. Hanni alleges she needed more food and

8    drink, she alleges there were foul smells, and she complains of having to watch other passengers

9    experience similar distress. While Hanni was no doubt angry, tired, and frustrated, and the

10    circumstances surrounding her delay in an airliner on the ground in Austin unsatisfactory and

11    unpleasant, the situation simply does not rise to the extreme degree to state a claim for intentional

12    infliction of emotional distress.

13          (c)    Negligence. Hanni's vaguely-pleaded negligence claims duplicate her

14    breach of contract claims. The alleged duties Hanni recites in paragraph 87 of her Complaint

15    pertain to matters covered in American's Conditions of Carriage, and thus are subsumed in her

16    contract claims. For example, Hanni's claim that American had a duty, running to her, to plan for

17    weather disruptions in its flight operations is no doubt a subset of the subject "delays,

18    cancellations, and diversions." American's duty with respect to delays, cancellations, and

19    diversions is set forth in paragraphs 18 and 19 of the Conditions of Carriage. Hanni makes claims

20    about delays of her baggage, a subject covered by paragraph 6 of the Conditions of Carriage.

21          Under Texas law, if defendant's conduct violates a contractual duty, rather than a duty

22    independently imposed by law, there is no negligence claim. *See, e.g., Higginbotham v. State*

23    *Farm Mutual Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (Texas law); *DeWitt County Elec.*

24    *Cooperative, Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999) (when a contract "spells out the parties'

25    respective rights," the contract, not common-law negligence, governs any dispute).

26          The remainder of Hanni's negligence allegations are little more than boilerplate

27    (Complaint ¶¶ 88-89). Her Complaint fails to allege facts that, if true, would prove a breach of a

28    legally-recognized standard of duty, proximate cause, or actual, recoverable damages resulting

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    22                              C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  from alleged negligence.

2         (d)    Breach of Contract.  Hanni's Complaint fails to plead a claim for breach of

3  contract upon which relief can be granted.  Although as with any written contract, the complete

4  text of the Conditions of Carriage is important, the factual allegations in Hanni's Complaint seem

5  most focused on the following paragraphs of the Conditions of Carriage:

6         3.    RESPONSIBILITY FOR SCHEDULES AND OPERATIONS

7         American will endeavor to carry you and your baggage with reasonable dispatch, but times
           shown in timetables or elsewhere are not guaranteed and form no part of this contract.
8         American may, without notice, substitute alternate carriers or aircraft and, if necessary,
           may alter or omit stopping places shown on the ticket.  Schedules are subject to change
9         without notice.  American is not responsible or liable for failure to make connections, or to
           operate any flight according to schedule, or for a change to the schedule of any flight.
10        Under no circumstances shall American be liable for any special, incidental or
           consequential damages arising from the foregoing.

11
           6.    BAGGAGE
12
           * * *  American assumes no liability for any indirect, consequential, incidental, punitive or
13        special damages resulting from loss, damage or delayed delivery of checked or transferred
           baggage, including, without limitation, damages for lost revenues or profits, loss of use, or
14        business interruption.

15         18.    DELAYS, CANCELLATIONS AND DIVERSIONS.

16        American Airlines. . . will provide customers at the airport and onboard an affected aircraft
           with timely and frequent updates regarding known delays, cancellations and diversions and
17        will strive to provide the best available information concerning the duration of delays and
           to the extent available, the flight's anticipated departure time.  We are not responsible for
18        any special, incidental or consequential damages if we do not meet this commitment.

19        When cancellations and major delays are experienced, you will be rerouted on our next
           flight with available seats.  If the delay or cancellation was caused by events within our
20        control and we do not get you to your final destination on the expected arrival day, we will
           provide reasonable overnight accommodations, subject to availability.

21
           In extreme circumstances, it is possible that a flight will cancel on the ground in the city to
22        which it was diverted.  When this happens you will be rerouted on the next American
           Airlines . . .flight with available seats, or in some circumstances on another airline or some
23        other alternative means of transportation.  If we are unable to reroute you, reasonable
           overnight accommodations will be provided by American Airlines . . . , subject to
24        availability.

25        American Airlines . . . will provide amenities for delayed passengers, necessary to
           maintain the safety and/or welfare of certain passengers such as customers with
26        disabilities, unaccompanied children, the elderly or others to whom such amenities will be
           furnished consistent with special needs and/or circumstances.

27
           19.    ESSENTIAL NEEDS DURING EXTRAORDINARY DELAYS
28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                          23                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1    In the case of extraordinary events that result in very lengthy onboard delays, American
     Airlines . . . will make every reasonable effort to ensure that essential needs of food (snack
2    bar such as Nutri-Grain®), water, restroom facilities, and basic medical assistance are met.
     We are not responsible for any special, incidental, or consequential damages if we do not
3    meet this commitment.

4        The vague allegations in plaintiff's Complaint fail to state a claim under these, or any

5   other, express provisions of the Conditions of Carriage. Hanni contends her trip was delayed, but

6   American did not guarantee its schedule, and by the express terms of the Conditions of Carriage,

7   American is not liable for delays due to dangerous weather or similar circumstances beyond its

8   control. All of Hanni's damage allegations are of consequential, incidental, or special damages

9   (see Complaint ¶ 56 (overnight lodging, meals, ground transportation, telephone or other

10  passenger expenses and losses) and ¶ 77 (*e.g.*, "loss of time and missed employment

11  opportunities")), which are expressly excluded by the Conditions of Carriage. Alleged damages

12  for mental or emotional distress are not recoverable in an action for breach of contract. *E.g.*, *Keith*

13  *v. Stoelting, Inc.*, 915 F.2d 996, 999 (5th Cir. 1990) (Texas law); *Stewart Title Guaranty Co. v.*

14  *Aiello*, 941 S.W.2d 68, 72 (Tex. 1997).

15          (e)    Fraud.

16              (i)    Rule 9(b). As an initial matter, American moves the Court to

17  dismiss Hanni's fraud allegations for failure to comply with the particularity requirements of Fed.

18  R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) requires particularity in pleading the "circumstances

19  constituting fraud."    Plaintiff's pleadings do not specify what individual or individuals allegedly

20  deceived plaintiff, what they allegedly said, when it was said, or why she alleges the statements

21  were fraudulent when made. *See In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-48

22  (9th Cir.1994)(en banc) (plaintiff must state the "time, place, and content" of the alleged

23  misrepresentation; and "an explanation as to why the statement or omission complained of was

24  false or misleading."; *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (plaintiff must set forth

25  more than the neutral facts necessary to identify the transaction – he must set forth an explanation

26  as to why the statement complained of was false or misleading). Plaintiff does not identify the

27  "material information" American failed to disclose to her on December 29, 2006. *See, e.g., Vess*

28  *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                                    24                          C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1              (ii)     Rule 12(b)(6). In order to plead and prove a claim of common law

2  fraud, plaintiff must prove that: (1) a material misrepresentation was made, (2) it was false when

3  made, (3) the speaker knew it was false or made it recklessly without knowledge of its truth and as

4  a positive assertion; (4) the speaker made it with the intent that it should be acted upon; and (5) the

5  plaintiff acted in reliance and suffered injury as a result. *E.g., Clardy Mfg. Co. v. Marine Midland*

6  *Business Loans, Inc.*, 88 F.3d 347 (5th Cir. 1996) (TX law). Fraud does not exist unless the

7  defendant's representations induced the plaintiff to take a particular course of action that directly

8  caused her harm. *E.g., Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486 (5th Cir. 1999) (TX law).

9        Hanni's pleading does not allege that she was spoken to while on Flight 1348 by any

10  persons other than American's flight crew, and she alleges no facts from which it could be

11  determined that members of Flight 1348's crew – the pilot, first officer, or flight attendants –

12  knowingly told her false facts. Hanni alleges no facts from which it could be determined that she

13  personally relied, by changing her position, on any statements made to her by an American

14  employee that day. The Complaint does not plead what Hanni allegedly did in reliance on the

15  allegedly false statements, and how that reliance caused her damages.

16                       **IV. CONCLUSION**

17        For all of the reasons stated above, American respectfully requests the Court to dismiss

18  plaintiff's Complaint based on (1) field preemption under the FAA, (2) express preemption under

19  the ADA, and (3) failure to state a cause of action under Rule 12(b)(6) and, in the case of the fraud

20  cause of action, Rule 9(b).

21  DATED: February 19, 2008           COOPER, WHITE & COOPER LLP

22

23                           By: _____

24                              Jie-Ming Chou

                                 Attorneys for defendant American Airlines, Inc.

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594958.2                  25                C 08-00732 CW
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMERICAN AIRLINES,
INC.'S MOTION TO DISMISS

1  LOCKE LORD BISSELL & LIDDELL LLP
   MICHAEL V. POWELL (TX SBN 16204400) (*pro hac vice* admission pending)
2    mpowell@lockelord.com
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas  75201-6776
   Telephone:  (214) 740-8520
4  Facsimile:  (214) 756-8520

5  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
6    skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
7    jchou@cwclaw.com
   201 California Street, 17th Floor
8  San Francisco, California  94111
   Telephone:    (415) 433-1900
9  Facsimile:    (415) 433-5530

10  Attorneys for Defendant, American Airlines, Inc.

11

12                  UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15  KATHLEEN HANNI, individually and on       CASE NO. C08-00732CW
    behalf of all others similarly situated,
16                                             **DECLARATION OF JOHN TERRELL IN**
                  Plaintiff,                    **SUPPORT OF DEFENDANT AMERICAN**
17                                             **AIRLINES, INC'S MOTION TO DISMISS**
              vs.
18                                             **Fed. R. Civ. Pro. 12(b)(6)**
    AMERICAN AIRLINES, INC., and DOES 1
19  through 20, inclusive,                     Date:  March 27, 2008
                                               Time:  2:00 p.m.
20                Defendants.                   Courtroom: 2, 4th Floor

21

22  I, John Terrell, hereby declare:

23        1.      I am employed by American Airlines, Inc. ("American") and have been since 1985.

24  My job title is Senior Analyst for Airport Services, and I have been in that position since June of

25  2000.  I have personal knowledge of the matters set forth in this declaration, except for those facts

26  that are alleged on information and belief, and as to those facts, I believe them to be true.  I could

27  and would testify competently thereto if called as a witness.

28        2.      Attached hereto as Exhibit A is a document titled "American Airlines Conditions of

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

595014.1                                                                          C08-00732CW
         DECLARATION OF JOHN TERRELL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1  Carriage" that I printed on February 6, 2008.  This is a true and correct copy of American's

2  Conditions of Carriage as it was available to airport agents on December 29, 2006, and as would

3  have been made available to customers asking to review or for a copy of American's Conditions of

4  Carriage at airports on that date.

5         3.       Attached hereto as Exhibit B is a true and correct copy of American's Customer

6  Service Plan" in effect on December 29, 2006."

7         I declare under penalty of perjury that the foregoing is true and correct, and that this

8  declaration was executed on February 14, 2008 in _____Ft. Worth_____, Texas.

9

10                                    _____John W. Terrell_____

11                                    John Terrell

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

595014.1                                    2                                    C08-00732BZ
DECLARATION OF JOHN TERRELL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# EXHIBIT A

# Notice To American Airlines Passengers

## Index

Conditions Of Carriage
General Information

Reference Maintenance

## General Information (back to top)

- American Airlines, Inc.
- Notice To American Airlines
- Passengers

## Conditions Of Carriage (back to top)

Your ticket and the following Conditions of Carriage constitute the Contract between You, the Passenger, and American Airlines, Inc./American Eagle/**American**/and apply to all transportation provided by American (including transportation on Codeshare Partners) between points in the United States (including Puerto Rico and the U.S. Virgin Islands). Foreign air transportation is governed by applicable Tariffs on file with the Department Of Transportation.

American is responsible for transportation on flight segments operated by American, and transportation provided by Codeshare Partners on Codeshare Itineraries.

American will act as an agent to issue tickets, check baggage, and book reservations for transportation via other carriers which have Interline Agreements with American. Other carriers may have different terms and conditions applicable to their flights. These may be obtained directly from the other carriers.

Please read your contract carefully.

American Airlines, Inc.
P.O. Box 619616 MD 5435
DFW Airport, Tx 75261-9616

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343118451110)**

# Table Of Contents

## Index

American Airlines Conditions Of Carriage        Reference Maintenance

## American Airlines Conditions Of Carriage (back to top)

## Contents

1. Definitions

2. Fare Changes

3. Responsibility for Schedules and Operations

4. Force Majeure

5. Oversales

6. Baggage

- Liability
- General Acceptance
- Checked Baggage
- Carry-on Baggage
- Free Baggage Allowance
- Fragile, Perishable and Hazardous items
- Firearms
- Live Animals
- Further Baggage Information

7. Check-in Requirements

8. Acceptance of Passengers

9. Acceptance of Children

- Accompanied
- Unaccompanied

10. Refunds

- General Refunds
- Involuntary Refunds
- Lost Tickets

11. Ticket Validity

12. Ticket Validity-Compliance with Terms and Conditions of Sale

13. Claims

14. Lowest Fare Availability/Guaranteed Fare

15. Customers with Disabilities

16. Aircraft Information

17. Customer Relations

18. Delays, Cancellations and Diversions

19. Essential Needs During Extraordinary Delays

20. Authority to Change Contract

21. Frequent Flyer Award Disclosure

22. Service with Domestic Code Share Partners

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343154956085)**

# Definitions

## Index

1. Definitions

Reference Maintenance

## 1. Definitions (back to top)

As used in this Contract,

- Ticket means your Passenger Ticket and Baggage Check which incorporates these Conditions of Carriage
- **Baggage** means such articles, effects and other personal property as are necessary or appropriate for your wear, use, comfort or convenience in connection with your trip, whether checked in the cargo compartment or carried in the passenger compartment of the aircraft
- **American Ticket Office** means a Ticket Sales Location of American Airlines, Inc./American Eagle or the office of one of its appointed travel agents.

## Reference Maintenance (back to top)

Reference maintained on **03/23/2006** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343161322570)**

# Fare Changes

## Index

2. Fare Changes                              Reference Maintenance

## 2. Fare Changes (back to top)

The price of transportation is printed on each ticket. If, after a ticket has been issued and before any portion has been used, a decrease in the applicable fares or charges becomes effective, or a new fare between the points shown on the ticket is added, the full amount of the difference in fares less any change fees applicable to the original fare rule and date of purchase will be refunded to the purchaser, upon request, provided, there is no change in origin, destination, stopover points, flights, dates shown on the original ticket and, subsequent to the decrease in fares (charges or the addition of a new fare, all conditions of the lower fares) charges are met, including booking code and any advance reservations/ticketing requirements.  When reduced fares are for sale for a limited period of time, American reserves the right to decline to issue refunds. For non-refundable fares, the passenger will receive the difference in the fares in the form of a non-refundable AA Travel Voucher.

If American increases the price for the transportation, an additional collection may be made for (I) any segments where you change your flight to a different time, date or routing from that shown on your ticket, and (II) any segment shown as **open** on your ticket.

## Reference Maintenance (back to top)

Reference maintained on **08/15/2005** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129610047180)**

# Responsibility For Schedules And Operations

## Index

(Force Majeure Event) Means
3. Responsibility For Schedules And
Operations

4. Force Majeure Events

Reference Maintenance
Description

## Description (back to top)

Force Majeure Events

## 3. Responsibility For Schedules And Operations
(back to top)

American will endeavor to carry you and your baggage with reasonable dispatch, but times shown in timetables or elsewhere are not guaranteed and form no part of this Contract. American may, without notice, substitute alternate carriers or aircraft and, if necessary, may alter or omit stopping places shown on the ticket. Schedules are subject to change without notice. American is not responsible for or liable for failure to make connections, or to operate any flight according to schedule, or for a change to the schedule of any flight. Under no circumstances shall American be liable for any special, incidental or consequential damages arising from the foregoing.

## 4. Force Majeure Events
(back to top)

AA may, in the event of a force Majeure Event, without notice, cancel, terminate, divert, postpone or delay any flight or the right of carriage or reservation of traffic accommodations without liability except to issue an involuntary refund. The involuntary refund will be made in the original form of payment in accordance with involuntary refund rules for any unused portion of the ticket. AA will also reserve the right to determine if any departure or landing should be made without any liability except the aforementioned involuntary refund.

## (Force Majeure Event) Means (back to top)

A. Any condition beyond AA's control (including, but without limitation, meteorological conditions, Acts of God, riots, civil commotion, embargoes, wars, hostilities, disturbances or unsettled International conditions), actual threatened or reported. Also, because of any delay, demand, circumstances or requirement due, directly or indirectly to such conditions, or

B. Any strike, work stoppage, slowdown, lockout or any other labor-related dispute involving or affecting AA's service, or

C. Any Government regulation, demand or requirement, or

D. Any shortage of labor, fuel or facilities of AA or others, or

E. Any fact not reasonably foreseen, anticipated or predicted by AA.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343084603118)**

# Oversales

## Index

5. Oversales                           Reference Maintenance

### 5. Oversales
(back to top)

If a flight is oversold (more passengers hold confirmed reservations than there are seats available), and you are denied boarding involuntarily at the airport, you will be entitled to a payment of **Denied Boarding Compensation** from American unless:

1. American arranges for you to be transported on another flight scheduled to arrive at your destination or next 4-hour stopover no later than one hour after your originally scheduled arrival time, or

2. You did not fully comply with American's ticketing and check-in requirements, as set forth in the check-in requirements section, or cannot be accepted for transportation under the rules set forth in the acceptance of passengers section.

3. You are denied boarding because the flight is cancelled, or

4. You are denied boarding because a smaller capacity aircraft was substituted for safety or operational reasons, or

5. You are offered accommodations in a section of the aircraft other than specified on your ticket, at no additional charge. If you are seated in a section for which a lower fare is applicable, you will be given an appropriate refund.

On American Airlines, Inc. flights, if you are eligible for Denied Boarding Compensation, you will be offered a payment equal to the sum of the face value of your flight coupon's to your point of destination or first stopover, subject to a maximum of $200USD. However, if American cannot arrange **Alternate Transportation** (as defined below) for you, the compensation will be doubled subject to a maximum of $400USD.

On American Eagle flights with 60 seats or less, if you are eligible for denied boarding compensation the total value of the coupon in question will be refunded (not to exceed $100.00USD) and you will be transported, free of charge, on the next available American Eagle flight to your destination or next point of stopover/connection. The total value of the coupon (not to exceed $100.00USD) will be refunded without regard to the availability of later service or your arrival time on that service at your destination or next point of stopover/connection.

The **value** of a flight coupon is the one-way fare for the flight segment's shown on the coupon's including any surcharge and Air Transportation Tax, minus any applicable discount/ to your destination or next scheduled 4-hour stopover. **Alternate Transportation** is air transportation

or other transportation used by you which, at the time the arrangement is made, is scheduled to arrive at your destination or next scheduled stopover no later than 2 hours (for Domestic flights) or 4 hours (for International flights) after your originally scheduled arrival time.

If you voluntarily relinquish your confirmed reservation upon request by American, you may receive a Travel Voucher valid for travel on American. Likewise, if you are entitled to Denied Boarding Compensation, you may elect to receive a Travel Voucher valid for travel on American. These Travel Vouchers may be used only for the purchase of air transportation on American, and must be used within one (1) year of their issuance.

Your acceptance of Denied Boarding Compensation relieves American from any further liability caused by its failure to honor your confirmed reservation.

Additional information concerning our overbooking policies can be found on ticket jackets. Upon request, reservations representatives or airport agents will advise you if your flight is overbooked at the time your reservation is made or during the airport check-in process.

## Reference Maintenance (back to top)

Reference maintained on **11/09/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066341977051361)**

# Baggage-Liability

## Index

6. Baggage-Liability                    Reference Maintenance

## 6. Baggage-Liability (back to top)

American's Liability for loss, damage or delayed delivery of checked or transferred baggage is limited to the actual value of the baggage or $2800.00USD, whichever is less, unless the passenger declares a higher value (not to exceed $5000.00USD, including the $2800.00USD Standard Liability per passenger) and pays American a sum of $2.00USD per $100.00USD (or any portion thereof) of excess value.

The Standard Liability of $2800.00USD is applicable for travel beginning October 22, 2004.

Customers with disabilities traveling with wheelchairs or other mobility devices are exempt from liability restrictions for loss, damage or delays to these items for both Domestic and International travel.

American assumes no responsibility for loss, damage or delayed delivery of transferred baggage not acceptable for transportation by American as checked baggage, items damaged as a result of items contained in checked or transferred baggage, and items accepted by American pursuant to the execution of a Release Form. American does not accept in or as checked baggage any of the following items:
Antiques, artifacts, artwork, books and documents, china, computers and other electronic equipment, computer software, fragile items (including child/infant restraint devices such as strollers and carseats), eyeglasses, prescription sunglasses, non-prescription sunglasses and all other eyewear and eye/vision devices whether lenses are glass, plastic, or some other material, furs, heirlooms, items carried in the passenger compartment of the aircraft, heirlooms, liquids, medicines, money, orthotics, surgical supports, perishable items, photographic, video and optical equipment, precious metals, stones or jewelry, securities and negotiable papers, silverware, samples, unique or irreplaceable items or any other similar valuable items.

American does not accept these items in or as checked baggage and assumes no responsiblity or liability for such items, regardless of whether American knew or should have known of the presence of such items in checked or transferred baggage. If any such items are lost, damaged or delayed, you will not be entitled to any reimbursement under American's Standard Baggage Liability, or under any Declared Excess Valuation. Do not attempt to check these items carry them with you in the passenger cabin (subject to carryon baggage limitations).

American assumes no liability for articles carried in the passenger cabin.

American assumes no liability for minor damage such as scratches, scuffs, stains, dents, cuts and dirt resulting from normal wear and tear.

American assumes no liability for recreational/sports items not presented in a hard-sided case.

American assumes no liability for musical instruments not presented in a hard-sided case.

American is not responsible for damage to contents if the outside of the hard-sided case is not damaged.

American assumes no responsibility for damage to or loss of protruding baggage parts such as wheels, straps, pockets, pull handles, hanger hooks or other items attached to the baggage.

American assumes no liability for any indirect, consequential, incidental, punitive or special damages resulting from loss, damage or delayed delivery of checked or transferred baggage, including, without limitation, damages for lost revenue or profits, loss of use or business interruption.

## Reference Maintenance (back to top)

Reference maintained on **05/11/2005** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066348463569152)**

# Baggage-General Acceptance

## Index

General Acceptance Of Baggage                    Reference Maintenance

## General Acceptance Of Baggage
(back to top)

Only baggage as defined in the defintion section will be accepted for transportation. All baggage is subject to inspection. Checked baggage will be accepted for transportation only on flights on which you are traveling. American will not accept baggage whose size, weight, or character makes it unsuitable for transportation on the aircraft as determined by American.

Other than exceptions for certain special items, no article will be accepted as baggage if it weighs more than 100 pounds or has a total outside linear dimension (length plus width plus height) of more than 115 inches. Additional restrictions apply to some American Eagle flights. Further information is available at any American Ticket Office.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343143325500)**

# Baggage - Checked

## Index

Checked Baggage                           Reference Maintenance

## Checked Baggage (back to top)

Your name must appear on all baggage. Baggage will not be checked:

- To a city not on your routing
- Beyond your next stopover city
- Beyond your final destination city
- Beyond a connecting city if the connecting flight departs from an airport different from the arrival airport

For passengers checking bags, there are also baggage acceptance cutoff times. 'Baggage acceptance cutoff time' means that customers must present themselves and their baggage to an airline representative for check-in no later than the stated cutoff times for the departure airport.

For customers checking baggage, cutoff time for baggage check-in is 30 minutes before departure for all airports in the U.S., Puerto Rico and U.S. Virgin Islands, with the following exceptions:

| Atlanta, Georgia (ATL) | 40 minutes |
|---|---|
| Chicago-O'Hare, Illinois (ORD) | 40 minutes |
| Dallas/Fort Worth, Texas (DFW) | 40 minutes |
| Denver, Colorado (DEN) | 45 minutes |
| Las Vegas, Nevada (LAS) | 45 minutes |
| Los Angeles (LAX) | 45 minutes |
| Miami, Florida (MIA) | 45 minutes |
| Minneapolis/St. Paul (MSP) | 35 minutes |
| Newark, New Jersey (EWR) | 40 minutes |
| New York JFK, New York (JFK) | 45 minutes |
| Orlando, Florida (MCO) | 40 minutes |
| San Juan, Puerto Rico (SJU) | 40 minutes |
| St. Croix, U.S. Virgin Islands (STX) | 45 minutes |
| St. Thomas, U.S. Virgin Islands (STT) | 45 minutes |
| Washington Dulles, District of Columbia (IAD) | 40 minutes |

For flights originating outside the U.S., you must check in 60 minutes before departure, and be

present at the departure gate and ready to board at least 30 minutes prior to scheduled departure time to retain your reservation and a seat.

Standard baggage acceptance cutoff for flights originating in all airports outside the U.S. is 60 minutes before departure.

For international departures from a U.S. city, standard baggage acceptance cutoff time is 60 minutes.

Checked baggage may be claimed only by the holder of the baggage claim check. Baggage will not be released unless all sums due American are paid. Baggage claim checks must be returned to American on request. American is not responsible to determine that the holder of the claim check is entitled to the baggage. If baggage claim checks are lost, proof of ownership may be required prior to release of the baggage.

Acceptance of baggage by the bearer of a claim check without filing a written complaint shall constitute evidence of delivery by American of your baggage, with all original contents, in good condition.

In the event your checked bags do not arrive on your flight, reasonable efforts will be made to ensure that the bag is returned to you within 24 hours for flights within the U.S. our goal to return bags within 24 hours applies only when we are the carrier taking you to your final destination. Returning your bags may take longer on International flights due to flight duration, frequency of flights, or Customs and Immigration Procedures at the destination airport.

Listed below are some circumstances that may inhibit our ability to return your bags within 24 hours:

- No local name, address, phone numbers are provided
- You are located at a remote location or an (unreachable) address, such as a cruise ship or a camping site
- You changed your delivery address, but did not notify us
- We have limited flight schedules to your destination
- Operational circumstances prevent American Airlines or American Eagle from being able to locate or deliver your bags within this time frame

## Reference Maintenance (back to top)

Reference maintained on **12/19/2006** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066348584539733)**

# Baggage-Carry-On

## Index

Carry-on Baggage                    Reference Maintenance

## Carry-on Baggage (back to top)

The suitability of carry-on baggage will be determined by American. Each customer will be limited to one carry-on bag and one personal item. A personal item includes a purse, briefcase, laptop, small book bag style backpack.  If government regulations are more restrictive, such restrictions shall apply.

Other items that do not exceed 36 inches (length plus width plus height) will be allowed as personal items such as a small tote bag, shoulder bag or book bag.

A carry-on bag must fit in an overhead compartment or under the seat and should not exceed 45 linear inches or weigh more than 40 pounds. Carry-on  items which appear too large or irregularly shaped to fit under a seat, in an overhead compartment, or in a closet or luggage rack, will not be accepted for passenger cabin stowage.

Any mobility aid or assistive device that is approved for in-cabin transport on American, that is carried by a qualified disabled passenger, is not subject to the free baggage allowance, provided such aid or device fits in an approved stowage space.

Additionally, all baggage must be completely stowed before the airplane may depart the gate. At times, additional limits may be placed on carry-on baggage based on the main cabin stowage capacity of specific aircraft. These limits may be imposed after the boarding process has begun. As American aircraft vary in size and configuration, certain restrictions may apply regarding the size and amount of carry-on and checked baggage allowed. Futher information is available at any American Airlines or American Eagle ticket counter or by calling American Airlines reservations.

## Reference Maintenance (back to top)

Reference maintained on **10/06/2006** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066341797653259)**

# Baggage-Free Baggage Allowance

## Index

Free Baggage Allowance                    Reference Maintenance

## Free Baggage Allowance
(back to top)

For each passenger, the following pieces will be carried free of charge. Two checked pieces with total outside dimensions not exceeding 62 inches each. One carry-on piece with total outside dimensions not exceeding 45 inches.

Checked baggage may weigh up to 50lbs. Carry-on baggage may weigh up to 40lbs.

Wheelchairs and assistive devices will be carried free of charge for qualified disabled passengers, and are not included in the free baggage allowance described above.

Extra charges apply to additional, oversized and/or overweight pieces. Certain items, such as skis and golf clubs, will be accepted as one item under your free baggage allowance. Check with any American Ticket Office for further information.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343147343963)**

# Baggage-Fragile, Perishable And Hazardous

## Index

Perishable And Hazardous Items          Description

Reference Maintenance

## Description (back to top)

Items

## Perishable And Hazardous Items
(back to top)

Perishable items will be accepted only if the passenger agrees to release American from liability for damage due to spoilage or delay.

Hazardous materials will not be accepted as baggage except for limited amounts of dry ice subject to Americans rules. See reference **F*BAG/DRY/ICE**.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066341820783386)**

# Baggage-Firearms, Live Animals And Further

## Index

Firearms
Further Baggage Information

Live Animals

Reference Maintenance
Description

## Description (back to top)

Baggage Information

## Firearms (back to top)

Firearms and ammunition will be accepted only as checked baggage, subject to American's rules.

## Live Animals (back to top)

Pets (cats and dogs only) will be accepted as baggage when confined in a container, subject to American's rules and charges. Live animals will not be accepted for interline transfer to other airline flights.

Certain restrictions apply for some American Eagle flights. Further information is available at any American Ticket Office.

## Further Baggage Information
(back to top)

Further information regarding American's rules for specific items may be obtained from any American Ticket Office. American's classification of an item shall be final.

## Reference Maintenance (back to top)

Reference maintained on **10/06/2006** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066341806381439)**

# Check-In Requirements

## Index

7. Check-In Requirements and Baggage    Description
Acceptance Cutoff Times
Reference Maintenance

## Description (back to top)

Baggage acceptance cutoff times

## 7. Check-In Requirements and Baggage Acceptance Cutoff Times (back to top)

### Recommended Check-In Times:

When travel is completely within the U.S. including Puerto Rico, and on flights to Hawaii and the U.S. Virgin Islands, recommended check-in time is at least 90 minutes prior to departure when checking baggage, and at least 60 minutes prior to departure if not checking baggage.

For flights departing Hawaii and the U.S. Virgin Islands, recommended check-in time is at least two hours prior to scheduled departure.

For international flights, we recommend you arrive at the airport at least two hours prior to departure to allow sufficient time to complete all necessary international requirements.

Recommended check-in times for cities that exceed two hours:

Flights departing:

| Aruba (AUA) | 180 minutes |
|---|---|
| Bermuda (BDA) | 150 minutes |
| Delhi (DEL) | 210 minutes |
| Dublin (DUB) | 180 minutes |
| Mexico (all cities) | 180 minutes |
| Nassau (NAS) | 180 minutes |
| Paris (CDG) | 180 minutes |
| Port-au-Prince (PAP) | 180 minutes |
| Port of Spain (POS) | 180 minutes |
| San Pedro Sula (SAP) | 180 minutes |
| Tegucigalpa (TGU) | 180 minutes |

Check-In Requirements And Baggage Acceptance Cutoff Times:

Customers must comply with minimum check-in requirements to retain their seats on the flight on which they are confirmed.

Pre-reserved seats are subject to cancellation unless you have checked in (obtained a boarding pass) at least 30 minutes before scheduled departure. American does not guarantee to provide any particular seat on the aircraft.

For passengers checking bags, there are also baggage acceptance cutoff times. 'Baggage acceptance cutoff time' means that customers must present themselves and their baggage to an airline representative for check-in no later than the stated cutoff times for the departure airport.

## Domestic Travel:

In addition to checking in 30 minutes before departure, you must be present at the departure gate and ready to board at least 15 minutes prior to scheduled departure time to retain your reservation and a seat.

For customers checking baggage, cutoff time for baggage check-in is 30 minutes before departure for all airports in the U.S., Puerto Rico and U.S. Virgin Islands, with the following exceptions:

| | |
|---|---|
| Atlanta, Georgia (ATL) | 40 minutes |
| Chicago-O'Hare, Illinois (ORD) | 40 minutes |
| Dallas/Fort Worth, Texas (DFW) | 40 minutes |
| Denver, Colorado (DEN) | 45 minutes |
| Las Vegas, Nevada (LAS) | 45 minutes |
| Los Angeles (LAX) | 45 minutes |
| Miami, Florida (MIA) | 45 minutes |
| Minneapolis/St. Paul (MSP) | 35 minutes |
| Newark, New Jersey (EWR) | 40 minutes |
| New York JFK, New York (JFK) | 45 minutes |
| Orlando, Florida (MCO) | 40 minutes |
| San Juan, Puerto Rico (SJU) | 40 minutes |
| St. Croix, U.S. Virgin Islands (STX) | 45 minutes |
| St. Thomas, U.S. Virgin Islands (STT) | 45 minutes |
| Washington Dulles, District of Columbia (IAD) | 40 minutes |

## International Travel:

For flights originating outside the U.S., you must check in 60 minutes before departure, and be present at the departure gate and ready to board at least 30 minutes prior to scheduled departure time to retain your reservation and a seat.

Standard baggage acceptance cutoff for flights originating in all airports outside the U.S. is 60 minutes before departure.

For international departures from a U.S. city, standard baggage acceptance cutoff time is 60 minutes.

## Reference Maintenance (back to top)

Reference maintained on **12/19/2006** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129617241363)**

# Acceptance Of Passengers

## Index

8. Acceptance Of Passengers                    Reference Maintenance

## 8. Acceptance Of Passengers (back to top)

American may refuse to transport you, or may remove you from your flight at any point, for one or several reasons, including but not limited to the following:

1. Compliance with Government requisition of space.

2. Action necessary or advisable due to weather, or other conditions beyond American's control.

3. Refusal to permit a search of person or property for explosives or for deadly, controlled, or dangerous weapons, articles or substances.

4. Refusal to produce positive identification upon request.

5. Your physical or mental condition is such that in American's sole opinion, you are rendered or likely to be rendered incapable of comprehending or complying with safety instructions. Without the assistance of an attendant.

6. Your conduct is disorderly, abusive or violent, or you:

A. Appear to be intoxicated or under the influence of drugs
B. Attempt to interfere with any member of the flight crew.
C. Have a communicable disease that has been determined by a Federal Public Health Authority to be transmissible to other persons in the normal course of flight.
D. Refuse to obey instructions from any flight crew member.
E. Have an offensive odor not caused by a disability or illness.
F. Are clothed in a manner that would cause discomfort or offense to other passengers.
G. Are barefoot, or
H. Engage in any action, voluntary or involuntary, that might jeopardize the safety of the aircraft or any of its occupants.

7. Additional information regarding American's passenger acceptance policy may be obtained from any American ticket office.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129605102996)**

# Acceptance Of Children

## Index

9. Acceptance Of Children                    Reference Maintenance

## 9. Acceptance Of Children (back to top)

### Accompanied

Children 2 through 14 years of age will be accepted for transportation when accompanied by a passenger at least 15 years of age. Infants under 2 years of age will be accepted when accompanied by a passenger at least 15 years. Infants under 2 days of age will not be accepted for transportation. For infants up to 7 days old, a medical statement may be required, stating the infant is stable for travel.  Contact the CCRO at **ICS 967-7299** if there are any questions.

### Unaccompanied

Unaccompanied children under 5 years of age will not be accepted under any circumstances. Unaccompanied children 5, 6 or 7 years of age will be accepted on a nonstop or through flight only, and must be accompanied by a parent or responsible adult until the child is boarded on the flight* and the aircraft has departed the gate. The child must be met at the destination by another parent or responsible adult.

### Note:
UMNRS ages 5-7 are restricted on change-of-gauge flights.

Unaccompanied children 5, 6, or 7 years of age will not be accepted on certain American Eagle flights operated in equipment not requiring a flight attendant. Specific information may be obtained through reservations, or at any American ticket office.

Unaccompanied children 8 through 14 years of age will be accepted for transportation on nonstop, through or connecting flights. connections to flights of other airlines are permitted only when allowed by the rules of the connecting carrier. Reservations must be confirmed to the destination.  The child must be accompanied by a parent or responsible adult until the child has boarded the flight and the aircraft has departed the gate.  The child must be met at the destination by another parent or responsible adult. A service charge will be assessed for unaccompanied children on all flights.

American will not accept reservations or provide transportation for unaccompanied children for any itinerary that includes the last on-line connecting flight.

During schedule irregularities, American may refuse to provide connection air transportation services at any origination city to an unaccompanied child holding reservations when there is a reasonable likelihood that the child will not make a flight connection, and therefore require overnight accommodations.

## Reference Maintenance <u>(back to top)</u>

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129607606811)**

# Refunds-General

## Index

10. Refunds                              Reference Maintenance
Helpful Suggestions

## 10. Refunds (back to top)

### General Refunds

If you decide not to use your ticket, and unless the ticket specifies otherwise, American will issue a refund as follows:

If the ticket is totally unused, the full amount paid will be refunded. However, an administrative service charge or refund penalty up to the full amount paid may be assessed if applicable.

If the ticket is partially used, the refund will be the difference between the fare paid and the fare for the transportation actually used as determined by the applicable rules.

In addition, if the ticket to be refunded is no longer valid for transportation, an administrative service charge will be assessed upon refund of the ticket. this service charge will be collected by deducting the applicable service charge from the amount which otherwise would be refunded.

Tickets will be refunded only to the person named on the ticket as passenger, except that:

A. Tickets purchased with a credit card will be refunded only as a credit to the credit card account

B. Tickets issued against a prepaid ticket advice will be refunded only to the purchaser, and

C. Tickets issued against a government transportation request will be refunded only to the government agency which issued the transportation request.

Once travel has commenced, refund requests for lower fares will not be honored.

American Airlines and American Eagle will strive to process eligible refunds in the time frames set out below, upon receipt of all required information. Some tickets are not refundable.

For all eligible paper and electronic tickets purchased within the U.S. with a credit card or cash, refunds will be provided within 7 business days of receipt of the required refund information. The credit card refund may take up to two billing cycles before appearing on a credit card statement, so you should contact your credit card company directly to verify receipt of the credit. Tickets purchased with a check will be refunded within 20 days of receipt of the required information.

Refunds for electronic tickets can be obtained by contacting our reservations department or through the refund section on our web site at **aa.com**. In addition, refunds on tickets, paper or electronic, less than $3,000USD can be obtained at any of our U.S. Airport Ticket Offices or City Ticket Offices. All other refund requests should be sent to the following address:

American Airlines, Inc.
Passenger Refund Services
Mail Drop 755
P.O. Box 582880
Tulsa, OK. 74158-2880

Certain refund requests cannot be accommodated in the time frames discussed above. For example, refunds for lost tickets must be held for 90 days to ensure that they are not found and used. Tickets with adjustments (for example, a customer buys a First Class ticket but actually travels in the Main or Coach Cabin) require that we verify the itinerary and class of service flown, and this can take up to 45 days. Tickets that were purchased outside the U.S. require special handling because we must ensure that currency conversion rates are calculated correctly.

Refund for credit card purchases will be made only to the credit card account. Service charges are collected for some refunds
e.g., Lost Tickets.

American assumes no liability for any special, incidental, or consequential damages for instances in which we do not meet our goals for processing refunds.

## Helpful Suggestions (back to top)

To ensure a prompt refund, you must submit all required documentation and information including:

- Valid ticket submitted to us before expiration date-tickets expire one year from the date of issue
- Original unused flight coupons for paper tickets
- Ticket number for electronic tickets
- Brief written explanation
- Your name, address, and telephone number's
- Form of payment used to purchase the ticket

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129601206359)**

# Refunds-Involuntary

## Index

Involuntary Refunds                                    Reference Maintenance

## Involuntary Refunds (back to top)

In the event the refund is required because of American's failure to operate on schedule or refusal to transport, the following refund will be made directly to you:

A. If the ticket is totally unused, the full amount paid (with no service charge or refund penalty), or

B. If the ticket is partially used, the applicable fare for the unused segment's.

AA shall not be obligated to refund any portion's of a ticket which does not reflect a confirmed reservation on an AA flight involved in a schedule irregularity, unless such ticket was issued by AA.

Whether the refund is voluntary or involuntary, American reserves the right to refuse to make any refund in a currency other than the currency of purchase or in a country other than country of purchase.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129603871917)**

# Lost Tickets

## Index

Lost Tickets                                    Reference Maintenance

## Lost Tickets (back to top)

Lost Tickets will be refunded only if you pay a service charge as specified on the Lost Ticket Application and agree to reimburse American for the amount of the ticket if it is used by someone else.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343589873718)**

# Ticket Validity

## Index

11. Ticket Validity
12. Ticket Validity - Compliance With Terms
And Conditions Of Sale

Period Of Validity
Reference Maintenance

## 11. Ticket Validity (back to top)

A valid ticket must be presented for transportation. Flight coupons of a ticket will be honored only in the order in which they are issued. Unused flight coupons must be presented attached to the passenger receipt coupon if a paper ticket.  American has the right, in its sole discretion, to confiscate any ticket that has been altered, mutilated, or improperly issued or which has been improperly presented or presented by someone other than the passenger named on the ticket.

Tickets are valid for use, reissue or refund only by the passenger named on the ticket. unless otherwise indicated, tickets are not transferable. American is not liable to the owner of a ticket for honoring or refunding a ticket presented by another person.

## Period Of Validity (back to top)

1. Refundable fares a refundable fare ticket will be valid for transportation for one year from the date on which transportation commences at the point of origin that is designated on the original ticket or , if no portion of the ticket is used, from the date of issuance of the original ticket.

1. Non-refundable fares ticket has no value after the ticketed departure date.

## 12. Ticket Validity - Compliance With Terms And Conditions Of Sale (back to top)

Tickets are valid for travel only when used in accordance with all terms and conditions of sale.

Terms and conditions of sale include but are not limited to:

A. The passenger's itinerary, as stated on the ticket or in the passenger's reservation record.

B. Any requirement that the passenger stay over a specified date or length of time (for example, Saturday night or Weekend) at the destination specified on the ticket.

C. Any special purpose or status (for example, age in the case of senior citizen or children's discounts, Military status in the case case of a Military fare, Official Government Business in the case of a Government Fare, or attendance at a qualified event in the case of a meeting or convention fare) that entitles the passenger to a special or reduced rate, or

D. Any other requirement associated with the passenger's fare level.

Unless a ticket is reissued by American or its authorized agent upon payment of applicable charges, or an authorized representative of American waives applicable restrictions in writing, a ticket is invalid:

A. If used for travel to a destination other than that specified on the ticket

B. If the passenger fails to comply with applicable stayover requirements

C. If the passenger does not meet the purpose or status requirement associated with the fare category on the ticket, or

D. If American determines that the ticket has been purchased or used in a manner designed to circumvent applicable fare rules.

American specifically prohibits the practices commonly known as -

## Back To Back Ticketing

The combination of two or more roundtrip excursion fares end to end for the purpose of circumventing minimum stay requirements

## Throwaway Ticketing

The usage of roundtrip excursion fare for oneway travel, and

## Hidden City/Point Beyond Ticketing

Purchase of a fare from a point before the passenger's actual origin or to a point beyond the passenger's actual destination.

Where a ticket is invalidated as the result of the passenger's non-compliance with any term or Condition of Sale, American has the right in its sole discretion to:

A. Cancel any remaining portion of the passenger's itinerary

B. Confiscate unused flight coupons

C. Refuse to board the passenger or check the passenger's luggage, or

D. Assess the passenger for the reasonable remaining value of the ticket, which shall be no less than the difference between the fare actually paid and the lowest fare applicable to the passenger's actual itinerary.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129612996948)**

# Claims

## Index

13. Claims
Damaged Baggage

Legal Action
Reference Maintenance

## 13. Claims (back to top)

### Loss/Delay

In the case of delay or loss, an initial complaint must be presented to carrier prior to leaving the arrival airport for which the baggage was checked or should have been checked. At the latest, such initial report must be made within four hours of the arrival of the flight on which the passenger traveled.

If compensation is sought for delay or loss, a written claim, in the form provided by the carrier, must be received by the carrier no later than forty five days after the initial report was presented and recorded by the carrier.

## Damaged Baggage (back to top)

No action shall lie in the case of damage to baggage unless the person entitled to delivery files an initial report with the carrier prior to leaving the arrival airport, or at the latest, within 24 hours from the date of receipt of the baggage.

Upon carriers agreement to accept a damage claim, the damage acknowledgement form provided by the carrier and the damage property must be presented to the carrier for repair within thirty days from the date the damage acknowledgement form is furnished by the carrier to the passenger.

## Legal Action (back to top)

Legal action premised on or related to damage, delay or loss must be commenced within two years of the date of the incident.

## Reference Maintenance (back to top)

Reference maintained on **05/31/2005** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066344885078796)**

# Lowest Fare Availability/Guaranteed Fare

## Index

14. Lowest Fare Availability/Guaranteed Fare    Reference Maintenance

## 14. Lowest Fare Availability/Guaranteed Fare (back to top)

Customers calling our reservations office or visiting our Airline Ticket Offices or ticket counters will be offered the lowest available fare (exclusive of Internet Only Fares) when specific dates and times are provided. In the event the lowest available fare is not quoted, American's liability is limited to the difference between the fare quoted and the lowest available fare for which the customer was eligible at that time.

When you make a telephone reservation with American Airlines or American Eagle reservations, the fare quoted will be stored and guaranteed for 24 hours or until 12 midnight Central Time the following day, whichever gives you more time to make a decision. If you elect to make changes to the itinerary within this time frame, the ticket price may change.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066348126668487)**

# Customers With Disabilities

## Index

15. Customers With Disabilities
Assistive Devices
Boarding Assistance
Complaint Resolution Officials For Customers
With Special Needs

Pre-Reserved Seats
Reference Maintenance
Reservations Special Assistance Coordinators

Therapeutic Oxygen

## 15. Customers With Disabilities (back to top)

American Airlines and American Eagle endeavor to provide passengers with disabilities dignified, professional, and courteous service at all times. We have a team of employees who regularly consult with disability advisory groups on the quality of our service.

## Reservations Special Assistance Coordinators (back to top)

American Airlines and American Eagle reservations offices maintain a staff of Special Assistance Coordinators (SAC) who work with customers who have identified themselves as having disabilities. The reservations representative who responds to the customers initial call passes pertinent information to an SAC who calls the customer back. A toll-free number exists for customers with disabilities to follow-up on travel arrangements with the SAC office. Airport and in-flight personnel are notified of special service requests.

## Pre-Reserved Seats (back to top)

American Airlines and aAerican Eagle block a limited number of seats on each aircraft to accommodate customers who identify themselves as having a qualified disability. Adjacent seats are provided, under certain circumstances, for customers with disabilities who must travel with a companion for assistance.

## Assistive Devices (back to top)

American Airlines and American Eagle accept motorized and non-motorized assistive devices for transport. When necessary, we will disassemble and reassemble wheelchairs or assistive devices for customers when they travel. American Airlines and American Eagle provide storage for one passengers collapsible, manual wheelchair in the cabin of each jet aircraft. This service is available on a first-come, first served basis and has priority over carryon baggage belonging to other customers who board at the same city, provided the customer follows the preboarding procedure. In-cabin stowage space for assistive devices cannot be prereserved, but American Airlines and American Eagle accept carryon wheelchairs, provided they collapse to fit in an overhead bin or under a seat.

Non-collapsible wheelchairs/scooters are accepted as checked baggage. These items can be checked at the main ticket counter or the departure gate. American Airlines and American Eagle offer a special wheelchair service that allows you to check your wheelchair at the departure gate and claim it at your arrival gate free of charge. Although you can arrange to claim your chair at the connecting city we recommend that the chair be checked through to the final destination. The additional time required to claim and recheck your chair at the connecting city may compromise your ability to make your connection. American Airlines and American Eagle have wheelchairs and our representatives provide wheelchair service at connecting airports. Please let us know you will need this assistance when making your reservation.

Assistive devices approved for cabin transport do not count towards the combined number of checked and carryon baggage a passenger is allowed free of charge, nor do they count towards the limit on carryon items you may bring on board.

## Boarding Assistance (back to top)

If you have special needs, upon request, preboarding assistance will be provided to you, allowing you the opportunity to be seated prior to general boarding. A special aisle chair is available to assist you if you are unable to walk, and all of our jet aircraft are equipped with specially designed seats that feature moveable aisle armrests to help make seating easier.

## Therapeutic Oxygen
(back to top)

American Airlines provides onboard therapeutic oxygen, subject to availability. this service is not available on American Eagle flights. The reservations Special Assistance Coordinators arrange for this service upon 48 hours advance notice. A doctors prescription is required advising of the liters per minute flow rate.  A fee is charged for this service.

## Complaint Resolution Officials For Customers With Special Needs
(back to top)

We have employees at airports who are trained as Local Complaint Resolution Officials (LCRO) and are available during operating hours. A Corporate Complaint Resolution Official is available to assist LCROS 24 hours per day, seven days per week.

## Reference Maintenance (back to top)

Reference maintained on **04/13/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1072129615924530)**

# Aircraft Information

## Index

16. Aircraft Information                    Reference Maintenance

## 16. Aircraft Information <u>(back to top)</u>

American Airlines and American Eagle reservations representatives will advise you when it will be necessary for you to move from one aircraft to another during your travel, including when the flight number remains the same.

American Airlines and American Eagle reservations representatives are able to provide you with a wide variety of information related to the American Airlines and American Eagle fleets. Aircraft configuration, seat size, and seat pitch are just a few examples of information that can be obtained from our reservations representatives. This information is also available at the **aa.com** website.

## Reference Maintenance <u>(back to top)</u>

Reference maintained on **12/28/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066348150436859)**

# Customer Relations

## Index

17. Customer Relations                           Reference Maintenance

## 17. Customer Relations (back to top)

Our Customer Relations Department is dedicated to addressing unresolved customer comments and concerns. The Customer Relations Department will respond to our customers written complaints within 60 days.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066348003718902)**

# Delays, Cancellations, And Diversions

## Index

18. Delays, Cancellations And Diversions        Reference Maintenance

## 18. Delays, Cancellations And Diversions
(back to top)

American Airlines and American Eagle will provide customers at the airport and onboard an affected aircraft with timely and frequent updates regarding known delays, cancellations and diversions and will strive to provide the best available information concerning the duration of delays and to the extent available, the flight's anticipated departure time. We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

When cancellations and major delays are experienced, you will be rerouted on our next flight with available seats. If the delay or cancellation was caused by events within our control and we do not get you to your final destination on the expected arrival day, we will provide reasonable overnight accommodations, subject to availability.

In extreme circumstances, it is possible that a flight will cancel while on the ground in the city to which it was diverted. When this happens you will be rerouted on the next American Airlines or American Eagle flight with available seats, or in some circumstances on another airline or some other alternative means of transportation. If we are unable to reroute you, reasonable overnight accommodations will be provided by American Airlines or American Eagle, subject to availability.

American Airlines and American Eagle will provide amenities for delayed passengers, necessary to maintain the safety and/or welfare of certain passengers such as customers with disabilities, unaccompanied children, the elderly or others to to whom such amenities will be furnished consistent with special needs and/or circumstances.

## Reference Maintenance (back to top)

Reference maintained on **03/23/2005** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343651084564)**

# Essential Needs During Extraordinary Delays

## Index

19. Essential Needs During Extraordinary Delays          Reference Maintenance

## 19. Essential Needs During Extraordinary Delays (back to top)

In the case of extraordinary events that result in very lengthy onboard delays, American Airlines and American Eagle will make every reasonable effort to ensure that essential needs of food (snack bar such as a Nutri-Grain), water, restroom facilities and basic medical assistance are met.

We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066342932197265)**

# Authority To Change Contract

## Index

20. Authority To Change Contract          Reference Maintenance

## 20. Authority To Change Contract (back to top)

No agent, employee or representative of American has authority to alter, modify or waive any provision of the Conditions Of Carriage unless authorized in writing by a Corporate Officer of American.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066343171496368)**

# Frequent Flyer Award Disclosure

## Index

21.Frequent Flyer Award Disclosure        Reference Maintenance

## 21.Frequent Flyer Award Disclosure (back to top)

Beginning in 2000, an annual report of Award Redemption will be published, both at the **aa.com** website and in the AAdvantage® Newsletter.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066349001399230)**

# Service With Domestic Code Share Partners

## Index

22. Service With Domestic Code Share        Reference Maintenance
Partners

## 22. Service With Domestic Code Share Partners (back to top)

American Airlines and American Eagle will make their customer service plan readily available to all of our Domestic Code Share Partners and, to the extent possible, make every reasonable effort to ensure our partners offer comparable levels of service.

## Reference Maintenance (back to top)

Reference maintained on **04/05/2004** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1066348110635894)**

# EXHIBIT B

# Customer Service Plan

## Index

Baggage Delivery Guidelines
Baggage Liability
Check In And Baggage Acceptance Cutoff Times
Copies of Customer Service Plan
Customer Issues
Customer Service Plan
Delays, Cancellations And Diversion Events
Domestic CodeShare Partners
Extraordinary Delays
Flights with Oversales

Guaranteed Fares
Lowest Fare
Other Travel Policies
Overview
Reference Maintenance
Special Assistance
The AAdvantage® Program
Ticket Refunds
UMNRs

## Overview <span>(back to top)</span>

- American Airlines (AA) and American Eagle filed with the U.S. Department of Transportation (DOT), Wednesday, September 15,1999, a wide-ranging Customer Service Plan. The plan spells out the services AA and American Eagle will offer and the assistance they will provide in 13 key customer service categories.
- The plan is part of a voluntary, industry-wide **customer first** initiative, launched this summer by the Air Transport Association (ATA), to address rising passenger unhappiness with the airlines over operational problems this year, and calls by some members of congress for an **Airline Passenger Bill of Rights** .
- Under the ATA's program, each member carrier, including AA agreed that by September 15th, 1999, it would submit to the DOT, and post on its Internet website, **AA.com®**, a comprehensive plan for improving customer service and giving passengers better, more timely information. Plans will be implemented on December 15, 1999. After that they will be monitored by the DOT's Inspector General to determine how well each airline does in living up to its promises. The Inspector General will submit an interim report to certain congressional committees on June 15, 2000, with a final report to follow by December 31, 2000.

## Copies of Customer Service Plan <span>(back to top)</span>

If a caller requests a copy of the Customer Service Plan, advise the caller it is available:

- On the website at **AA.com®**

## Customer Service Plan <span>(back to top)</span>

AA and its regional airline partner American Eagle serve almost 250 cities around the world from Abilene to Zurich, and operate more than 3,600 daily flights. AA is the largest domestic

U.S. airline and American Eagle is the largest regional airline system in the world. Our combined fleet numbers more than 850 aircraft. In addition to our extensive domestic service, we serve numerous destinations in Europe, Asia, the Caribbean, Canada, Mexico, and Latin America. The AA frequent flyer program, AAdvantage®, is the oldest and largest in the world.

We are in business to provide safe, dependable, and friendly air transportation to our customers, along with numerous related services, in the hopes that you will fly us again and again. We work very hard to make your entire experience with us, from making a reservation to deplaning at your final destination, a positive one. Although we are successful in this effort most of the time, there are times when things do not go as smoothly as we, and you, would like. Operating a network of more than 3,600 flights and servicing hundreds of thousands of passengers each day is challenging and complex. Inevitably, some of our flights are affected by adverse circumstances, some of which are within our control and some of which are not.

This Customer Service Plan addresses a number of the service goals we have defined for ourselves. We are constantly reevaluating our customer service goals, and we intend to update this Customer Service Plan when appropriate. Every customer is important to AA and American Eagle, and we are dedicated to making every flight you take with us something special. Your safety, comfort, and convenience are our most important concerns.

The customer service plan will be effective December 15, 1999.

## Lowest Fare (back to top)

### Statement Of Fare Quote Policy

Customers calling our reservations office or visiting our airline ticket offices or ticket counters will be offered the lowest available fare (exclusive of internet-only fares) when specific dates and times are provided. If you **do not** provide specific information about your travel requirements, the representative will provide you with a range of fares for your general needs. In the event the lowest available fare is not quoted American's liability is limited to the difference between the fare quoted and the lowest available fare for which the customer was eligible at the time.

### Helpful Suggestions

- State preferred dates of travel
- Be aware that most of the lowest fares require a 14-day advance purchase, a Saturday night stay, and flexible travel plans
- Make reservations and purchase tickets as far in advance as possible
- Avoid peak travel days immediately prior to or after a holiday
- Request specific fares, if eligible (e.g., senior citizen fares or active military fares)

### For Further Information

Domestic

In the U.S., please contact AA or American Eagle at **800-433-7300** for further information.

- If assistance is needed in Spanish, you may dial: **800-633-3711**
- If you have a hearing or speech impairment, you may contact AA or American Eagle at **800-543-1586**.

International

International reservations are handled through local offices, and those numbers can be found in local telephone directories or on the inside of any AA or American Eagle ticket jacket.

## Delays, Cancellations And Diversion Events (back to top)

- American Airlines (AA) and American Eagle will provide customers at the airport and onboard an affected aircraft with timely and frequent updates regarding known delays, cancellations, and diversions and will strive to provide the best available information concerning the duration of delays and, to the extent available, the flight's anticipated departure time.
- It is AA's and American Eagle's policy to contact you in advance, whenever reasonable, at the phone number(s) provided in the reservation record.

>  If you booked your reservations with a travel agency, Reservations representatives attempt to contact the agency when no customer phone contact exists.

Delays And Cancellations

When cancellations and major delays are experienced:

- You will be rerouted on our next flight with available seats.

Accommodations

- If the delay or cancellation was caused by **events within our control** and we do not get you to your final destination on the expected arrival day, we will provide reasonable overnight accommodations, subject to availability.
- If a flight is adversely affected by **events beyond our control**, you are responsible for your own overnight accommodations, meals and incidental expenses.

>  AA or American Eagle personnel may be able to help you obtain accommodations in these circumstances.

Diversions

It is sometimes necessary for flights to divert, or land at a location other than the flight's intended destination.

- Medical emergencies and severe weather conditions are examples of situations when a flight could land in another city.
- If we believe there is a reasonable possibility that a flight will be diverted, that information

will be provided to you before departure, when available.

Diversion Examples

**For example:**

The Orange County Airport in Santa Ana, California has a curfew for inbound flights of 11:00 PM due to noise restrictions.

If we are aware that head winds will be particularly strong enroute and will impact the flight's arrival time, perhaps making the flight arrive too late to land at Orange County:

- An announcement will be made that it is possible that the flight will land at Los Angeles International Airport instead.

In the event a diversion decision occurs after the aircraft has departed:

- The in-flight crew will inform you.

In extreme circumstances, it is possible that a flight will cancel while on the ground in the city to which it was diverted. When this happens:

- You will be rerouted on the next AA or American Eagle flight with available seats

**or**

- In some circumstances on another airline or some other alternative means of transportation.
- If we are unable to reroute you, reasonable overnight accommodations will be provided by AA or American Eagle, subject to availability.

## Baggage Delivery Guidelines (back to top)

In the event your checked bags do not arrive on your flight reasonable efforts will be made to ensure that the bag is returned to you within 24 hours for flights within the United States.

Since we cannot guarantee the delivery of baggage carried by another airline, our goal to return bags within 24 hours applies only when we are the carrier taking you to your final destination.

Returning your bags may take longer on international flights due to flight duration, frequency of flights, or customs/immigration procedures at the destination airport.

AA and American Eagle attempt to contact customers whose unclaimed checked baggage contains contact information.

Procedures

If you are unable to locate a bag upon arrival, you should notify a baggage service agent prior to leaving the airport. At that time, the bag delivery procedure will be explained and you will be provided with a brochure explaining the baggage recovery process. You will also be given a local or toll-free phone number that can be used for follow-up.

- For all United States locations the number is **800-535-5225**. This call center is available 24 hours a day to assist you.
- For international locations, hours of operation may be limited, but a local phone number is provided so you can obtain baggage information.

## Retrieved Baggage Guidelines

Once a delayed or misrouted bag is located, a delivery company will return the bag to your local address at our expense.

Listed below are some circumstances that may inhibit our ability to return your bags within 24 hours:

- No local name/address/phone numbers are provided.
- You are located at a remote location or an unreachable address, such as a cruise ship or a camping site.
- You changed your delivery address, but did not notify us.
- We have limited flight schedules to your destination.
- Operational circumstances prevent AA or American Eagle from being able to locate or deliver the bags within this time frame.

## Helpful Suggestions

Although statistics suggest it is highly likely that your luggage will arrive with you, there is a possibility it might inadvertently be misrouted.

For this reason, it is important to place your name, address, and telephone number(s) on the outside and inside of your bag. This will also make your bag easier to identify when claiming it at your destination.

You should also carry certain items on board with you. These could include, but are not limited to: travel documents, medication, jewelry, cash, keys, business documents, electronics, or other items of particularly high personal value.

## **Baggage Liability** (back to top)

## Domestic Travel

Domestic travel is defined as travel in which the itinerary remains within the United States, including Puerto Rico and/or the U. S. Virgin Islands.

American Airlines (AA) and American Eagle will reimburse up to $2,800.00 USD per ticketed domestic customer for lost or damaged checked baggage subject to claim verification.

The specific procedures for making lost or damaged baggage claims will be provided to you at the time a claim is filed.

We will not pay for:

- Normal wear and tear on checked baggage
- Loss or damage to belongings you carry on board in the passenger cabin

Certain items (example: cash, jewelry, cameras) are excluded from liability for lost or damaged checked baggage.

☒ A complete list of the limitations and exclusions is in our conditions of carriage and is available upon request.

## International Travel

International travel is defined as travel in which the itinerary contains one or more segments of travel outside of the United States, including Puerto Rico and/or the U. S. Virgin Islands.

We will reimburse up to:

- $9.07 USD per pound
- Up to a maximum weight of 70 pounds per checked bag
- A maximum of $634.90 USD per checked bag

This limit may be lower for additional pieces to certain international destinations or when using connecting carriers.

## Helpful Suggestions

- We recommend that luggage be locked.
- Improperly packed items (example: boxes) or those considered fragile (example: paintings) may not be covered under AA's or American Eagle's baggage liability provisions.

Baggage Insurance

If the value of the contents of a checked bag exceeds our standard coverage of $2,800.00 USD per passenger for domestic travel, and $634.90 USD per checked bag for international travel, you may purchase additional baggage insurance. This insurance, known as excess value coverage, may be purchased at the ticket counter when checking in.

☒ Not all high value items are covered by this insurance, so you should verify with the agent that your specific belongings are included.

## Guaranteed Fares (back to top)

## Reservations Fare Quote Guarantee

Effective December 15, 1999, when you make a reservation with AA or American Eagle reservations, the fare quoted will be stored and guaranteed:

- 24 hours

**or**

- Until 12:00 midnight Central Time the following day,

Whichever gives you **more time** to make a decision.

## Changes

If you elect to make changes to the itinerary within this time frame, the ticket price may change.

## For Additional Information

Domestic

For additional information, in the United States please contact AA or American Eagle at **800-433-7300** for further information.

- If assistance is needed in Spanish, you may dial **800-633-3711**.
- If you have a hearing or speech impairment, you may contact AA or American Eagle at **800-543-1586**.

International

International reservations are handled through local offices, and those numbers can be found:

- In local telephone directories, **or**
- On the inside of any AA or American Eagle ticket jacket.

> ☒ **Update** - Effective September 29, 2005, reservations created through AA.com will follow this same Guaranteed Fare Rule.  Please see AACOM for more details.

## Ticket Refunds (back to top)

American Airlines (AA)/American Eagle Customer Service Plan for ticket refunds

AA or American Eagle will strive to process eligible refunds in the time frames set out below, upon receipt of all required information.

- Some tickets are not refundable.

- For all eligible paper and electronic tickets purchased within the United States with a **credit card or cash**, refunds will be provided within 7 business days of receipt of the required refund information.

 The credit card refund may take up to two billing cycles before appearing on a credit card statement, so you should contact your credit card company directly to verify receipt of the credit.

 **Update December 17, 2004** - Refunds is currently in a backlog situation and it is taking much longer for passengers to receive refunds due to this backlog. They are working on automation and/or overtime to catch up on the backlog. However, there are about 15,000 PNRs in the backlog. Please remind customers that they can contact refunds via aa.com.

Tickets purchased with a **check** will be refunded within 20 days of receipt of the required information.

## Refund Request Process

Refunds for **electronic** tickets can be obtained:

- By contacting our reservations department

**or**

- Through the refund section on our website at **aa.com**.

In addition refunds on tickets, **paper and electronic**; less than $3,000.00 USD can be obtained at any of our United States ATOs or City Ticket Offices (CTO).

All **other** refund requests should be sent to the following address:

American Airlines Inc.
Passenger Refund Services
Mail Drop 755
P. O. Box 582880
Tulsa, OK 74158-2880

## Exceptions To Standard Handling

Certain refund requests cannot be accommodated in the time frames discussed above.

For example:

| Lost tickets | Must be held for 90 days to ensure that they are not found and used. |
| --- | --- |
| Tickets with adjustments **Example:** a customer buys a First Class ticket but actually travels in the Main or | Require that we verify the itinerary and class of service flown and this can take up to 45 days |

| Coach Cabin | |
|---|---|
| Tickets that were purchased outside the United States | Require special handling because we must ensure that currency conversion rates are calculated correctly |

## Ticket Refunds

- Refunds for credit card purchases will be made only to the credit card account.
- Service charges are collected for some refunds (for example, lost tickets).

## Helpful Suggestions

To ensure a prompt refund, you must submit all required documentation and information, including:

- Valid ticket submitted to us before expiration date

 Tickets expire one year from the date of issue.

- Original unused flight coupons for paper tickets
- Ticket number for electronic tickets
- Brief written explanation
- Your name, address, and telephone number(s)
- Form of payment used to purchase the ticket

## UMNRs (back to top)

## UMNR - Acceptance Guidelines

Unaccompanied minor (UMNR) service guidelines

American Airlines (AA)/American Eagle

AA's and American Eagle's UMNR service allows children in certain circumstances to travel alone on our flights.

We have established the following guidelines for our UMNR service:

| | |
|---|---|
| Children 5 years and older: | May travel on AA or American Eagle on **non-stop or same-plane flights.** |
| **Must** be 8 to 14 years old: | To travel itineraries requiring a **connection** on AA or American Eagle. |

 Children 15-17 years old are considered young adults and are not required to use the UMNR service. However, the UMNR service is available to them upon request and under the same provisions.

## Other Airlines

Connections to flights of other airlines are permitted only when allowed by the rules of the connecting carrier.

 We are **not** responsible for UMNR while they are traveling on other carriers.

## UMNR - Information And Procedures

- A fee is assessed for providing UMNR service.
- When taking your child's reservation, we will request telephone numbers for parents or guardians.
- At check-in, you will also be asked to provide names, addresses and home and business telephone numbers for you and the party meeting your child.



This information is used in identifying the party meeting your child upon arrival and it will assist us in contacting you if necessary.

- We recommend checking in early at the airport to ensure that you have adequate time to complete the required paperwork and pre-board your child.

## UMNR - Off Schedule Operations

The welfare of UMNRs is a matter we take very seriously.

- In advance or upon check-in, if there is a possibility that your child's flight might be delayed or misconnect for any reason, we may change your child's flight schedule, including the departure date.

## UMNR - Airport Procedures

An airport representative will:

- Assist your child at the connecting city
- Escort your child to his or her next flight
- Deliver your child to the person meeting him or her at the destination airport.

We do **not** accept reservations for an unaccompanied child if it would mean his or her connecting flight would be the last flight of the day.

Additional details on our UMNR service are available from Reservations.

## UMNR - Helpful Suggestions

- You should stay with your child until he or she boards the aircraft and remain at the

airport until the flight departs the gate.
- Provide your child with an extra copy of his or her contact phone numbers.
- Before going to the airport, explain what will happen during the child's trip. This may include teaching him or her about airplanes, sounds, connecting flights, etc., in general, just what to expect.
- Provide your child with books, food, or other items that can help entertain him or her during the trip.
- Let us know if it is your child's first flight so that, if time permits, we can give him or her a little extra attention.

## Special Assistance (back to top)

### Customers With Disabilities

AA and American Eagle endeavor to provide passengers with disabilities dignified, professional and courteous service at all times. We have a team of employees who regularly consult with disability advisory groups on how we can improve airline accessibility and the quality of our service.

### Reservations Special Assistance Coordinators

AA and American Eagle Reservations Offices maintain a staff of Special Assistance Coordinators (SACs) who work with customers who have identified themselves as having disabilities.

- The Reservations Representative who responds to the customer's initial call passes pertinent information to a SAC, who calls the customer back.
- A toll free number exists for customers with disabilities to follow-up on travel arrangements with the SAC office.
- Airport and in-flight personnel are notified of Special Service Requests (SSR).

### Pre-Reserved Seats

AA and American Eagle block a limited number of seats on each aircraft to accommodate customers who identify themselves as having a qualified disability.\

 Adjacent seats are provided, under certain circumstances, for customers with disabilities who must travel with a companion for assistance.

### Assistive Devices

AA and American Eagle accept motorized and non-motorized assistive devices for transport.

- When necessary, we will disassemble and reassemble wheelchairs or assistive devices for customers when they travel.
- AA and American Eagle provide storage for one passenger's collapsible, manual wheelchair in the cabin of each aircraft.

 This service is available on a **first-come**, first-served basis and has priority over carry-on baggage belonging to other customers who board at the same city, provided the customer follows the pre-boarding procedure.

- In-cabin stowage space for assistive devices **cannot** be pre-reserved, but AA and American Eagle accept carry-on wheelchairs, provided they collapse to fit in an overhead bin or under a seat.
- Non-collapsible wheelchairs/scooters are accepted as checked baggage. These items can be checked at the main ticket counter or the departure gate.
- AA and American Eagle offer a special wheelchair service that allows you to **check** your wheelchair at the departure gate and claim it at your arrival gate **free of charge**.
- Although you can arrange to claim your chair at the connecting city, we recommend that the chair be checked through to the final destination. The additional time required claiming and re-checking your chair at the connecting city may compromise your ability to make your connection.

 AA and American Eagle have wheelchairs and our representatives provide wheelchair service at connecting airports.
Please let us know you will need this assistance when making your reservation.

- Assistive devices approved for cabin transport **do not** count towards the combined number of checked and carry-on baggage a passenger is allowed free of charge, nor do they count towards the limit on carry-on items you may bring on board.

## Accommodation Of Special Needs Customers

Boarding Assistance

If you have special needs, upon request, pre-boarding assistance will be provided to you, allowing you the opportunity to be seated prior to general boarding.

- A special aisle chair is available to assist you if you are unable to walk.
- All of our jet aircraft are equipped with specially designed seats that feature moveable aisle armrests to help make seating easier.

Therapeutic Oxygen

AA provides onboard therapeutic oxygen subject to availability.

 This service is not available on American Eagle flights.

- The Reservations SACs arrange for this service upon 48 hours advance notice.
- A doctor's prescription is required advising of the liters per minute flow rate.
- A fee is charged for this service.

## Complaint Resolution Officials

Complaint Resolution Officials for customers with special needs

- We have employees at airports who are trained as Local Complaint Resolution Officials (LCROs) and are available during operating hours.
- A Corporate Complaint Resolution Official is available to assist LCROs 24 hours a day, seven days a week.

## Extraordinary Delays (back to top)

## Essential Customer Needs

Essential customer needs during extraordinary delays

- Our top priority is the safety and well being of our customers, and we are focused on having all our flights arrive and deplane on schedule.

## Definition Of Extraordinary Delays

On very rare occasions there may be extraordinary events that result in very lengthy onboard delays.

- These are situations in which an aircraft is delayed on the ground (other than on an active runway or taxiway) but does not have access to a terminal gate for more than two hours
- We have developed detailed contingency plans at every domestic airport to address these situations.

## Contingency Plans

In such events, we will make every reasonable effort to ensure your essential needs, such as food/snack bar (such as a Nutri-Grain), water, restroom facilities, and basic medical assistance, are met.

Every American Airlines (AA) and American Eagle United States airport team has an operational contingency plan in place to address these needs, this plan includes coordination with:

- The local airport authorities

and

- Other airlines serving the airport when appropriate

**Each plan**:

- Designates a local control point to coordinate activities of the local team

and

- Establishes an open communication line with our Centralized System Operations Control Center located at our headquarters.

## Flights with Oversales (back to top)

### Overbooking

American Airlines (AA) and American Eagle, like most airlines, overbook flights. We do this because historical information shows that relatively few people cancel their reservations when they change their travel plans.

### Benefits Of Overbooking

Overbooking is done in the best interest of both customers and the airline.

- Without the revenue produced by filling seats that would otherwise go empty, every airline would have to compensate by raising fares.
- Just as important, selling our seats in this manner allows us to say **yes** rather than **no** a lot more often when customers call for a seat on the flight of their choice.

### Impact Of Overbooking

Just because a flight is overbooked, it does not necessarily mean that customers with reservations will not be accommodated on their flight.

- The overwhelming majority of overbooked flights depart with all customers who have reservations and are present for departure.

### Overbooking Procedures

If at departure time more customers with confirmed reservations are present than there are seats available:

- Gate agents will first ask for **volunteers** who are willing to give up their seats in exchange for compensation and a confirmed seat on a later flight.
- On extremely **rare** occasions, a customer may be denied boarding on an **involuntary** basis, if a sufficient number of volunteers is not obtained, in such events we will usually deny boarding based upon check-in time.

> ☒ But we may also consider factors such as severe hardships, fare paid, and status within the AAdvantage® program.

- With few exceptions, persons denied boarding involuntarily are entitled to compensation under federal law.

### Available Information About Overbooking

Additional information concerning our overbooking policies can be found:

- On ticket jackets
- In our conditions of carriage

 Upon request, our Reservations Representatives will advise you if your flight is overbooked at the time your reservation is made.

Bear in mind that, as stated above, most overbooked flights do in fact have sufficient seats to accommodate all customers who are present for departure.

## Check In And Baggage Acceptance Cutoff Times (back to top)

### Recommended Check-In Times:

When travel is completely within the U.S. including Puerto Rico, and on flights to Hawaii and the U.S. Virgin Islands, recommended check-in time is at least 90 minutes prior to departure when checking baggage, and at least 60 minutes prior to departure if not checking baggage.

For flights departing Hawaii and the U.S. Virgin Islands, recommended check-in time is at least two hours prior to scheduled departure.

For international flights, we recommend you arrive at the airport at least two hours prior to departure to allow sufficient time to complete all necessary international requirements.

Recommended check-in times for cities that exceed two hours:

Flights departing:

| | |
|---|---|
| Aruba (AUA) | 180 minutes |
| Bermuda (BDA) | 150 minutes |
| Delhi (DEL) | 210 minutes |
| Dublin (DUB) | 180 minutes |
| Mexico (all cities) | 180 minutes |
| Nassau (NAS) | 180 minutes |
| Paris (CDG) | 180 minutes |
| Port-au-Prince (PAP) | 180 minutes |
| Port of Spain (POS) | 180 minutes |
| San Pedro Sula (SAP) | 180 minutes |
| Tegucigalpa (TGU) | 180 minutes |

### Check-In Requirements And Baggage Acceptance Cutoff Times:

Customers must comply with minimum check-in requirements to retain their seats on the flight on which they are confirmed.

Pre-reserved seats are subject to cancellation unless you have checked in (obtained a boarding pass) at least 30 minutes before scheduled departure. American does not guarantee to provide any particular seat on the aircraft.

For passengers checking bags, there are also baggage acceptance cutoff times. 'Baggage acceptance cutoff time' means that customers must present themselves and their baggage to an airline representative for check-in no later than the stated cutoff times for the departure airport.

## Domestic Travel:

In addition to checking in 30 minutes before departure, you must be present at the departure gate and ready to board at least 15 minutes prior to scheduled departure time to retain your reservation and a seat.

For customers checking baggage, cutoff time for baggage check-in is 30 minutes before departure for all airports in the U.S., Puerto Rico and U.S. Virgin Islands, with the following exceptions:

| | |
|---|---|
| Atlanta, Georgia (ATL) | 40 minutes |
| Chicago-O'Hare, Illinois (ORD) | 40 minutes |
| Dallas/Fort Worth, Texas (DFW) | 40 minutes |
| Denver, Colorado (DEN) | 45 minutes |
| Las Vegas, Nevada (LAS) | 45 minutes |
| Los Angeles (LAX) | 45 minutes |
| Miami, Florida (MIA) | 45 minutes |
| Minneapolis/St. Paul (MSP) | 35 minutes |
| Newark, New Jersey (EWR) | 40 minutes |
| New York JFK, New York (JFK) | 45 minutes |
| Orlando, Florida (MCO) | 40 minutes |
| San Juan, Puerto Rico (SJU) | 40 minutes |
| St. Croix, U.S. Virgin Islands (STX) | 45 minutes |
| St. Thomas, U.S. Virgin Islands (STT) | 45 minutes |
| Washington Dulles, District of Columbia (IAD) | 40 minutes |

## International Travel:

For flights originating outside the U.S., you must check in 60 minutes before departure, and be present at the departure gate and ready to board at least 30 minutes prior to scheduled departure time to retain your reservation and a seat.

Standard baggage acceptance cutoff for flights originating in all airports outside the U.S. is 60 minutes before departure.

For international departures from a U.S. city, standard baggage acceptance cutoff time is 60 minutes.

## The AAdvantage® Program (back to top)

## AAdvantage® Program

The **first** frequent traveler program in the industry

- Began in 1981

## Enrollment

Anyone wishing to enroll in AAdvantage® can do so **instantly**:

- At any American Airlines (AA) or American Eagle ticket counter
- Online at the **AA.com®** website
- By calling toll free **800-433-7300**

## Participants

The program allows members to earn AAdvantage® miles with dozens of participating companies, including:

- World class airlines
- Leading hotel chains
- Car rental agencies
- Investment companies
- Long distance providers

Also, the Citibank AAdvantage® credit card allows members to earn miles for all types of transactions, even those not related to the travel industry.

## Membership Guide

Member guides will be sent on a request basis only. Please refer our members to view the guide on AA.com®. This is done by clicking on AAdvantage® tab, then click on Program Details.

- Detailed program rules for the accumulation of mileage award travel
- All applicable program rules

## Member Access To Program Rules

In addition, certain program rules are included:

- On AA.com® by clicking on AAdvantage® tab, then click on Program Details
- On the back of summary statements (sent to members having account activity)
- On inserts mailed with AAdvantage® flight certificates and tickets
- On the back and bottom of flight award certificates

## General Mileage Information

Your AAdvantage® miles do not expire if you have at least one qualifying transaction within the previous 36 months.

All types of mileage-earning transactions are included - anything from a mileage-earning flight on AA or American Eagle to purchases using the Citibank AAdvantage® credit card.

## AAdvantage® Benefits

AAdvantage® benefits are numerous and varied.

### AAnytime Awards

You can claim an AAnytime Award, valid for travel whenever you like.

- No travel embargo dates
- No restrictions - as long as the flight is not sold out

### MileSAAver Awards

If you have a more flexible plan, you can claim MileSAAver awards. These awards are:

- Subject to capacity controls (a seat inventory control process used by airlines) and travel embargo dates
- Can be claimed with fewer miles than AAnytime awards

## Miles For Kids

In addition, you can donate your miles to the Miles for Kids in Need Program, which provides transportation for seriously ill children.

## AAdvantage® Program Disclaimer

 AA reserves the right to change AAdvantage® program rules, regulations, travel awards and special offers at any time without notice and to end the AAdvantage® program with six months notice.

Any such changes may affect your ability to use the mileage credits or awards that you may have already accumulated.

- You may **not** rely upon the continued availability of any award or award level.
- You may **not** be able to obtain all offered awards or use awards for all destinations or on all flights.
- AA is **not** responsible for products or services offered by other participating companies.

## Annual Report Of Award Redemption

Beginning in 2000, an annual report of award redemption will be published, both at the **AA.com®** website and in the AAdvantage® newsletter.

## Other Travel Policies (back to top)

### Aircraft Assignment

- American Airlines (AA) and American Eagle Reservations Representatives will advise you when it will be necessary for you to move from one aircraft to another during your travel, including when the flight number remains the same.

### Travel Itinerary Policy

- AA and American Eagle tickets are priced and sold based on the itinerary and not as individual flight segments.
- If you foresee or must make a change to the itinerary while enroute, you must contact AA or American Eagle to determine how this may affect the ticket and remaining travel plans. **For example:** If you do not show up for one segment of your itinerary, we may cancel your seat assignment on subsequent flight segments.

### Aircraft Configuration

- AA and American Eagle Reservations Representatives are able to provide you with a wide variety of information related to the AA and American Eagle fleets.
- Aircraft configuration, seat size, and seat pitch are just a few examples of information that can be obtained from our Reservations Representatives.
- This information is also available at the AA.com® website.

## Domestic CodeShare Partners (back to top)

### Service With Domestic Code Share Partners

American Airlines (AA) and American Eagle will make their Customer Service Plan readily available to all of our domestic code share partners and, to the extent possible, make every reasonable effort to ensure our partners offer comparable levels of service.

## Customer Issues (back to top)

### Handling Of Customer Issues

Our goal is to be a service and product leader in the airline industry. When customer service issues arise we try to resolve them at the first point of contact. As a result, we have devoted resources to the front line and rely on our personnel to solve most problems during daily activity.

### Customer Relations Department

Additionally, our Customer Relations Department is dedicated to addressing unresolved customer comments and concerns.

- The Customer Relations Department will respond to our customers' written complaints within 60 days.
- Every complaint will be personally read and a response will be sent to the customer.

Customer Relations information, along with information derived from customer focus groups, discussions, and other customer research surveys, is trended and shared throughout American Airlines (AA) and American Eagle.

Customer Relations and other departments have the responsibility to:

- Address and initiate appropriate corrective action
- Make recommendations to changes in policy based on customer feedback

Customer information is viewed as the most valuable tool available to enhance handling of customer issues.

## Customer Relations Address

Customer Relations can be reached at:

> American Airlines Customer Relations
> Mail Drop 2400
> P. O. Box 619612
> Dallas/Ft. Worth Airport, TX
> 75261-9612

- Fax **817-967-4162**

## Helpful Suggestions

- Be as specific as possible, including dates and flight numbers.
- Provide all supportive documentation, such as copies of your tickets and certificates.

## Contractual Or Legal Rights

We take the customer service goals in this plan very seriously. We know that you expect nothing less. However, the customer service plan does not create contractual or legal rights. Rather, our contractual rights and obligations are set out in our:

- Conditions of carriage
- Applicable tariffs
- Ticket jacket

All of which provide additional details on the matters discussed and must be consulted to fully understand your rights and our obligations.

For example, we are not responsible for any special, incidental, or consequential damages for:

- Delays, cancellations
- Lost baggage
- Late refunds
- Instances in which we do not meet our service goals

## Reference Maintenance (back to top)

Reference maintained on **12/18/2006** by:

- **PSM Manual**

When requesting an update, please refer to **(UID: 1156876214681854)**

1  LOCKE LORD BISSELL & LIDDELL LLP
   MICHAEL V. POWELL (TX SBN 16204400) (*pro hac vice* admission pending)
2    mpowell@lockelord.com
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas  75201-6776
   Telephone:  (214) 740-8520
4  Facsimile:  (214) 756-8520

5  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
6    skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
7    jchou@cwclaw.com
   201 California Street, 17th Floor
8  San Francisco, California  94111
   Telephone:    (415) 433-1900
9  Facsimile:    (415) 433-5530

10 Attorneys for Defendant, American Airlines, Inc.

11

12                 **UNITED STATES DISTRICT COURT**

13      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

14

15 | KATHLEEN HANNI, individually and on behalf of all others similarly situated, | CASE NO. C08-00732CW |

16 |                                          | **[PROPOSED] ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANT AMERICAN AIRLINES, INC.** |
          Plaintiff,

17

18      vs.                                 **Fed. R. Civ. Pro. 12(b)(6)**

19 AMERICAN AIRLINES, INC., and DOES 1
   through 20, inclusive,                    Date:  March 27, 2008
20                                           Time:  2:00 p.m.
          Defendants.                        Courtroom: 2, 4th Floor
21

22

23        This matter came before the Court on March 27, 2008, before the Honorable Claudia

24 Wilken, United States District Judge, presiding, on the Motion to Dismiss Plaintiff's Complaint

25 filed by Defendant American Airlines, Inc.  The Court has considered the moving papers, the

26 arguments of counsel, and the record, and based thereon, GRANTS the Motion to Dismiss, with

27 prejudice.

28        IT IS HEREBY ORDERED that the Motion to Dismiss plaintiff's complaint in its entirety,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594937.1                                                                    C08-00732CW
              (PROPOSED) ORDER GRANTING MOTION TO DISMISS

1    is GRANTED and is DISMISSED WITH PREJUDICE.

2         IT IS SO ORDERED.

3

4    Dated: _____, 2008

5

6

7                                                    _____

8                                                    The Honorable Bernard Zimmerman
                                                     United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594937.1                                    2
(PROPOSED) ORDER GRANTING MOTION TO DISMISS