PAUL S. HUDSON (pro hoc vice admission pending)
LAW OFFICES OF PAUL S. HUDSON P.C.
4411 Bee Ridge Road #274.
Sarasota, Florida 34233
Telephone: 410-940-8934
Facsimile: 240-391-1923

DAVID G. RAMOS (Bar No. 116456)
LAW OFFICES OF DAVID G. RAMOS
 barram@i-cafe.net
3266 Villa Lane
Napa, California  94558
Telephone:  707-255-1700
Facsimile:  707-255-3660

Attorneys for Plaintiff KATHLEEN HANNI.
Individually and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| KATHLEEN HANNI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.; and DOES 1 through 20, inclusive,<br><br>Defendants. | No.         C08-00732 CW<br><br>**DECLARATION OF PAUL S. HUDSON IN SUPPORT OF MOTION TO REMAND**<br><br>Date: April 24, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2 |

I, Paul S. Hudson, hereby declare:

1. I am an attorney in good standing admitted to practice before all courts in the State of New York and have been so since 1976. I am admitted *pro hac vice* before the Superior Court of Napa County California and have a *pro hac vice* application pending in the US District Court, Northern District of California for the subject case. My address is 4411 Bee Ridge Road #274, Sarasota, Florida 34233. I have personal knowledge of the matters set forth in this declaration, except

those facts which are alleged based on information and belief, and as to those facts, I believe them to be true. I could and would testify competently thereto if called as a witness.

2. I am an attorney for the Plaintiff and submit this declaration in support of plaintiff's Motion to Remand and in response to the Declaration of James M. Wagstaffe (Wagstaffe Declaration), submitted in support of the Defendant's Notice of Removal dated January 31, 2008.

3. I have over 30 years of experience as an attorney, have litigated over 1,000 civil cases. Since 1997 I have concentrated on aviation consumer law and representing airline passenger interests on a national level, including involvement as lead intervenor attorney in a class action case involving facts similar to those in this case. I am a longstanding member, representing the interests of airline passengers and the general public, of the Federal Aviation Administration's Rulemaking Advisory Committee (Executive Committee) and the U.S. Transportation Security Administration's Aviation Security Advisory Committee, have authored articles in professional and general interest publications on aviation consumer issues, and have often been invited to testify before Congressional committees on aviation consumer issues. Most recently, I represent the national consumer organizations as amici/intervenors in the case of *Air Transport Association of America, Inc. v Cuomo,* in which the US District Court ND NY recently upheld a state statute prohibiting the type of conduct at issue in this case, against a federal preemption challenge by the airline industry trade association.

4. My fee agreement with the plaintiff in this case is a contingency fee agreement. Accordingly she is not expected to incur hourly attorneys' fees as assumed by the Defendant's consulting attorney James M. Wagstaffe in his Declaration dated January 31, 2008 in support of the Notice of Removal.

5. As the Complaint does not specify an amount of damages and Plaintiff has voluntarily limited the amount in controversy for herself to less than the individual jurisdictional amount for individual recovery including attorneys' fees and punitive damages (Hanni Affidavit/Declaration submitted herewith), I do not believe there is any factual basis for federal jurisdiction based on diversity under 28 USC 1332(a), one of two grounds for jurisdiction alleged in the notice of removal.

6. I disagree with the Wagstaffe Declaration legal opinion at par. 5 that attorney fees are normally included in determining the amount in controversy for jurisdictional purposes (improperly included in his Declaration under local rules) for the reasons set forth in the accompanying Memorandum of Law. In my experience with class action and mass tort cases, attorney fees are usually paid out of a common fund and are normally an expense of the clients, not something added to the recovery and therefore the amount in controversy, whether by judgment or stipulation of settlement. The court will then hold a fairness hearing, and determine if the fees are in the interests of the class and the public.

7. Mr. Wagstaffe opines at length as an alleged expert on class actions and aviation law defenses in this case, but his resume attached to his Declaration mentions no class action or aviation law experience, but rather opines that he is a well known First Amendment, federal procedural law expert and public speaker. As such his opinions in my view should be given no evidentiary weight, and should also not be considered as they attempt to usurp the Court's prerogative of deciding legal issues.

8. The other ground for removal is that the aggregate amount in controversy exceeds $5 million and therefore gives this Court original jurisdiction under 28 USC 1332(d). But without knowing with any accuracy the number and citizenship of the putative class, it is not possible to calculate whether or not the amount in controversy for the class will be over or under the minimum $5 million needed for original jurisdiction by this Court under the Class Action Fairness Act of 2005 (CAFA).

9. But even if the court takes cognizance of the Wagstaffe estimate of 300 hours at $350 per hour, this is $105,000 in attorney fees for a class action, which is a relatively small amount relative to $5 million, and is therefore unlikely to have a significant effect on the minimum federal class action jurisdictional amount of over $5 million.

10. The number of potential class members is likely to be less than 12,000 based on information learned since the complaint was filed but the number cannot be determined at this time without an order of the court for turnover of the names, addresses etc. because the Defendant

1 | exclusively controls this information.  It is also not possible to determine the state citizenship of the
2 | potential class members without this information.

3 | 11. It is also not possible for the Plaintiff and the court to know for certain whether more than one third of the class members or even over two thirds are citizens of California, which would then involve discretion by this Court (if between one third and two thirds) as to whether to remand to state court or retain jurisdiction, or mandatory remand if over two thirds. 28 USC 1332(d)(3)(4). However, it is more likely than not in my opinion that California has over a third of the putative class in this case.  This is based on a) the information provided by Plaintiff in her affidavit that a majority of phone numbers of persons who contacted her are from California, based on a web site posting, b) that there are 16 California cities served by American Airlines with flights to Dallas Fort Worth airports according to the Defendant's web site, believed to be more than any other state and c) that California has an estimated 20% to over 35% of the population served by American Airlines, and d) that the time zone differences and the time of day of the diverted flights likely caused more flights from west to east to be diverted on December 29, 2006 that from east to west.

12. The data aforementioned in par. 10 above is also needed now because Defendant is expected to shortly move to transfer venue to Texas and is basing this motion at least in part on its allegation that Texas has more class members than another state.

13. In the only other similar case that I am aware of, a class action was filed against Northwest Airlines arising out of a stranding and confinement of passengers in Detroit in 1999.  That case, *Koczara v Wayne County and Northwest Airlines*, was remanded to state court and settled with payments ranging from $1,000 to $2,000 per approved class member claim. The total settlement was $7.15 million and involved a total class of about 7,000.  The amount available to distribute after attorneys fees and expenses was just over $5 million.  See news account affixed hereto as Exhibit A.

I declare the foregoing to be true under penalty of perjury.  This Declaration was executed on February 28, 2008 at Sarasota, Florida.

s/_____

Paul S. Hudson

member claim. The total settlement was $7.15 million and involved a total class of about 7,000. The amount available to distribute after attorneys fees and expenses was just over $5 million. See news account affixed hereto as Exhibit A.

I declare the foregoing to be true under penalty of perjury. This Declaration was executed on February 28, 2008 at Sarasota, Florida.

*Paul Hudson*

Paul S. Hudson

Received Fax :     Feb 28 2008 9:32PM     Fax Station :  RAMOS LAW OFFICES     p. 2
Feb-29-08   12:21am   From-                                                    T-261  P.002/003  F-570



More than Search ... It's Research

## Northwest To Pay Stranded Travelers

From: AP Online   Date: April 24, 2001



AP Online
04-24-2001
Northwest To Pay Stranded Travelers

ROMULUS, Mich. (AP) -- A judge on Tuesday approved a $7.15 million settlement between Northwest Airlines and thousands of passengers who endured lengthy delays during a January 1999 blizzard.

At least 3,700 passengers will get checks averaging $1,300 in the settlement approved by Wayne County Circuit Judge Daphne Means Curtis. Checks are to be issued by early June.

Northwest officials did not return a phone call seeking comment.

Passengers filed a class-action lawsuit after they were trapped aboard 30 Northwest airplanes at Detroit Metropolitan Airport during a snowstorm Jan. 2-4. The storm prevented planes from taking off or returning to the gates. Toilets overflowed, and planes ran out of food and water.

The airline industry has since adopted a voluntary code of conduct. Northwest now mandates compensation if passengers are delayed more than four hours.

So far, 3,300 passengers claims had been verified, with passengers divided into three categories, said Mary Jane Tytran, of Charfoos & Christensen, a law firm that represented the passengers.

The 1,400 passengers delayed two to five hours will receive an estimated $1,000; 1,300 delayed five to eight hours will get about $1,400; and 600 delayed more than eight hours will get about $2,000, Tytran said.

About 400 claims are awaiting minor corrections and should be approved.

------

On the Net:

Northwest Airlines, http://www.nwa.com/ The information contained in the AP News report may not be published, broadcast or redistributed without the prior written authority of The Associated Press.

Copyright 2001 The Associated Press All Rights Reserved

Exhibit A

http://www.highbeam.com/DocPrint.aspx?DocId=1P1:43704647                    2/28/2008