1 | LOCKE LORD BISSELL & LIDDELL LLP
MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
2 | mpowell@lockelord.com
2200 Ross Avenue, Suite 2200
3 | Dallas, Texas  75201-6776
Telephone:  (214) 740-8520
4 | Facsimile:  (214) 756-8520

5 | COOPER, WHITE & COOPER LLP
STEPHEN KAUS (SBN 57454)
6 | skaus@cwclaw.com
JIE-MING CHOU (SBN 211346)
7 | jchou@cwclaw.com
201 California Street, 17th Floor
8 | San Francisco, California  94111
Telephone:    (415) 433-1900
9 | Facsimile:    (415) 433-5530

10 | Attorneys for Defendant, American Airlines, Inc.

11 |

12 |                    **UNITED STATES DISTRICT COURT**

13 |        **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

14 |

15 | KATHLEEN HANNI, individually and on behalf of all others similarly situated,

CASE NO. C08-00732 CW

16 |                    Plaintiff,

**DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED NOTICE OF REMOVAL**

17 |

18 |        vs.

19 | AMERICAN AIRLINES, INC., and DOES 1 through 20, inclusive,

Date:  April 24, 2008
Time:  2:00 p.m.
Courtroom: 2, 4th Floor

20 |                    Defendants.

21 |

22 |                    **I.    INTRODUCTION**

23 |        Defendant American Airlines, Inc. ("American") requests the Court's permission to file an

24 | Amended Notice of Removal, a copy of which is attached hereto as Exhibit 1, to provide

25 | supplemental information that further reinforces this Court's jurisdiction over this action and that

26 | was not available to American at the time that its original Notice of Removal was filed on January

27 | 31, 2008.  After American filed its original Notice of Removal, Paul Hudson, counsel for plaintiff

28 | Kathleen Hanni, sent American a settlement demand in which Mr. Hudson sets forth plaintiff's

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1 | assertion of the amount in controversy in this putative class action. The amount demanded by

2 | plaintiff to settle her current claim, $5,000,000 plus $250,000 in attorneys' fees or ten percent of

3 | the total amount paid out to plaintiff and class members, whichever is greater, definitively

4 | establishes this Court's jurisdiction to adjudicate plaintiff's case. While American denies the

5 | allegations in plaintiff's settlement demand letter, the Ninth Circuit precedent establishes plaintiff's

6 | settlement demand is sufficient to satisfy the amount in controversy requirement for the exercise

7 | of the Court's jurisdiction. American therefore requests that the Court grant it leave to file an

8 | Amended Notice of Removal.

9 | ## II.    FACTUAL BACKGROUND

10 | Although American had not been served with process, it became aware that on December

11 | 28, 2007, an action had been commenced in the Superior Court of the State of California in and

12 | for the County of Napa, entitled *Kathleen Hanni, individually and on behalf of all others similarly*

13 | *situated v. American Airlines, Inc. and DOES 1 through 20, Inclusive*, as Case Number 26-40576

14 | ("Complaint"). American then filed and served its original Notice of Removal on January 31,

15 | 2008.

16 | Plaintiff filed a Motion to Remand on February 29, 2008, principally on the basis that the

17 | jurisdictional amount needed for diversity ($75,000) or under the Class Action Fairness Act

18 | ($5,000,000) was not met. On March 3, 2008, however, plaintiff's counsel, Paul Hudson, wrote a

19 | settlement demand letter to American (attached as Exhibit A to the Declaration of Michael V.

20 | Powell) demanding $5,000,000 to settle this case, plus $250,000 in attorneys' fees or ten percent of

21 | the total amount paid out to plaintiff and class members, whichever is greater ("Settlement

22 | Demand").[1]

23 | ─────────────────

24 | [1] As noted in American's Notice of Pendency of Other Action or Proceeding filed with this Court

25 | on February 19, 2008, there is an identical class action that Mr. Hudson has filed in Arkansas on behalf of plaintiff Catherine Ray against American arising out of the same allegations and events

26 | alleged in plaintiff Hanni's Complaint. Mr. Hudson's March 3, 2008 letter therefore demands a total of $10,000,000 plus $250,000 in attorneys' fees or costs or ten percent of the total amount

27 | paid out to plaintiff and class members, whichever is greater (essentially $1,000,000 in attorneys' fees if $10,000,000 is paid) to settle both this case and plaintiff Catherine Ray's Arkansas case.

28 |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597010.1                                 2                              C08-00732 CW
Defendant's Motion for Leave to File Amended Notice of Removal

1    Counsel for American contacted plaintiff's counsel, David Ramos, on Monday, March 17,

2  2008 to request plaintiff's stipulation for American to file an Amended Notice of Removal so that

3  American could include plaintiff's Settlement Demand in the record.  See Declaration of Jie-Ming

4  Chou, ¶ 2.  However, Mr. Ramos informed American on March 18, 2008 that plaintiff would not

5  stipulate to American's filing of an Amended Notice of Removal.  Id. at ¶ 3.

6    American contends that its original Notice of Removal sufficiently established this Court's

7  jurisdiction pursuant to 28 U.S.C. §§ 1332(d0 and 1441(b), but if there were any doubt that the

8  amount in controversy did not meet the jurisdictional prerequisite of this Court, that doubt has

9  been resolved by the Settlement Demand made by plaintiff on March 3, 2008.  As such, American

10  moves this Court to grant it leave to file an Amended Notice of Removal.

11                          **III.    DISCUSSION**

12    A.    American Seeks the Court's Permission to File an Amended Notice of Removal to Avoid Any Dispute as to the Appropriate Procedure.

13

14    There is authority for the proposition that no formal amended petition for removal is

15  necessary to add this additional evidence of the amount in controversy.  *See, e.g., Gafford v.*

16  *General Electric Co.*, 997 F. 2d 150, 164 n. 6 (6th Cir. 1993).  Courts, including the United States

17  Supreme Court, have deemed affidavits or other evidence filed in opposition to a motion to

18  remand to be amendments to the removal petition.  *See Willingham v. Morgan*, 395 U.S. 402, 407

19  n.3 (1969); *USX Corp. v. Adriatic Ins. Co.*, 345 F. 3d 190, 203, 204-05 (3d Cir. 2003); *Gafford*,

20  997 F.2d at 164-65.  Nevertheless, there are other opinions reciting that the trial court had granted

21  a defendant's motion to amend its notice of removal.  *See, e.g., McMahon v. Bunn-O-Matic Corp.*,

22  150 F. 3d 651, 654 (7th Cir. 1998); *Tech Hills II Assoc. v. Phoenix Home Life Mut. Ins. Co.*, 5

23  F.3d 963, 969 (6th Cir. 1993).  Accordingly, to foreclose unnecessary controversy about

24  procedure, American hereby moves the Court for leave to file an Amended Notice of Removal.

25    B.    Plaintiff's Evaluation of Its Own Case In a Settlement Demand Is Evidence of the Amount In Controversy.

26

27    The additional statements by counsel for plaintiff Hanni that American has added to its

28  Amended Notice of Removal came to American's counsel on March 3, 2008, in the Settlement

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1    Demand (Amended Notice ¶ 5(F)). The Settlement Demand is authenticated by the Declaration of

2    Michael V. Powell filed herewith.

3         It is well-established that plaintiff Hanni's evaluation of her own case in the Settlement

4    Demand is evidence of the amount plaintiff places into controversy in the action. *See, e.g., Cohn*

5    *v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *In re Minnesota Mutual Life Ins. Co. Sales*

6    *Practices Litig.*, 346 F.3d 830, 834-35 (8th Cir. 2003); *Davis v. Chase Bank U.S.A., N.A.*, 453 F.

7    Supp. 2d 1205, 1209 (C.D. Cal. 2006); *Arellano v. Home Depot U.S.A., Inc.*, 245 F.Supp.2d 1102

8    (S.D. Cal. 2003); *James v. Childtime Childcare, Inc.*, 2007 WL 1589543 (E.D.Cal. June 1, 2007).

9         Although Federal Rule of Evidence 408 would preclude either party from offering

10   plaintiff's Settlement Demand into evidence on the merits of plaintiff's case (and American

11   certainly denies the allegations in the settlement demand letter), Rule 408 does not preclude the

12   Settlement Demand from being considered as evidence of the amount plaintiff places in

13   controversy in the action. *See, e.g., Cohn*, 281 F.3d at 840 n. 3.

14        American respectfully requests leave of the Court to file its Amended Notice of Removal

15   for two reasons:

16        1.    Removing defendants may amend their Notices of Removal after thirty days

17   have passed in order to provide additional factual material in support of allegations of jurisdiction

18   already made. American's original Notice of Removal adequately alleged, in American's view,

19   that there is at least $5,000,000 in controversy in this putative class action, exclusive of interests

20   and costs, for the purposes of federal jurisdiction under the Class Action Fairness Act (original

21   Notice of Removal, ¶ 4(E)). American's original Notice also alleged, sufficiently in American's

22   view, that there is at least $75,000, exclusive of interest and costs, in controversy in Plaintiff Ray's

23   individual action (original Notice at ¶¶ 6(B)-(C)). American seeks to add new statements by

24   plaintiff, made after American's Notice of Removal was filed, that provide plaintiff's

25   evaluation of the claims stated in the Complaint she filed in California Superior Court in and for

26   the County of Napa.

27        American does not seek to add new bases for federal jurisdiction by its Amended

28   Notice of Removal. Rather, as is permissible, it seeks to add additional and subsequent facts

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111
597010.1                                           4                              C08-00732 CW
Defendant's Motion for Leave to File Amended Notice of Removal

1  supporting allegations of jurisdiction made in its original Notice of Removal. *See, e.g.,*

2  *Willingham*, 395 U.S. at 407 n. 3; *USX Corp.*, 345 F.3d at 204-05; 14C Wright, Miller & Cooper,

3  FEDERAL PRACTICE AND PROCEDURE § 3733 at 358-361 (3d ed. 1998); 28 U.S.C. § 1653.

4      2.    Plaintiff's Settlement Demand may also be viewed as an "other paper"

5  which independently shows jurisdictional amounts sufficient to make this action removable to

6  federal court, even if the Court were to conclude that plaintiff's Complaint filed in California state

7  court lacked sufficient allegations of the amount in controversy. 28 U.S.C. § 1446(b). *See, e.g.,*

8  *Babasa v. Lenscrafters, Inc.*, 498 F. 3d 972, 973-75 (9th Cir. 2007); *Addo v. Globe Life &*

9  *Accident Ins. Co.*, 230 F. 3d 759, 760-62 (5th Cir. 2000). Accordingly, American files its

10  Amended Notice of Removal within 30 days after it received plaintiff's settlement demand letter,

11  pursuant to 28 U.S.C §§ 1446(b) and 1453(b).

12        **IV.   CONCLUSION**

13      For the reasons stated above, defendant American Airlines, Inc., respectfully requests that

14  the Court grant leave to American to file its Amended Notice of Removal.

16  DATED: March 19, 2008        COOPER, WHITE & COOPER LLP

18                  By:

19                      Jie-Ming Chou
Attorneys for Defendant American Airlines, Inc.

EXHIBIT 1

1  LOCKE LORD BISSELL & LIDDELL LLP
   MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
2  mpowell@lockelord.com
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas 75201-6776
   Telephone: (214) 740-8520
4  Facsimile: (214) 756-8520

5  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
6  skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
7  jchou@cwclaw.com
   201 California Street, 17th Floor
8  San Francisco, California 94111
   Telephone:    (415) 433-1900
9  Facsimile:    (415) 433-5530

10  Attorneys for Defendant, American Airlines, Inc.

11

12                    **UNITED STATES DISTRICT COURT**

13         **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

14

15  KATHLEEN HANNI, individually and on          CASE NO. C08-00732 CW
    behalf of all others similarly situated,
16                                                **AMENDED NOTICE OF REMOVAL**
                  Plaintiff,
17
           vs.
18
    AMERICAN AIRLINES, INC., and DOES 1
19  through 20, inclusive,

20                Defendants.

21

22       Defendant American Airlines, Inc., ("American") files this Amended Notice of Removal

23  pursuant to 28 U.S.C. §§ 1441(a), 1446, and 1453(b), and pleads as follows:

24       1.    Although American had not been served with process, it became aware that on

25  December 28, 2007, an action had been commenced in the Superior Court of the State of

26  California in and for the County of Napa, entitled *Kathleen Hanni, individually and on behalf of*

27  *all others similarly situated v. American Airlines, Inc. and DOES 1 through 20, Inclusive*, as Case

28  Number 26-40576 ("Complaint").

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596931.1                                                                    C08-00732 CW
                              Amended Notice of Removal

1    2.    American filed its original Notice of Removal in this action on January 31, 2008.

2  A true and correct copy of American's original Notice of Removal and the Complaint are attached

3  hereto as Exhibit A. Accordingly, the removal was timely under 28 U.S.C. § 1446(b) because

4  American had not yet been served with process in the state court action.

5    3.    American has filed with the Superior Court of the State of California in and for the

6  County of Napa, a notice that this action has been removed to federal court. No further

7  proceedings have been had in the state court.

8    4.    This Court has jurisdiction over this civil action, which is filed as a class action,

9  pursuant to both (a) the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), and (b) this

10  Court's diversity of citizenship and supplemental jurisdiction, 28 U.S.C. §§ 1332(a) & 1367(a).

11  **A.    Removal Pursuant to the Class Action Fairness Act of 2005**

12    5.    This Court has jurisdiction over this civil action, which is filed as a class action,

13  pursuant to 28 U.S.C. § 1332(d) because:

14    (A)    Plaintiff, Kathleen Hanni, is a citizen of the State of California.

15    (B)    Defendant American is a corporation incorporated under the laws of the

16  State of Delaware that has its principal place of business in the State of Texas at the following

17  address:  4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

18    (C)    At least one member of the class of plaintiffs is a citizen of a State different

19  from American within the meaning of 28 U.S.C. § 1332(d)(2)(A).  Specifically, plaintiff Hanni is

20  a citizen of the State of California.

21    (D)    Plaintiff filed this action as a "class action" within the meaning of 28 U.S.C.

22  § 1332(d)(1)(b) in that plaintiff pleads that this civil action should be certified as a class action

23  under California Rule of Civil Procedure 382.

24    (E)    The claims asserted by the plaintiff class, aggregated as required by 28

25  U.S.C. § 1332(d)(2), exceed the sum of $5,000,000 within the meaning of 28 U.S.C. § 1332(d)(2).

26  More specifically, plaintiff's Class Action Complaint, attached hereto at Exhibit A, pleads that

27  there are approximately 12,000 members of the alleged class. Plaintiff pleads that "the monetary

28  damages at issue in this case are within the jurisdictional requirements of this court". Complaint at

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596931.1                                2                                C08-00732 CW
                              Amended Notice of Removal

1  ¶3.  Accordingly, plaintiff has placed in controversy individual damages in excess of $25,000.  On

2  behalf of a putative class of 12,000 members, the total amount in controversy aggregates in excess

3  of $5,000,000.  Indeed, the jurisdictional amount is met if each member of the putative class seeks

4  even $420 in damages.  In addition, plaintiff also seeks, on behalf of the class, punitive damages

5  and attorneys' fees.  In determining the amount in controversy, both punitive damages and

6  attorneys' fees are considered.  *E.g.*, *Bell v. Preferred Life Assurance Society,* 320 U.S. 238, 240

7  (1943) (punitive damages); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998)

8  (attorneys' fees).  Adding plaintiffs' request for punitive damages and attorneys' fees pushes the

9  amount in controversy in this action well above $5,000,000.

10  (F)    In addition, on March 3, 2008, Mr. Paul S. Hudson, counsel for plaintiff

11  Hanni, sent a settlement demand to American (the "Settlement Demand").  See Exhibit A to

12  Declaration of Michael V. Powell filed herewith.  Plaintiff's Settlement Demand further

13  establishes that the amount in controversy in this putative class action exceeds the sum or value of

14  $5,000,000, exclusive of interest and costs.  The Settlement Demand is an "other paper" from the

15  plaintiff based on which the amount in controversy may be ascertained, and this Amended Notice

16  of Removal is filed within 30 days after American first received the Settlement Demand.

17  (G)    The class of unnamed plaintiffs exceeds 100 in number within the meaning

18  of 28 U.S.C. § 1332(d)(5)(B).

19  (H)    The sole defendant is not a State, State official, or other governmental entity

20  within the meaning of 28 U.S.C. § 1332(d)(5)(A).

21  6.    Accordingly, American files this Amended Notice of Removal of this action from

22  the Superior Court of the State of California in and for the County of Napa, pursuant to 28 U.S.C.

23  § 1453(b).

24  **B.    Removal Pursuant to Diversity of Citizenship and Supplemental Jurisdiction**

25  7.    This Court would have original jurisdiction over this action pursuant to 28 U.S.C. §

26  1332(a)(1).

27  (A)    Plaintiff Kathleen Hanni is a citizen of the State of California.  Defendant

28  American is a corporation organized under the laws of the State of Delaware and having its

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596931.1                                           3                                  C08-00732 CW
                                   Amended Notice of Removal

1   principal place of business in the State of Texas. Accordingly, this action is between citizens of

2   different States.

3          (B)    It is apparent from the face of Plaintiff's Class Action Complaint that the

4   amount in controversy between Plaintiff and Defendant American exceeds $75,000, exclusive of

5   interest and costs. Plaintiff requests attorneys' fees and punitive damages, and those additional

6   claims must be aggregated with Plaintiffs' request for actual damages to determine the total

7   amount in controversy. *See Bell*, 320 U.S. at 240 (punitive damages); *Galt G/S*, 142 F.3d at 1155-

8   56 (attorneys' fees). With attorneys' fees and punitive damages also in controversy between

9   Plaintiff and American, the total amount in controversy exceeds $75,000, exclusive of interest and

10  costs.

11         (C)    American has attached as Exhibit B the Declaration of James M. Wagstaffe

12  in support of this Amended Notice of Removal. Said declaration states that on Plaintiff's personal

13  case alone, not including moving for class certification or dealing with other class action matters,

14  Plaintiff will place in controversy at least $105,000 in attorneys' fees. In determining the

15  jurisdictional amount, that amount must be added to Plaintiff's claim for compensatory and

16  exemplary damages.

17         (D)    To the extent this action is properly brought as an alleged class action, this

18  Court has supplemental jurisdiction over the alleged claims of all members of the alleged class

19  pursuant to 28 U.S.C. § 1367(a). *ExxonMobil Corporation v. Allapattah Services, Inc.*, 125 S.Ct.

20  2611 (2005).

21     8.    Accordingly, American has also removed this action to this Court pursuant to 28

22  U.S.C. § 1441(a).

23  9.    Intradistrict Assignment. This complaint has been removed to the Oakland Division of the

24  Northern District because the original state court action was filed in the County of Napa.

25  / / /

26  / / /

27  / / /

28  / / /

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596931.1                                    4                          C08-00732 CW
                              Amended Notice of Removal

1  DATED: March 19, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE & COOPER LLP

By: _____
        Jie-Ming Chou
Attorneys for Defendant American Airlines, Inc.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596931.1

5

C08-00732 CW

Amended Notice of Removal

EXHIBIT A

1  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
2    skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
3    jchou@cwclaw.com
   201 California Street, 17th Floor
4  San Francisco, California 94111
   Telephone:    (415) 433-1900
5  Facsimile:    (415) 433-5530

6  Attorneys for Defendant
   AMERICAN AIRLINES, INC.

7

8              UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11 KATHLEEN HANNI, individually and on        CASE NO.
   behalf of all others similarly situated,
12                                            NOTICE OF REMOVAL OF ACTION
              Plaintiff,                       UNDER 28 U.S.C. §§ 1332(d) (Class Action
13                                            Fairness Act of 2005) & 1441(b) (Diversity)
       vs.
14
   AMERICAN AIRLINES, INC., and DOES 1
15 through 20, inclusive,

16            Defendants.

17

18      TO THE CLERK OF THE COURT OF THE NORTHERN DISTRICT OF

19 CALIFORNIA:

20      PLEASE TAKE NOTICE that Defendant AMERICAN AIRLINES, INC. ("American")

21 hereby removes to this Court the state court action described below:

22      1.     Although American has not yet been served with process, it has become aware that

23 on December 28, 2007, an action was commenced in the Superior Court of the State of California

24 in and for the County of Napa, entitled *Kathleen Hanni, individually and on behalf of all others*

25 *similarly situated v. American Airlines, Inc. and DOES 1 through 20, Inclusive*, as Case Number

26 26-40576 ("Complaint") attached hereto as Exhibit "A".

27      2.     This removal is timely under 28 U.S.C. § 1446(b) because American has not yet

28 been served with process in the state court action.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594244.1

1    3.    Jurisdiction. This Court has jurisdiction over this civil action, which is filed as a

2    class action, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) and under

3    this Court's ordinary diversity of citizenship and supplemental jurisdiction, 28 U.S.C. §§ 1332(a)

4    and 1367(a) in that it is a civil action between citizens of different states and the matter in

5    controversy exceeds the sum of $75,000, exclusive of interest and costs.

6    ## Removal Pursuant to the Class Action Fairness Act of 2005

7    4.    This Court has jurisdiction over this civil action, which is filed as a class action,

8    pursuant to 28 U.S.C. § 1332(d) because:

9            (A)    Plaintiff, Kathleen Hanni, is a citizen of the State of California.

10           (B)    Defendant American is a corporation incorporated under the laws of the

11   State of Delaware that has its principal place of business in Forth Worth, Texas.

12           (C)    At least one member of the class of plaintiffs is a citizen of a State different

13   from American within the meaning of 28 U.S.C. § 1332(d)(2)(A). Specifically, Plaintiff is a

14   citizen of the State of California.

15           (D)    Plaintiff filed this action as a "class action" within the meaning of 28 U.S.C.

16   § 1332(d)(1)(b) in that plaintiff pleads that this civil action should be certified as a class action

17   under California Code of Civil Procedure 382.

18           (E)    The claims asserted by the plaintiff class, aggregated as required by 28

19   U.S.C. § 1332(d)(2), exceed the sum of $5,000,000 within the meaning of 28 U.S.C. § 1332(d)(2).

20   More specifically, Plaintiff's Complaint pleads that there are approximately 12,000 members of

21   the alleged class. Plaintiff pleads that "the monetary damages at issue in this case are within the

22   jurisdictional requirements of this court". Complaint at ¶3. Accordingly, Plaintiff has placed in

23   controversy individual damages in excess of the sum of $25,000. On behalf of an alleged class of

24   12,000 members, the total amount in controversy aggregates in excess of $5,000,000. Indeed, the

25   jurisdictional amount is met if each member of the putative class seeks even $420 in damages. In

26   addition, plaintiff also seeks, on behalf of the class, punitive damages and attorneys' fees. In

27   determining the amount in controversy, both punitive damages and attorneys' fees are considered.

28   *E.g., Bell v. Preferred Life Assurance Society,* 320 U.S. 238, 240 (1943) (punitive damages); *Galt*

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594244.1                                        2
                                    NOTICE OF REMOVAL

1  *G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees). Adding

2  plaintiffs' request for punitive damages and attorneys' fees pushes the amount in controversy in

3  this action well above $5,000,000.

4          (F)    The class of unnamed plaintiffs exceeds 100 in number within the meaning

5  of 28 U.S.C. § 1332(d)(5)(B).

6          (G)    The sole defendant is not a State, State official, or other governmental entity

7  within the meaning of 28 U.S.C. § 1332(d)(5)(A).

8      5.    Accordingly, American removes this action from the Superior Court for the State of

9  California, County of Napa, pursuant to 28 U.S.C. § 1453(b).

10  **Removal Pursuant to Diversity of Citizenship and Supplemental Jurisdiction**

11      6.    This Court would have original jurisdiction over this action pursuant to 28 U.S.C. §

12  1332(a)(1).

13          (A)    Plaintiff is a citizen of the State of California. Defendant American is a

14  corporation organized under the laws of the State of Delaware and having its principal place of

15  business in the State of Texas. Accordingly, this action is between citizens of different States.

16          (B)    It is apparent from the face of Plaintiff's Class Action Complaint that the

17  amount in controversy between Plaintiff and Defendant American exceeds $75,000, exclusive of

18  interest and costs. Plaintiff requests attorneys' fees and punitive damages, and those additional

19  claims must be aggregated with Plaintiffs' request for actual damages to determine the total

20  amount in controversy. *See Bell*, 320 U.S. at 240 (punitive damages); *Galt G/S*, 142 F.3d at 1155-

21  56 (attorneys' fees). With attorneys' fees and punitive damages also in controversy between

22  Plaintiff and American, the total amount in controversy exceeds $75,000, exclusive of interest and

23  costs.

24          (C)    American has attached the Declaration of James M. Wagstaffe to this

25  Notice of Removal. Said declaration states that on Plaintiff's personal case alone, not including

26  moving for class certification or dealing with other class action matters, Plaintiff will place in

27  controversy at least $105,000 in attorneys' fees. In determining the jurisdictional amount, that

28  amount must be added to Plaintiff's claim for compensatory and exemplary damages.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594244.1

3

NOTICE OF REMOVAL

1        (D)     To the extent this action is properly brought as an alleged class action, this

2  Court has supplemental jurisdiction over the alleged claims of all members of the alleged class

3  pursuant to 28 U.S.C. § 1367(a). *See ExxonMobil Corporation v. Allapattah Services, Inc.*, 125

4  S.Ct. 2611 (2005).

5       7.     Accordingly, American also removes this action to this Court pursuant to 28 U.S.C.

6  § 1441(b).

7       8.     Intradistrict Assignment. This complaint has been removed to the San Francisco

8  Division of the Northern District because the original state court action was filed in the County of

9  Napa.

10  DATED: January 31, 2008          COOPER, WHITE & COOPER LLP

11

12                        By: _____

13                          Jie-Ming Chou
                          Attorneys for Defendant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594244.1                        4
NOTICE OF REMOVAL

EXHIBIT A

1 | LAW OFFICES OF PAUL S. HUDSON P.C.
4411 Bee Ridge Road #274.
2 | Sarasota, Florida 34233
Telephone: 410-940-8934
3 | Facsimile: 240-391-1923

4 | DAVID G. RAMOS (Bar No. 116456)
LAW OFFICES OF DAVID G. RAMOS
5 | 3266 Villa Lane
Napa, California 94558
6 | Telephone: 707-255-1700
Facsimile: 707-255-3660

7

8 | Attorneys for Plaintiff KATHLEEN HANNI.
Individually and on behalf of all others similarly situated

9

10

**FILED**

DEC 2 8 2007

Clerk of the Napa Superior Court
By: _____
Deputy

CASE MANAGEMENT CONFERENCE
DATE: _Co-09-2008_
TIME: 8:30am
PLACE: Courtroom ___A___
825 Brown Street, Napa CA 94559

11 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

12 | IN AND FOR THE COUNTY OF NAPA

13

14 | KATHLEEN HANNI, individually and on ) No. 26 - 4 0 5 7 6
behalf of all others similarly situated,      )
15 |                                              )
Plaintiff,                 )        CLASS ACTION
16 |                                              )
v.                         )   COMPLAINT FOR FALSE IMPRISONMENT,
17 |                                              )   INTENTIONAL INFLICTION OF EMOTIONAL
AMERICAN AIRLINES, INC.; and DOES 1 )   DISTRESS,   NEGLIGENCE,   BREACH  OF
18 | through 20, inclusive,                       )   C O N T R A C T ,   I N T E N T I O N A L
                                              )   MISREPRESENTATION
19 |         Defendants.                          )
20

21 |         Plaintiff KATHLEEN HANNI, individually, and on behalf of all others similarly

22 | situated, complains against Defendants, and each of them, and alleges as follows:

23 |                                      **Parties**

24 |         1. Plaintiff is a citizen and resident of Napa, Napa County, California.

25 |         2. Defendant American Airlines, Inc. (hereinafter "AA") is a corporation organized

26 | under the laws of Delaware with a principal place of business in Fort Worth, Texas. At all

27 | relevant times hereto, AA was, and is currently, doing in business in the State of California.

28

COMPLAINT FOR FALSE IMPRISONMENT, INTENTIONAL          1
INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENCE, ET AL.

1          3.   The monetary damages at issue in this case are within the jurisdictional

2    requirements of this court.

3                                    **Class Action Allegations**

4          4.   This cause of action is being maintained as a class action pursuant to

5    California Code of Civil Procedure § 382. In that regard, the Plaintiff, on her own behalf and

6    on behalf of a class, alleges the following:

7                         a.   Approximately 12,000 people were affected by the actions of

8    the Defendant as set forth below and therefore the class is so numerous that joinder of all

9    members is impracticable;

10                        b.   There are common issues of law and fact common to the

11   class;

12                        c.   The prosecution of separate actions by individual members of

13   the class would create the risk of inconsistent or varying adjudications among individuals,

14   which may be dispositive of other members claims, thereby impairing or prejudicing the

15   interests of individual class members;

16                        d.   The claims of Kathleen Hanni are typical of the claims of the

17   class members; and

18                        e.   Kathleen Hanni has agreed to serve as class representative

19   and has agreed to fairly and adequately protect the interests of the class.

20         5.   In support of the class action allegations, Plaintiff incorporates by reference

21   the statements and allegations that follow.

22                               **Events of December 29th, 2006**

23         6.   Plaintiff, her husband and her two children purchased tickets for air

24   transportation on AA flight 1348 scheduled to depart from San Francisco, California on

25   December 29th, 2006, at 6:05 AM (Pacific Time) to Dallas (DFW), Texas, connecting to AA

26   flight # 3821 scheduled to depart  DFW at 1:20 PM (Central Time) to arrive in Mobile,

27   Alabama at 2:55 PM (Central Time), for a total expected travel time of 7 hours from

28

1 | departure airport to destination airport. However, the trip actually took over 50 hours due to
2 | Defendant's misconduct detailed below.

3 |         7. Plaintiff boarded the AA aircraft with her family members at 6:20 AM
4 | (Pacific Time) which departed from San Francisco at about 7:00 AM after a short delay due
5 | to mechanical problems.

6 |         8. In route the AA pilot announced the aircraft was being diverted to Austin,
7 | Texas due to weather "but only for a brief time, to allow waves or fingers of weather to move
8 | through" and that "we will be landing in Austin to wait for clearance at DFW so we can be
9 | on our way."

10 |         9. At noon Central Time AA Flight 1348, a filled to capacity MD80, landed in
11 | Austin with Plaintiff and approximately 140 other passengers and flight crew, taxied to an
12 | area away from the terminal that upon information and belief was an AA maintenance ramp.

13 |         10. Plaintiff could see that gates were empty at the terminal, but the AA pilot
14 | reassured the passengers that they would only be 10 to 15 minutes and they would be on
15 | their way.

16 |         11. AA captain Jesse Fodero announces every 15 minutes for 2 ½ hours that it
17 | will be just a few more minutes, but at 1:00 pm another AA airliner Flight 1008 pulled up
18 | beside Flight 1348, followed by AA flights 2414 and 534.

19 |         12. At 2:30 PM (Central Time), AA captain Fodero announced that he had
20 | asked for buses to bring food and potable water to the aircraft and to allow passengers with
21 | destinations near Austin and anyone who wanted to to go to the terminal. Captain Fodero
22 | states that they still expected to take off but had not gotten clearance yet. He promised to
23 | update passengers again in 30 minutes.

24 |         13. A bus arrived at about 2:45 PM, but Captain Fodero ordered that only
25 | elderly, folks with children and disabled will be allowed to deplane, until further buses
26 | arrive. Many passengers stampede to the back of the aircraft to exit, but upon information
27 | and belief the bus only had capacity for 15 passengers and all passengers who do not have
28 |

1 | Austin as a final destination were rejected and forced to remain in the aircraft against their
2 | will.

3 |          14. Captain Fodero then stated that he is very sure that they will take off
4 | shortly and that anyone who exits the aircraft will not be able to get another flight and will
5 | not receive their baggage.

6 |          15. At 3:00 PM (Central Time) Captain Fodero stated that he had received
7 | clearance to take off and land at DFW, but, although the sky was clear and sunny, he stated
8 | he was concerned about lightning and would not take off yet, but expected to soon.

9 |          16. Plaintiff observed as of 3:00 PM there were 13 other AA aircraft lined up
10 | and parked in the same maintenance area as her flight.

11 |          17. At 3:30 PM (Central Time) AA Captain Fodero announced that "this bird is
12 | not going to fly" and then revealed that buses he requested are not coming and that an AA
13 | manager, who upon information and belief is named Al Tinsley, was refusing to permit AA
14 | aircraft to go to a gate to allow passengers to exit the aircraft.

15 |          18. Plaintiff and other passengers express their desire to exit the aircraft but
16 | Captain Fodero claims to be powerless to permit deboarding due to AA management.

17 |          19. At this time, passengers started calling for help on their cell phones, even
18 | though the flight crew had instructed them not to, and some passengers began talking about
19 | popping the emergency exits and running for the terminal, which terrified Plaintiff and other
20 | passengers.

21 |          20. At about 5:00 PM, the Captain opened the cockpit door and allowed
22 | some passengers to hear his communications with AA management and other parked
23 | aircraft. Plaintiff overheard one captain on another parked aircraft state that Hazmat had
24 | been called because a dog had defecated on some passengers and other passengers were
25 | getting sick from the smell. Plaintiff also overheard that all parked aircraft were being told
26 | by AA management that they could not come to the terminal.

27 |          21. At about 6:00 PM toilets were backed up; flight attendants served a half
28 | Dixie cup of water, which upon information and belief was nonpotable water from the

1  lavatory sinks and made some passengers sick, and a small bag of pretzels with about 45

2  calories.

3          22. One passenger told Plaintiff he had missed a funeral and others were

4  expressing their anger and frustration and anxiety at being imprisoned on the aircraft without

5  any justification.

6          23. At about 7:00 PM, Captain Fodero announced that he was embarrassed

7  that AA management would not allow the aircraft to have a gate to return to the terminal and

8  that he did not know what to say anymore.

9          24. Plaintiff observed that AA gates 24 and 25 were empty and available as

10  well as gates of other airlines, but Captain Fodero continued to insist that they could not go

11  to them as did other flight crew members without explanation.

12          25. Plaintiff observed that another parked aircraft flight 534 had its cabin

13  lights out and someone was flashing SOS, and that a group of men passengers who the

14  Plaintiff later learned were US Marines were being arrested on the tarmac for, Plaintiff is

15  informed and believes, getting into a fight to get off their aircraft which had terrified other

16  passengers.

17          26. At about 8:00 PM passengers on Plaintiff's flight were speaking out loudly

18  and angrily and the flight attendants ceased circulating through the cabin to ask people to

19  remain calm but huddled at the front of the aircraft as though they were frightened.

20          27. Captain Fodero continued to repeat that buses and food were coming but

21  nothing came. The Captain also stated that he was talking to the airport managers to get

22  passengers to the terminal, but nothing happened.

23          28. Plaintiff needed to go to the bathroom and went to the first class lavatory

24  as the coach class bathrooms were inoperable, but was told by Captain Fodero who was just

25  exiting the first class lavatory not to enter or enter at her own risk. Plaintiff had to use a

26  disgusting lavatory which was not operable, with the toilet bowl filled with excrement and

27  vomit.

28

29. Plaintiff who had recently been victim of an assault then suffered a mild panic attack and a tightening in her chest and informed the Captain Fodero. Captain Fodero stated that even if she had a heart attack that they would not allow passengers to leave the aircraft, they would just take her off the plane as they were doing with a paraplegic diabetic on another parked aircraft after they had suffering from an attack.

30. Plaintiff observed a pregnant woman with a baby making a diaper out of tee shirt and many other acts of naked survival and physical and emotional distress on the aircraft caused by inhuman conditions being inflicted on her and others similarly situated.

31. As plaintiff was exiting the first class lavatory she overheard Captain Fodero saying that he could not understand why AA would not send anyone to empty the toilets and then he told Plaintiff that the only way that passengers could return to the terminal without AA management permission was if he declared an on board emergency.

32. At about 9:04 PM Captain Fodero declared, upon information and belief after his maximum flight time on duty had expired, an on board emergency and stating that he might lose his job for doing so.

33. Plaintiff's aircraft then proceeded through a series of hair raising turns on active and inactive runways to the terminal where passengers were deplaned at 9:30 PM, after 9.5 hours confined on the tarmac in Austin, over 16 hours without food.

34. In one last announcement, Captain Fodero stated "Please go to baggage claim 3, I promise we will get your bags off this plane quickly and efficiently so you may be on your way. There will be someone from American to help you when you get off the plane." However, there was no one to help, all food service places were closed, and after waiting at the baggage claim area for another 2.5 hours at 11:00 PM the Plaintiff's baggage and others was not unloaded.

35. In the terminal AA personnel informed Plaintiff and other passengers that their bags would not be unloaded and that the flight would be "resumed" at 6:00 AM on December 30th, 2006.

36.. Defendant provided no vouchers or money for food, lodging, or anything else except a $10 hotel discount coupon for passengers who waited in a long line.

37. Plaintiff returned after 4 hours at a hotel to find 1,000 people from the stranded flights all trying to get through ticketing and security as Defendant had issued no tickets or boarding passes to its stranded passengers.

38. Plaintiff was finally advised to get on another flight 1108 by Captain Fodero who stated that "this bird (flight 1348) is not going to fly."

39. Arriving at DFW 20 minutes before the only AA flight to Mobile, Plaintiff was refused boarding even though she had a confirmed reservation by an AA gate agent who also rudely informed her that her baggage was on the flight to Mobile, she and her family would not be allowed to board as the flight was oversold, unless she was "the Queen of England and you are obviously not the Queen of England." Plaintiff then became violently sick to her stomach and vomited.

40. Plaintiff then politely asked that her baggage be removed, but the AA pilot stated that due to weight of too many bags he was involuntarily removing 14 passengers but would not remove any baggage.

41. Plaintiff then politely asked the gate agent and pilot for a hotel voucher, who responded in unison, "Don't blame us for the weather" and summarily rejected her request and neither paid or offered to pay any compensation for being denied boarding.

42. This was in flagrant violation of US DOT bumping rules that require on the spot cash compensation of $400 for the inconvenience plus a ticket refund and alternate transportation and also violated AA's own customer service plan.

43. Plaintiff was then forced to spend another night in a hotel at her expense and finally got on an AA flight on December 31st, 2006 to Mobile to retrieve her baggage, over 50 hours after departing from San Francisco, ruining her vacation, and her husband's business trip.

1      44. Plaintiff was confined to the aircraft against her will on the ground in

2 Austin Texas for approximately 9.5 hours by Defendant, and was not permitted by AA to

3 exit the aircraft until 9:30 PM (Central Time), over 13 hours after boarding the aircraft.

4      45. While confined in the plane on the ground in Austin, Plaintiff was

5 subjected to harsh and abusive treatment and conditions. The toilets became full and would

6 not flush and the stench of human excrement and body odor filled the plane.

7      46. Plaintiff and other passengers were deprived of adequate food and water.

8      47. Plaintiff and other passengers were also deprived of access to

9 medications, nutritional supplements and needs, and hydration especially needed by infirm,

10 elderly and children.

11      48. Plaintiff and other passengers were forced to witness the physical and

12 emotional distress and panic of other passengers causing all passengers to suffer emotional

13 distress and endangering the physical safety of Plaintiff and all passengers.

14      49. The distress of the confined passengers in overcrowded conditions in the

15 aircraft was witnessed by AA flight crew employees and was also reported to AA ground

16 personnel and to Austin airport authorities.

17      50. Approximately 12,000 passengers involving about 100 flights on

18 December 29th, 2006 were confined to aircraft diverted from Dallas by Defendant to other

19 airports and confined for 3 to 12 hours on the aircraft in poor to deplorable conditions by

20 Defendant.

21      51. Plaintiff and other stranded passengers suffered hunger, thirst, anxiety,

22 physical illness, emotional distress and monetary losses as a result of Defendant's failure to

23 permit passengers to exit the aircraft to the airport terminals or to supply the parked aircraft

24 with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at

25 normal temperatures.

26      52. Defendant knew or should have known that passengers needed to be

27 supplied with essential means of comfort and survival on board aircraft, but failed and

28 refused to do so.

53. Defendant had ample advanced warning of weather conditions at Dallas and knew or should have known that it was not able to land aircraft at Dallas (DFW) airport at the capacity it had scheduled on December 29th, 2006 due to transient thunder storms and could have cancelled or delayed from departing many of the flights that it diverted and stranded, thereby preventing the diversions and confinements.

54. With the exception of a few passengers whose destination was the Austin Texas area, AA refused to permit passengers to exit the aircraft even though buses and available gates at the terminal were available to AA.

55. After AA finally permitted Plaintiff and other passengers to exit the aircraft at about 9:30 PM on December 29th, 2006, it "continued" the flight to the next morning and refused to return checked baggage to the passengers.

56. AA then refused to provide payment for overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding.

57. The next morning, after more delays, Plaintiff and other passengers from the flight were flown to Dallas (DWF) airport, where their baggage awaited them.

58. Some passengers who had been diverted, confined and stranded overnight were then denied boarding on connecting flights, and were stranded for another day in Dallas.

### Pattern and Practice of AA Misconduct

59. Defendant AA has not provided reimbursement for passenger expenses, ticket refunds and other forms of compensation to passengers that it diverted and confined on December 29th and 30th, 2006. Defendant has offered only a restricted voucher for future travel and a letter of apology.

60. Defendant did not advise stranded passengers that they could use their AA tickets on another airline for travel to their destinations on December 29th or subsequent thereto, even though an industry convention and rule provides for such when a flight is cancelled or excessively delayed.

1          61. Defendant did not provide ticket refunds or other compensation to

2   passengers that it stranded on December 29th and 30th, 2006.

3          62. Defendant knowingly misrepresented the reasons for the delays and

4   confinements by falsely asserting to passengers and the public that aircraft were not able to

5   take off due to weather or congestion.

6          63. The delays on December 29th, 2006 were actually due to causes within

7   the control of AA and included intentional or negligent lack of personnel, equipment, and

8   planning for ordinary weather disruptions by AA.

9          64. The confinements by AA, upon information and belief, were to avoid

10   expenses and lawful obligations to passengers associated with strandings, diversions and

11   canceled flights and for AA's and its officers, employees, agents and stockholders own

12   pecuniary gain at the expense of Plaintiff and other passengers.

13          65. While Plaintiff and other passengers were confined to their aircraft in

14   Austin and other diverted airports, other flights of Defendant and other airlines were taking

15   off and landing without significant delays.

16          66. Upon information and belief, the Dallas (DFW) airport was only closed to

17   air traffic for approximately 2.5 hours from 2:00 PM to 4:30 PM on December 29th, 2006.

18          67. Upon information and belief, AA has a corporate policy, practice and

19   pattern of confining and imprisoning passengers on aircraft of excessively delayed or

20   cancelled flights for excessive periods of time to prevent "passenger migration" and this

21   unlawful practice was used against Plaintiff and other similarly situated passengers by

22   Defendant's employees and agents on December 29th, 2006.

23          68. Upon information and belief, AA has inflicted its practices of confining

24   and imprisoning passengers for over 3 hours to prevent "passenger migration" on over ten

25   thousand other passengers since December 29th, 2006, including another mass stranding in

26   April 2007.

27          69. By unlawfully confining Plaintiff and other passengers diverted from

28   Dallas on December 29th, 2006 in inhuman conditions, AA avoided ticket refunds, overnight

1  lodging and meal expenses for passengers, alternate transportation expenses, including on

2  other airlines that under an industry convention and practice will honor tickets of a

3  defaulting airline and back charge the defaulting airline, ground transportation expenses,

4  terminal employee overtime and staffing expenses, and other expenses normally associated

5  with mass strandings and cancellations.

6         70.  Defendant could have permitted passengers to exit the aircraft after the

7  diversions on December 29th, 2006 but failed and declined to do so for its own pecuniary

8  gain.

9         71.  Upon information and belief, some passengers after the confinements

10  ended were forced by Defendant to fly to destinations that they not longer wished or needed

11  to travel to, but were forced to do so by Defendant who did not permit them to exit the

12  aircraft and obtain alternate transportation to another destination or to return home.

13        72.  Other passengers were forced under duress not to abandon their travel

14  with AA on December 29th and 30th, 2006 because AA refused to return their checked

15  baggage, even after promising to do so after finally permitting passengers to exit the aircraft

16  the evening of December 29th, 2006.

17        73.  Passengers on the Defendant's diverted flights had their travel delayed up

18  to 3 days after December 29th, 2006 due to non-weather conditions that were within the

19  control of Defendant without compensation for passenger expenses and losses by AA.

20        74.  Upon information and belief, Defendant was not prevented or prohibited

21  from permitting passengers to exit or re-supply and service the aircraft in Austin or other

22  diverted airports by the Federal Aviation Administration air or ground controllers or by

23  airport management, or other government authorities.

24                          **FIRST CAUSE OF ACTION**

25                            (False Imprisonment)

26        75.  Plaintiff hereby incorporates by reference as though set forth in full, the

27  allegations of paragraphs 1 through 74, inclusive.

28

76. Plaintiff and other passengers similarly situated were deprived of their personal liberty by Defendant for over 3 hours against their will without legal justification.

77. As a proximate result of the false imprisonment of Plaintiff and others similarly situated, Plaintiff and others similarly situated suffered serious injury to their persons, emotional distress, loss of time, physical discomfort, inconvenience and missed employment opportunities, all to their damage in an amount within the jurisdiction of this court to be established according to proof at trial.

78. The actions of Defendant herein alleged were fraudulent, malicious and oppressive and, consequently Plaintiffs, and those similarly situated, are entitled to an award of punitive damages.

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

79. Plaintiff hereby incorporates by reference as though set forth in full, the allegations of paragraphs 1 through 78, inclusive.

80. Defendant intended or knew or should have known that emotional distress to Plaintiff and others similarly situated was the likely result of its conduct.

81. Defendant's conduct was outrageous, extreme, beyond the bounds of decency and is intolerable in a civilized community.

82. The acts and/or omissions of the Defendant were the cause of Plaintiff's distress and the distress of others similarly situated.

83. The emotional distress was so severe that no reasonable person could be expected to endure it, wherefore Defendant is guilty of the tort of outrage, intentional or negligent infliction of emotional distress or prima facie tort.

84. The acts and/or omissions of the Defendant as set forth above were the proximate cause of damages to Plaintiff and others similarly situated, which damages are in an amount in excess of the jurisdictional limits of this Court, the exact amount of which will be established according to proof at trial.

1    85.  In doing the acts herein alleged, the defendants acted with fraud, malice

2  and oppression and Plaintiff, and all those similarly situated, are therefore entitled to an

3  award of punitive damages according to proof at trial.

4    WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

5    ### THIRD CAUSE OF ACTION

6    (Negligence)

7    86.  Plaintiff hereby incorporates by this reference as though set forth in full,

8  the allegations of paragraphs 1 through 85, inclusive.

9    87.  Defendant as an operator offering air transportation to the general public

10  owed a duty to Plaintiff and others similarly situated of due care, to use best efforts to bring

11  passengers safely to their destinations, to plan for weather related disturbances in its flight

12  operations, and to refrain from mistreatment of them with unjustified involuntary

13  confinement, deprivation of passengers' baggage and stranding in remote locations.

14    88.  Defendant breached its duties to Plaintiff and others similarly situated on

15  December 29th and 30th, 2006, and its conduct was in reckless disregard its duty owed to

16  Plaintiff and similarly situated passengers.

17    89.  Defendant's conduct was the proximate cause of damage and losses to the

18  Plaintiff and others similarly situated.

19    WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

20    ### FOURTH CAUSE OF ACTION

21    (Breach of Contract)

22    90.  Plaintiffs hereby incorporate as though set forth in full, the allegations of

23  paragraphs 1 through 89, inclusive.

24    91.  Defendant has filed with the US Department of Transportation, published

25  on its web site, and referenced on its tickets "conditions of carriage" and a "Customer

26  Service Plan".  These documents cannot be copied at this time, but will be made available

27  to the Court and the Defendant.

28

92. Upon information and belief, the aforementioned documents form a contract between the Defendant and Plaintiff and others similarly situated. Plaintiff and others similarly situated have performed all obligation to be performed on their part under the terms of the contract.

93. Defendant, by its conduct on December 29th, 2006 and subsequent thereto, breached its Contract with Plaintiff and others similarly situated in various ways, including but not limited to breach of the implied covenant of good faith and fair dealing, provisions relating to Delays, Cancellations, and Diversion Events, Essential Customer Needs During Extraordinary Delays, Ticket Refunds, Flights with Oversales, and Baggage Delivery and Liability.

94. As a result of Defendant's breach of contract, Plaintiff and others similarly situated have sustained damages as more fully set forth below.

WHEREFORE, plaintiff prays for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Deceit/Fraud)

95. Plaintiffs hereby incorporate as though set forth in full, the allegations of paragraphs 1 through 94, inclusive.

96. Plaintiff knowingly deceived Plaintiff and others similarly situated when It made representations as to the causes and justifications for the diversions (paragraphs 8 & 41 above), schedule changes (paragraph 8 above), confinements (paragraphs 12, 18, 27 and 29 above), expected departure times (paragraphs 11, 12, 14, 15 & 35), and baggage delivery (paragraph 34) on December 29th and 30th, 2006. The statements were in fact false.

97. Plaintiff and others similarly situated, at the time the statements were made by Defendant were ignorant of the falsity of the statements made by Defendant and relied to their detriment on the false and deceptive statements of Defendants.

98. Defendant, upon information and belief, sought to deceive and defraud Plaintiff and others similarly situated for Defendant's pecuniary gain, and specifically with intent to fraudulently invoke a Force Majeure clause in its contract with Plaintiff by falsely

1 | asserting a weather emergency as justification for the extreme delays, confinements, and

2 | other mistreatment of passengers and to avoid other liabilities to Plaintiff for its misconduct.

3 | 99. As a proximate result of the fraudulent conduct of the Defendant, Plaintiff

4 | and those similarly situated have been damaged in an amount which satisfies the

5 | jurisdictional limits of this court in an amount to be established according to proof at trial.

6 | 100. The aforementioned conduct was an intentional misrepresentation,

7 | deceit and/or concealment of facts known to Defendant in conscious disregard of Plaintiffs

8 | rights and well being such as to constitute oppression, fraud or malice entitling Plaintiff and

9 | those similarly situated to an award of punitive damages according to proof.

10 | WHEREFORE, plaintiffs pray for judgment against defendants, and each of

11 | them, as follows:

12 | 1. For general and compensatory damages on all causes of action according to

13 | proof at trial;

14 | 2. For punitive and exemplary damages on the First, Second, and Fifth causes

15 | of action according to proof at trial;

16 | 3. For reasonable attorneys fees according to law and proof at trial;

17 | 4. For costs of suit herein; and

18 | 5. For such other and further relief as the Court may deem just and proper.

19 |

20 | Dated: December 28, 2007          LAW OFFICES OF DAVID G. RAMOS

21 |

22 | By: _____
     DAVID G. RAMOS

23 | Attorneys for Plaintiff KATHLEEN HANNI,
     individually and on behalf of all others similarly

24 | situated

25 |

26 |

27 |

28 |

1

## PROOF OF SERVICE

2      I am a resident of the State of California. I am over the age of eighteen years, and not a
party to this action. My business address is 201 California Street, Seventeenth Floor, San

3  Francisco, California 94111-5002.

4      On January 31, 2008, I served the following document(s):

5  **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332(D) (CLASS
   ACTION FAIRNESS ACT OF 2005) & 1441(B) (DIVERSITY)**

6

on each of the parties listed below at the following addresses:

7

Law Offices of Paul S. Hudson P.C.          David G. Ramos, Esq.
8  4411 Bee Ridge Road #274                    Law Offices of David G. Ramos
   Sarasota, Florida 34233                     3266 Villa Lane
9                                              Napa, California 94558

10

11  **BY FEDEX:** On the date specified above in San Francisco County, as to each of the parties
   identified in the above service list, I deposited in a box or other facility regularly maintained by
12  the overnight service carrier, or delivered to a courier or driver authorized by said overnight
   service carrier to receive documents on its behalf, a true copy of the above-referenced document(s)
13  in a sealed envelope or package designated by the overnight service carrier, with delivery fees paid
   or provided for.

14
      I declare under penalty of perjury under the laws of the State of California that the
15  foregoing is true and correct.

16      Executed on January 31, 2008, at San Francisco, California.

17

18      _____
      Melissa Batchelder

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594343.1

EXHIBIT B

1  COOPER, WHITE & COOPER LLP
   JIE-MING CHOU (SBN 211346)
2    jchou@cwclaw.com
   STEPHEN KAUS (SBN 57454)
3    skaus@cwclaw.com
   201 California Street, 17th Floor
4  San Francisco, California  94111
   Telephone:    (415) 433-1900
5  Facsimile:    (415) 433-5530

6  Attorneys for Defendant

7

8              UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11 KATHLEEN HANNI, individually and on           CASE NO.
   behalf of all others similarly situated,
12                                               DECLARATION OF JAMES
                  Plaintiff,                     WAGSTAFFE IN SUPPORT OF
13                                               DEFENDANT AMERICAN AIRLINES,
        vs.                                      INC.'S NOTICE OF REMOVAL
14
   AMERICAN AIRLINES, INC., and DOES 1
15 through 20, inclusive,

16                Defendants.

17

18 I, JAMES M. WAGSTAFFE, hereby declare:

19       1.      I am a licensed attorney and partner with the law firm of Kerr & Wagstaffe LLP

20 located at 100 Spear St #1800, San Francisco, CA 94105.  I am an active member in good standing

21 of the State Bar of California, and have been since 1980.  I have personal knowledge of the

22 matters set forth in this declaration, except for those facts which are alleged on information and

23 belief, and as to those facts, I believe them to be true.  I could and would testify competently

24 thereto if called as a witness.

25       2.      I have been retained in this case by attorneys with the Cooper, White & Cooper

26 LLP law firm, who are counsel for defendant American Airlines, Inc. ("AA"), to review Plaintiff's

27 class action complaint for False Imprisonment, Intentional Infliction of Emotional Distress,

28 Negligence, Breach of Contract, and Deceit/Fraud ("Complaint"), filed on or about December 28,

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594245.1

Declaration of James Wagstaffe in Support of Defendant's Notice of Removal

1  2007 in Napa Superior Court, Case No. 26-40576, and to evaluate certain claims made in the

2  Complaint. I have also been asked to render opinions related to Plaintiff's claims. In particular, I

3  have been asked to render an opinion as to whether the nature of Plaintiff's claims, including

4  Plaintiff's claim for attorneys fees and expenses, in all reasonable probability would exceed the

5  amount of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS), in light of the Plaintiff's

6  claims, the complexity of the case as plead, the range of damages available should Plaintiff

7  prevail, and the nature of the attorneys fees and expenses that Plaintiff's counsel would have to

8  incur in pursuit of such claims.

9      3.    My specific legal qualifications and experience are set forth on my current resume,

10  which is attached to this affidavit as Exhibit A and incorporated by this reference.

11      4.    Based on my professional experience and judgment, it is my opinion that: (a)

12  Plaintiff's claims for damages and for attorneys fees and expenses in all reasonable probability will

13  exceed the amount of Seventy-Five Thousand Dollars ($75,000.00 ) for pursuit of Plaintiff's

14  individual claims alone, even if this case is not certified as a class action; and (b) in all reasonable

15  probability, Plaintiff will incur more than Seventy-Five Thousand Dollars ($75,000.00) in

16  attorneys fees even prior to the Court's determination whether this case should be certified as a

17  class action.

18      5.    In reaching these opinions I have reviewed the following: the allegations contained

19  in Plaintiff's Complaint; the relevant California Rules of Civil Procedure pertinent to Plaintiff's

20  claims in the Complaint; reported cases decided under those relevant California procedural

21  statutes; rulings from the U.S. Supreme Court and the Ninth Circuit Court of Appeals, which have

22  concluded that when determining the amount in controversy both punitive damages and attorneys

23  fees are considered in determining the jurisdictional amount. *See Bell v. Preferred Life Assurance*

24  *Society of Montgomery, Ala.,* 320 U.S. 238, 240 (1943) (punitive damages); *Galt G/S v. JSS*

25  *Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys fees).

27      6.    In reaching these opinions, I have also relied on my professional experience of

28

COOPER, WHITE & COOPER LLP

594245.1                          2
Declaration of James Wagstaffe in Support of Defendant's Notice of Removal

1  more than twenty-seven years as a commercial litigator in the State of California as set forth in

2  part in Exhibit A to this affidavit. I have extensive experience in litigating putative class action

3  cases involving all types of claims and allegations.

4          7.       Based upon my professional experience and judgment, I anticipate that counsel for

5  Plaintiff will undertake and incur the following time and resources investments in prosecuting the

6  Complaint, up to but not including trial and trial preparation:

7          a. Up to thirty (30) hours in performing a thorough pre-suit investigation and

8  drafting the Complaint.

9          b. Up to fifty (50) hours in responding to a motion to dismiss the Complaint on

10  jurisdictional grounds, in particular that the claims are preempted by federal law and/or primary

11  jurisdiction rests with an administrative agency and, therefore, the action should be dismissed for

12  lack of subject-matter jurisdiction.

13          c. Up to forty (40) hours in responding to other dispositive motions, including those

14  based upon affirmative defenses, e.g. waiver (based upon Plaintiff's failure to comply with the

15  provisions of the Conditions of Carriage), and based upon failure to establish a contract breach,

16  e.g. the Complaint references the provisions of the contract "upon information and belief," see ¶

17  57, and further proof of the terms of the allegedly breached contract will be limited by the doctrine

18  of parole evidence, which is a substantive rule of law.

19          d. Up to one hundred (100) hours taking depositions of various personnel to

20  support the claims.  Even assuming the court does not grant leave to exceed the FRCP 30(a)(2)(A)

21  limit of ten depositions, I would expect Plaintiff's counsel to depose up to ten (10) individuals,

22  including: FAA ground controller(s), FAA air controllers, management at the Austin, Texas

23  airport, American Airlines personnel allegedly causing delays, representatives of other airlines and

24  airports, and, American Airlines' captain, crew, and operators involved in the December 29, 2006

25  flight.

26          e. Up to thirty-five (35) hours preparing for the taking of depositions.

27          f. Up to sixteen (16) hours attending and defending the depositions of Plaintiff and

28  one testifying expert retained by Plaintiff's counsel.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
01 CALIFORNIA STREET
.N FRANCISCO, CA 94111

594245.1                                    3
Declaration of James Wagstaffe in Support of Defendant's Notice of Removal

1           g. Up to ten (10) hours preparing for the depositions of Plaintiff and consulting

2    with expert(s).

3           h. Up to thirty (30) hours preparing and propounding various written discovery

4    requests.

5           i. Up to thirty (30) hours preparing responses to written discovery requests.

6           j. Up to twenty (20) hours resolving potential discovery issues, including filing and

7    responding to motions relating to discovery issues.

8        8.    I am not familiar with Plaintiff's counsel, but would conservatively expect

9    Plaintiff's counsel to request an hourly rate of $350 per hour given his years of practice and the

10    complexity of the case.   Plaintiff's counsel will almost certainly expend at a minimum 300 hours

11    prior to any class certification hearing in this matter.   Therefore without regard to recoverability,

12    reasonableness, or necessity in any ultimate award of attorneys fees to Plaintiff in my opinion, it is

13    beyond question Plaintiff's "claim" for attorneys fees will exceed $75,000.00 prior to any class

14    determination in this case.  Plaintiff's claim for attorneys fees will exceed that amount at the

15    conclusion of the case, even if class certification is denied and only Plaintiff's individual claims

16    are litigated.

17        I declare the foregoing to be true under penalty of perjury.  This declaration was executed

18    at San Francisco, California on January 3 1 , 2008.

19

20

21    James M. Wagstaffe

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
101 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594245.1                                                          4

EXHIBIT A

KERR
&
WAGSTAFFE
LLP

Home
About Us
Attorneys
Practice Areas & Cases
In the News
Contact

H. Sinclair Kerr, Jr.
James M. Wagstaffe
Michael von Loewenfeldt
Ivo Labar
Keith K. Fong
Holly Hogan
Michael Ng
Adrian J. Sawyer

# Attorneys



 Download vCard

## James M. Wagstaffe

Jim, partner and co-founder, handles diverse litigation emphasizing professional and governmental representation, business litigation, First Amendment matters, and media cases. He represents individual and corporate clients in federal and state actions, and specializes in the firm's intellectual property and First Amendment practice areas.

**Educational Background**

In 1977, Jim received his B.A. degree with distinction from Stanford University. In 1980, Jim received his J.D. degree from the University of California, Hastings College of the Law (San Francisco), where he was honored for his achievements in moot court competition.

Following law school, Jim served as a judicial law clerk for the Honorable Spencer Williams in the United States District Court for the Northern District of California.

**Super Lawyer**

In December 1999, California Lawyer named Jim as one of its Top Twenty Lawyers of the Year. Jim also was added to the 2007 list of Northern California Super Lawyers, an honor given to the top 5% of attorneys practicing in Northern California.

**Federal Civil Procedure Expert**

Jim is a nationally-known speaker on federal civil procedure and is considered to be an authority on that subject. He is an instructor at the Federal Judicial Center's "New Judges Workshops," educating newly-appointed federal judges on all aspects of federal procedure. Jim's numerous publications include the widely-used *Federal Civil Procedure Before Trial (TRG 2005 - Three Volumes)*, Removal and Remand; Commencing Actions in Federal Court, *"Much Ado About Doe Defendants," 5 Cal. Lawyer; and "Life After Remand,"* Federal Litigation. He also co-authored the Summary of California Ethics Rules. Jim is a frequent lecturer and moderator for programs on federal civil procedure presented by the *Rutter Group.*

**Important Cases, Important Results**

Jim's cases reflect the depth of his experience and ability to obtain results, particularly in complex and novel areas of the law. For example, he represented the State Bar of California before the California Supreme Court. *Warden v. State Bar of California*, 21 Cal. 4th 628 (1999). In that case, he successfully defended the State Bar against a constitutional challenge to the Bar's

requirements for continuing legal education for lawyers in
California. Jim also successfully defended the State Bar in
separate federal and state court lawsuits that challenged the
constitutionality of the California Legislature's decision to allow
only California-resident lawyers to vote and sit in elections for the
State Bar Board of Governors. *Hoffman v. State Bar of California*,
113 Cal. App. 4th 630 (2003).

Jim also is one of the most sought after First Amendment lawyers
in the country. His First Amendment and media experience is
exemplified by his successful defense of The New Yorker
Magazine in the libel trial *Masson v. New Yorker*, 832 F. Supp.
1350 (N.D. Cal. 1993), aff'd 85 F.3d 1394 (9th Cir. 1996) held in
the U.S. District Court for the Northern District of California. He
has successfully defended numerous broadcasters, newspapers,
and magazines at trial, on summary judgment, and under
California's Anti-SLAPP (Strategic Lawsuits Against Public
Participation) statute.

Recently, Jim represented sex.com in a dispute with
Verisign/Network Solutions over their mishandling of the famous
domain name. He successfully obtained a sweeping victory from
the Ninth Circuit Court of Appeals in a landmark decision with far
reaching implications in all areas of Internet infrastructure.
*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003).

**Author, Speaker, Professor**

In addition to his legal publications Mr. Wagstaffe also has
authored Romancing the Room (Three Rivers Press), an adroit,
step-by-step guide to public speaking. Most recently, Mr.
Wagstaffe was a contributing author to The Expert's Guide to 100
Things Everyone Should Know How to Do alongside fellow
contributors Donald Trump, Larry King, and Ira Glass, among
others. Jim is an in-demand speaker for both private and public
speaking engagements.

Sharing knowledge and experience within the legal community is
core to the firm's belief system. To further reinforce this belief, Jim
is committed to teaching graduate and undergraduate level
students. Jim is an adjunct professor in constitutional law and civil
procedure at Hastings College of the Law and in Media Law at
San Francisco State University. He has also taught the Practical
Speech Communication course at Stanford University for over 25
years.

**Awards and Recognition**

In addition to the previously mentioned honors, in 2004, Jim
shared a Peabody Award for his copyright contributions to the
PBS documentary, The DNA Files.

In 1991, he received the prestigious James Madison Freedom of
Information Award from The Society of Professional Journalists.

**Published and Westlaw Cases**

Click here to see all cases.

**Personal Information**

As a native of the Bay area, Jim lives in Burlingame with his wife, Karen and their four children.

**Contact:**
wagstaffe@kerrwagstaffe.com

Kerr & Wagstaffe LLP, 100 Spear Street, Suite 1800, San Francisco, CA 94105      TEL: 415.371.8500  FAX: 415.371.0500

© 2005 Kerr & Wagstaffe LLP. All rights reserved. Term of Use

1

## PROOF OF SERVICE

2      I am a resident of the State of California. I am over the age of eighteen years, and not a
party to this action. My business address is 201 California Street, Seventeenth Floor, San

3   Francisco, California 94111-5002.

4      On January 31, 2008, I served the following document(s):

5   **DECLARATION OF JAMES WAGSTAFFE IN SUPPORT OF DEFENDANT
AMERICAN AIRLINES, INC.'S NOTICE OF REMOVAL**

6

on each of the parties listed below at the following addresses:

7
Law Offices of Paul S. Hudson P.C.          David G. Ramos, Esq.

8   4411 Bee Ridge Road #274                     Law Offices of David G. Ramos
Sarasota, Florida 34233                      3266 Villa Lane

9                                                Napa, California 94558

10

**BY FEDEX:** On the date specified above in San Francisco County, as to each of the parties

11  identified in the above service list, I deposited in a box or other facility regularly maintained by
the overnight service carrier, or delivered to a courier or driver authorized by said overnight

12  service carrier to receive documents on its behalf, a true copy of the above-referenced document(s)
in a sealed envelope or package designated by the overnight service carrier, with delivery fees paid

13  or provided for.

14     I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

15

16     Executed on January 31, 2008, at San Francisco, California.

17

18  _____
Melissa Batchelder

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594343.1