1   Locke Lord Bissell & Liddell LLP
    Michael V. Powell (TX SBN 16204400) (appearance *pro hac vice*)
2     mpowell@lockelord.com
    2200 Ross Avenue, Suite 2200
3   Dallas, Texas  75201-6776
    Telephone:    (214) 740-8520
4   Facsimile:    (214) 756-8520

5   COOPER, WHITE & COOPER LLP
    STEPHEN KAUS (SBN 57454)
6     skaus@cwclaw.com
    JIE-MING CHOU (SBN 211346)
7     jchou@cwclaw.com
    201 California Street, 17th Floor
8   San Francisco, California  94111
    Telephone:    (415) 433-1900
9   Facsimile:    (415) 433-5530

10  Attorneys for Defendant, American Airlines, Inc.

11

12              **UNITED STATES DISTRICT COURT**

13       **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

14

15  KATHLEEN HANNI, individually and on      CASE NO. C08-00732 CW
    behalf of all others similarly situated,
16                                           **DEFENDANT AMERICAN AIRLINES,**
                                             **INC.'S OBJECTIONS TO AND MOTION**
17                 Plaintiff,                **TO STRIKE DECLARATIONS OF**
                                             **KATHLEEN HANNI AND PAUL**
18        vs.                                **HUDSON**

19  AMERICAN AIRLINES, INC., and DOES 1
    through 20, inclusive,
20                                           Date:  April 24, 2008
                   Defendants.               Time:  2:00 p.m.
21                                           Courtroom: 2, 4th Floor

22          Defendant American Airlines, Inc. ("American Airlines")files this Objections and Motion

23  to Strike the Declarations of Kathleen Hanni ("Hanni") and Paul S. Hudson ("Hudson"), which

24  were submitted in support of Plaintiff Kathleen Hanni's Motion to Remand, and would

25  respectfully show the Court as follows:

26                **I. Introduction and Summary of Objections**

27          Plaintiff Hanni filed this purported class action on behalf of approximately 12,000

28  passengers of American Airlines who were traveling on December 29, 2006.  Defendant American

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597817..2                                1                          C08-00732 CW
        OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS

1  removed to this Court on January 31, 2008, pursuant to 28 U.S.C. § 1453(b).

2       Hanni subsequently filed a Motion to Remand. In support of that motion, Hanni submitted

3  her own declaration (the "Hanni Declaration") and the declaration of her attorney Hudson (the

4  "Hudson Declaration"). Both sworn statements purport to present evidence about the number of

5  potential class members, the citizenship of such class members, and the aggregate total damages in

6  this case. This testimony is based solely on "information and belief" and, as such, is inadmissible

7  speculation. In addition, the citizenship of the putative class members is irrelevant to the propriety

8  of remand.

9                      **II. Legal Standard**

10       Pursuant to Local Rule 7-5(b), any affidavit made in support of or in opposition to any

11  motion must conform as much as possible to the requirements of F. R. Civ. P. 56(e), and must

12  avoid conclusions and argument. Any statement made upon information or belief must specify the

13  basis therefore. An affidavit or declaration not in compliance with this rule may be stricken in

14  whole or in part.

15       Under Rule 56(e), an affidavit must contain information that would be admissible at trial.

16  See 10B Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 2738 (3d ed.

17  2008). Rule 56(e) further limits the information in an affidavit to facts based on personal

18  knowledge. *Id.* Thus, conclusory facts and conclusions of law, as well as statements made on

19  belief or "on information and belief," cannot be utilized. *Id.* Similarly, the mere re-argument of a

20  party's case or the denial of an opponent's allegations will be disregarded. *Id.*

21            **III. Specific Objections to the Hanni and Hudson Declarations**

22  **A.**    <u>**Specific Objections to Hanni Declaration**</u>

23       1.    <u>Hanni Declaration ¶ 2 – Lack of Personal Knowledge; Speculation; Irrelevant</u>: In

24  Paragraph 2, Hanni testifies that she is a citizen of California and "upon information and belief the

25  majority of others similarly situated are also citizens of California." The quoted testimony is

26  inadmissible because statements made "on information and belief" are not "based on personal

27  knowledge, but rather on speculation." *De la O v. Housing Authority of City of El Paso*, 417 F.3d

28  495, 501-502 (5th Cir. 2005); *see also Stephens v. Sullivan*, Nos. 88-15202, 88-15332 and 88-

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597817.2       2       C08-00732 CW
OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS

1    15333, 1992 WL 357122, *4 (9th Cir. Dec. 4, 1992); *Page v. Children's Council*, No. C 06-3268

2    SBA, 2006 WL 2595946, *5 (N.D. Cal. Sept. 11, 2006).  Because Hanni has no personal

3    knowledge regarding the citizenship of "others similarly situated," her testimony is pure

4    speculation.  The statement should be excluded for lack of personal knowledge of the subject

5    matter under Fed. R. Evid. 602.

6        The citizenship of the putative class members is also irrelevant to the Court's decision to

7    remand because Defendant American Airlines is not a citizen of California, the state where suit

8    was filed.  American Airlines is a corporation organized under the laws of Delaware with its

9    principal place of business in Texas, making it a citizen of Delaware and Texas.  See 28 U.S.C.

10    § 1332(c)(1).  Plaintiff can only invoke this Court's discretion to decline to exercise jurisdiction

11    under 28 U.S.C. § 1332(d)(3) if more than one third of all proposed plaintiffs <u>and the primary</u>

12    <u>defendants</u> are citizens of the state where suit was filed.  Because American Airlines is not a

13    citizen of the state where suit was filed, the citizenship of the putative class members is irrelevant

14    to this Court's decision to remand.

15        2.    <u>Hanni Declaration ¶¶ 3-4 – Lack of Personal Knowledge; Hearsay</u>:  In Paragraphs

16    3-4, Hanni purports to provide a factual predicate for her assumption that a majority of the

17    purported class of 12,000 are California citizens.  Hanni's inference is unreasonable, however, and

18    is solely based on Hanni's own unilateral, straw poll efforts.  Hanni testifies:  "The basis for this

19    belief is that…I met or was contacted by over 50 other persons who had a similar experience on

20    other American Airlines flights….36 [of whom had] California telephone numbers."

21        Hanni's ability to collect 36 California telephone numbers in no way supports her

22    inference that more than 6,000 potential plaintiffs (a majority of the purported class of 12,000) are

23    California citizens.  See *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal

24    knowledge may include reasonable inferences, those inferences … must not be flights of fancy,

25    speculations, hunches, intuitions, or rumors….") (quotations omitted).  Moreover, Hanni's polling

26    methods for soliciting these California telephone numbers are unreliable as Hanni does not

27    describe either her method of collecting data or the pool from which that data was collected.

28    Hanni's statements in paragraphs 3 and 4 should be excluded for lack of personal knowledge of

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597817.2             3             C08-00732 CW
OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS

1  the subject matter under Fed. R. Evid. 602.

2       3.    Hanni Declaration ¶ 7 – Lack of Personal Knowledge; Irrelevant:  Finally, in

3  Paragraph 7, Hanni testifies:  "I am not seeking individual damages in this lawsuit in excess of

4  $75,000."  This statement is irrelevant to the question of the amount in controversy, as it does not

5  constitute a binding stipulation to limit damages.  This statement provides no limitation on a fact

6  finder's damage award, and Plaintiff does not indicate that she would not accept damages in

7  excess of that amount.  Further, plaintiffs' post-removal affidavits purporting to limit the amount

8  in controversy do not defeat removal.  See *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S.

9  283, 291 (1938) (cited with approval by *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699

10  (9th Cir. 2007)).

11       Plaintiff further testifies in Paragraph 7:  "I do not know whether the aggregate total

12  damage claims will exceed $5 million should this case be certified as a class action."  This

13  statement is nothing more than an admission that Hanni lacks personal knowledge about the

14  aggregate total damages, and has no tendency to make any fact "more probable or less probable."

15  This statement should be excluded for lack of personal knowledge and relevancy under Fed. R.

16  Evid. 602 and 401.

17  **B.    Specific Objections to the Hudson Declaration**

18       1.    Hudson Declaration ¶ 10 – Lack of Personal Knowledge; Speculation:  In

19  Paragraph 10, Hudson testifies that "The number of potential class members is likely to be less

20  than 12,000 based on information learned since the complaint was filed…."  However, Hudson

21  does not describe the nature or content of the "information learned," nor does he explain how he

22  has personal knowledge of such information.  Statements made "on information and belief" are

23  not "based on personal knowledge, but rather on speculation."  *Housing Authority*, 417 F.3d at

24  501-02.  Moreover, an affidavit of the opposing party's attorney which does not contain specific

25  facts or is not based on firsthand knowledge is not entitled to any weight by the court.  *Wyler v.*

26  *U.S.*, 725 F.2d 156, 160 (2nd Cir. 1983); *see also Hoston v. J. R. Watkins Co.*, 300 F.2d 869, 870

27  (9th Cir. 1962).  Hudson's statement about the number of potential class members should be

28  excluded for lack of personal knowledge of the subject matter under Fed. R. Evid. 602.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597817.2                                    4                          C08-00732 CW
OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS

2.    <u>Hudson Declaration ¶ 11 – Irrelevant</u>: In Paragraph 11, Hudson testifies: "It is also not possible for the Plaintiff and the court to know for certain whether more than one third of the class members or even over two thirds are citizens of California, which would then involve discretion by this Court...." As mentioned above with respect to Hanni's statement regarding the citizenship of the class members, the citizenship of the class members is irrelevant to the Court's decision to remand because Defendant American Airlines is not a citizen of the state where suit was filed. Under 28 U.S.C. § 1332(d)(3), this Court's discretion to decline to exercise jurisdiction exists only if more than one third of all proposed plaintiffs and the primary defendants are citizens of the state where suit was filed. Because American Airlines, the only defendant, is not a citizen of California, Hudson's statement about whether "one third of the class members or even over two thirds" are citizens of California is irrelevant to this Court's decision to remand.

## IV. Conclusion

For the foregoing reasons, Defendant American Airlines, Inc., requests that the Court enter an Order striking the Hanni and Hudson Declarations submitted in support of Plaintiffs' Motion to Remand.

Dated:  April 2, 2008

Respectfully submitted.
COOPER, WHITE & COOPER LLP

Jie Ming Chou
Attorneys for American Airlines, Inc.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597817.2                                    5                              C08-00732 CW
OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS

**PROOF OF SERVICE**

I am a resident of the State of California. I am over the age of eighteen years, and not a party to this action. My business address is 201 California Street, Seventeenth Floor, San Francisco, California 94111-5002.

On April 2, 2008, I served the following document(s):

1. **DEFENDANT AMERICAN AIRLINES, INC.'S OBJECTIONS TO AND MOTION TO STRIKE DECLARATIONS OF KATHLEEN HANNI AND PAUL HUDSON**

2. **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT OF AMERICAN AIRLINES, INC.'S OPPOSITION TO PLAINTIFF'S TO MOTION TO REMAND**

3. **DECLARATION OF MICHAEL POWELL IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

4. **DECLARATION OF ALEC BRAMLETT IN SUPPORT OF DEFENDANT AMERICAN AIRLINES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

on each of the parties listed below at the following addresses:

Law Offices of Paul S. Hudson P.C.          David G. Ramos, Esq.
4411 Bee Ridge Road #274                    Law Offices of David G. Ramos
Sarasota, Florida 34233                     3266 Villa Lane
                                            Napa, California 94558

**BY FIRST CLASS MAIL:** I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On the date specified above, as to each of the parties identified in the above service list, a true copy of the above-referenced document(s) were placed for deposit in the United States Postal Service in a sealed envelope, with postage fully prepaid; and on that same date that envelope was placed for collection in the firm's daily mail processing center, located at San Francisco, California following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 2, 2008, at San Francisco, California.

Gina R. Rivera

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

594988.1

1    LOCKE LORD BISSELL & LIDDELL LLP
     MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
2      mpowell@lockelord.com
     2200 Ross Avenue, Suite 2200
3    Dallas, Texas  75201-6776
     Telephone:  (214) 740-8520
4    Facsimile:  (214) 756-8520

5    COOPER, WHITE & COOPER LLP
     STEPHEN KAUS (SBN 57454)
6      skaus@cwclaw.com
     JIE-MING CHOU (SBN 211346)
7      jchou@cwclaw.com
     201 California Street, 17th Floor
8    San Francisco, California  94111
     Telephone:      (415) 433-1900
9    Facsimile:      (415) 433-5530

10   Attorneys for DEFENDANT AMERICAN
     AIRLINES, INC.
11

12                  **UNITED STATES DISTRICT COURT**

13        **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

14

15   KATHLEEN HANNI, individually and on       CASE NO. C 08-00732 CW
     behalf of all others similarly situated,
16                                             **MEMORANDUM OF POINTS AND**
                                               **AUTHORITIES IN SUPPORT OF**
17              Plaintiff,                     **DEFENDANT OF AMERICAN**
                                               **AIRLINES, INC.'S OPPOSITION TO**
        vs.                                    **PLAINTIFF'S TO MOTION TO REMAND**
18
19   AMERICAN AIRLINES, INC., and DOES 1
     through 20, inclusive,
20
               Defendants.

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                                          C 08-00732 CW
          AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1

**TABLE OF CONTENTS**

2

Page

3    I. INTRODUCTION .................................................................................................1

4    II. DISCUSSION .....................................................................................................2

5        A.    Jurisdiction Under the Class Action Fairness Act .................................2

6              1.    Undisputed Elements of CAFA Jurisdiction................................2

7              2.    The Alleged Dispute:  CAFA Amount in Controversy. .............3

8              3.    The "Local Controversy" Exceptions to CAFA Jurisdiction Do Not
                     Apply.........................................................................................9

9        B.    Diversity Jurisdiction Over Plaintiff's Individual Claim .......................10

10   III. CONCLUSION AND PRAYER ........................................................................12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                    i                          C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

Abrego Abrego v. The Dow Chemical Co.,
    443 F.3d 676 (9th Cir. 2006) ............................................................................................3, 4

Bankhead v. American Suzuki Motor Corp.,
    529 F. Supp. 2d 1329, 2008 U.S. Dist. LEXIS 965 at *7-8 (M.D. Ala. Jan. 7, 2008)...........5

Bell v. Preferred Life Assur. Society,
    320 U.S. 238 (1943)................................................................................................................7

Brill v. Countrywide Home Loans, Inc.,
    427 F.3d 446 (7th Cir. 2005) .................................................................................................4

Cohn v. Petsmart, Inc.,
    281 F.3d 837 (9th Cir. 2002) .................................................................................................5

Davis v. Chase Bank U.S.A., N.A.,
    453 F. Supp.2d 1205 (C.D. Cal. 2006) ..................................................................................5

ExxonMobil Corp. v. Allapattah Services, Inc.,
    545 U.S. 546 (2005)...........................................................................................................1, 12

Frederico v. Home Depot,
    507 F.3d 188 (3d Cir. 2007)...................................................................................................4

Gafford v. General Electric Co.,
    997 F.2d 150 (6th Cir. 1993) .................................................................................................1

Galt G/S v. JSS Scandanavia,
    142 F.3d 1150 (9th Cir. 1998) ...............................................................................................7

Guglielmino v. McKee Foods Corp.,
    506 F.3d 696 (9th Cir. 2007) .................................................................................................4

In re Minnesota Mutual Life Ins. Co. Sales Practices Litig.,
    346 F.3d 830 (8th Cir. 2003) .................................................................................................5

Loudermilk v. U.S. Bank Nat'l Ass'n.,
    479 F.3d 994 (9th Cir.  2007) ................................................................................................4

Ongstad v. Piper Jaffray & Co.,
    407 F. Supp. 2d 1065 (D.N.D. 2006).....................................................................................9

Osborne v. Sitton Motor Lines, Inc.,
    No. 4:07CV-2-M, 2007 U.S. Dist. LEXIS 17076 at *5 (W.D. Ky. Mar. 2, 2007)............5, 7

Randle v. Smithkline Beecham Corp.,
    338 F. Supp. 2d 704 (S.D. Miss. 2004)................................................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1  Rising-Moore v. Red Roof Inns, Inc.,
       435 F.3d 813 (7th Cir. 2006) ....................................................................................5
2
   Sayre v. Potts,
3      32 F. Supp. 2d 881 (S.D. W. Va. 1999) ...................................................................6

4  Serrano v. 180 Connect, Inc.,
       478 F.3d 1018 (9th Cir. 2007) ..................................................................................9
5
   Simmons v. PCR Technology,
6      209 F. Supp. 2d 1029 (N.D. Cal. 2002) .............................................2, 5, 7, 8, 10

7  St. Paul Mercury Indemnity Co. v. Red Cab Co.,
       303 U.S. 283 (1938)..........................................................................................2, 10
8
   USX Corp. v. Adriatic Ins. Co.,
9      345 F.3d 190 (3d Cir. 2003)......................................................................................1

10 Willingham v. Morgan,
       395 U.S. 402 (1969) ..................................................................................................1
11

12                                       Statutes and Rules

13 28 U.S.C. § 1332(a) ...........................................................................................................3, 10

14 28 U.S.C. § 1332(a)(1)........................................................................................................1, 12

15 28 U.S.C. § 1332(d) .................................................................................................................1

16 28 U.S.C. § 1332(d)((2) ...........................................................................................................3

17 28 U.S.C. § 1332(d)(1)(b)........................................................................................................2

18 28 U.S.C. § 1332(d)(2)(A) .......................................................................................................2

19 28 U.S.C. § 1332(d)(4) ...........................................................................................................10

20 28 U.S.C. § 1332(d)(4)(A)(II)(cc) ...........................................................................................9

21 28 U.S.C. § 1332(d)(4)(B) .......................................................................................................9

22 28 U.S.C. § 1332(d)(5)(A) .......................................................................................................3

23 28 U.S.C. § 1332(d)(5)(B) .......................................................................................................2

24 28 U.S.C. § 1367(a) ...........................................................................................................1, 12

25 28 U.S.C. §1332(d)(11)(B)(i) ...................................................................................................3

26 Cal. Civ. Pro. Code § 86 ..........................................................................................................3

27 Cal. Civ. Pro. Code § 88 ..........................................................................................................3

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                        iii                        C 08-00732 CW
                   AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1

<u>Other Authorities</u>

2   13B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE
        § 3624 at 611 (2d ed. 1984) ...................................................................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                   iv                    C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1

# I. **INTRODUCTION**

2     Defendant American Airlines, Inc. ("American") opposes Plaintiff Kathleen Hanni's

3  Motion to Remand this putative class action to California state court.  American properly removed

4  this action to federal court, and this Court has subject matter jurisdiction over this action pursuant

5  to both the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d),  and the ordinary

6  diversity jurisdiction statute, 28 U.S.C. § 1332(a)(1), which establishes jurisdiction over Plaintiff's

7  individual claims.[1]

8     American's Opposition to Plaintiff's Motion to Remand is based on Plaintiff's allegations

9  in Plaintiff's Complaint ("Complaint") (Docket No. 1 at p. 6); American's Notice of Removal

10  (Docket No. 1); the Declaration of Michael V. Powell, filed herewith, which authenticates a

11  settlement demand letter from Plaintiff's counsel; and the Declaration of James Wagstaffe, filed in

12  support of American's Notice of Removal (Docket No. 3).  American also incorporates the Powell

13  Declaration with the attached Plaintiff's settlement demand letter into this Response to Plaintiff's

14  Motion to Remand.

15     American requests the Court to consider the Powell Declaration that is filed herewith,

16  insofar as it authenticates the Plaintiff's settlement demand letter, and that settlement demand

17  letter, as amendments to American's Notice of Removal.[2]  Courts, including the United States

18  Supreme Court, have deemed affidavits or other evidence filed in opposition to a motion to

19  remand to be amendments to the removal petition. *See, e.g., Willingham v. Morgan*, 395 U.S. 402,

20  407 n.3 (1969); *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 203-05 (3d Cir. 2003): *Gafford v.*

21  _____

22     [1]Because the Court has diversity jurisdiction over plaintiff's individual claims, the Court has
   supplemental jurisdiction over the putative class members' claims under 28 U.S.C. § 1367(a).
23  *ExxonMobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558-560 (2005).

24     [2]On March 19, 2008, American formally moved the Court for leave to amend its Notice of
   Removal, and that motion, along with American's proposed Amended Notice of Removal, remain
25  pending before the Court.  (Docket No. 28).  By Order entered March 25, 2008, the Court denied
   American's Application for an Order Shortening the Time for Plaintiff to file her opposition to
26  American's Motion for Leave to Amend its Notice of Removal, but the Court stated in that Order
27  that "Defendant may include in its opposition to Plaintiff's motion to remand any facts and
   argument related to the letter from Plaintiff to Defendant dated March 3, 2008." (Docket No. 33).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                1                          C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1 | *General Electric Co.*, 997 F.2d 150, 164 n.6 (6th Cir. 1993).

2 |      American has also filed with this Opposition certain Objections to and Motion to Strike

3 | Parts of the Declarations of Kathleen Hanni and Paul S. Hudson, plaintiff's counsel, filed in

4 | support of Plaintiff's Motion to Remand. American requests the Court to consider and rule on its

5 | Objections and Motion to Strike.

6 | **II. DISCUSSION**

7 |      This Court has subject matter of jurisdiction of this action under CAFA and the ordinary

8 | diversity jurisdiction statute for the reasons set forth in the Amended Notice of Removal and this

9 | Response.

10 | **A.  Jurisdiction Under the Class Action Fairness Act**

11 |      1.  <u>Undisputed Elements of CAFA Jurisdiction.</u>

12 |      From the allegations in Plaintiff's Complaint, there is no dispute about the following

13 | requirements for subject matter jurisdiction under CAFA:

14 |      (a)  There is minimal diversity.  Paragraphs 1 and 2 of Plaintiff's Complaint allege that

15 | Plaintiff is a citizen of California and defendant American is a Delaware corporation with its

16 | principal place of business in Texas.  28 U.S.C. § 1332(d)(2)(A).

17 |      (b)  Plaintiff filed this action as a putative class action under California Civil Procedure

18 | Code § 382.  *See* Complaint ¶¶ 4-5.  28 U.S.C. § 1332(d)(1)(b).

19 |      (c)  The putative class of unnamed plaintiffs exceeds 100 in number.  Indeed, plaintiff's

20 | Complaint pleads that the alleged class includes "approximately 12,000 people."  Complaint ¶¶

21 | 4(a), 50.  28 U.S.C. § 1332(d)(5)(B).  Plaintiff's lead attorney, Mr. Hudson, filed a declaration in

22 | support of plaintiff's Motion to Remand in which he avers that "the number of potential class

23 | members is likely to be less than 12,000 based on information learned since the complaint was

24 | filed" (Docket No. 21 ¶ 4), but Mr. Hudson's declaration cannot supplant, for jurisdictional

25 | purposes, the allegations in Plaintiff's Complaint at the time of removal.  *See, e.g., St. Paul*

26 | *Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938); *Simmons v. PCR Technology*,

27 | 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) ("Jurisdictional facts are assessed on the basis of

28 | plaintiff's complaint at the time of removal.").

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1           2           C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1    (d)    American, the sole defendant, is not a State, State official, or other governmental

2    entity. 28 U.S.C. § 1332(d)(5)(A).

3        Consequently, these elements of CAFA jurisdiction are established.

4        2.    The Alleged Dispute:  CAFA Amount in Controversy.

5        Plaintiff's argument that the Court lacks subject matter jurisdiction is based entirely on her

6    contention that American has failed to establish that "the matter in controversy exceeds the sum or

7    value of $5,000,000 in jurisdiction, exclusive of interest and costs," within the meaning of 28

8    U.S.C. § 1332(d)((2).

9        Although Plaintiff's Complaint does not allege, in one place, a specific amount in

10    controversy for the putative class she seeks to represent, one reasonably can ascertain an amount

11    in controversy from plaintiff's own allegations in the Complaint.  In paragraph 3 of her Complaint,

12    Plaintiff alleges that "the monetary damages at issue in this case are within the jurisdictional

13    requirements of this [California Superior] Court."  In paragraph 99, plaintiff alleges that "Plaintiff

14    and those similarly situated have been damaged in an amount which satisfies the jurisdictional

15    limits of this court in an amount to be established according to proof at trial."  Complaint ¶ 99.

16    Plaintiff's California Superior Court Complaint was, in California court, an "unlimited civil case,"

17    for which the amount in controversy exceeds $25,000.  Cal. Civ. Pro. Code §§ 86, 88; *see Abrego*

18    *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 688 (9th Cir. 2006).  So, if one multiplies the

19    number of "similarly situated" members of the putative class of American passengers alleged in

20    plaintiff's Complaint, which is "approximately 12,000," times $25,000, the minimum amount in

21    controversy, plaintiff's Complaint places the amount in controversy for her putative class in the

22    hundreds of millions of dollars.[3]

23    _____

24        [3]This analysis is very similar to the Ninth Circuit's analysis of the aggregate amount placed in
controversy by the mass action complaint in *Abrego Abrego*, 443 F.3d at 688-89.  In *Abrego*

25    *Abrego*, however, the Court held that Dow had failed to establish that any one plaintiff had

26    $75,000 in controversy, which is required under CAFA for a *mass action*, but not for a class
action.  *Compare* 28 U.S.C. §1332(d)(11)(B)(i) (stating "except that jurisdiction shall exist only

27    over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements
under subsection (a) [28 U.S.C. § 1332(a)] *with* 28 U.S.C. § 1332(d)(2) (which governs class

28    (footnote continued)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                    3                                C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1      But assuming those are insufficient allegations of the amount in controversy, American has

2   shown far more. Plaintiff's Complaint does not plead a specific amount in controversy between

3   the putative class and American. Neither does the Complaint plead there is any upward limit on

4   the amount in controversy. Rather, the Complaint pleads for judgment in "an amount to be

5   established according to proof at trial." Complaint ¶¶ 77, 84, 89, 94, 99 and Prayer for Relief ¶ 1.

6   Accordingly, under Ninth Circuit precedent, American, as the removing party, must demonstrate

7   by a preponderance of the evidence that plaintiff's class allegations place in excess of $5 million

8   in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (Hanni's

9   Complaint fits within the "second situation" described in *Guglielmino*); *Abrego Abrego,* 443 F.3d

10  at 683.[4]

11      American's obligation is only to demonstrate the amount *in controversy*, and nothing else.

12  As the Seventh Circuit has explained:

13      The question is not what damages the plaintiff will recover, but what amount is "in

14  controversy" between the parties. That the plaintiff may fail in his proof and the judgment be less

15  than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero)

16  does not prevent removal. Once the proponent of jurisdiction has set out the amount in

17  controversy, only a "legal certainty" that the judgment will be less forecloses federal jurisdiction.

18  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (CAFA removal).

19

20  _____

actions and requires only an aggregate amount in controversy).

21      The Third Circuit recently conducted a very similar analysis of the allegations in a plaintiff's
22  class action complaint and held the CAFA "amount in controversy" satisfied. *Frederico v. Home
    Depot*, 507 F.3d 188, 198-99 (3d Cir. 2007).

23
    [4]On page 4 of her Memorandum, plaintiff contends that the applicable test is "legal certainty,"
24  rather than "preponderance of the evidence," citing *Loudermilk v. U.S. Bank Nat'l Ass'n.*, 479
    F.3d 994, 1000 (9th Cir. 2007). But as the Ninth Circuit made clear in its later opinion in
25  *Guglielmino*, 506 F.3d at 699-700, the *Loudermilk* "legal certainty" standard applies only when
    the complaint at issue affirmatively alleges that the aggregate amount in controversy for all
26  putative class members is less than $5 million. Hanni's Complaint does not make that allegation.
    This case is governed by the "preponderance of the evidence" standard. *Guglielmino*, 506 F.3d at
27  699.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                4                                C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1    In addition to the analysis of the allegations in plaintiff's Complaint, as set forth above,

2  there are the other items of evidence in the record before the Court that establish the requisite

3  amount in controversy under CAFA.  On March 3, 2008, only 32 days after American removed

4  this action to this Court and before any discovery had been done, plaintiff's lead attorney, Mr.

5  Hudson, sent American an unsolicited settlement demand (Exhibit 1 to Powell Declaration, filed

6  herewith).  That settlement demand establishes *in several ways* that plaintiff concedes that her

7  Complaint places more than $5 million in controversy for her class action allegations[5]:

8    (1)    The settlement demand establishes a proposed tiered settlement, with passengers

9  confined more than seven hours receiving $10,000, and lesser tiers down to $2,000 for passengers

10  confined for more than two, but less than four, hours.  If one applies *only* the least costly tier, *i.e.*,

11  the $2,000 tier, to the 12,000 passengers the Complaint alleges were in the putative class, the

12  amount in controversy is $24 million.  As set forth above, plaintiff cannot now quibble, for

13  jurisdictional purposes, with the number of alleged class members pleaded in her Complaint, but

14  even if one were to cut the number of alleged class members by half, the amount in controversy,

15  under the least costly reading of plaintiff's settlement demand, would still be $12 million.

16    (2)    The demand letter says Mr. Hudson will "cap" the global settlement amount at $5

17  million for this case, and another $5 million for the *Ray* case, which is a near-identical case he

18  filed in Arkansas before he filed this *Hanni* action in California.[6]  American has attached a copy of

19

20    [5]It is well-established that the plaintiff's evaluation of her own case in a settlement demand is

21  evidence of the amount plaintiff places into controversy in the action.  *See, e.g., Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1032

22  n. 2 (N.D. Cal. 2002).  *Accord, Rising-Moore v. Red Roof Inns, Inc.*, 435 F. 3d 813, 816 (7th Cir. 2006) (plaintiff's counsel's settlement range "estimate is close in spirit to the *ad damnum* in a

23  complaint;  it makes sense to give it the same legal status"); *In re Minnesota Mutual Life Ins. Co.*

24  *Sales Practices Litig.*, 346 F.3d 830, 834-35 (8th Cir. 2003); *Davis v. Chase Bank U.S.A., N.A.*, 453 F. Supp.2d 1205, 1209 (C.D. Cal. 2006); *Bankhead v. American Suzuki Motor Corp.*, 529 F.

25  Supp. 2d 1329, 2008 U.S. Dist. LEXIS 965 at *7-8 (M.D. Ala. Jan. 7, 2008); *Osborne v. Sitton*

26  *Motor Lines, Inc.*, No. 4:07CV-2-M, 2007 U.S. Dist. LEXIS 17076 at *4-5 (W.D. Ky. Mar. 2, 2007); *Simmons*, 209 F. Supp. 2d at 1032 n.2.

27    [6]American removed the *Ray* case to the United States District Court for the Western District of

28  Arkansas, where it is pending as Civil Action No. 5:08-cv-05025-RTD.  In accordance with Local (footnote continued)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1    5    C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1  the First Amended Complaint in the Arkansas *Ray* action Exhibit 2 to the Powell Declaration filed

2  with this Response so the Court can see that the *Ray* case involves exactly the same events on

3  December 29, 2006, that are pleaded in the Complaint in this action, and exactly the same

4  purported class of 12,000 American passengers on that date. So, based on the demand letter, there

5  obviously is a minimum of $10 million in controversy between American and the alleged plaintiff

6  class of its passengers who were diverted and delayed on December 29, 2006, due to

7  thunderstorms at the Dallas-Fort Worth International Airport ("DFW Airport"). Indeed, the

8  settlement demand expressly states "a common fund would be established in the amount of $10

9  million." Mr. Hudson gets to his $5 million "cap" in this case only by dividing the total amount in

10 controversy for the same putative class and same alleged events between two near-identical

11 lawsuits.

12      (3)     Even if the Court focuses only on the $5 million "cap" specifically identified for

13 this action in the settlement demand, that amount is *the amount for which plaintiff says she would*

14 *have settled the action,* not the amount *in controversy.* "Parties routinely offer and accept

15 settlement amounts significantly below the total amount placed into controversy by the case in

16 order to avoid the risks that accompany a trial." *Sayre v. Potts*, 32 F. Supp. 2d 881, 888 (S.D. W.

17 Va. 1999). *See* Judge Easterbrook's discussion of this point in *Rising-Moore v. Red Roof Inns,*

18 *Inc.*, 435 F.3d 813, 816-17 (7th Cir. 2006). Indeed, Mr. Hudson's settlement demand says "[a]

19 settlement at this stage would also relieve AA of the risk of a much larger jury award," and that it

20 also "would relieve the plaintiffs of the risk of an unfavorable outcome based on legal or

21 procedural defenses, or on the merits." Thus, the "capped" settlement demand of $5 million for

22 this case is a discounted, compromise sum, and is less than the total amount plaintiff believes she

23 could get by way of jury verdict if this case is tried. That larger amount, which clearly exceeds $5

24 million, is the amount Plaintiff's Complaint places in controversy.

25      Several courts have remarked that a settlement demand by plaintiff "falling just below the

26

27 Rule 3-13, American filed in this Court a Notice of Pendency of the earlier-filed *Ray* case.
   (Docket No. 11).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                    6                        C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1  jurisdictional threshold tends to suggest that the amount in controversy exceeds this threshold."

2  *Osborne v. Sitton Motor Lines, Inc.*, No. 4:07CV-2-M, 2007 U.S. Dist. LEXIS 17076 at *5 (W.D.

3  Ky. Mar. 2, 2007) (citing cases).  In this action, if Plaintiff discounted the amount she has placed

4  in controversy by her class allegations by only $1 to make her class settlement demand for this

5  action, which she "capped" at $5 million, the requisite amount in controversy exists.

6  (4)     In addition to a $5 million demand for settling with the putative class in this case,

7  plaintiff's settlement demand makes demand for "attorney fees of $250,000 or 10% of the total

8  amount paid out to plaintiffs and class members whichever is greater."  The demand requires that

9  American pay a minimum of $250,000 in attorneys' fees, in addition to the $5 million cap for

10  settling with the putative class.  If Plaintiff intended for her attorneys fees to be paid out of a $5

11  million settlement with the putative class, there would have been no reason even to mention

12  attorneys' fees in the letter because American would have no stake or interest in whatever amount

13  the Court might allow would-be class counsel to receive from any $5 million fund made available

14  for settlement with the putative class.

15  Plaintiff's Complaint also clearly pleads for recovery of attorneys' fees *from American*, in

16  addition to damages for plaintiff and the putative class.  "Wherefore, plaintiffs pray for judgment

17  against defendants, and each of them, as follows: . . . For reasonable attorneys fees according to

18  law and proof at trial."  Prayer for Relief ¶ 1.[7]  Plaintiff's demand for attorneys' fees is included in

19  ascertaining the amount in controversy for federal jurisdiction.  *E.g., Galt G/S v. JSS Scandanavia*,

20  142 F.3d 1150, 1155-56 (9th Cir. 1998); *Simmons*, 209 F. Supp. 2d at 1034-35.[8]

21

22

23  [7]Despite what she prays for in her Complaint, plaintiff seems to argue in her Motion to
    Remand that she is not legally entitled to recover attorneys' fees from American. *See* Plaintiff's
24  Memorandum p. 3 (Docket No. 22).  But she stops short of forever withdrawing the demands in
    her Complaint for recovery of attorneys' fees from American.

25  [8]Plaintiff's claim in her Complaint for punitive damages must also be counted in ascertaining
    the amount in controversy. *See* Complaint ¶ 100 and Prayer for Relief at ¶ 2.  *E.g., Bell v.*
26  *Preferred Life Assur. Society*, 320 U.S. 238, 240 (1943); *Simmons*, 209 F.Supp.2d at 1033).
    Although plaintiff seems to criticize her own punitive damages claim as "rank conclusory
27  allegations" (see Plaintiff's Memorandum at p. 3), she does not forever withdraw that claim.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                          7                          C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1         (5)    Finally, the March 3, 2008 demand letter lists, as the first matter Mr. Hudson took

2    into account in making plaintiff's settlement demand, "the settlement of the 1999 Northwest

3    Airlines stranding case."[9]  In his declaration filed February 28, 2008 (Docket No. 21), a few days

4    before the settlement demand, Mr. Hudson had already provided American and the Court his

5    report about the Northwest settlement.  Mr. Hudson says the Northwest case was a class action

6    "arising out of a stranding and confinement of passengers in Detroit in 1999," and that it is "the

7    only other similar case" of which he is aware.  He reports the settlement amounts were between

8    $1,000 and 2,000 per passenger claim, that there was approximately a class of 7,000, and that the

9    total settlement approximated $7.15 million.

10       In determining the amount in controversy in this action, this Court may consider awards or

11   settlements in similar cases.  *See, e.g., Simmons,* 209 F. Supp.2d at 1033-34.  For whatever reason,

12   Mr. Hudson has provided his report about the Northwest case, which he says is a similar case, for

13   the Court's consideration.  If the Court analogizes even from the low end of the settlement range

14   Mr. Hudson reports for the Northwest case, which was $1,000 per class member, that provides

15   substantial support for the proposition that there is at least $12 million placed in controversy by

16   this action.

17       For each of these reasons, the CAFA jurisdictional amount in controversy is established by

18   a preponderance of the evidence in the record before this Honorable Court.  Indeed, there is

19   nothing to create a fact question with respect to the evidence American has outlined above.

20   Plaintiff has offered no evidence that her class allegations, in fact, place less than $5 million in

21   controversy.  The most she says is that she does "not know ...the aggregate total of damage

22   claims."  *See* Hanni Declaration at ¶ 7.  Plaintiff certainly holds open the possibility that she might

23   later contend that the amount she has placed in controversy does, in fact, exceed $5 million.  *See*

24   Plaintiff's Memorandum at 5.

25   

26      [9]Plaintiff's Motion to Remand reports the Northwest case, settled in 2001, was remanded to

27   state court.  Plaintiff's Memorandum at 4-5.  CAFA did not become effective until February 18,
2005.

28   

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1        8        C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1    Plaintiff cites *Ongstad v. Piper Jaffray & Co.*, 407 F. Supp. 2d 1065 (D.N.D. 2006), in

2    support of her motion to remand, but that case does not help her. The plaintiff's complaint alleged

3    unauthorized securities trading losses in one transaction of $14,702 and mentioned two additional

4    transactions alleging unspecified damages. *Id.* at 1091. Defendant's proof consisted of the gross

5    value of assets under management by its North Dakota offices, but the court concluded that there

6    is "no inherent correlation between the total value of the assets and the amount of damages

7    sustained as a result of unauthorized transactions." *Id.* at 1092. The plaintiff's state court

8    complaint alleged that the proposed class would exceed seventy-five, and the defendant provided

9    no evidence to show the class would exceed one hundred. *Id* at 1092 n. 4. There was simply no

10   evidence in *Ongstad* sufficient to prove the CAFA jurisdictional amount.

11   That is not the case here. This Court has CAFA jurisdiction.

12   3.   The "Local Controversy" Exceptions to CAFA Jurisdiction Do Not Apply.

13   Plaintiff's Memorandum at 5:28-6:4 and Paragraph 11 of the Declaration of Paul S.

14   Hudson suggest that it is somehow relevant to this motion whether one third or "even over two

15   thirds" of the putative class members are citizens of California. This is an attempt to invoke the

16   local controversy exception to CAFA jurisdiction in 28 U.S.C. §1332(d)(3). However, this

17   exception requires that  the primary defendants are citizens of the State in which the action was

18   originally filed." 28 U.S.C. §§ 1332(d)(3); 1332(d)(4)(A)(II)(cc); 1332(d)(4)(B). This is not

19   remotely the case here since American is a Delaware corporation with its principal place of

20   business in Texas. Plaintiff has the burden to establish the applicability of any of these "local

21   controversy" exceptions. *See, e.g., Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir.

22   2007) ("[T]he party seeking remand bears the burden to prove an exception to CAFA's

23   jurisdiction"). Plaintiff's Complaint alleges that American has "a" principal place of business in

24   Texas. Complaint ¶ 2. As a matter of law, a corporation may have only one principal place of

25   business. See, e.g., Capitol Indemnity Corp. v. Russellville Steel Co., 367 F. 3d 831, 835 (8th Cir.

26   2004); 13B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3624 at 611

27   (2d ed. 1984) ("Section 1332(c) clearly requires that every corporation must have one—but only

28   one—principal place of business."). (Emphasis in original). Accordingly, the allegations of

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                    9                              C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1    plaintiff's Complaint establish for jurisdictional purposes that American is not a citizen of

2    California. See also Declaration of Alec Bramlett in Support of American's Opposition to Motion

3    to Remand filed herewith, which sets forth additional relevant facts establishing Texas as

4    American's principal place of business. None of the "local controversy" exceptions apply, and

5    plaintiff's ruminations about whether two-thirds of the American passengers diverted from DFW

6    Airport and delayed on December 29, 2006, might have been citizens of California simply have no

7    relevance to any jurisdictional issue.

8    **B.    Diversity Jurisdiction Over Plaintiff's Individual Claim**

9            Plaintiff does not deny that diversity of citizenship exists for her individual claims. *See*

10   Complaint ¶¶ 1-2. Her argument, again, is that American has not proved that her Complaint

11   places the requisite amount in controversy. For plaintiff's individual claims, the amount in

12   controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

13           Plaintiff's contention is that she has stated, in her Declaration filed to support her Motion

14   to Remand, that "her individual damages claim including attorneys' fees and any punitive damages

15   is less than $75,000." Plaintiff's Memorandum at 2; *see* Hanni Declaration ¶ 7.[10] Filing a post-

16   removal declaration purporting to reduce the amount in controversy simply does not work, and it

17   has not worked for a long time. As the Supreme Court wrote in 1938, "[a]nd though, as here, the

18   plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the

19   claim below the requisite amount, this does not deprive the district court of jurisdiction." *Red Cab*

20   *Co.*, 303 U.S. at 292. *See also Simmons*, 209 F. Supp.2d at 1033 ("Such statements are likely to

21   manipulate the amount in controversy to secure jurisdiction in the desired court. The court gives

22   little credence to plaintiff's post-removal statements.").

23   _____

24           [10]Actually, Hanni's Declaration does *not* say that Hanni *will not accept* damages, attorneys'
     fees, and punitive damages exceeding $75,000. The Declaration says only that "I am *not seeking*
25   individual damages in this lawsuit in excess of $75,000 including attorney fees and punitive
     damages." (Hanni Declaration ¶ 7, Docket No. 23, emphasis added). Despite what Hanni says
26   she is "seeking," her Complaint requests the Court, time and again, to enter judgment for damages
     "in an amount to be established according to proof at trial." Complaint ¶¶ 77, 84, 85, 99, 100 and
27   Prayer for Relief.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                    10                            C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1    Rather, the allegations in Plaintiff's Complaint control, and her Complaint does not limit

2  the total of her individual claims for damages, attorneys' fees, and punitive damages to less than

3  $75,000, which is what she now seeks to do by her post-removal Declaration. The Complaint

4  states only to the effect that "Plaintiff . . . [has] been damaged in an amount which satisfies the

5  jurisdictional limits of this court in an amount to be established according to proof at trial."

6  Complaint ¶¶ 77, 84, 89, 94, 99. Although that amount on the minimum side of the range is

7  $25,000, the amount on the maximum side is unlimited.

8    On top of Ms. Hanni's prayers for judgment for her alleged compensatory damages, her

9  Complaint *also* pleads for judgment for attorney fees and punitive damages to be recovered from

10  American. Plaintiff's pleading for compensatory "damages" under each of her alleged causes of

11  action in her Complaint plainly do not include attorneys' fees or punitive damages. *See* Complaint

12  ¶¶ 77, 84, 89, 94, 99. For three of plaintiff's alleged causes of action, she adds an additional

13  paragraph that places unlimited punitive damages at issue. *See* Complaint ¶¶ 78, 85, 100. And,

14  she also requests judgment against American for "reasonable attorneys fees according to law and

15  proof at trial." *See* Complaint at Prayer for Relief ¶ 3.

16    American has filed the Declaration of Mr. James M. Wagstaffe, an experienced San

17  Francisco lawyer, which states that in Mr. Wagstaffe's professional opinion, and for the reasons he

18  states, plaintiff will incur more than $75,000 in attorneys' fees and expenses in prosecuting her

19  individual claims prior to the time the Court determines whether this action may be maintained as

20  a class action. (Docket No. 3). That amount in controversy for attorneys' fees boosts the total

21  amount in controversy for Hanni's individual claim well over $75,000, without any consideration

22  of punitive damages. *See, e.g., Randle v. Smithkline Beecham Corp.*, 338 F. Supp. 2d 704, 711

23  (S.D. Miss. 2004).[11] If one adds any amount for alleged punitive damages at issue -- assume only

24

---

25    [11]Mr. Hudson's Declaration states that his fee agreement with Ms. Hanni is a contingency fee
  agreement and that "she is not expected to incur hourly attorneys' fees." That is not the issue.
26  The issue is what is the reasonable amount of attorneys' fees the Complaint places in controversy
  against being sought against American, and that must be determined by the type of analysis Mr.
27  Wagstaffe presents for the Court.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1  $50,000 -- the amount in controversy again exceeds $75,000.

2  Plaintiff's settlement demand letter of March 3, 2008, demands $74,900 for settlement of

3  Ms. Hanni's individual case. As discussed above under American's discussion of CAFA

4  jurisdiction, that demand is for a discounted *settlement* of her claims, and that demand

5  demonstrates that there is a greater amount in controversy. As Mr. Hudson's letter states,

6  settlement of the case now "would relieve the plaintiffs of the risk of an unfavorable outcome

7  based on legal or procedural defenses, or on the merits." If one reasonably placed a value of even

8  $101 on those risks (which would value the risk at less than 1% of $74,900), Ms. Hanni's demand

9  for a *settlement* in the amount of $74,900 places more than $75,000 *in controversy* for Ms.

10  Hanni's individual case.

11  Accordingly, this Court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) over

12  plaintiff Ray's individual claims against American, and supplemental jurisdiction under 28 U.S.C.

13  § 1367(a) for the claims of the putative class members. *ExxonMobil Corp. v. Allapattah Services,*

14  *Inc.*, 545 U.S. 546, 558-560 (2005).

15  ### III. CONCLUSION AND PRAYER

16  American requests that the Court deny plaintiff's Motion to Remand this action to

17  California Superior Court. This Court has federal subject matter jurisdiction in two independent

18  ways, and there is no basis for remand.

19  American also requests the Court to deny plaintiff's premature request for discovery. The

20  discovery plaintiff requests is not relevant to this Court's subject matter jurisdiction. As discussed

21  above, the number of California citizens in the putative class has no bearing on jurisdiction

22  because plaintiff fails to meet the other necessary requirement for the "local controversy"

23  exceptions to CAFA jurisdiction, which is that American must be a citizen of California, and it is

24  not. Furthermore, plaintiff's Complaint pleads the approximate number of members in the

25  putative class, and the Complaint establishes the jurisdictional facts it states. Plaintiff could not

26  destroy this Court's jurisdiction by filing a post-removal amendment, or post-removal evidence,

27  asserting that the putative class is smaller.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                              12                        C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1 | DATED: April 2, 2008

COOPER, WHITE & COOPER LLP

By: _____

Jie-Ming Chou
Attorneys for DEFENDANT AMERICAN
AIRLINES, INC.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597918.1                                    13                        C 08-00732 CW
AMERICAN AIRLINES, INC.'S OPPOSITION TO MOTION TO REMAND

1  LOCKE LORD BISSELL & LIDDELL LLP
   MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
2    mpowell@lockelord.com
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas  75201-6776
   Telephone:  (214) 740-8520
4  Facsimile:  (214) 756-8520

5  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
6    skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
7    jchou@cwclaw.com
   201 California Street, 17th Floor
8  San Francisco, California  94111
   Telephone:    (415) 433-1900
9  Facsimile:    (415) 433-5530

10 Attorneys for Defendant, American Airlines, Inc.

11

12                 **UNITED STATES DISTRICT COURT**

13           **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

14

15 KATHLEEN HANNI, individually and on         CASE NO. C08-00732 CW
   behalf of all others similarly situated,
16                                             **DECLARATION OF MICHAEL POWELL**
                 Plaintiff,                    **IN SUPPORT OF DEFENDANT**
17                                             **AMERICAN AIRLINES, INC'S**
           vs.                                 **OPPOSITION TO PLAINTIFF'S MOTION**
18                                             **TO REMAND**
   AMERICAN AIRLINES, INC., and DOES 1
19 through 20, inclusive,
                                               Date:  April 24, 2008
20               Defendants.                   Time:  2:00 p.m.
                                               Courtroom: 2, 4th Floor
21

22 I, Michael V. Powell, hereby declare:

23          1.     I am a partner with the law firm of Locke Lord Bissell & Liddell located at 2200

24 Ross Avenue, Suite 2200, Dallas, Texas  75201 and am counsel of record for American Airlines,

25 Inc. ("American") in this action.  I have personal knowledge of the matters set forth in this

26 declaration, except for those facts that are alleged on information and belief, and as to those facts,

27 I believe them to be true.  I could and would testify competently thereto if called as a witness.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596911.1                                                                      C08-00732CW
       Declaration of Mike Powell in support of Defendant's Opposition to Plaintiff's Motion for Remand

2.      Attached as Exhibit 1 to this declaration is a true and correct copy of an email I received from Paul Hudson, one of the attorneys for plaintiff in the above-styled and numbered action, on March 3, 2008, and of the letter of the same date from Mr. Hudson to me that was attached to that email.

3.      Attached as Exhibit 2 to this declaration is a true and correct copy of Plaintiff's First Amended Complaint, which is plaintiff's live pleading in *Ray v. American Airlines, Inc.*, Case No. 5:08-CV-05025-RTD, a virtually identical putative class action filed by plaintiff's counsel, Paul Hudson, and currently pending before the United States District Court for the Western District of Arkansas.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 27, 2008 in Dallas, Texas.


Michael V. Powell

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596911.1

2

C08-00732CW

Declaration of Mike Powell in support of Defendant's Opposition to Plaintiff's Motion for Remand

# EXHIBIT 1

**Powell, Michael V.**

| | |
|---|---|
| **From:** | Globe Trotter [globetrotter1947@hotmail.com] |
| **Sent:** | Monday, March 03, 2008 4:55 PM |
| **To:** | Powell, Michael V. |
| **Subject:** | Hanni v AA, Ray v AA |

**Attachments:**     Hanni Ray Settlement letter 3.3.08.doc



Hanni Ray
lement letter

            to:  michael powell

Please find settlement letter attached.

paul hudson

EXHIBIT 1

1

# Law Offices of Paul S. Hudson, P.C.

Paul S. Hudson, Esq.
Admitted in New York

4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934   941-349-1947
Globetrotter1947@hotmail.com
240-391-1923  fax (not for service)

March 3, 2008

Mr. Michael Powell, Esq.
Locke Lord Bissell & Liddell
Attorneys for Defendants
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

RE:  Ray v American Airlines Inc.; Hanni v American Airlines Inc.

Dear Mr. Powell:

It is my normal practice to evaluate cases for settlement purposes at each significant stage of litigation and to consider settlement or Alternate Dispute Resolution if appropriate or required by the courts.

This case is now at such a stage with complaints filed, motions for remand, dismissal and change of venue pending, with both sides having done a basic investigation of the facts.

In arriving at this proposal I have taken into account the following:

-the settlement in the 1999 Northwest Airlines stranding case,

-jury verdicts in false imprisonment and fraud cases,

-the Montreal Convention of 1999 ratified in 2003 which provides for no fault liability of airlines for passenger delays up to $6,640 in damages, up to $1650 for baggage delays and up to $160,000 for personal injury or death, and which applies to all passengers on international flights or domestic flights with ticketed destinations, departure or stopovers in more than one nation, and overrides any other lower or more limited liability by contract.

-the domestic contract of carriage and customer service plans and commitments of AA relating to diverted flights or extraordinary delays,

-the known facts of the incident including the weather conditions, the mental and physical distress of the confined passengers, much of is admitted by AA, was published in the media and/or is been described in the complaints, and are known from DOT records.

-the apparent knowledge of AA management and officers and the misdirection and inaccurate information provided to pilots and conveyed passengers in refusing deplanement and requiring continuations of the confinements on 12/29/06 beyond all reasonable bounds and without essential passenger needs,

-the additional representative responsibilities and time of the class representatives.

-that no appeal court has in recent times found a tort or common law contract case such as this to be preempted by federal law, that the 9th and 8th Circuits as well as Arkansas and California higher courts have never so held, and that the US Supreme Court just today affirmed a decision of the Second Circuit in *Desiano v Warner-Lambert & Co.*, 467 F.2d 85, 88 (2nd Cir. 2006) upholding a fraud exception to federal preemption.

Accordingly, I would propose that the Ray and Hanni cases be settled along the following lines:

Individual plaintiffs Katherine Hanni $74,900, Catherine Ray  $50,000

Class members domestic passengers confined 7 or more hours $10,000 each, more than 4 but less than 7 hours $6,000 each, more than 2 but less than 4 hours $2,000.  For international passengers $5,000 confined over 4 hours, $2,000 for those confined less than 4 but more than 2 hours.

Payment of plaintiff attorney disbursements, actual costs, and administrative expenses relating to this litigation and attorney fees of $250,000 or 10% of the total amount paid out to plaintiffs and class members whichever is greater.

The global settlement amount would also be capped at $5 million for the Ray case and $5 million for the Hanni case, and a common fund would be established in the amount of $10 million.  Should the verified claims exceed the amount available for distribution, there would be pro rata reductions in class member distributions.

This settlement would be expected to save millions of dollars of litigation expenses and attorney fees, and spare all parties the burdens and intrusions of the discovery and public trial, provide closure for all parties, eliminate potential exposure of liability for AA's corporate and individual managers financially and to their business reputations, and pay just compensation to the class of passengers subject to confinements up to 10 hours without essential needs, and contrary to AA contractual or other lawful obligations.

A settlement at this stage would also relieve AA of the risk of a much larger jury award, certain SEC filings and disclosures, reduce the risk of other cases being filed and litigated from this incident, and would relieve the plaintiffs of the risk of an unfavorable outcome

based on legal or procedural defenses, or on the merits. A settlement may also provide AA with some liability insurance claim options that could cover some portion of the settlement and which might not be available later or would result in a much larger liability insurance claim.

This settlement proposal would of course be subject to court approval and the parties would consent to the cases being consolidated and administered in the federal district court for settlement purposes the Northern District of California. This letter is for settlement purposes only and may not be used for any other purpose be disclosed for any other purpose. Unless responded to by Tuesday March 4th at 5:00 pm EDT, it shall be deemed withdrawn and expired, null and void and of no force or effect.

Kindly convey this proposal to your client and to any relevant insurance carrier. I would suggest further that we stipulate to 30 day or extension of time on currently filed motions and a freeze on new motions during this period if AA wishes to proceed on a settlement track.

Very truly yours,


Paul Hudson
Attorney for Plaintiffs

# EXHIBIT 2

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

2008 JAN 30 PM 12: 59

WASHINGTON CO AR
CIRCUIT CLERK
B. STAMPS

Catherine Ray, on behalf of herself and all others
similarly situated,

      Plaintiff,

 -vs-

American Airlines, Inc.,

     Defendant.

FIRST AMENDED CLASS
ACTION COMPLAINT
CASE NO. CV 2007-3082-6

Plaintiff Catherine Ray on behalf of herself and all others similarly situated, by and

through her attorneys, the Law Offices of Paul S. Hudson, P.C., and Odom Law Firm,

state and allege as follows:

### Parties and Jurisdiction

1. Plaintiff is a citizen and resident of Fayetteville, Washington County,

Arkansas.

2. Defendant American Airlines, Inc. (hereinafter AA) is a corporation organized

under the laws of Delaware with a principal place of business in Fort Worth, Texas. At all

relevant times hereto, AA was doing in business in the state of Arkansas

EXHIBIT 2

3. The monetary damages at issue in this case are within the jurisdictional requirements of this court.

**Class Action Allegations**

4.     This cause of action is being maintained as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. In that regard, the Plaintiff alleges the following:

    a.  Approximately 12,000 people were effected by the actions of the Defendants as set forth below and therefore the class is so numerous that joinder of members is impracticable;

    b.  There are common issues of law and fact common to the class;

    c.  The claims of Catherine Ray are typical of the claims of the class members;

    d.  Catherine Ray has agreed to serve as class representative and has agreed to fairly and adequately protect the interests of the class.

5.     In support of the class action allegations, Plaintiff incorporates by reference the statements and allegations that follow.

**Events of December 29th, 2006**

6.     Plaintiff and her husband purchased tickets for air transportation on AA flight 1008 departing from Oakland, California to Dallas, Texas departing at 6:15 AM (Pacific Time) scheduled to arrive at 11:30 AM (Central Time) on December 29th, 2006.

7.    Plaintiff boarded the aircraft which timely departed from Oakland, but in route was diverted from Dallas (DFW) Airport to Austin, Texas, by AA allegedly due to bad weather in Dallas.

8.    Plaintiff was confined to the aircraft against her will on the ground in Austin Texas for approximately 9 1/2 hours by Defendant, and was not permitted by AA to exit the aircraft until 9:30 PM (Central Time), over 13 hours after boarding the aircraft.

9.    While confined on the ground in Austin, the toilets became full and would not flush and the stench of human excrement and body odor filled the plane.

10.    While confined, in the aircraft, plaintiff and other passengers were unable to wash their hands due to the aircraft running out of water and not being re-supplied by AA.

11.    Plaintiff and other passengers were provided only two soft drinks and only a few granola bars for food.

12.    Plaintiff and other passengers were also deprived of access to medications, nutritional supplements and needs, and hydration especially needed by infirm, elderly and children.

13.    Plaintiff and other passengers were forced to witness the physical and emotional distress and panic of other passengers causing all passengers to suffer emotional distress and endangering the physical safety of Plaintiff and all passengers.

14.    The distress of the confined passengers in overcrowded conditions in the aircraft was witnessed by AA flight crew employees and was also reported to AA ground personnel and to Austin airport authorities.

15.    Approximately 12,000 passengers involving about 100 flights on December 29th, 2006 were confined to aircraft diverted from Dallas by Defendant to other airports and confined for 3 to 12 hours on the aircraft in poor to deplorable conditions by Defendant.

16.    Plaintiff and other stranded passengers suffered hunger, thirst, anxiety, physical illness, emotional distress and monetary losses as a result of Defendant's failure to permit passengers to exit the aircraft to the airport terminals or to supply the parked aircraft with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures.

17.    Defendant knew or should have known that passengers needed to be supplied with essential rescue and survival conditions on board aircraft, but failed and refused to do so.

18.     Defendant had ample advanced warning of weather conditions at Dallas and knew or should have known that it was not able to land aircraft at Dallas (DFW) airport at the capacity it had scheduled on December 29th, 2006, due to transient thunder storms and could have cancelled or delayed from departing many of the flights that it diverted and stranded, thereby preventing the diversions and confinements.

19.     With the exception of a few passengers whose destination was the Austin Texas area, AA refused to permit passengers to exit the aircraft even though buses and available gates at the terminal were available to AA.

20.     After AA finally permitted Plaintiff and other passengers to exit the aircraft at about 9:30 PM on December 29th, 2007, it "continued" the flight to the next morning and refused to return checked baggage to the passengers.

21.     AA then refused to provide payment for overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding.

22.     The next morning after more delays Plaintiff and passengers were flown to Dallas (DWF) airport, where their baggage had been sent.

23.    Some passengers who had been diverted, confined and stranded overnight were them denied boarding on connecting flights, and were stranded for another day in Dallas.

23a.    Other passengers who had been diverted to Little Rock, Arkansas by AA were denied the right to exit the aircraft even though their final destination was Little Rock and instead after on-aircraft confinements of over 4 hours were forced by AA and fly back to DFW and then to get another flight or other transportation from DFW to Little Rock on December 30th, 2006, at their own expense.

## Pattern and Practice of AA Misconduct

24.    Defendant AA has not provided reimbursement for passenger expenses, ticket refunds and other forms of compensation to passengers that it diverted and confined on December 29th and 30th, 2006, but only a restricted voucher for future travel and a letter of apology.

25.    Defendant did not advise stranded passengers that they could use their AA tickets on another airline for travel to their destinations on December 29th or subsequent thereto, even though an industry convention and rule provides for such when a flight is cancelled or excessively delayed.

26.    Defendant did not provide ticket refunds or other compensation to passengers that it stranded on December 29th and 30th, 2006.

27.    Defendant knowingly misrepresented the reasons for the delays and confinements by falsely asserting to passengers and the public that aircraft were not able to take off due to weather or congestion.

28.    The delays on December 29th, 2007 were actually due to causes within the control of AA and included intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions by AA.

29.    Confinements by AA, upon information and belief, were to avoid expenses and lawful obligations to passengers associated with strandings, diversions and canceled flights and for AA's and its officers, employees, agents and stockholders own pecuniary gain at the expense of Plaintiff and other passengers.

30.    While Plaintiff and other passengers were confined to their aircraft in Austin and other diverted airports, other flights of Defendant and other airlines were taking off and landing without significant delays.

31.    Upon information and belief, the Dallas (DFW) airport was only closed to air traffic for approximately 2.5 hours from 2:00 PM to 4:30 PM on December 29th, 2006.

32.    Upon information and belief, AA has a corporate policy, practice and pattern of confining and imprisoning passengers on aircraft of excessively delayed or

cancelled flights for excessive periods of time to prevent "passenger migration" and this unlawful practice was used against Plaintiff and other similarly situated passengers by Defendant's employees and agents on December 29th, 2007.

33.    Upon information and belief, AA has inflicted its practices of confining and imprisoning passengers for over 3 hours to prevent "passenger migration" on over ten thousand of other passengers since December 29th, 2006, including another mass stranding in April 2007.

34.    By unlawfully confining Plaintiff and other passengers diverted from Dallas on December 29th, 2007 in inhuman conditions, AA avoided ticket refunds, overnight lodging and meal expenses for passengers, alternate transportation expenses on other airlines that under an industry convention and practice will honor tickets of a defaulting airline and back charge the defaulting airline, ground transportation expenses, terminal employee overtime and staffing expenses, and other expenses normally associated with mass strandings and cancellations.

35.    Defendant could have permitted passengers to exit the aircraft after the diversions on December 29th, 2007 but failed and declined to do so for its own pecuniary gain.

36.    Upon information and belief, some passengers after the confinements ended were forced by Defendant to fly to destinations that they not longer wished to

travel to because the reason for their trip such as a missed meeting or family event no longer existed, but were forced to do so by Defendant not permitting them to exit the aircraft and obtain alternate transportation to another destination or return home.

37. Other passengers were forced under duress not to abandon their travel with AA on December 29th and 30th, 2006, because AA refused to return their checked baggage, even after promising to do so after finally permitting passengers to exit the aircraft the evening of December 29th, 2006.

38. Passengers on the Defendant's diverted flights had their travel delayed up to 3 days after December 29th, 2007 due to non-weather conditions that were within the control of Defendant without compensation for passenger expenses and losses by AA.

39. Upon information and belief, Defendant was not prevented or prohibited from permitting passengers to exit or re-supply and service the aircraft in Austin or other diverted airports by the Federal Aviation Administration air or ground controllers or by airport management, or other government authorities.

## COUNT 1. FALSE IMPRISONMENT

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully stated herein.

41.    Plaintiff and other passengers similarly situated were intentionally
deprived of their personal liberty by Defendant for over 3 hours against their will without
legal justification.

42.    Defendant is guilty of false imprisonment of Plaintiff and others similarly
situated.

43.    The damages of Plaintiff and others similarly situated were proximately
caused by the acts and/or omissions of the Defendant.

COUNT 2.    OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS/PRIMA FACIE TORT

44.    Plaintiff repeats and realleges paragraphs 1 through 43 as if fully stated
herein.

45.    Defendant intended or knew or should have known that emotional distress
to Plaintiff and others similarly situated was the likely result of its conduct.

46.    Defendant's conduct was outrageous, extreme, beyond the bounds of
decency and is intolerable in a civilized community.

47.    The acts and/or omissions of the Defendant were the cause of Plaintiff's
distress and the distress of others similarly situated.

48.   The emotional distress was so severe that no reasonable person could be expected to endure it, wherefore Defendant is guilty of the tort of outrage, intentional or negligent infliction of emotional distress or prima facie tort.

49.   The acts and/or omissions of the Defendant as set forth above were the proximate cause of damages to Plaintiff and others similarly situated.

## COUNT 3. NEGLIGENCE

50.   Plaintiff repeats and realleges paragraphs 1 through 49 as if fully stated herein.

51.   Defendant as an operator offering air transportation to the general public owed a duty to Plaintiff and others similarly situated of due care, to use best efforts to bring passengers safely to their destinations, to plan for weather related disturbances in its flight operations, and to refrain from mistreatment of them with unjustified involuntary confinement, deprivation of passengers' baggage and stranding in remote locations.

52.   Defendant breached its duties to Plaintiff and others similarly situated on December 29th and 30th, 2006, and its conduct was in reckless disregard its duty owed to Plaintiff and similarly situated passengers.

53.    Defendant's conduct was the proximate cause of damage and losses to the Plaintiff and others similarly situated.

54.    Defendant is guilty of negligence and/or gross negligence.

## COUNT 4. BREACH OF CONTRACT

55.    Plaintiff repeats and realleges paragraphs 1 through 54 as if fully stated herein.

56.    Defendant has filed with the US Department of Transportation, published on its web site, and referenced on its tickets "conditions of carriage" and a "Customer Service Plan" . These documents cannot be copied at this time, but will be made available to the Court and the Defendant.

57.    Upon information and belief, the aforementioned documents form a contract between the Defendant and Plaintiff and others similarly situated.

58.    Defendant's conduct on December 29th, 2006 and subsequent thereto breached its Contract with Plaintiff and others similarly situated in various ways, including but not limited to breach of implied covenant of good faith, provisions relating to Delays, Cancellations, and Diversion Events, Essential Customer Needs During

Extraordinary Delays, Ticket Refunds, Flights with Oversales, and Baggage Delivery and Liability.

59.    As a result of Defendant's breach of contract, Plaintiff and others similarly situated have sustained damages as more fully set forth below.

## COUNT 4. DECEIT/FRAUD

60.    Plaintiff repeats and realleges paragraphs 1 through 59 as if fully stated herein.

61.    Plaintiff knowingly deceived Plaintiff and others similarly situated as to the causes and justifications for the diversions, schedule changes confinements, expected departure times, and baggage delivery on December 29th and 30th, 2006 with false statements and concealment of material information.

61a. Defendant had a special relationship with Plaintiff and others similarly situated as it possessed all relevant information and power over the persons and baggage of its passengers.

61b. Defendant had a duty to disclosed material information related to its delays and diversions on December 29th, 2006 to Plaintiff and others similarly situated.

62.    Plaintiff and others similarly situated relied to their detriment on the false and deceptive statements of Defendants.

63.    Defendant sought to deceive and defraud Plaintiff and others similarly situated for Defendant's pecuniary gain, and specifically with intent to fraudulently invoke Force Majeur clause in its contract with Plaintiff by falsely asserting a weather emergency as justification for the extreme delays, confinements, and other mistreatments of passengers and to avoid other liabilities to Plaintiff for its misconduct.

64.    Defendant is guilty of deceit and fraud.

65.    As a result of the above acts and/or omissions of the Defendant, Plaintiff and others similarly situated have sustained damages as more fully set forth below.

DAMAGES/RELIEF SOUGHT

66.    Plaintiff repeats and realleges paragraphs 1 through 65 as if fully stated herein

67.    Plaintiff is a consumer and class representative of all others similarly situated who suffered losses and were damaged by Defendant's misconduct on December 29th and 30th, 2006 in the aforementioned diversions from Dallas (DFW) airport and the subsequent, delays, injuries, confinements, and indignities suffered as a result of Defendant's conduct.

68.    Each of the plaintiffs suffered individual damages sufficient to satisfy the jurisdictional requirements of the circuit court in Arkansas but insufficient to satisfy the jurisdictional requirements in federal diversity cases as a proximate cause of Defendant's misconduct and breaches and request damages as allowed by law for false imprisonment, intentional infliction of emotional distress, outrage, breach of contract, fraud and deceit, including actual, consequential, exemplary and punitive damages. Punitive damages are warranted in this case as the acts and/or omissions of the Defendant were intentional and the Defendant knew, or in light of the surrounding circumstances ought to have known, that its conduct would naturally and probably result in injury and yet the Defendant continued this course of conduct with malice or in reckless disregard of the consequences from which malice may be inferred. The Defendant, motivated by greed and a desire for profit, continued the actions as set for above in reckless disregard of the consequences from which malice may be inferred. Upon information and belief, the Defendant continues the practices detailed above and therefore punitive damages are necessary in order to deter like conduct in the future.

69.    Plaintiff requests individual damages which are in excess of that required for jurisdiction in the circuit courts of Arkansas but less than that required for jurisdiction in federal diversity cases, and she seeks the opportunity to be heard as to being named representative of a class of all passengers similarly situated.

70.    Wherefore, Plaintiff requests that this honorable Court appoint the Plaintiff as class representative, certify this case a class action pursuant to the Rule 23 of

the Arkansas Rules of Civil Procedure, order the Defendant to preserve all records

relating the incidents complained of, and otherwise issue orders and relief as the court

deems just and proper in the circumstances.


71.    Plaintiff also requests attorney fees, expenses, costs, disbursements, and

interest of this action as provided by law.


JURY TRIAL DEMANDED.


Dated:  January 30, 2008

Bobby Lee Odom, ABA # 70054
Russell Winburn, ABA # 87193
Odom Law Firm
No. 1 East Mountain
P.O. Drawer 1868
Fayetteville, AR 72702
(479) 442-7575

Law Offices of
Paul S. Hudson P.C.
Attorneys for Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934
240-391-1923 fax
Globetrotter1947@hotmail.com

1    LOCKE LORD BISSELL & LIDDELL LLP
     MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
2      mpowell@lockelord.com
     2200 Ross Avenue, Suite 2200
3    Dallas, Texas 75201-6776
     Telephone: (214) 740-8520
4    Facsimile: (214) 756-8520

5    COOPER, WHITE & COOPER LLP
     STEPHEN KAUS (SBN 57454)
6      skaus@cwclaw.com
     JIE-MING CHOU (SBN 211346)
7      jchou@cwclaw.com
     201 California Street, 17th Floor
8    San Francisco, California 94111
     Telephone:    (415) 433-1900
9    Facsimile:    (415) 433-5530

10   Attorneys for Defendant, American Airlines, Inc.

11

12                       UNITED STATES DISTRICT COURT

13         NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15   KATHLEEN HANNI, individually and on         CASE NO. C08-00732 CW
     behalf of all others similarly situated,
16                                               **DECLARATION OF ALEC BRAMLETT**
                     Plaintiff,                  **IN SUPPORT OF DEFENDANT**
17                                               **AMERICAN AIRLINES, INC'S**
             vs.                                 **OPPOSITION TO PLAINTIFF'S MOTION**
18                                               **TO REMAND**
     AMERICAN AIRLINES, INC., and DOES 1
19   through 20, inclusive,                      Date: April 24, 2008
                                                 Time: 2:00 p.m.
20                   Defendants.                 Courtroom: 2, 4th Floor

21

22   I, Alec Bramlett, hereby declare:

23         1.    I am employed as a Senior Attorney by American Airlines, Inc. ("American") and

24   have been an attorney for American since 1995. I have personal knowledge of the matters set

25   forth in this declaration by virtue of my job responsibilities and company information provided to

26   me. The figures reflected herein come from records kept in the course of American Airlines'

27   regularly conducted business activity, which records have been provided to me. These records

28   reflect information that was contemporaneously recorded by individuals with personal knowledge

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597917.1                                                              C08-00732CW
DECLARATION OF ALEC BRAMLETT IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO
REMAND

1  and which American considers trustworthy and on which it relies for the conduct of its business. I

2  could and would testify competently thereto if called as a witness.

3      2.      The headquarters of American Airlines, Inc., is located at 4333 Amon Carter

4  Boulevard, Fort Worth, Texas 76155. American is a wholly-owned subsidiary of AMR Corp.,

5  which is a publicly-held corporation. The address of AMR Corp.'s principal executive offices, as

6  listed on its Form 10-K Reports with the United States Securities and Exchange Commission, is

7  4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

8      3.      Of the fifteen members of American's senior management team, all but four have

9  their offices at American's headquarters in Fort Worth, Texas. The four members of American's

10  senior management team who do not office in Texas have their offices in Washington, D.C.,

11  Miami, FL, Tulsa, OK, and London, England. None of American's senior management team

12  office or reside in the State of California.

13      4.      According to American's state unemployment tax returns, American has more

14  employees in the State of Texas than any other State. California is sixth among the states in terms

15  of numbers of American employees. By way of comparison, the returns identified above report

16  that the average monthly headcount for American's employees in Texas during 2007 was 21,718.

17  The same number for California was 6,452.

18      5.      American's business records show that as of December 31, 2007, it had 4,180

19  employees classified as management employees in Texas, and 294 employees classified as

20  management employees in California.

21      6.      According to American's business records, American has more scheduled flight

22  departures from airports in Texas than any other state. In 2007, American had 202,667 scheduled

23  departures from airports in Texas and 71,597 scheduled departures from airports in California.

24      7.      According to American's business records, American enplanes more passengers in

25  Texas than any other state. In 2007, there were 24,565,790 passenger enplanements in Texas, and

26  9,826,550 in California.

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

597917.1                    2                    C08-00732CW

DECLARATION OF ALEC BRAMLETT IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND

1    I declare under penalty of perjury under the laws of the State of California that the

2  foregoing is true and correct, and that this declaration was executed on April 2, 2008 in Forth

3  Worth, Texas.

4

5

6                                              Alec Bramlett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

DECLARATION OF ALEC BRAMLETT IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND