1  LOCKE LORD BISSELL & LIDDELL LLP
   MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
2    mpowell@lockelord.com
   2200 Ross Avenue, Suite 2200
3  Dallas, Texas 75201-6776
   Telephone: (214) 740-8520
4  Facsimile: (214) 756-8520

5  COOPER, WHITE & COOPER LLP
   STEPHEN KAUS (SBN 57454)
6    skaus@cwclaw.com
   JIE-MING CHOU (SBN 211346)
7    jchou@cwclaw.com
   201 California Street, 17th Floor
8  San Francisco, California 94111
   Telephone:    (415) 433-1900
9  Facsimile:    (415) 433-5530

10  Attorneys for Defendant, American Airlines, Inc.

11

12              UNITED STATES DISTRICT COURT

13      NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

14

15  KATHLEEN HANNI, individually and on        CASE NO. C08-00732 CW
    behalf of all others similarly situated,
16                                              **DECLARATION OF MICHAEL POWELL**
                                                **IN SUPPORT OF DEFENDANT**
17              Plaintiff,                       **AMERICAN AIRLINES, INC'S**
                                                **OPPOSITION TO PLAINTIFF'S MOTION**
18         vs.                                   **TO REMAND**

19  AMERICAN AIRLINES, INC., and DOES 1
    through 20, inclusive,
20                                              Date: April 24, 2008
                Defendants.                     Time: 2:00 p.m.
21                                              Courtroom: 2, 4th Floor

22  I, Michael V. Powell, hereby declare:

23         1.      I am a partner with the law firm of Locke Lord Bissell & Liddell located at 2200

24  Ross Avenue, Suite 2200, Dallas, Texas 75201 and am counsel of record for American Airlines,

25  Inc. ("American") in this action. I have personal knowledge of the matters set forth in this

26  declaration, except for those facts that are alleged on information and belief, and as to those facts,

27  I believe them to be true. I could and would testify competently thereto if called as a witness.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

596911.1                                                              C08-00732CW
Declaration of Mike Powell in support of Defendant's Opposition to Plaintiff's Motion for Remand

2.    Attached as Exhibit 1 to this declaration is a true and correct copy of an email I received from Paul Hudson, one of the attorneys for plaintiff in the above-styled and numbered action, on March 3, 2008, and of the letter of the same date from Mr. Hudson to me that was attached to that email.

3.    Attached as Exhibit 2 to this declaration is a true and correct copy of Plaintiff's First Amended Complaint, which is plaintiff's live pleading in *Ray v. American Airlines, Inc.*, Case No. 5:08-CV-05025-RTD, a virtually identical putative class action filed by plaintiff's counsel, Paul Hudson, and currently pending before the United States District Court for the Western District of Arkansas.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 27, 2008 in Dallas, Texas.

_Michael Powell_
Michael V. Powell

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

# EXHIBIT 1

**Powell, Michael V.**

| | |
|---|---|
| **From:** | Globe Trotter [globetrotter1947@hotmail.com] |
| **Sent:** | Monday, March 03, 2008 4:55 PM |
| **To:** | Powell, Michael V. |
| **Subject:** | Hanni v AA, Ray v AA |

**Attachments:**     Hanni Ray Settlement letter 3.3.08.doc



Hanni Ray
lement letter

                to:  michael powell

Please find settlement letter attached.

paul hudson

                                        EXHIBIT 1

# Law Offices of Paul S. Hudson, P.C.

Paul S. Hudson, Esq.
Admitted in New York

4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934   941-349-1947
Globetrotter1947@hotmail.com
240-391-1923  fax (not for service)

March 3, 2008

Mr. Michael Powell, Esq.
Locke Lord Bissell & Liddell
Attorneys for Defendants
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

RE:  Ray v American Airlines Inc.; Hanni v American Airlines Inc.

Dear Mr. Powell:

It is my normal practice to evaluate cases for settlement purposes at each significant stage of litigation and to consider settlement or Alternate Dispute Resolution if appropriate or required by the courts.

This case is now at such a stage with complaints filed, motions for remand, dismissal and change of venue pending, with both sides having done a basic investigation of the facts.

In arriving at this proposal I have taken into account the following:

-the settlement in the 1999 Northwest Airlines stranding case,

-jury verdicts in false imprisonment and fraud cases,

-the Montreal Convention of 1999 ratified in 2003 which provides for no fault liability of airlines for passenger delays up to $6,640 in damages, up to $1650 for baggage delays and up to $160,000 for personal injury or death, and which applies to all passengers on international flights or domestic flights with ticketed destinations, departure or stopovers in more than one nation, and overrides any other lower or more limited liability by contract.

-the domestic contract of carriage and customer service plans and commitments of AA relating to diverted flights or extraordinary delays,

-the known facts of the incident including the weather conditions, the mental and physical distress of the confined passengers, much of is admitted by AA, was published in the media and/or is been described in the complaints, and are known from DOT records.

-the apparent knowledge of AA management and officers and the misdirection and inaccurate information provided to pilots and conveyed passengers in refusing deplanement and requiring continuations of the confinements on 12/29/06 beyond all reasonable bounds and without essential passenger needs,

-the additional representative responsibilities and time of the class representatives.

-that no appeal court has in recent times found a tort or common law contract case such as this to be preempted by federal law, that the 9th and 8th Circuits as well as Arkansas and California higher courts have never so held, and that the US Supreme Court just today affirmed a decision of the Second Circuit in *Desiano v Warner-Lambert & Co.*, 467 F.2d 85, 88 (2nd Cir. 2006) upholding a fraud exception to federal preemption.

Accordingly, I would propose that the Ray and Hanni cases be settled along the following lines:

Individual plaintiffs Katherine Hanni $74,900, Catherine Ray  $50,000

Class members domestic passengers confined 7 or more hours $10,000 each, more than 4 but less than 7 hours $6,000 each, more than 2 but less than 4 hours $2,000.  For international passengers $5,000 confined over 4 hours, $2,000 for those confined less than 4 but more than 2 hours.

Payment of plaintiff attorney disbursements, actual costs, and administrative expenses relating to this litigation and attorney fees of $250,000 or 10% of the total amount paid out to plaintiffs and class members whichever is greater.

The global settlement amount would also be capped at $5 million for the Ray case and $5 million for the Hanni case, and a common fund would be established in the amount of $10 million.  Should the verified claims exceed the amount available for distribution, there would be pro rata reductions in class member distributions.

This settlement would be expected to save millions of dollars of litigation expenses and attorney fees, and spare all parties the burdens and intrusions of the discovery and public trial, provide closure for all parties, eliminate potential exposure of liability for AA's corporate and individual managers financially and to their business reputations, and pay just compensation to the class of passengers subject to confinements up to 10 hours without essential needs, and contrary to AA contractual or other lawful obligations.

A settlement at this stage would also relieve AA of the risk of a much larger jury award, certain SEC filings and disclosures, reduce the risk of other cases being filed and litigated from this incident, and would relieve the plaintiffs of the risk of an unfavorable outcome

based on legal or procedural defenses, or on the merits. A settlement may also provide AA with some liability insurance claim options that could cover some portion of the settlement and which might not be available later or would result in a much larger liability insurance claim.

This settlement proposal would of course be subject to court approval and the parties would consent to the cases being consolidated and administered in the federal district court for settlement purposes the Northern District of California. This letter is for settlement purposes only and may not be used for any other purpose be disclosed for any other purpose. Unless responded to by Tuesday March 4th at 5:00 pm EDT, it shall be deemed withdrawn and expired, null and void and of no force or effect.

Kindly convey this proposal to your client and to any relevant insurance carrier. I would suggest further that we stipulate to 30 day or extension of time on currently filed motions and a freeze on new motions during this period if AA wishes to proceed on a settlement track.

Very truly yours,


Paul Hudson
Attorney for Plaintiffs

# EXHIBIT 2

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

2008 JAN 30  PM 12:59

WASHINGTON CO AR
CIRCUIT CLERK
B. STAMPS

Catherine Ray, on behalf of herself and all others
similarly situated,

                    Plaintiff,                          FIRST AMENDED CLASS
       -vs-                                             ACTION COMPLAINT
                                                        CASE NO. CV 2007-3082-6


American Airlines, Inc.,

                    Defendant.


Plaintiff Catherine Ray on behalf of herself and all others similarly situated, by and

through her attorneys, the Law Offices of Paul S. Hudson, P.C., and Odom Law Firm,

state and allege as follows:


### Parties and Jurisdiction


   1.  Plaintiff is a citizen and resident of Fayetteville, Washington County,

Arkansas.


   2.  Defendant American Airlines, Inc. (hereinafter AA) is a corporation organized

under the laws of Delaware with a principal place of business in Fort Worth, Texas. At all

relevant times hereto, AA was doing in business in the state of Arkansas


EXHIBIT 2

3. The monetary damages at issue in this case are within the jurisdictional requirements of this court.

## Class Action Allegations

4.    This cause of action is being maintained as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. In that regard, the Plaintiff alleges the following:

a.  Approximately 12,000 people were effected by the actions of the Defendants as set forth below and therefore the class is so numerous that joinder of members is impracticable;

b.  There are common issues of law and fact common to the class;

c.  The claims of Catherine Ray are typical of the claims of the class members;

d.  Catherine Ray has agreed to serve as class representative and has agreed to fairly and adequately protect the interests of the class.

5.    In support of the class action allegations, Plaintiff incorporates by reference the statements and allegations that follow.

## Events of December 29th, 2006

6.    Plaintiff and her husband purchased tickets for air transportation on AA flight 1008 departing from Oakland, California to Dallas, Texas departing at 6:15 AM (Pacific Time) scheduled to arrive at 11:30 AM (Central Time) on December 29th, 2006.

7.    Plaintiff boarded the aircraft which timely departed from Oakland, but in route was diverted from Dallas (DFW) Airport to Austin, Texas, by AA allegedly due to bad weather in Dallas.

8.    Plaintiff was confined to the aircraft against her will on the ground in Austin Texas for approximately 9 1/2 hours by Defendant, and was not permitted by AA to exit the aircraft until 9:30 PM (Central Time), over 13 hours after boarding the aircraft.

9.    While confined on the ground in Austin, the toilets became full and would not flush and the stench of human excrement and body odor filled the plane.

10.    While confined, in the aircraft, plaintiff and other passengers were unable to wash their hands due to the aircraft running out of water and not being re-supplied by AA.

11.    Plaintiff and other passengers were provided only two soft drinks and only a few granola bars for food.

12.    Plaintiff and other passengers were also deprived of access to medications, nutritional supplements and needs, and hydration especially needed by infirm, elderly and children.

13.   Plaintiff and other passengers were forced to witness the physical and emotional distress and panic of other passengers causing all passengers to suffer emotional distress and endangering the physical safety of Plaintiff and all passengers.

14.   The distress of the confined passengers in overcrowded conditions in the aircraft was witnessed by AA flight crew employees and was also reported to AA ground personnel and to Austin airport authorities.

15.   Approximately 12,000 passengers involving about 100 flights on December 29th, 2006 were confined to aircraft diverted from Dallas by Defendant to other airports and confined for 3 to 12 hours on the aircraft in poor to deplorable conditions by Defendant.

16.   Plaintiff and other stranded passengers suffered hunger, thirst, anxiety, physical illness, emotional distress and monetary losses as a result of Defendant's failure to permit passengers to exit the aircraft to the airport terminals or to supply the parked aircraft with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures.

17.   Defendant knew or should have known that passengers needed to be supplied with essential rescue and survival conditions on board aircraft, but failed and refused to do so.

18.     Defendant had ample advanced warning of weather conditions at Dallas and knew or should have known that it was not able to land aircraft at Dallas (DFW) airport at the capacity it had scheduled on December 29th, 2006, due to transient thunder storms and could have cancelled or delayed from departing many of the flights that it diverted and stranded, thereby preventing the diversions and confinements.

19.     With the exception of a few passengers whose destination was the Austin Texas area, AA refused to permit passengers to exit the aircraft even though buses and available gates at the terminal were available to AA.

20.     After AA finally permitted Plaintiff and other passengers to exit the aircraft at about 9:30 PM on December 29th, 2007, it "continued" the flight to the next morning and refused to return checked baggage to the passengers.

21.     AA then refused to provide payment for overnight lodging, meals, ground transportation, telephone or other passenger expenses and losses caused by its diversion and stranding.

22.     The next morning after more delays Plaintiff and passengers were flown to Dallas (DWF) airport, where their baggage had been sent.

23.     Some passengers who had been diverted, confined and stranded overnight were them denied boarding on connecting flights, and were stranded for another day in Dallas.

23a.     Other passengers who had been diverted to Little Rock, Arkansas by AA were denied the right to exit the aircraft even though their final destination was Little Rock and instead after on-aircraft confinements of over 4 hours were forced by AA and fly back to DFW and then to get another flight or other transportation from DFW to Little Rock on December 30th, 2006, at their own expense.

### Pattern and Practice of AA Misconduct

24.     Defendant AA has not provided reimbursement for passenger expenses, ticket refunds and other forms of compensation to passengers that it diverted and confined on December 29th and 30th, 2006, but only a restricted voucher for future travel and a letter of apology.

25.     Defendant did not advise stranded passengers that they could use their AA tickets on another airline for travel to their destinations on December 29th or subsequent thereto, even though an industry convention and rule provides for such when a flight is cancelled or excessively delayed.

26.     Defendant did not provide ticket refunds or other compensation to passengers that it stranded on December 29th and 30th, 2006.

27.    Defendant knowingly misrepresented the reasons for the delays and confinements by falsely asserting to passengers and the public that aircraft were not able to take off due to weather or congestion.

28.    The delays on December 29th, 2007 were actually due to causes within the control of AA and included intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions by AA.

29.    Confinements by AA, upon information and belief, were to avoid expenses and lawful obligations to passengers associated with strandings, diversions and canceled flights and for AA's and its officers, employees, agents and stockholders own pecuniary gain at the expense of Plaintiff and other passengers.

30.    While Plaintiff and other passengers were confined to their aircraft in Austin and other diverted airports, other flights of Defendant and other airlines were taking off and landing without significant delays.

31.    Upon information and belief, the Dallas (DFW) airport was only closed to air traffic for approximately 2.5 hours from 2:00 PM to 4:30 PM on December 29th, 2006.

32.    Upon information and belief, AA has a corporate policy, practice and pattern of confining and imprisoning passengers on aircraft of excessively delayed or

cancelled flights for excessive periods of time to prevent "passenger migration" and this unlawful practice was used against Plaintiff and other similarly situated passengers by Defendant's employees and agents on December 29th, 2007.

33.    Upon information and belief, AA has inflicted its practices of confining and imprisoning passengers for over 3 hours to prevent "passenger migration" on over ten thousand of other passengers since December 29th, 2006, including another mass stranding in April 2007.

34.    By unlawfully confining Plaintiff and other passengers diverted from Dallas on December 29th, 2007 in inhuman conditions, AA avoided ticket refunds, overnight lodging and meal expenses for passengers, alternate transportation expenses on other airlines that under an industry convention and practice will honor tickets of a defaulting airline and back charge the defaulting airline, ground transportation expenses, terminal employee overtime and staffing expenses, and other expenses normally associated with mass strandings and cancellations.

35.    Defendant could have permitted passengers to exit the aircraft after the diversions on December 29th, 2007 but failed and declined to do so for its own pecuniary gain.

36.    Upon information and belief, some passengers after the confinements ended were forced by Defendant to fly to destinations that they not longer wished to

travel to because the reason for their trip such as a missed meeting or family event no longer existed, but were forced to do so by Defendant not permitting them to exit the aircraft and obtain alternate transportation to another destination or return home.

37.    Other passengers were forced under duress not to abandon their travel with AA on December 29th and 30th, 2006, because AA refused to return their checked baggage, even after promising to do so after finally permitting passengers to exit the aircraft the evening of December 29th, 2006.

38.    Passengers on the Defendant's diverted flights had their travel delayed up to 3 days after December 29th, 2007 due to non-weather conditions that were within the control of Defendant without compensation for passenger expenses and losses by AA.

39.    Upon information and belief, Defendant was not prevented or prohibited from permitting passengers to exit or re-supply and service the aircraft in Austin or other diverted airports by the Federal Aviation Administration air or ground controllers or by airport management, or other government authorities.

## COUNT 1.  FALSE IMPRISONMENT

40.    Plaintiff repeats and realleges paragraphs 1 through 39 as if fully stated herein.

41.    Plaintiff and other passengers similarly situated were intentionally deprived of their personal liberty by Defendant for over 3 hours against their will without legal justification.

42.    Defendant is guilty of false imprisonment of Plaintiff and others similarly situated.

43.    The damages of Plaintiff and others similarly situated were proximately caused by the acts and/or omissions of the Defendant.

COUNT 2.    OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS/PRIMA FACIE TORT

44.    Plaintiff repeats and realleges paragraphs 1 through 43 as if fully stated herein.

45.    Defendant intended or knew or should have known that emotional distress to Plaintiff and others similarly situated was the likely result of its conduct.

46.    Defendant's conduct was outrageous, extreme, beyond the bounds of decency and is intolerable in a civilized community.

47.    The acts and/or omissions of the Defendant were the cause of Plaintiff's distress and the distress of others similarly situated.

48.    The emotional distress was so severe that no reasonable person could be expected to endure it, wherefore Defendant is guilty of the tort of outrage, intentional or negligent infliction of emotional distress or prima facie tort.

49.    The acts and/or omissions of the Defendant as set forth above were the proximate cause of damages to Plaintiff and others similarly situated.

## COUNT 3. NEGLIGENCE

50.    Plaintiff repeats and realleges paragraphs 1 through 49 as if fully stated herein.

51.    Defendant as an operator offering air transportation to the general public owed a duty to Plaintiff and others similarly situated of due care, to use best efforts to bring passengers safely to their destinations, to plan for weather related disturbances in its flight operations, and to refrain from mistreatment of them with unjustified involuntary confinement, deprivation of passengers' baggage and stranding in remote locations.

52.    Defendant breached its duties to Plaintiff and others similarly situated on December 29th and 30th, 2006, and its conduct was in reckless disregard its duty owed to Plaintiff and similarly situated passengers.

53.    Defendant's conduct was the proximate cause of damage and losses to the Plaintiff and others similarly situated.

54.    Defendant is guilty of negligence and/or gross negligence.

### COUNT 4. BREACH OF CONTRACT

55.    Plaintiff repeats and realleges paragraphs 1 through 54 as if fully stated herein.

56.    Defendant has filed with the US Department of Transportation, published on its web site, and referenced on its tickets "conditions of carriage" and a "Customer Service Plan" . These documents cannot be copied at this time, but will be made available to the Court and the Defendant.

57.    Upon information and belief, the aforementioned documents form a contract between the Defendant and Plaintiff and others similarly situated.

58.    Defendant's conduct on December 29th, 2006 and subsequent thereto breached its Contract with Plaintiff and others similarly situated in various ways, including but not limited to breach of implied covenant of good faith, provisions relating to Delays, Cancellations, and Diversion Events, Essential Customer Needs During

Extraordinary Delays, Ticket Refunds, Flights with Oversales, and Baggage Delivery and
Liability.

59.    As a result of Defendant's breach of contract, Plaintiff and others similarly
situated have sustained damages as more fully set forth below.

## COUNT 4. DECEIT/FRAUD

60.    Plaintiff repeats and realleges paragraphs 1 through 59 as if fully stated
herein.

61.    Plaintiff knowingly deceived Plaintiff and others similarly situated as to
the causes and justifications for the diversions, schedule changes confinements, expected
departure times, and baggage delivery on December 29th and 30th, 2006 with false
statements and concealment of material information.

61a.  Defendant had a special relationship with Plaintiff and others similarly
situated as it possessed all relevant information and power over the persons and baggage
of its passengers.

61b.  Defendant had a duty to disclosed material information related to its delays
and diversions on December 29th, 2006 to Plaintiff and others similarly situated.

62.    Plaintiff and others similarly situated relied to their detriment on the false
and deceptive statements of Defendants.

63.     Defendant sought to deceive and defraud Plaintiff and others similarly situated for Defendant's pecuniary gain, and specifically with intent to fraudulently invoke Force Majeur clause in its contract with Plaintiff by falsely asserting a weather emergency as justification for the extreme delays, confinements, and other mistreatments of passengers and to avoid other liabilities to Plaintiff for its misconduct.

64.     Defendant is guilty of deceit and fraud.

65.     As a result of the above acts and/or omissions of the Defendant, Plaintiff and others similarly situated have sustained damages as more fully set forth below.

DAMAGES/RELIEF SOUGHT

66.     Plaintiff repeats and realleges paragraphs 1 through 65 as if fully stated herein

67.     Plaintiff is a consumer and class representative of all others similarly situated who suffered losses and were damaged by Defendant's misconduct on December 29th and 30th, 2006 in the aforementioned diversions from Dallas (DFW) airport and the subsequent, delays, injuries, confinements, and indignities suffered as a result of Defendant's conduct.

68.    Each of the plaintiffs suffered individual damages sufficient to satisfy the jurisdictional requirements of the circuit court in Arkansas but insufficient to satisfy the jurisdictional requirements in federal diversity cases as a proximate cause of Defendant's misconduct and breaches and request damages as allowed by law for false imprisonment, intentional infliction of emotional distress, outrage, breach of contract, fraud and deceit, including actual, consequential, exemplary and punitive damages. Punitive damages are warranted in this case as the acts and/or omissions of the Defendant were intentional and the Defendant knew, or in light of the surrounding circumstances ought to have known, that its conduct would naturally and probably result in injury and yet the Defendant continued this course of conduct with malice or in reckless disregard of the consequences from which malice may be inferred. The Defendant, motivated by greed and a desire for profit, continued the actions as set for above in reckless disregard of the consequences from which malice may be inferred. Upon information and belief, the Defendant continues the practices detailed above and therefore punitive damages are necessary in order to deter like conduct in the future.

69.    Plaintiff requests individual damages which are in excess of that required for jurisdiction in the circuit courts of Arkansas but less than that required for jurisdiction in federal diversity cases, and she seeks the opportunity to be heard as to being named representative of a class of all passengers similarly situated.

70.    Wherefore, Plaintiff requests that this honorable Court appoint the Plaintiff as class representative, certify this case a class action pursuant to the Rule 23 of

the Arkansas Rules of Civil Procedure, order the Defendant to preserve all records

relating the incidents complained of, and otherwise issue orders and relief as the court

deems just and proper in the circumstances.


71.    Plaintiff also requests attorney fees, expenses, costs, disbursements, and

interest of this action as provided by law.


JURY TRIAL DEMANDED.


Dated:  January 30, 2008

Bobby Lee Odom, ABA # 70054
Russell Winburn, ABA # 87193
Odom Law Firm
No. 1 East Mountain
P.O. Drawer 1868
Fayetteville, AR 72702
(479) 442-7575

Law Offices of
Paul S. Hudson P.C.
Attorneys for Plaintiff
4411 Bee Ridge Road #274
Sarasota, Florida 34233
410-940-8934
240-391-1923 fax
Globetrotter1947@hotmail.com