1  PAUL S. HUDSON (admitted pro hoc vice)
   LAW OFFICES OF PAUL S. HUDSON P.C.
2  4411 Bee Ridge Road #274
   globetrotter1947@hotmail.com
3  Sarasota, Florida 34233
   Telephone: 410-940-8934
4  Facsimile: 240-391-1923

5  DAVID G. RAMOS (Bar No. 116456)
   LAW OFFICES OF DAVID G. RAMOS
6  barram@i-cafe.net
   3266 Villa Lane
7  Napa, California 94558
   Telephone: 707-255-1700
8  Facsimile: 707-255-3660

9  Attorneys for Plaintiff KATHLEEN HANNI.
   Individually and on behalf of all others similarly situated

10

11

12                    UNITED STATES DISTRICT COURT

13         NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

14

15  KATHLEEN HANNI, individually and on )   No.          C08-00732 CW
16  behalf of all others similarly situated,  )
                                              )
17           Plaintiff,                       )   **MEMORANDUM OF POINTS AND**
                                              )   **AUTHORITIES IN OPPOSITION TO**
18  v.                                        )   **DEFENDANT'S MOTION TO DISMISS**
                                              )
19  AMERICAN AIRLINES, INC.; and DOES 1 )   Date: April 24, 2008
20  through 20, inclusive,                    )   Time: 2:00 p.m.
                                              )   Courtroom: 2, 4th Floor
21           Defendants.                      )
                                              )
22  ─────────────────────────────────────────)

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES...........................................................................iii

3   I.  Summary of Facts and Procedural History....................................................1

4   II.  Federal statutes do not preempt state tort and contract law in this case.........................2

5         A.  Background of Federal Preemption Law...............................................2

6         B.  Presumption against preemption ....................................................3

7         C.   Defendant's argument that "field preemption" requires dismissal of the
      Complaint is without merit..........................................................5

8
         1.  Background of Aviation Field Preemption........................5

9
         2.  The statutory and case law on field preemption shows that state
10        law plays a significant role in aviation, and even where field
         preemption is found state tort remedies remain...................6

11
         3.  The cases cited by AA do not support its argument of field
12        preemption in this case......................................................8

13        D. Express Presumption under the Aviation Deregulation Act of 1978 (ADA) does
      apply in this case as the Supreme Court has specifically exempted contract claims
14        and the appellate courts do not allow tort claims such as those alleged in this case
      to me dismissed based on preemption arguments........................................9

15
         1.  ADA Preemption of State Statutes, Tort and Contract Law..9

16
         2.  "Service" in the transportation industry means transportation
17        offered for a price along a route..............................................11

18        3.  Recent cases also show a trend in court decisions in favor of
      non-preemption for torts that are outside of the normal services
19        provided by airlines to passengers, and a reluctance to dismiss tort
      claims based on preemption leaving passenger plaintiffs with no
20        legal remedies......................................................................16

21        4.  The torts of false imprisonment, emotional distress, fraud and
      deceit, and negligence are not preempted where, as here, an
22        airline confines passengers against their will for an extended period
      of time without legal justification, while depriving them of basic
23        survival necessities of water, food, bathroom facilities, breathable
      air in overcrowded conditions..............................................19

24        III. The Complaint is sufficiently plead for relief on all causes of action, however, plaintiff should
25        be granted  leave to file an amended complaint and to provide a more definite statement..20

26        A.  False Imprisonment...........................................................21

27        B.  Intentional Infliction of Emotional Distress............................................22

28        C.  Negligence.................................................................23

D.  Breach of Contract...................................................................................23

E.  Deceit/Fraud................................................................................24

IV.  Conclusion ...........................................................................................25

### TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Abdullah v American Airlines*, 181 F.3d 363 (3rd Cir. 1999)……………………….18

*Abourezk v New York Airlines, Inc*, 895 F.2d 1456 (D.C. Cir. 1990)…………...11,20

*Abu-Brisson v Delta Air Lines*, 128 F.3d 77, 81 (2d Cir. 1997)…………………..5,15

*Air Transport Association, Inc. v Cuomo*, ___ F.Supp.2d ____
2007 WL 4480046, * 4  (NDNY 2007)……………………………………………….9

*Air Transport Association of America, Inc. v Cuomo*, ___ F.3d ___
(2nd Cir. 2008) 07-5771cv……………………………………………………………10

*Aldana v Air East Airways*, 477 F.Supp.2d 489 (D.Conn. 2007)……………………..18

*Alshrafi v American Airlines, Inc.*, 321 F.Supp.2d 150 (D.Mass. 2004)……………...21

*American Airlines v Wolens*, 513 U.S. 219, 230 (1995)…………………………4,6,13,21

*Bates v. Dow Agrosčžences L.L.C.*, 544 U.S. 431, 449 (2005)………………….…....3

*Bennett v Southwest Airline Co.*, 484 F.3d 907 (7th Cir.  2007)……………………….21

*Botz v Omni Air Int'l*, 286 F.3d 488 (8th Cir. 2002)…………………………………10

*Branche v Airtran Airways, Inc.*, F.3d 1248, 1260 (11th Cir. 2003)……………………9

*Cal. Div. of Labor Stds. Enforcement v Dillingham Constr., N.A.*,
519 U.S. 316, 355 (1997) (Scalia, J., concurring)…………………………………...13

*Charas v TWA*, 160 F.3d 1269, 1265-66 (9th Cir. 1998) (en banc)……………………7

*Chrissafis v Continental Airlines, Inc.*, 940 F.Supp. 2d 1992, 1300 (N.D. Ill. 1996)…20

*City of Columbus v Ours Garage & Wrecker Serv.*, 536 U.S. 424,438 (2002)………..17

*Cleveland v Piper Aircraft Corp.*, 985 F.2d 1438, 1444 (10th Cir. 1993)……………...18

*Donker v British Airways Corp.*, 62 F.Supp. 2d 963 (EDNY 1999)……………………22

*De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)……3,4

*Delta Airlines v Cook*, 816 NE2d 448 (Ind. App. 2004)……………………………….21

*English v. General Elec. Co.*, 496 U.S. 72, 78 (1990)…………………………… …1,17

*Gade v. Natl Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992)……………………3

*Gary v Air Group, Inc.*, 397 F.3d 183 (3d Cir. 2005)…………………………………15

*Hawaiian Airlines v Norris*, 512 U.S. 246, 263 (1994)………………………………...11

*Hodges v Delta Airlines*, 44 F.3d 334, 336(5th Cir. 1995) (en banc)....................8,14

*Huntleigh Corp. v La. State Bd. of Private Sec. Examiners*,
906 F. Supp. 357, 361 (MD La. 1995).........................................................12

*Independent Federation of Flight Attendants v Cooper*,
141 F.3d 900, 901 (8th Cir. 1998)............................................................5,11

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)...............................1

*Kalantar v Lufthansa German Airlines*, 402 F.Supp.2d 130, 141 (DDC 2005)...........21

*Knapp v American Airlines, Inc.*, 938 SW2d 357 (Tenn. 1996)............................21

*Lord v Souder*, 748 A.2d 313, 2001 WL 392237 (Del. Supr. 2000)......................29

*Lyn-Lea Travel Corp. v American Airlines*, 283 F.3d 282 (5th Cir. 2002)................21

*Maddox v American Airlines, Inc.*, 298 F.3d 694, 697 (8th Cir. 2002)....................4

*Medtronic, Inc. v. Lohr*, 518 U.S. 470,485 (1996)...........................................4

*Montalvo v Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007)..............................15,19

*Morales v TWA*, 504 U.S. 374, 384 (1992)............................................4,6, 27

*New York State Conf. of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*,
514 U.S. 645, 654 (1995)..................................................................3,13

*NY TCO Services, Inc. v Wilson*, 351 So.2d 875.............................................29

*Perdigao v Delta Airlines, Inc.* __ So.2d ___ (Ct. App. La., 5th Cir., 2007) decided 11/13/07  111307 LACA5, 05-LA325................................................11

*Pinney v. Nokia, Inc.*, 402 F.3d 430, 457 (4th Cir., 2005....................................4

*Price v Delta Airlines Inc.*, 5 F Supp 2d 226, 238 (D Vt. 1998)...........................23

*Pub. Health Trust v Lake Aircraft*, 992 F.2d 291, 295 (11th Cir. 1993)...............17

*Romano v American Trans Air*, 56 Cal. Rptr.2d 428 (Cal.Ct. App. 2nd Dist., 1996)...19
*Rombom v United Air Lines, Inc.*, 867 S.Supp. 214 (SDNY 1994)...............20,21,22

*Schneidewind v ANR Pipeline Co.*, 485 US 293, 299(1988)..............................1

*Shqeirat v U.S. Airways Group, Inc.* ____ F.Supp.2d ____ (D. Minn. 2007)
Civ. No. 07-1513............................................................................20

*Silkwood v Ker-McGee Corp.*, 484 U.S. 238 (1984).......................................17

*Smith v Comair, Inc.* 134 F.3d 254, 259 (4th Cir. 1998)...................................9

*Somes v United Airlines, Inc.*, 33 F.Supp.2d 78 (D.Mass. 1999)..........................20

*Stevens v Marco*, 147 Cal. App. 2d 357, 305 P.2d 669 (2d Dist. 1956)..................27

*US v Healy* 376 U.S. 75 (1964)……………………………………………………….16

*Taj Mahal v Delta Airlines*, 164 F.3d 186, 194 (3rd Cir. 1998)…………………….....7

*Travel All Over the World v Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996)..8,9

*Vinnick v Delta Airlines, Inc.*, 113 Cal. Rptr. 2d 471 (Cal.Ct. App, 2nd Dist., 2001)…..19

*White v America West Airlines, Inc.*, 786 NE2d 497 (Ohio App., 2003)  …………….21

*Xiao Xing Ni v Gonzales*, 494 F.3d 260, 269 n. 7 (2d Cir. 2007)…………………….5

*Wellons v Northwest Airlines, Inc*, 165 F.3d 493 (6th Cir. 1999)…………………….10

*Witty v Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004)…………………….18

Wuebker v Wilber-Ellis Co., 418 F.3d 883 (8th Cir. 2005)…………………………….18.
*Zicherman v Korean Air Lines Co.*, 516 U.S. 217 (1996)……………………………...2

**CONSTITUTION**

U.S. Const. Art. VI, cl. 2……………………………………………………… 2

**STATUTES & RULES**

Airline Deregulation Act of 1978………………………………………………….passim

Arkansas Statutes, Title 5, Subtitle 2, Sec. 5-11-103 & 104
Sec. 5-11-101 (3)……………………………………………………………….....6

Federal Aviation Act of 1958  (FAA 1958) (49 U.S.C. Sections 40101, et seq………15

Public Law 95-504,  92 Stat. 1705……………………………………………………….2.

Texas Penal Code Sec. 20.02 Unlawful Restraint, Sec. 20.01 (1), Sec. 15.01 ………..6

49 U.S.C. Sec. 41713(b)(1)………………………………………………………….4

49 U.S.C. Sec. 41713(b)(3)(2000 )………………………………………………..15

49 U.S.C. Sec. 41713(b)(4)(B)(i)…………………………………………………..15

49 USC Sec. 41713, 41714 Sections 41716, 41717, 41719,

41732-41748, 41761-41764, 40106, 41101, 44706…………………………………….8.

49 USCA Sec. 46501(1)…………………………………………………………….16

14 C.F.R. Sec. 91.13(a)……………………………………………………………..20

**LEGISLATIVE MATERIALS**

Aviation Consumer Issues:  Hearing Before Subcomm.

On Aviation of the H. Comm. on Transportation.
H.R. Hrg. 110-29 (2007) ("Aviation Consumer Issues", at 92…………………………...5

H.R. Rep. No. 95-1211, at 2-3, (1978)……………………………………………………7

H.R. Rep. No. 103-677 at 85, 1994 U.S.C.C.A.N. at 1756……………………………17

U.S. H.R. Comm. on Pub. Works, Legislative
History of the Airline Deregulation Act of 1978 (1979)………………………………7


**OTHER**

Am. Jur. 2d Fraud, Sec. 34…………………………………………………………………27

Christopher S. Moran, "Flying the Not-So-Friendly Skies:
 Charas v TWA's definition of 'Service' under the ADA's
Preemption Clause Exposes Airlines to Tort Liability,"
65 J. Air L. & Com. 497, 518 (2000)………………………………………………………7

Webster's 3rd New Int'l Dictionary 2075 (1976)………………………………………7

8A Am. Jur.2d Aviation Sec. 222………………………………………………………...16

1   Plaintiff Kathleen Hanni submits this memorandum of points and authorities in

2   opposition to Defendant American Airlines, Inc.'s motion to dismiss.

3   **I. Summary of Facts and Procedural History**

4   Plaintiff Kathleen Hanni purchased a ticket in California from Defendant American

5   Airlines (AA) for air transportation on December 29th, 2006 from San Francisco California via

6   Dallas Fort Worth Airport (DFW) to Mobile Alabama.  Ms Hanni and thousands of others

7   similarly situated had their flights diverted to other airports by AA where they were held at AA's

8   direction on the ground in parked aircraft for many hours, in plaintiff's individual case for over

9   nine hours, without potable water, working toilets, adequate food, access to medications, or

10  breathable air.  Plaintiff alleges that she and many other passengers suffered emotional and

11  physical distress and medical emergencies due to AA's confinements on the tarmac aircraft of

12  diverted passengers. Plaintiff alleges AA refused to permit passengers to deplane to the airport

13  terminals so they could provide for their own essential needs, although gates and buses were

14  available for AA's use.  Plaintiff alleges that these lengthy tarmac detentions were not based on

15  directives from FAA controllers or other government authorities, were not based on safety, and

16  were not based on closure due to weather of the diverted airports or DFW.  But rather were

17  based on matters within the control of AA such as adequate staffing and proper maintenance of

18  aircraft. Plaintiff and thousands of others were after being finally released from the aircraft late

19  on December 29th, 2006, then denied compensation for overnight lodging or meals and related

20  expenses which were promised in AA's contract of carriage and related written agreements. On

21  December 30th, 2006, Plaintiff alleges she was denied boarding on her flight to Mobile Alabama

22  from DFW because AA had overbooked that flight and again denied compensation and

23  assistance as provided for in the written contracts with AA and in violation of  the federal

24  bumping rule, causing a second day of stranding in Dallas, and a total delay of over 30 hours

25  to her destination of Mobile Alabama.

26  Plaintiff alleges that AA falsely invoked the Force Majeure (weather and safety) clause

27  in its contract with plaintiff and others similarly situated in order to avoid contractual

28  obligations, violated its due care duties as an air carrier,  and committed state common law torts

1  of false imprisonment, negligence, fraud and deceit, infliction of emotional distress, as well as

2  breach of contract.  Plaintiff also alleges she and thousands of others were detained against their

3  will by AA's willful deceptions or threats and that such unjustified detention of passengers

4  represents a pattern or corporate policy or practice of AA in situations involving mass stranding

5  and diversions of its flights.    Plaintiff seeks damages not exceeding $75,000 for herself

6  individually and as a class representative, and for others similarly situated as the court may

7  determine, inclusive of punitive damages and attorneys fees.

8       A Complaint was filed by Plaintiff in Superior Court, Napa County, California on

9  December 28th, 2007, and  removed to this Court by AA filing a Notice of Removal dated

10 January 31, 2008, alleging jurisdiction in this court based on diversity under 28 U.S.C. Sec.

11 1441(b) and the Class Action Fairness Act, 28 U.S.C. Sec. 1332(d).  On February 19th, 2008, AA

12 then filed the present motion to dismiss the Complaint pursuant to FRCP 12(b)6.

13      Plaintiff filed a motion for remand to state court on February 29th, 2008.

14      AA has also filed a motion to amend its notice of removal to include a settlement letter

15 dated March 3rd, 2008, by a Plaintiff attorney to an attorney for Defendant AA.  This case was

16 assigned to the ADR track by order of this Court dated January 31, 2008, requiring the parties'

17 counsel to confer and meet re settlement and ADR options prior to April 21, 2008.

18      The motion to dismiss and the motion for remand are now scheduled to be heard on

19 April 24th, 2008.

20 **II.  Federal statutes do not preempt state tort and contract law in this case.**

21      **A.  Background of Federal Preemption Law**

22      The principle of federal preemption of state law arises from the Supremacy Clause

23  of the Constitution, which provides that laws enacted by the Congress "shall be the supreme

24 law of the land. . .." U.S. Const. Art. VI, cl. 2.  Congress can preempt and displace state law

25 under the Supremacy Clause "in three circumstances." *English v. General Elec. Co.*, 496 U.S.

26 72, 78 (1990).  First, Congress can explicitly state that its enactment preempts state law. Id.

27 Second, it can decide to occupy the entire field of regulation to the exclusion of any state law.

28 Id.  Third, "state law is pre-empted to the extent that it actually conflicts with federal law."  Id.

**B. Presumption against preemption**.

Here, Defendant AA asserts that "Plaintiffs' [sic] causes of action are preempted by federal law in two ways:  (a) Field preemption by the Federal Aviation Act of 1958 ('FAA') and its implementing Federal Aviation Regulations… and (b) Express preemption under the Airline Deregulation Act ('ADA') which prohibits states from 'enact[ing] or enforce[ing] a law, regulation or other provision having the force and effect of law related to a price, route or service of an air carrier,' 49 U.S.C. Sec. 41713(b)(1)."  AA Memorandum of Points at p. 1.

The question in such a case is always one of congressional intent. The purpose of Congress is the ultimate "touchstone." *Gade v. Natl Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992) (plurality); accord Schneidewind v ANR Pipeline Co., 485 US 293, 299(1988).  In order to determine congressional intent, a court must "examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138 (1990).   This must be done in a context in which there is a <u>"presumption that Congress does not intend to supplant state law."</u>  *New York State Conf. of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) ("*Travelers*").  See also  *De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (holding that "relating to" language in preemption statute does not modify the starting presumption against preemption).

The ADA's  purposes are described as follows:

> A bill to amend the Federal Aviation Act of 1958, as amended, to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services, and for other purposes. S. 2493, 95th Cong., Public Law 95-504,  92 Stat. 1705.

Within the context of a federal statute whose declared purpose was to place the air transportation system on a "competitive market forces" basis, it is not rational to argue as AA does here that the ADA was intended to confer *de facto* <u>immunity</u> from state common law in situations like those described in the Complaint.  Indeed, it is inconceivable that Congress intended to prohibit the use of state tort law to provide remedies to passengers faced with the dangerous, and egregious situations like those described in the Complaint.  The Supreme Court normally defers to state common law in lawsuits against airlines for misconduct or negligence.

1    For example, see *Zicherman v Korean Air Lines Co.*, 516 U.S. 217 (1996) forbidding U.S. courts

2    from invoking any federal common law, maritime law, or foreign law in aircraft cases,

3    overturning prior law to the contrary, but rather instructing the courts to rely on the common

4    law of the forum state with its choice of law rules, federal statutes and treaties.  See also,

5    *Maddox v American Airlines, Inc.*, 298 F.3d 694, 697 (8th Cir. 2002).

6        This presumption against preemption applies both to the question of whether Congress

7    intended to displace state law in the first instance, as well as to the "scope" of any preemption

8    that may be found. *Medtronic, Inc. v. Lohr*, 518 U.S. 470,485 (1996).  The presumption against

9    preemption is particularly strong when it comes to state tort common law governing which is

10    traditionally determined by the state law.

11        In areas of traditional state regulation, we assume that a federal statute has not
12        supplanted state law unless Congress has made such an intention clear and manifest.
           *Bates v. Dow Agrosčences L.L.C.*, 544 U.S. 431, 449 (2005).

13        Most particularly, there "is a strong presumption against preemption when the federal

14    government regulates in areas traditionally left to the states, such as health and safety." *Pinney*

15    *v. Nokia, Inc.*, 402 F.3d 430, 457 (4th Cir., 2005).  Indeed, the proponents of preemption bear

16    a "considerable burden of overcoming the starting presumption that Congress does not intend

17    to supplant state law."  *De Buono,* 520 U.S. 806,  814 (internal quotation omitted.)

18        Thus, to prevail here, AA must overcome a "strong" presumption that state common law

19    is not preempted, *Pinney*,   402 F.3d 430, 457, and bear the  "considerable burden of

20    overcoming" the starting presumption that it is not preempted. *De Buono,* 520 U.S. 806, 814.

21        No court has found airline immunity from state tort law for an airline confining

22    passengers against their will for over nine hours on aircraft on the ground without survival

23    necessities of water, food, lavatory use, breathable air for its own pecuniary benefit, when there

24    exists no federal statutes or rules specifically prohibiting or giving any federal remedy for such

25    wrongful conduct under federal statutes.  No court has reached such a conclusion and this

26    cannot be the basis for granting a motion to dismiss the Complaint especially under FRCP 12(b)6

27    for failure to state a cause of action.

28

1    Moreover, defensive pleas and opining of Plaintiff's counsel that the Complaint

2    allegations are factually improbable is not a basis for dismissal of a complaint.    For purposes

3    of a Rule 12(b)6 motion (as with remand motions) the court must accept as true the well pleaded

4    allegations in the complaint and draw all inferences therefrom in favor of the non-moving party.

5    *Independent Federation of Flight Attendants v Cooper*, 141 F.3d 900, 901 (8th Cir. 1998)

6    **C. Defendant's argument that "field preemption" requires dismissal of the Complaint is without merit**.

7    **1. Background of Aviation Field Preemption**.

8    AA's preemption argument presented in Point III. A of its Memorandum of Points and

9    Authorities (AA Memo) is that when Congress enacted the Federal Aviation Act of 1958 (FAA

10    1958) (49 U.S.C. Sections 40101, et seq.) and regulations issued under it by the Federal Aviation

11    Administration (FAA), it impliedly occupied the field and preempted all state law relating to the

12    "health and safety of passengers during flight."    AA Memo at p. 4.    This argument is without

13    merit.

14    First it is untrue, as no court has found total preemption of state law, especially as it

15    relates to common law damages for torts and contract disputes.  Second, Congress has enacted

16    a whole series of exceptions to preemption by the FAA 1958 that negate any general theory of

17    implied preemption and has issued very specific preemption provisions. E.g. Savings clauses

18    preserving state common law tort claim rights in Federal Aviation Act 49 USC Sec. 40120(c );

19    the ADA Proprietor Exception, 49 U.S.C. Sec. 41713(b)(3)(2000 ) [exempting  state and local

20    airport authority regulations controlling airport premises from preemption]; 49 U.S.C. Sec.

21    41713(b)(4)(B)(i) [safety exception to ADA preemption of "laws related to a price, route or

22    service" of air carriers of property].   Third, neither the U.S. Federal Aviation Administration  or

23    its parent agency the US Department of Transportation  had any regulations governing tarmac

24    confinements in place as of December 29th, 2006, the date of the incident complained of and

25    no federal statute or regulation has been enacted since. Fourth, the AA conduct that is the

26    subject of the Complaint took place on the ground, not in flight.  Fifth, even where field

27    preemption is found, the courts permit plaintiffs to pursue state tort remedies unless a federal

28    remedy for injured persons is provided.

Field preemption occurs when there is a "scheme of federal regulation ...so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it." *English*, 496 U.S. at 79. (AA has properly not claimed conflict preemption which occurs when state law actually conflicts with a federal statute or regulation.) The mere fact that Congress has enacted federal detailed legislation addressing a matter of dominant federal interest does not indicate intent to displace state law entirely. *English*, 496 U.S. at 82.

**2. The statutory and case law on field preemption shows that state law plays a significant role in aviation, and even where field preemption is found state tort remedies remain.**

The Federal Aviation Act of 1958 reenacted in 1994 has a savings clause and was clearly not intended to divest states of any jurisdiction they currently had, but was rather intended to give the federal government concurrent jurisdiction with states where it was felt this would contribute to the administration of justice and protect air commerce. See gen. 8A Am. Jur.2d Aviation Sec. 222; *US v Healy* 376 U.S. 75 (1964); 49 USCA Sec. 46501(1).

The Supreme Court held *in City of Columbus v Ours Garage & Wrecker Serv.*, 536 U.S. 424,438 (2002) that the safety exceptions in parallel preemption provisions are intended only to clarify that those provisions do " 'not restrict' the existing 'safety regulatory authority of a State.' " Moreover, the legislative history of the ADA makes it clear that "State authority to regulate safety .... is unchanged, since State regulation in those areas is not a price, route or service and is therefore unaffected." H.R. Rep. No. 103-677 at 85, 1994 U.S.C.C.A.N. at 1756.

The Tenth Circuit in *Cleveland v Piper Aircraft Corp.*, 985 F.2d 1438, 1444 (10th Cir. 1993) firmly rejected the claim that the field of aviation safety was preempted by implication, reasoning that the ADA showed a conscious choice to preempt state economic regulation and was a reliable indication of Congressional intent. The court also found that by Congress expressly preempting one kind of state regulation, this implies it did not intend to preempt another. The Eleventh Circuit agrees. *Pub. Health Trust v Lake Aircraft*, 992 F.2d 291, 295 (11th Cir. 1993).

The Third Circuit in *Abdullah v American Airlines*, 181 F.3d 363 (3rd Cir. 1999) found field preemption for airline safety, but also found Congress had not occupied it in a way that

1   precluded states from imposing their own common law damage remedies because such

2   remedies would not interfere with federal objectives.  See also, *Aldana v Air East Airways*, 477

3   F.Supp.2d 489 (D.Conn. 2007), [State common law negligence standard preempted for injuries

4   and emotional distress to persons on ground injured in air crash, but plaintiff could recover in

5   tort if violation of standard of care set forth in FAA rules was violated], citing *Silkwood v Ker-

6   McGee Corp.*, 484 U.S. 238 (1984) [holding state tort remedies remain available even where

7   there is preemption if Congress does not provide a federal remedy for persons injured by illegal

8   conduct].

9       The Second Circuit in *In re Air Crash Disaster*, 635 F.2d 67, 74  (2d Cir. 1980) rejected

10  as meritless a claim that New York's General Business Law Sec. 245(1) that prohibits reckless

11  or careless operation of aircraft, is preempted by federal law. Reaffirmed in *Air Transport*

12  *Association*, supra 3/25/08.  The Eighth Circuit has likewise taken the position that it will not

13  preempt state tort law by field preemption absent a clear Congressional intent to do so.

14  *Wuebker v Wilber-Ellis Co.*, 418 F.3d 883 (8th Cir. 2005).

15      California state courts also hold airlines to account for negligent torts even if preemption

16  is found.  See *Vinnick v Delta Airlines, Inc.*, 113 Cal. Rptr. 2d 471 (Cal.Ct. App, 2nd Dist., 2001)

17  [negligent storage in overhead bin]; *Romano v American Trans Air*, 56 Cal. Rptr.2d 428 (Cal.Ct.

18  App. 2nd Dist., 1996).

19      The District court and state court decisions have decided most cases involving the

20  defense of  preemption to state tort and contract law claims and treat them quite differently and

21  more deferentially than those involving state statutes.  *Huntleigh Corp. v La. State Bd. of Private*

22  *Sec. Examiners,* 906 F. Supp. 357, 361 (MD La. 1995)["[T}he policies and equities involved in

23  cases based on state tort or contract law are obviously very different than those in which a state

24  attempts to directly regulate an air carrier."]

25      In one very  recent case on point, *Perdigao v Delta Airlines, Inc.* __ So.2d ___ (Ct. App.

26  La., 5th Cir., 2007) decided 11/13/07  111307 LACA5, 05-LA325, where a passenger who was

27  held on the runway for 8 hours at the New Orleans airport where the airline did not allow

28  passengers to move around or use restrooms suffered blood clots, the court found no

1  preemption for a negligence claim under the ADA or the FAA, and distinguished *Witty* as only

2  barring a claim for failure to warn.

3      **3. The cases cited by AA do not support its argument of field preemption in this case.**

4      In *Witty v Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004) the court held

5  preempted a state claim for failure to warn passengers of health risks from Deep Vein

6  Thrombosis (DVT) because federal and state warning requirements conflicted.  It declined to

7  reach the question of whether field preemption would also preclude federal claims for failure

8  to warn.

9      In *Montalvo v Continental Airlines*, 508 F.3d 464 (9th Cir. 2007), the court found field

10  preemption because federal DVT regulations included various specific warnings to passengers,

11  completely occupying the field, but then reversed and remanded to the lower court for fact

12  finding on a claim of negligence in seat design which it held was not necessarily preempted.

13      Accordingly, there is no merit in AA's argument that field preemption requires dismissal

14  of the Complaint in this case.  There were and are no federal regulations covering lengthy

15  tarmac confinements beyond the most general standard of the safe operation of aircraft.  But

16  even if preemption of a state negligence standard were found, tort remedies remain available

17  based on federal standards of due care in the operation of aircraft as no federal remedy exists

18  for persons harmed by unsafe airline operations.

19      AA relies on *Abourezk v New York Airlines, Inc*, 895 F.2d 1456 (D.C. Cir. 1990), which

20  held against a passenger held three hours on the ground (not 9 plus hours as in this case), but

21  this fact based decision was based on one individual not suffering more than a minor

22  inconvenience, not involuntary confinement of thousands in overcrowded conditions for

23  upwards of 9 hours or more, with deception and hardship.  This decision was also based on a

24  summary judgment motion after extensive discovery, not a motion under 12(b) 6 dismissal of

25  a complaint with no opportunity for filing an amended complaint or discovery.  Furthermore,

26  this case was not a preemption case but was decided on the facts of a three to four hour delay

27  in the plaintiff reaching his destination.   Here the delay was over 24 hours due to the

28  involuntary confinement of plaintiff and others similarly situated imposed by AA.  And finally

1  the appeal court noted that the plaintiff could still have prevailed against a motion for summary

2  judgment if he had shown exigent circumstances.

3      Finally, AA's fact based defensive pleas by its counsel that weather and safety were the

4  causes of the delays and confinements are directly contradicted by the Complaint allegations.

5  The complaint allegations must be taken as true for the purposes of a 12(b)6 motion.

6  **D.  Express Presumption under the Aviation Deregulation Act of 1978 (ADA) does apply in this case as the Supreme Court has specifically exempted contract claims and the**

7  **appellate courts do not allow tort claims such as those alleged in this case to be dismissed based on preemption arguments.**

8  **1.  ADA Preemption of State Statutes, Tort and Contract law**

9      The ADA preempts state laws "related to a price, route or service of an air carrier."  49

10  U.S.C. Sec. 41713(b)(1).  The Supreme Court has interpreted this language to mean that a party

11  seeking to prove preemption under the ADA must demonstrate that the challenged law either

12  (1) makes explicit "reference to" an airline price, route or service" or (2) has a "connection with"

13  an "airline price route or service." *Morales v TWA*, 504 U.S. 374, 384 (1992).  In *Morales*, state

14  attorney general rules covering the terms of air fare advertisements were deemed preempted.

15  In *American Airlines v Wolens*, 513 U.S. 219, 230 (1995), the only other ADA case decided by

16  the Supreme Court, changes to a frequent flyer program were held preempted.    However, the

17  Court further held that a state did not "enact or enforce a law" within the meaning of the ADA

18  when it allowed civil action for breach of contract against the airline, because giving effect to

19  the economic purpose of the ADA required interpreting the term "law" to exclude a private

20  contract.   "Market efficiency requires effective means to enforce private agreements." Id.

21  (internal citations omitted).

22      Following *Morales* and *Wolens*' creation of a preemption "escape hatch," the Second

23  Circuit in *Abu-Brisson v Delta Air Lines*, 128 F.3d 77, 81 (2d Cir. 1997), held that "some state

24  actions may affect airline fares in too tenuous, remote or peripheral a manner to have pre-

25  emptive effect."  Id. (internal quotations and alterations omitted).  In *Abu-Brisson,* state age

26  discrimination claims were upheld against preemption where the state law a) had no "reference

27  to" an air carrier's rates or services and b) as to the "connection with" prong did not establish

28

that enforcing state law would have an economic impact.  The other circuits have generally followed this approach.

Here the common law torts and contract law have no "reference to" an air carrier's rates and services and no "connection to" has been proven, rather merely alleged on brief.

The President and CEO James May of the Air Transport Association of America, Inc., which is the trade association representing AA in legislative matters, testified before Congress in 2007 that incidents of long tarmac confinements as set forth in the Complaint were extremely rare, and that the likelihood of delays of 3-5 hours or more occurring again was "extremely small."  Aviation Consumer Issues:  Hearing Before Subcomm. On Aviation of the H. Comm. on Transportation. H.R. Hrg. 110-29 (2007) ("Aviation Consumer Issues", at 92.    See also http://www.airlines.org/government/testimony/ATA+Testimony+-+President+and+CEO+Jim+May+on+Aviation+Consumer+Issues.htm

Congressional testimony is an appropriate subject of judicial notice.  See *Xiao Xing Ni v Gonzales*, 494 F.3d 260, 269 n. 7 (2d Cir. 2007).    Therefore, AA's own representative to Congress indicates that no significant economic effect exists.  Plaintiff's counsel is aware of only one other incident similar to this one that resulted in lawsuits and recoveries,  <u>Koczara et al v Wayne County and Northwest Airlines</u>, arising out of the mass stranding and confinement of several thousand passengers in Detroit in January 1999.  See attachment to Paul Hudson's Declaration in support of pending Motion to Remand in this case.

*Morales* and *Wolens* gave no specific test for what state law or actions would be preempted.  But the Supreme Court did give some examples, including state laws against gambling, prostitution, obscene depictions in fare advertising and contract disputes.  *Morales* at 390; Wolens at 230.

Here, there are state criminal statutes against false imprisonment which make such conduct as described in the Complaint, potentially a criminal as well as a common law civil offense.  See  Cal. Penal Code, Sec. 236 ["false imprisonment is the unlawful violation of the personal liberty of another"]; Texas Penal Code Sec. 20.02 Unlawful Restraint [offense defined as intentionally or knowingly restraining another person], Sec. 20.01 (1) ["'restrain' means to

1    restrict a person's movements without consent, so as to interfere substantially with the person's

2    liberty, ... by confining the person.

3        Proof of the violation of such statutes or a regulation, the elements of which are

4    contained in the Complaint allegations, would be evidence of negligence at the least.

5    **2. "Service" in the transportation industry means transportation offered for a price**

6    **along a route.**

7        The word "service" is a term of art in the transportation industry that is usually

8    understood to mean "a regularly scheduled trip over a transportation route, Webster's 3rd New

9    Int'l Dictionary 2075 (1976).   Thus " service" refers to the transportation that an airline offers

10   for a price along a route, as in "air service from San Francisco to Dallas three times a day", and

11   not everything an airline does to or for a passenger.

12       The Ninth Circuit adopted this narrow definition in *Charas v TWA*, 160 F.3d 1269, 1265-

13   66 (9th Cir. 1998) (en banc) ["Nowhere in the legislative history, or in what remains of the

14   federal airline regulatory statutes, does Congress intimate that 'service' in the context of

15   deregulation, includes dispensing of food and drinks, flight attendant assistance, or the like."]

16   And this view has since been joined by the Third Circuit in *Taj Mahal v Delta Airlines*, 164 F.3d

17   186, 194 (3rd Cir. 1998).

18       In *Charas*, the court noted that the narrow definition of services is strongly supported by

19   the legislative history of the ADA and by other uses of the word "service" or "services" in

20   aviation law, which nearly always uses it in the sense of point to point transportation.   See

21   generally, U.S. H.R. Comm. on Pub. Works, Legislative History of the Airline Deregulation Act

22   of 1978 (1979).   Throughout the history, the word "service" is frequently used in this narrow

23   sense and virtually never in any other.   See e.g., H.R. Rep. No. 95-1211, at 2-3, (1978);

24   Christopher S. Moran, "Flying the Not-So-Friendly Skies: Charas v TWA's definition of 'Service'

25   under the ADA's Preemption Clause Exposes Airlines to Tort Liability," 65 J. Air L. & Com. 497,

26   518 (2000). An examination of the sections immediately following section 41713 the

27   preemption clause makes this clear.   See 49 USC Sec. 41714 ("basic essential air service... from

28

1   an eligible point to a high density airport"),  Sections 41716, 41717, 41719, 41732-41748,

2   41761-41764, 40106, 41101, 44706.

3       Of course, if the term "services" refers to point-to-point transportation, then the provision

4   of basic human necessities and refraining from unlawful imprisonment or fraud and deceit is not

5   a "service" that is preempted under ADA.

6       The Fifth, Seventh and Eleventh Circuits include in the "service bargain" provision of

7   food and drink, and baggage handling in addition to the transportation itself.  However, fairly

8   read, food and drink refers to the choices of food and drink offered to passengers as amenities,

9   on the basis of which the airlines have sometimes competed.  Provision of basic human

10  necessities during prolonged involuntary confinement cannot be considered part of the "air

11  carrier services bargain" to which the Fifth Circuit refers.   In *Hodges v Delta Airlines*, 44 F.3d

12  334, 336 the Fifth defined the term to mean "a bargained for or anticipated provision of labor

13  from one party to another."

14      Applying this definition, the Fifth Circuit found no preemption of a claim that Delta was

15  negligent in allowing storage of a case of rum in an overhead storage bin. *Hodges* at 340.  The

16  Court goes on to note that its definition of "service" is supported by the view of the Civil

17  Aeronautics Board (CAB) that "the ADA was concerned solely with economic deregulation."

18  *Hodges* at 337.

19      *In Travel All Over the World v Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996),

20  the Seventh Circuit held that false statements by an airline about a travel agencies ticket

21  practices did not relate to a "service".  Even though ticketing is a "service" under the definition,

22  the false statements were "[c]ertainly ... not part of any contractual arrangement that [the airline]

23  had with the agency or its clients."  *Travel* at 1433.

24      Similarly, in *Branche v Airtran Airways, Inc.*, F.3d 1248, 1260 (11th Cir. 2003), the

25  Eleventh Circuit held that a claim of wrongful discharge by an employee that had reported safety

26  violations was not preempted, because "safety is not a basis on which airlines compete for

27  passengers, and as such is not something for which air travelers bargain; it is implicit in every

28  ticket sold by every carrier."   "Service" is "limited to bargained for aspects of air travel over

1    which carriers compete. By contrast, those elements of air carrier operations over which airlines

2    do not compete are not "services" within the meaning of the ADA's preemption provision, and

3    state laws relative to these elements are not preempted." *Branche* at 1258.

4    As the District court in *Air Transport Association, Inc. v Cuomo*, ___ F.Supp.2d ____

5    2007 WL 4480046, * 4  (NDNY 2007) recently noted in upholding a New York statute

6    mandating certain necessaries for passengers held on the ground by airlines for over three hours,

7    "passengers do not contract for access to bathrooms, air and water; the provision of these

8    necessities is presumed." The court per Judge Kahn observed further that the New York statute

9    required necessaries only in "extreme circumstances." And that "to contain people on grounded

10   planes for hours without necessities threatens public health."

11   But the Second Circuit in a per curium decision issued March 25th, 2008, found this New

12   York statute that required necessaries after three hours on the ground with potential fines of

13   $1,000 per passenger, while "laudable" was preempted under the ADA as a "service" which

14   could not be regulated by state consumer protection statutes.   However, the court went on to

15   reaffirm and strengthen an earlier decision holding that state tort actions and claims by

16   passengers were not preempted. Dec. at p. 14-15.   It further implied that federal standard of

17   care might be used in such cases. *Air Transport Association of America, Inc. v Cuomo*, ___ F.3d

18   ___ (2nd Cir. 2008) 07-5771cv.

19   The Fourth Circuit's decision in *Smith v Comair, Inc.* 134 F.3d 254, 259 (4th Cir. 1998),

20   also supports this conclusion.   It held that although boarding procedures were clearly a

21   "service," the ADA did not preempt a claim for false imprisonment based on Smith's alleged

22   detention while he was being denied boarding, as his claim was based on "outrageous conduct"

23   by the airline.  Refraining from outrageous conduct is not a "service."

24   In the one ADA case heard by the 8th Circuit, *Botz v Omni Air Int'l*, 286 F.3d 488 (8th Cir.

25   2002), a flight attendant sought to use a Minnesota whistle blower statute to refuse work

26   assignments, and the court ruled that the application of that state statute to that situation was

27   preempted by the ADA. The 8th Circuit has never ruled on an ADA case involving common law

28   torts and breaches of contract against an airline by a passenger as presented in this case.

1  However, it has held that there is no preemption when the conduct in a representation dispute

2  between unions does not require interpretation of collective bargaining agreements, but is based

3  on state tort law if it is only of peripheral concern to the Railway Labor Act preemption clause.

4  *Independent Federation of Flight Attendants v Cooper*, 141 F.3d 900. 903 (8th Cir. 1998) citing

5  *Hawaiian Airlines v Norris*, 512 U.S. 246, 263 (1994).

6      The Sixth Circuit has also turned back airline knee jerk defensive claims of preemption

7  in  *Wellons v Northwest Airlines, Inc*, 165 F.3d 493 (6th Cir. 1999) [claims bore only the most

8  tenuous relation to airline rates, routes, or services].

9      The denial of basic necessities, as set forth in the Complaint constitutes outrageous

10  conduct that cannot be considered part of any bargained for exchange and under Ninth Circuit

11  precedent in *Charas* is not a "service" subject to preemption under the ADA.

12       Certainly, passengers do not bargain for a 9 hour plus tarmac confinement within the

13  control of the airline, any more than they do for any other tort or even criminal conduct

14  involving bodily injury.   Here AA also voluntarily promised in its contract of carriage and in

15  its customer service plan that it would provide the very necessaries and compensation that it

16  denied to Kathleen Hanni and others similarly situated, placing the contract cause of action

17  within the exception carved out by *Wolens*.  AA admits the contract cause of action is not

18  preempted except possibly to the extent that an implied covenant of good faith is included in

19  its written contracts with Plaintiff.  See AA Memo at p. 14.

20      Further, "service," taken out of context as recognized by both the Supreme Court and the

21  Ninth Circuit is broad enough to cover any act that one performs for another, and "related to"

22  can mean anything an airline does as everything is ultimately related to everything else.  The

23  Supreme Court noted in *Travelers* 514 U.S. at 655, it is particularly necessary in preemption

24  cases to limit "related to" interpretation.  "If 'relate to' were taken to extend to the furthest

25  reaches of its indeterminacy, then for all practical purposes preemption would never run its

26  course, for really, universally, relations stop nowhere."  Id. Because the phrase "related to" is

27  vague, "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining

28

its key term, and look instead to the objectives of the [relevant] statute as a guide to the scope of the state law that Congress understood would survive." Id. at 656.

As Justice Scalia noted in *Cal. Div. of Labor Stds. Enforcement v Dillingham Constr., N.A.*, 519 U.S. 316, 355 (1997) (Scalia, J., concurring), applying the phrase 'relate to' "according to its terms was a project doomed to failure, ...since everything is related to everything else." And statutes using this language provide an "illusory test, unless the Court is willing to decree a degree of preemption that no sensible person could have intended—which it is not." Id. at 335-36.

It strains credulity to the breaking point to believe that immunity from tort law for false imprisonment, fraud or outrage are what Congress had in mind when, in the context of the economic deregulation of the airlines, it barred states from re-regulating airline "services."

Those "services" that Congress sought to protect from state regulation were the air transportation services that form the central element of the bargain between passenger and airline. As the Fifth Circuit has observed, statements of the Civil Aeronautics Board implementing airline deregulation "strongly support the view that the ADA was concerned solely with economic deregulation." *Hodges v. Delta Airlines, Inc.*, 44 F. 3d 334, 337 (5th Cir., en banc, 1995). And the Ninth Circuit ruled in *Chara*s in adopting the narrow definition of "service" as point to point transportation that food and drink service and passenger assistance are not preempted under ADA.

Prohibiting passengers from exiting aircraft to the airport terminal in this situation of lengthy delay would not impact on "routes", "prices" or schedules, any more than evacuating passengers from a burning aircraft on the ground or other survival or rescue type measures. Furthermore, the fact that AA also contracted with passengers and recognized but did not follow here its own declared policies and contractual obligations in situations of lengthy delay, makes this argument all the more fatuous. At the least, contested factual assertions and defendant speculations in a Rule 12(b)6 motion on brief do not justify dismissal of the Complaint prior to answer or any factual discovery.

1   Even were the Court to somehow conclude that unspecified, necessary food, water, and

2   waste removal after protracted tarmac delays were airline "services'" within the meaning of the

3   ADA's preemption provisions and contrary to Ninth Circuit precedent, this would still not avail

4   AA here.

5   Under the preemption principle as elucidated by the Second Circuit following *Wolens*,

6   and followed generally by other circuits, it is not sufficient that the subject matter of a state law

7   or tort fall within the description of the federal statute's preemption provision.   To be

8   preempted, the state law or tort must have the effect of frustrating the purpose of the federal

9   statute.  As that Court has said: "Most central to this analysis, Delta is unable to establish that

10   enforcing the city and state human rights laws in this case <u>would frustrate</u> the purpose of the

11   ADA. " *Abdu-Brisson*, 128 F.3d 77, 84 (2nd Cir. 1997) (emphasis added).  See also, *Gary v Air*

12   *Group, Inc.*, 397 F.3d 183 (3d Cir. 2005) ["services" limited to bargained for aspects of airline

13   operations; state whistle-blower law not pre-empted]; *Montalvo v Spirit Airlines*, 508 F.3d

14   464(9th Cir. 2007)   [Seat arrangement to prevent DVT not necessarily pre-empted, remanded

15   for development of record on whether arrangement would affect air fares].

16   AA here has not, nor could it, show that allowing passengers to exit the aircraft or

17   providing stranded passengers with the bare essentials of survival "frustrates" the purpose of the

18   ADA, which is economic deregulation.  At the very most, state common law relates to "services

19   only in some tenuous, remote or peripheral way and [if] thus preempted, then it is federal law

20   which is unnecessarily interfering with legitimate state laws and policies." *Abdu-Brisson*, *supra*

21   at 86.

22   In summary, the federal circuits are divided over the meaning of "service", but even

23   under the broader of the two definitions adopted, depriving passengers of basic human

24   necessities and refraining from false imprisonment is not a "service."   Congress' use of the

25   ambiguous term "service" does not demonstrate the "clear and manifest purpose" required to

26   show preemption under the ADA for state common law torts.

27   **3. Recent cases also show a trend in court decisions in favor of non-preemption for**
**torts that are outside of the normal services provided by airlines to passengers, and a**

28

1  **reluctance to dismiss tort claims based on preemption leaving passenger plaintiffs with no**
   **legal remedies**.

2

3      A test developed (now known as the RomBom test) by the District Court in *Rombom v*

4  *United Air Lines, Inc.*, 867 S.Supp. 214 (SDNY 1994) is now widely used to analyze preemption

5  issues on a case by case basis as it relates to laws that affect services.  See *Donker v British*

6  *Airways Corp.*, 62 F.Supp. 2d 963 (EDNY 1999) [noting that under *Wolens* contract claims are

7  not preempted , but statutory and tort claims against airlines require case by case analysis and

8  determination]  In contrast, the 18 year old *Abourezk* case relied on by Defendant has not been

9  cited or followed by other courts in deciding false imprisonment cases.

10     In *Rombom*, a passenger claimed she was ejected from a flight for no good reason and

11  then the airline had her arrested.  The court found preemption for claims arising from the

12  ejection but not for the passenger's confinement afterwards.  The court noted, "Confining the

13  preemption inquiry to the question of whether the tasks implicated in the complaint...are

14  services under [the ADA] is inadequate.  The manner in which the inflight activity is conducted

15  also bears on the question of preemption." *Rombom* at 221.  Under the *Rombom* test, the court

16  examines three factors:  1) whether the activity is an airline service, 2) whether the claim affects

17  airline services directly, and 3) whether the underlying tortious conduct affects the airline

18  service directly. These factors are progressive so that the answer to all must be "yes" for a claim

19  to be preempted.

20     In the subject case, the airline admits that it made a mistake in confining its passengers

21  in the December 29th, 2006 mass stranding and issued a apology and a $500 voucher to

22  thousands of passengers.  The Defendant's assertion on brief that depriving passengers of their

23  liberty on the ground for 9 hours without water, food or bathroom facilities is a "service" is

24  frivolous on its face and completely inadequate to sustain a 12(b)6 motion.

25     AA has not answered the Complaint but its counsel on brief claims and AA in public

26  statements asserts that the confinements were due to weather and to provide safe service.  These

27  are defensive pleas and cannot be used to dismiss the Complaint which claims the opposite.

28  Therefore the second prong is fact based and hotly contested which cannot be decided on a

12(b)6 motion in favor of the defendant. Plaintiff has evidence that AA was using confinement to avoid the expenses of accommodating passengers under its contract of carriage, knowingly misrepresented weather to passengers as the reason for the lengthy confinements on December 29th, 2009, and was financially rewarding its employees to engage in or cooperate in its wanton deception. Plaintiff fully expects to be able to prove such in discovery and if necessary at trial.

As to the third prong, that confinements of over 9 hours on the ground and/or depriving passengers of water, bathroom facilities, and food were reasonably necessary to provide air transportation service, even AA does not allege such.

Accordingly, under the *Rombom* test there is no basis for finding preemption at this time for any of the Complaint's tort claims.

As to punitive damages, this normally requires malicious, wanton, or reckless conduct, and again is fact based and cannot be determined prior to discovery. The cases cited by Defendant on brief involved wrongful cancellation of tickets and release of customer information to the government for security reasons without customer permission or knowledge, not as may be the case here a civil or even a criminal conspiracy to endanger passengers on a massive scale with lengthy confinements in order to avoid its contractual obligations and defraud its passengers, or at least a corporate policy of lengthy tarmac confinements in situations of mass flight diversions to avoid overnight compensation to passengers.

There is no *per se* ban on punitive damages against airline corporations in the proper case, as they are meant to deter and punish illegal conduct that would otherwise result in a windfall for defendant's illegal conduct notwithstanding compensatory damages. See *Price v Delta Airlines Inc.*, 5 F Supp 2d 226, 238 (D Vt. 1998). The plaintiff in this case has indicated a desire to have any such award donated to charity.

Since the Complaint was filed we have learned the identity of an AA manager at Austin and have reason to believe that the misrepresentations of bad weather were orchestrated by an operations manager for the DFW airport, that the AA operations manager at Austin repeatedly refused to permit aircraft to come into the terminal even though gates were offered and made available by the airport authorities for that purpose and there was no operational, safety or

1  security reason to hold passengers on aircraft after many hours, that AA knew passengers were

2  suffering, that AA controlled the aircraft on the ground at issue, not the FAA or TSA, that he had

3  buses to deplane passengers but refused to use them, that AA rewards its managers with bonuses

4  based on how little they pay out to passengers for extended delay compensation or alternate

5  transportation, and that AA flight crews are rewarded with full flight pay for on ground

6  confinements but are disciplined and/or receive little or no pay if they permit passengers to

7  remain in or go to the airport terminal in situations of long on ground delays.

8       **4. The torts of false imprisonment, emotional distress, fraud and deceit, and negligence
   are not preempted where, as here, an airline confines passengers against their will for an**
9  **extended period of time without legal justification, while depriving them of basic survival
   necessities of water, food, bathroom facilities, breathable air in overcrowded conditions.**

10

11      Numerous court decisions deny preemption of false imprisonment and related claims

12 against airlines**.** Defendant's brief misstates and distorts the case law on preemption of the tort

13 of false imprisonment against airlines beyond recognition.  Beyond the distortions of *Abourezk*,

14 set forth above, Defendant's counsel misstates the holding in *Chrissafis v Continental Airlines,*

15 *Inc.*, 940 F.Supp. 2d 1992, 1300 (N.D. Ill. 1996).  Contrary to Defendant counsel's false

16 assertions in its AA Memo at ft. 10, the court <u>denied</u> a 12(b)6 motion based on preemption and

17 allowed the plaintiff to proceed on her claims for false imprisonment and emotional distress.

18 The court in *Chrissafis* also collected the lower court cases on false imprisonment claims against

19 airlines and noted that while they seem divergent on the issue of preemption, they can be

20 reconciled.  The cases that found  ADA preemption for false arrest and false imprisonment

21 claims generally involved incidents where the crux of the passenger claim was a refusal to

22 transport or refusal to board.  Where the airline provided false information or withhold material

23 information, as alleged herein, the courts rule against preemption.

24      Fraudulent inducement was not preempted under ADA in *Lyn-Lea Travel Corp. v*

25 *American Airlines*, 283 F.3d 282 (5th Cir. 2002); nor negligence in *Bennett v Southwest Airline*

26 *Co.*, 484 F.3d 907 (7th Cir.  2007) [negligence claims not preempted and case remanded to state

27 even though negligence involved FAA regulations as well as state tort law].    State tort law

28 claims for false imprisonment and infliction of emotional distress arising from airline

1    representative conduct were also held outside the preemptive scope of the ADA in *Kalantar v*

2    *Lufthansa German Airlines*, 402 F.Supp.2d 130, 141 (DDC 2005).  In *Alshrafi v American*

3    *Airlines, Inc.*, 321 F.Supp.2d 150 (D.Mass. 2004), it was held that ADA does not preempt

4    intentional infliction of emotional distress or discrimination claims.  See also, *Somes v United*

5    *Airlines, Inc.*, 33 F.Supp.2d 78 (D.Mass. 1999) [negligence for failure to provide automatic

6    defibrillator on aircraft not preempted].  See also, *Delta Airlines v Cook*, 816 NE2d 448 (Ind.

7    App. 2004)[no preemption for negligence, emotional distress and contract claims where airline

8    allowed deranged passenger on board]; *White v America West Airlines, Inc.*, 786 NE2d 497

9    (Ohio App., 2003) [Defammation not preempted]; *Knapp v American Airlines, Inc.*, 938 SW2d

10   357 (Tenn. 1996)[no preemption for negligence and contract claims for failure to assist

11   passenger at airport].

12          In *Shqeirat v U.S. Airways Group, Inc.* ____ F.Supp.2d ____ (D. Minn. 2007) Civ. No.

13   07-1513, the court granted discovery on the issue of preemption where false imprisonment was

14   claimed, rather than base its decision on untested allegations in motion practice and in the

15   complaint.

16   **II. The Complaint is sufficiently plead for relief on all causes of action, however, Plaintiff**
     **should be granted leave to file an amended complaint and to provide a more definite**
17   **statement.**

18          AA asserts that every cause of action should be dismissed for failure to state a cause of

19   action sufficient for relief as a matter of law.  However, the alleged deficiencies in pleading are

20   more properly the subject of a demand for a more defendant statement.   Modern pleading rules

21   do not favor long complaints, and this complaint contains 100 paragraphs.  Were all the detail

22   demanded by Defendant included, it would have been much longer.

23          Moreover, the Complaint was drafted on short notice in late December 2007 and filed

24   in California state court, not in U.S. District court.  Some significant new facts have come to

25   light which can now be included in the complaint.  Under the California rules of civil procedure

26   C.C.P. Sec. 472, "Any pleading may be amended once by the party *of* course, and *without* costs,

27   and at any time before the *answer or demurer* is filed, or after demurer and  *before the trial of*

28   *the issue of law thereon.*"  5 Witkin California Procedure, Pleading Sec. 1124 at p. 579 (Witkin

Legal Institute 1997)(emphasis in original), quoting CCP Sec. 472. "This section states the right to amend at the outset, for a limited period, *without leave of court.*" *Id.* (emphasis in original). In addition: "The trial court may, in its 'discretion,' allow amendments 'in furtherance of justice.' (C.C.P. Sec. 473) The policy of great liberality in permitting amendments at any stage of the proceeding was declared at an early date and has been repeatedly restated." 5 Witkin California Procedure Sec. 1126 at p. 581.

Under federal rules a party may amend the Complaint once prior to answer as of right. FRCP 15(a). And in case a motion to dismiss is granted, leave to amend should be granted even if not requested unless the defect could not possibly be cured by the allegation of other facts. *Putkowski v. Irwin Home Equity Corp., 423 F.Supp.2d 1173 (N.D.Cal. 2005)*; *Hall v. City of Santa Barbara*, 833 F.2d 1270, cert. denied, 485 U.S. 940 (9th Cir. 1986) (holding that leave to amend complaint, rather than dismissal, was appropriate course of action, where the opposition to a motion to dismiss fairly advised defendant in district court as to the nature of the claim); *Manary v. Manary*, 151 F.Supp. 446 (N.D.Cal. 1957) (where it could not be determined whether the action by wife for an amount allegedly due under an oral agreement was part of a property settlement decree which wife sought to annul, or whether it was an independent agreement, action would be dismissed with leave to amend).]

Where an opposing party finds a pleading too vague or ambiguous to respond to FRCP 12(e) affords a solution of a motion for a more definite statement which points out the alleged deficiencies and the details desired.

The Plaintiff believes that its motion to remand should be granted, which would make this motion moot. However, if that motion is denied, then it is accordingly requested that the portion of the Defendant's motion to dismiss dealing with alleged defects in the Complaint be treated as a motion for a more definite statement, and should the court find any count deficient that the Plaintiff be granted a reasonable time to file an amended Complaint. Under Federal Rules of Civil Procedure, Rule 15(B)(2) leave to amend a complaint is to be freely given.

**A. False Imprisonment**.

1    Defendant counsel criticizes the drafting of the cause of action for false imprisonment as

2  "formulamaic" but fails to state what is actually deficient in his opinion.    False imprisonment is

3  defined as the unlawful restraint by one person of the physical liberty of another without consent or

4  legal justification.  Am Jur. 2d False Imprisonment sec. 1.  AA baldly asserts that false imprisonment

5  must be pled under Texas law, but Plaintiff had no connection or ties to Texas other that the fortuity

6  of her stranding there.  Moreover, it has now been learned that a majority to the diversions from DFW

7  and stranding and confinements on December 29th, 2006 were at non-Texas airports.  The Complaint

8  sufficiently pleads this cause of action alleging the time, date, place, and persons and entity responsible

9  for the confinement and that it was against her will, as well as the deplorable conditions of her

10  confinement, and the multiple deceptive and misrepresentations made by AA during the course of

11  confinement.    Complaint Par. 8-32, 44-52,54,62-74 .  Cf. *Scofield v. Critical Air Medicine*, 45

12  Cal.App.4[th] 990, 52 Cal.Rptr.2d 915 (1996) (holding that false imprisonment may be caused by fraud

13  and deceit, as where an air transport service pretends to be the transport service that was actually called

14  and moves in and actually transports children); 5 Witkin Summary of California Law Sec. 428 (10th

15  Ed.) (explaining that a duty to provide a means of escape arises when plaintiff's confinement was

16  induced by defendant's representation that assistance would be given when needed), discussing

17  Rest.2d Torts Sec. 45.

18    Defendant counsel opines that plaintiff consented to the confinement and should have

19  stated how she withdrew her consent and the confinement was justified by weather or safety

20  considerations. AA Memo at p. 21.  But consent and justification are affirmative defenses;

21  plaintiff is not required to address such beyond stating that it was against her will as she did in

22  the Complaint. Such matters are properly dealt with in the Defendant's Answer to the

23  Complaint, and in the post pleading stages of litigation.  Moreover, restraint is without consent

24  if it is accomplished by physical force, intimidation or deception.  Any consent must be free of

25  compulsion or mistake, and the issue of voluntariness of consent is normally a jury question.

26  See gen. Am. Jur. 2d False Imprisonment, Sec. 54.

27    **B.  Intentional Infliction of Emotional Distress**.

28

1   AA contends that the Complaint shows plaintiff only suffered a minor inconvenience,

2   insufficient for outrage.  Apparently being locked in an airplane in overcrowded conditions for

3   over nine hours or 15 hours total in what was supposed to be a 2.5 hour flight in hostage like

4   conditions, suffering from thirst, hunger, anxiety, lack of breathable air or medications, watching

5   others in extreme physical or emotional distress, deprived of toilet facilities all while being

6   repeatedly lied to about the reasons and duration of the confinement by AA employees, does

7   not seem outrageous or extreme to Defendant's officers and its counsel, but they are not the trier

8   of fact.  Again AA boldly asserts that the Complaint is deficient for Infliction of Emotional

9   Distress under Texas rather than California without justification or authority. Universally

10  accepted standards of civilized treatment for incarceration of prisoners disagree.  Reckless

11  conduct is sufficient for an Emotional Distress cause of action even under Texas law.

12      Moreover, outrageous conduct is also an issue of community standards.  And the jury as

13  the trier of fact will determine what conduct is considered outrageous in a civilized community.

14  Whether certain behavior meets a community standard for outrageous behavior, not unlike

15  indecency, which the Supreme Court noted in *Morales* is exempted from federal preemption,

16  is normally a jury question.  See *Newby v. Alto Riviera Apartments*, 60 Cal.App.3d 288, 131

17  Cal.Rptr. 547 (1976) (reversing trial court, appellate court held evidence sufficient to go to jury

18  on the cause of action of intentional infliction of emotional distress, where landlord delivered

19  an eviction notice (not pursued) to tenant organizer opposed to rent increases).

20      **C.  Negligence**.

21      Defendant complains that this count is too vague, even though duty of care owed to

22  passengers, breach and description of the breach and the degree of such, and causation, and

23  damages are all pled. AA Memo at p. 22; Complaint at Par. 86-89. esp.51,52. The fact that some

24  of the same factual allegations apply to false imprisonment or breach of contract is not grounds

25  to dismiss a cause of action, as alternative pleading is the norm is modern pleading practice.

26  See model pleadings for negligence.  Am. Jur. Pleadings & Practice; *Mendozo v. City of Los

27  Angeles*, 66 Cal.App.4[th] 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (elements of negligence).]

28      **D.  Breach of Contract**.

1   Defendant admits that breach of contract claims are not preempted under *Wolens*,

2   (AA Memo at p. 18-19) but asserts that it is vaguely pleaded, that any implied covenant of good

3   faith is preempted, and that the AA customer service plans are unenforceable.   These are

4   defensive pleas that in no way justify dismissal of the Contract cause of action as a matter of law.

5   *Sterling v. Gregory*, 149 C. 117, 121, 85 P. 305 (1906) (elements of breach of contract).

6   First, the specific written contracts run over 60 pages, and California law does not require

7   that they be attached to the pleading.  The Complaint identifies the contracts, where they are

8   available,  notes that they will be made available to the Defendant and the Court, identifies the

9   particular paragraphs that it is alleged the  Defendant breached by name.  Complaint Par. 91,

10   93.  Again, AA makes various defensive pleas and factual assertions which are contradicted by

11   the Complaint and cites only Texas law without justification in support of its contentions.

12   The Complaint therefore provides sufficient notice of the alleged breaches, but to make

13   it even more clear and definite, Plaintiff would agree to provide Defendant with a more definite

14   statement setting forth further details of the breaches of contract cause of action.

15   **E. Deceit/Fraud**

16   The Complaint alleges that AA knowingly deceived Plaintiff with false statements and

17   misrepresentations and concealment of material information in relation to the reasons for the

18   confinement, diversions and schedule changes on December 29th and 30th , 2006, that AA had

19   a duty to disclose material information related to its delays and diversions which it failed to do,

20   and that plaintiff relied to her detriment on the false and deceptive statements of AA, and

21   suffered damages thereby.  See Complaint Par. 96-98 with references to specific factual

22   paragraphs constituting the particulars of the alleged fraud or deceit; CC Sec. 1709; *Seeger v.*

23   *Odell*, 18 C.2d 409, 414, 115 P.2d 977 (1941) (elements of fraudulent misrepresentation).

24   The Complaint goes on to detail the misrepresentations which include falsely invoking

25   Force Majeure (weather and safety) as the reason for the confinements, extreme delays and

26   failure to provide for necessities, whereas in truth the confinements were due to a desire of  AA

27   for pecuniary gain to avoid diversion related expenses and compensation to its passengers.

28

Based on information obtained since the Complaint was drafted, Plaintiff wishes to add a cause of action for civil conspiracy, to plead special relationship between Plaintiff and AA, and to provide additional detail of names, times and exact statements that it alleged were misrepresentations by AA.  As with most civil conspiracies, corporate frauds and deceits, the full extent cannot be known without discovery as AA controls most of the witnesses and documents.

While fraud is required to be pled with particularity, there is a different and reduced standard of pleading and a higher degree of duty and care required when there a special relationship or fiduciary relationship exists between the parties.

Plaintiff also wishes to add a cause of action for  prima facie tort, which involves intentional infliction of harm, resulting in damage, without excuse or justification, by act or series of acts which would otherwise be lawful and which acts do not fall within categories of traditional tort.  *Lord v Souder*, 748 A.2d 313, 2001 WL 392237 (Del. Supr. 2000) on remand.  Defendant is a Delaware corporation and is subject to its common law standards of corporate conduct.

**IV.  Conclusion**

For the reasons stated herein, the motion to dismiss should be deemed moot assuming Plaintiff's remand motion is granted.  Otherwise, the motion should be denied, and the Plaintiff granted 30 days to move for leave to amend the Complaint and/or to file a more definite statement.

Dated: April 3, 2008     LAW OFFICES OF DAVID G. RAMOS
           LAW OFFICES OF PAUL S. HUDSON PC


By: _____/s/_____
   David G. Ramos

Attorneys for Plaintiff KATHLEEN HANNI
Individually and on behalf of all others
Similarly situated