1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   KATHLEEN HANNI, individually and on        No. C 08-00732 CW
     behalf of all others similarly
12   situated,                                  ORDER DENYING
                                                PLAINTIFF'S
13           Plaintiff,                         MOTION TO REMAND,
                                                GRANTING
14       v.                                     DEFENDANT'S
                                                MOTION FOR LEAVE
15   AMERICAN AIRLINES, INC.,                   TO FILE AN
                                                AMENDED NOTICE OF
16           Defendant.                         REMOVAL, GRANTING
                                                IN PART
17                                              DEFENDANT'S
                                                MOTION TO DISMISS
18                                              AND GRANTING
                                                PLAINTIFF LEAVE
19                                              TO AMEND

20   _____/

21

22       Plaintiff Kathleen Hanni has filed a motion to remand this

23   case to state court.  Defendant American Airlines, Inc. (AA)

24   opposes the motion and has filed a motion for leave to file an

25   amended notice of removal and a motion to dismiss the complaint.

26   Plaintiff opposes Defendant's motions.  The motions were heard on

27   April 24, 2008.  Having considered all of the papers filed by the

28   parties and oral argument, the Court grants Defendant's motion for

United States District Court
For the Northern District of California

leave to file an amended notice of removal, denies Plaintiff's motion to remand, grants in part Defendant's motion to dismiss and grants Plaintiff leave to amend.

BACKGROUND

On December 28, 2007, Plaintiff filed this putative class action in Napa County Superior Court, alleging claims based on her experiences on a December 29, 2006 American Airlines flight from San Francisco, connecting at Dallas-Forth Worth Airport, to Mobile, Alabama.  Plaintiff alleges that the seven hour trip took over fifty hours due to various delays, which included nine-and-one-half hours confined on the airplane on the runway at the Austin, Texas airport.

Plaintiff brings claims for false imprisonment, intentional infliction of emotional distress, negligence, breach of contract and intentional misrepresentation and seeks compensatory damages "according to proof at trial" and punitive damages based on her false imprisonment, emotional distress and intentional misrepresentation claims.  These claims are based on several discrete actions or failures to act alleged by Plaintiff: (1) Defendant's decision to allow Plaintiff's flight from San Francisco to Dallas to depart in spite of the possibility of thunderstorms in Dallas; (2) after the flight was diverted to Austin, Defendant's refusal to permit passengers to leave the airplane while it was on the runway in Austin; (3) Defendant's failure "to supply the parked aircraft with essentials of water, food, sanitary waste removal, light, and breathable or fresh air at normal temperatures" while on the runway in Austin; (4) Defendant's

*United States District Court*
For the Northern District of California

decision not to unload checked baggage when it allowed the passengers off the airplane in Austin at 9:30 PM; (5) Defendant's failure to provide payment for lodging, meals, ground transportation and other expenses when the passengers were kept in Austin overnight; and (6) Defendant's failure to allow passengers to board their connecting flights in Dallas when they arrived the following morning.

Plaintiff further alleges that Defendant caused the delays through its "intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions by AA." Complaint ¶ 63. Moreover, Plaintiff alleges that Defendant's decision to keep the passengers on the airplane during the extended delay was made "to avoid expenses and lawful obligations to passengers associated with strandings, diversions and canceled flights and for AA's and its officers, employees, agents and stockholders pecuniary gain at the expense of Plaintiff and other passengers." Complaint ¶ 64.

Defendant filed a notice of removal on January 31, 2008.

DISCUSSION

I.   Notice of Removal and Motion to Remand

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). For

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

purposes of class actions, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2)(6).  If at any time before judgment it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded.  28 U.S.C. § 1447(c).  On a motion to remand, the scope of the removal statute must be strictly construed.  See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Id.  Courts should resolve doubts as to removability in favor of remanding the case to state court.  See id.

To support removal based on diversity jurisdiction in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the threshold amount.  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

Plaintiff argues that this case should be remanded to state court because Defendant has not established that the amount in controversy is the $75,000 needed to support diversity jurisdiction for her individual claim or the $5 million needed to support jurisdiction if this case is certified as a class action. Defendant counters that shortly after filing the motion to remand, Plaintiff's counsel wrote a settlement letter to Defendant offering

4

1   to settle the case for a "global settlement amount" of $5 million.

2       Defendant now moves to amend its notice of removal to include

3   reference to this letter.  Plaintiff does not argue that Defendant

4   should not be permitted to amend its notice of removal or to submit

5   further evidence that removal was appropriate.  Rather, Plaintiff

6   argues that the letter is not proper evidence for the Court to

7   consider.  However, as Defendant points out, the Ninth Circuit has

8   held, "A settlement letter is relevant evidence of the amount in

9   controversy if it appears to reflect a reasonable estimate of the

10  plaintiff's claim." <u>Cohen v. Petsmart</u>, 281 F.3d 837, 840 (9th Cir.

11  2002).  The Court will consider the letter as evidence and grants

12  Defendant's motion to file an amended notice of removal.

13      Plaintiff argues that <u>Cohen</u> is inapposite because it was

14  decided before the Class Action Fairness Act of 2005 (CAFA) went

15  into effect.  However, the Ninth Circuit has continued to allow

16  reliance on settlement letters in post-CAFA class actions.  <u>See</u>

17  <u>Babasa v. LensCrafters, Inc.</u>, 498 F.3d 972, 975 (9th Cir. 2007).

18      Plaintiff next argues that the $5 million settlement demand

19  does not defeat her motion to remand.  She points out that the

20  letter seeks $74,900 in damages on her behalf, which is less than

21  the $75,000 necessary to establish diversity jurisdiction for an

22  individual case.  Moreover, Plaintiff argues that the letter does

23  not establish that the amount in controversy exceeds $5 million as

24  required by the CAFA because the $5 million figure includes

25  attorneys' fees and costs.  However, this Court agrees with other

26  district courts that have held that "an offer falling just below

27  the jurisdictional threshold tends to suggest that the amount in

28                                  5

controversy exceeds this threshold, especially since parties routinely offer and accept settlement amounts significantly below the total amount placed into controversy." <u>Osborne v. Sitton Motor Lines, Inc.</u>, 2007 U.S. Dist. LEXIS 17076, *5 (W.D. Ky. 2007) (internal quotation omitted).

The Court finds that Defendant has established that the amount in controversy in either an individual case brought by Plaintiff or a class action is sufficient to establish jurisdiction in this Court.

II.  Motion to Dismiss

A.  Preemption

Defendant first argues that Plaintiff's claims should be dismissed because they are preempted by the Federal Aviation Act (FAA) and the Airline Deregulation Act (ADA).

Under the Supremacy Clause, state law that conflicts with federal law has no effect. <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 516 (1992)(citing U.S. Const. art. VI, cl. 2). Federal preemption of state law may be express or implied. <u>Shaw v. Delta Airlines, Inc.</u>, 463 U.S. 85, 95 (1983). "[W]ithin Constitutional limits Congress may preempt state authority by so stating in express terms." <u>Pac. Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n</u>, 461 U.S. 190, 203 (1983). Absent explicit preemptive language, there are two types of implied preemption, field preemption and conflict preemption. <u>Crosby v. Nat'l Foreign Trade Council</u>, 530 U.S. 363, 372 (2000).

Courts will find a state law field-preempted if one of three circumstances exist. First, state law is preempted where

**United States District Court**
For the Northern District of California

"Congress' intent to supercede state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it." <u>Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n</u>, 461 U.S. 190, 204 (1983)(internal quotations omitted). Second, courts will find state law field-preempted if "the Act of Congress [] touch[es] a field in which the federal interest is so dominant that the federal system [can] be assumed to preclude enforcement of state laws on the same subject." <u>Id.</u> Finally, state law will be field-preempted where "the object sought to be obtained by the federal law and the character of the obligations imposed by it may reveal" that the purpose of the law is to occupy the field entirely. <u>Id.</u>

"[W]here Congress has not entirely displaced State regulation in a specific area, State law will still be preempted to the extent that it actually conflicts with federal law." <u>Id.</u> Conflict preemption exists "when a state law actually conflicts with federal law or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law." <u>Montalvo v. Spirit Airlines</u>, 508 F.3d 464, 470 (9th Cir. 2007).

Congressional intent is the "ultimate touchstone" of any preemption analysis, express or implied. <u>Gade v. Nat'l Solid Wastes Management Ass'n</u>, 505 U.S. 88, 96, 98 (1992). In determining Congressional intent to preempt, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the

7

legislative purpose," <u>Morales v. Trans World Airlines, Inc.</u>, 504
U.S. 374, 383 (1992), because "[t]he first and most important step
in construing a statute is the statutory language itself." <u>Royal
Foods Co., Inc. v. RJR Holdings, Inc.</u>, 252 F.3d 1102, 1106 (9th
Cir. 2001) (citing <u>Chevron USA v. Natural Resources Defense
Council</u>, 467 U.S. 837, 842-44 (1984)).  As the Court explained in
<u>Sprietsma v. Mercury Marine</u>, 537 U.S. 51 (2002), the "task of
statutory construction must in the first instance focus on the
plain wording of the clause, which necessarily contains the best
evidence of Congress' pre-emptive intent."  537 U.S. at 62-63.

>    1.    Federal Aviation Act

Defendant first argues that Plaintiff's claims are field-
preempted by the FAA.  The FAA was enacted in response to "a series
of 'fatal air crashes between civil and military aircraft operating
under separate flight rules.'" <u>United States v. Christensen</u>, 419
F.2d 1401, 1404 (9th Cir. 1969) (quoting 1958 U.S.C.C.A.N. 3741,
3742).  The Ninth Circuit has held that "[t]he FAA, together with
federal air safety regulations, establish complete and thorough
safety standards for interstate and international air
transportation that are not subject to supplementation by, or
variation among, the states." <u>Montalvo</u>, 508 F.3d at 474.
Therefore, the FAA and federal air safety regulations are the only
grounds on which an airline may be held liable for claims related
to safety.

Defendant argues that the Court should find that Plaintiff's
claims are preempted, characterizing the claims as an attempt "to
utilize state law to establish new legal requirements for health

United States District Court
For the Northern District of California

and safety services for passengers during lengthy diversions and delays of flights." Motion at 6. Defendant notes that the Plaintiff's claims stem from Defendant's decision to re-route her flight due to safety concerns and the Federal Aviation Administration's decision to shut down the Dallas Fort Worth Airport.

To the extent that Plaintiff's claims are based on Defendant's decision to re-route her flight from the Dallas Forth Worth Airport to the Austin Airport rather than delaying or cancelling it, the Court finds that they are preempted by the FAA. However, the bulk of Plaintiff's claims relate to Defendant's actions and decision-making after the flight had been diverted. The Court finds that the complaint alleges these decisions were not directly related to safety and were not the type regulated by federal air safety regulations.

### 2.   Airline Deregulation Act

Defendant next argues that Plaintiff's claims are explicitly preempted by the ADA, which provides,

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.[1]

49 U.S.C. § 41713(b)(1). In <u>Morales v. Trans World Airlines, Inc.</u>, the Supreme Court interpreted "related to" to mean that actions "having a connection with or reference to airline 'rates, routes,

---

[1]The exceptions provided for are not relevant to the claims in this case.

9

United States District Court
For the Northern District of California

or services'" are preempted under the ADA.  504 U.S. 374, 378-79 (1992).  However, the Supreme Court has never interpreted the term "services" in the context of the ADA, <u>see</u> <u>Northwest Airlines, Inc. v. Duncan</u>, 531 U.S. 1058 (2000) (O'Connor, J., dissenting from denial of certiorari) (noting that "the meaning of the term 'service'" has not been addressed by the Supreme Court), and the Ninth Circuit has defined the term narrowly, <u>Charas v. Trans World Airlines, Inc.</u>, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc).

In <u>Charas</u>, the Ninth Circuit held that the term "service" refers to "the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail" but not to "an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities."  <u>Id.</u> at 1261.  Therefore, Plaintiff argues that her claims, which are not related to any actual transportation, are not preempted by the ADA.

Defendant counters that the Supreme Court's recent decision in <u>Rowe v. New Hampshire Motor Transport Association</u>, 128 S. Ct. 989 (2008), calls into question the Ninth Circuit's definition of service.  In <u>Rowe</u>, the Supreme Court interpreted the scope of preemption related to the deregulation of trucking, which was modeled after the preemption provision in the ADA.  The Court found that federal law preempts a state law that "forbids licensed tobacco retailers to employ a 'delivery service' unless that service follows particular delivery procedures."  <u>Id.</u> at 995.  The state statute required such retailers to "'utilize a delivery service' that provides a special kind of recipient-verification

service" to ensure that:

> (1) the person who bought the tobacco is the person to whom the package is addressed; (2) the person to whom the package is addressed is of legal age to purchase tobacco; (3) the person to whom the package is addressed has himself or herself signed for the package; and (4) the person to whom the package is addressed, if under the age of 27 has produced a valid government-issued photo identification with proof of age.

Id. at 993-94.

Relying on its interpretation of the ADA preemption provision in Morales, the Court in Rowe held that the state statute was preempted even though it was directed at the tobacco retailers, because it would require carriers "to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." Id. at 996. Defendant argues that this holding--that the Maine statute was preempted because requiring a motor carrier to verify a recipient's age is related to the "service" provided--undermines Plaintiff's reliance on Charas. Defendant contends that under such an interpretation of the term "service," "state requirements for food, beverages, toilet service, electricity, baggage service, transportation, overnight lodging, and the other type of matters about which plaintiff complains in this action equally impinge on an air carrier's service." Reply at 2.

As the Second Circuit recently noted, the Ninth Circuit's definition of "service" in Charas does conflict with the Supreme Court's subsequent opinion in Rowe, which "necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations." Air Transport Association of America, Inc. v.

11

Cuomo, 2008 U.S. App. LEXIS 6130, *12 (2d. Cir.).  In Air
Transport, the Second Circuit found that New York state legislation
affirmatively "requiring airlines to provide food, water,
electricity, and restrooms to passengers during lengthy ground
delays does relate to the service of an air carrier and therefore
falls within the express terms of the ADA's preemption provision."
Id. at *13.

However, the Ninth Circuit's opinion in Charas was based on
more than its definition of "service."  The Charas court concluded
that

> when Congress enacted federal economic deregulation of
> the airlines, it intended to insulate the industry from
> possible state economic regulation as well.  It
> intended to encourage the forces of competition.  It
> did not intend to immunize the airlines from liability
> for personal injuries caused by their tortious conduct.

160 F.3d at 1266 (emphasis in original).  It was in this context
that the Charas court held that "'service' does not refer to the
pushing of beverage carts, keeping the aisles clear of stumbling
blocks, the safe handling and storage of luggage, assistance to
passengers in need, or like functions."  Id.  The court reasoned
that "[t]o interpret 'service' more broadly is to ignore the
context of its use; and, it effectively would result in the
preemption of virtually everything an airline does.  It seems clear
to us that this is not what Congress intended."  Id.; see also
Montalvo, 508 F.3d at 475 (interpreting Charas to hold "that state
claims that do not significantly impact federal deregulation are
not preempted").

It is based on this interpretation of congressional intent

that other circuits have allowed personal injury claims against
airlines, even while interpreting "service" more broadly than the
Ninth Circuit does.  For example, in Hodges v. Delta Airlines,
Inc., 44 F.3d 334 (5th Cir. 1995) (en banc), the Fifth Circuit held
that a passenger's negligence claim, based on injuries sustained
when a carton containing several bottles of rum fell out of an
overhead compartment and cut the passenger's arms and wrist, was
not preempted.  In Hodges, the court held, "Elements of the air
carrier service bargain include items such as ticketing, boarding
procedures, provision of food and drink, and baggage handling, in
addition to the transportation itself."  Id. at 336.  Nonetheless,
the Fifth Circuit noted that "neither the ADA nor its legislative
history indicates that Congress intended to displace the
application of state tort law to personal physical injury inflicted
by aircraft operations, or that Congress even considered such
preemptions," and allowed the plaintiff's claim to proceed.  Id. at
338; see also, Branche v. Airtran Airways, Inc., 342 F.3d 1248,
1257 (11th Cir. 2003) (adopting Hodges' definition of "service" but
holding that plaintiff's state whistle blower claim was not
preempted).

Moreover, Charas and Hodges, like this case, involved injured
passengers seeking compensation for past tortious conduct rather
than a challenge to a state statute creating an affirmative
requirement as in Rowe and Air Transport.  Affirmative regulations
restricting how a carrier does business will by definition result
in a "direct substitution of [the state's] governmental commands
for competitive market forces."  Rowe, 128 S. Ct. at 995.  In

13

contrast, allowing individuals to recover for injuries suffered does not create any such regulation.  Further, while it is true that allowing such state claims might lead to individuals from different states recovering varying amounts depending on the particular states' decisional law, there is no danger that allowing such recovery could "lead to a patchwork of state service-determining laws, rules, and regulations" that the Rowe court found to be "inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." Id. at 996.

Therefore the Court finds that, to the extent they are not controlled by specific regulations, Plaintiff's claims are not preempted by the ADA.  However, as Defendant argues, some of Plaintiff's claims involve issues about which the government has promulgated regulations.  Plaintiff alleges that Defendant should have compensated her for lodging, meals, substitute transportation and similar expenses.  However, the Department of Transportation has issued regulations requiring such compensation when the expenses are due to an oversold flight but not when they are due to bad weather.  See 14 C.F.R. § 250.  Therefore, the Court finds that Plaintiff's claims related to such compensation are preempted.

Plaintiff also alleges a breach of contract claim based on two documents, Defendant's Conditions of Carriage and its Customer Service Plan.[2]  Although Defendant acknowledges that the ADA does

_____

[2]As discussed below, Plaintiff's breach of contract claim is dismissed to the extent it relies on the Customer Service Plan, because that document explicitly states that it does not create any contractual liability.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

not preempt routine breach of contract claims, it argues that Plaintiff's claim is preempted because it alleges, among other things, a "breach of the implied covenant of good faith and fair dealing."  FAC ¶ 93.  In <u>American Airlines, Inc. v. Wolens</u>, the Supreme Court held that the ADA "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  513 U.S. 219, 233 (1995).  Therefore, Plaintiff's breach of contract claim is preempted to the extent it is based on a breach of the implied covenant of good faith and fair dealing.

Finally, Defendant argues that Plaintiff's claim for punitive damages is preempted because "[s]tate law punitive damages are based on state policy decisions."  Motion at 17.  However, the cases Defendant cites are those in which courts found that punitive damages for contract claims were preempted under <u>Wolens</u>.  Plaintiff does not seek punitive damages based on her breach of contract claim.  To the extent Plaintiff seeks punitive damages on tort claims that are not preempted by the ADA, the prayer for damages is not independently preempted.[3]

B.    Failure to State a Claim

In the alternative, Defendant argues that each of Plaintiff's causes of action should be dismissed for failure to state a claim.

A complaint must contain a "short and plain statement of the

---

[3]As discussed further below, the Court grants Defendant's motion to dismiss each of the claims upon which Plaintiff seeks punitive damages.

15

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading.  Id. at 296-97.

1.    Applicable Law

Plaintiff has plead her claims under California law. Defendant argues, without citation, that Texas rather than California law should apply to Plaintiff's claims.  For purposes of this motion, the Court will consider both State's laws.

United States District Court
For the Northern District of California

16

1          2.    False Imprisonment

2          Under either California or Texas law, false imprisonment

3     consists of "the nonconsensual, intentional confinement of a

4     person, without lawful privilege." <u>Fermino v. Fedco, Inc.</u>, 7 Cal.

5     4th 701, 715 (1994); <u>see also</u>, <u>Wal-Mart Stores, Inc. v. Rodriquez</u>,

6     92 S.W.2d 502, 506 (Tex. 2002).  Defendant argues that Plaintiff

7     alleges no facts to support a finding that she validly withdrew her

8     consent to remain on the aircraft.  However, Plaintiff alleges that

9     a bus came to the airplane but could only hold fifteen people and

10    "all passengers who [did] not have Austin as a final destination

11    were rejected and forced to remain in the aircraft against their

12    will."  Complaint ¶ 13.  Plaintiff also alleges that she "and other

13    passengers express[ed] their desire to exit the aircraft but

14    Captain Fodero claim[ed] to be powerless to permit deboarding due

15    to AA management." <u>Id.</u> at ¶ 18.  Taken as true, these allegations

16    form a sufficient basis to establish that Plaintiff withdrew her

17    consent.

18         Defendant also argues that Plaintiff fails to allege facts to

19    establish that Defendant lacked the legal authority to keep the

20    passengers on the airplane.  Plaintiff argues that Defendant lied

21    about the reasons it was keeping passengers on the airplane.

22    Therefore, Plaintiff asserts that Defendant kept the passengers on

23    the plane through false pretenses.  However, this does not address

24    the question of whether Defendant was acting with lawful privilege

25    when it kept Plaintiff on the plane.  The Court grants Defendant's

26    motion to dismiss Plaintiff's false imprisonment claim.  If

27    Plaintiff can allege, consistent with her original complaint,

28                                    17

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   additional facts sufficient to establish that Defendant lacked

2   legal authority to keep her on the airplane, she may replead this

3   claim in her first amended complaint.

4        2.   Intentional Infliction of Emotional Distress

5        Under California law, the elements of a cause of action for

6   intentional infliction of emotional distress (IIED) are (1) extreme

7   and outrageous conduct; (2) intended to cause or done in reckless

8   disregard for causing; (3) severe emotional distress; and

9   (4) actual and proximate causation.  See Cervantez v. J.C. Penney

10  Co., Inc., 24 Cal. 3d 579, 593 (1979).  The conduct must be so

11  extreme as to "exceed all bounds of that usually tolerated in a

12  civilized community," id., and the distress so severe "that no

13  reasonable [person] in a civilized society should be expected to

14  endure it."  Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d

15  376, 397 (1970).  Under Texas law, "a plaintiff must establish

16  that: (1) the defendant acted intentionally or recklessly; (2) the

17  defendant's conduct was extreme and outrageous; (3) the defendant's

18  actions caused the plaintiff emotional distress; and (4) the

19  resulting emotional distress was severe."  Hoffmann-La Roche, Inc.

20  v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004).

21       Plaintiff has not alleged intentional conduct sufficiently

22  extreme to support a claim for IIED.  Plaintiff acknowledges that

23  Defendant was initially responding to inclement weather at the

24  Dallas Fort Worth Airport when it re-routed her airplane and that a

25  substantial number of flights were similarly disrupted.  In light

26  of this situation, Defendant's actions cannot be said to have

27  "exceed[ed] all bounds of that usually tolerated in a civilized

28                              18

community." <u>See</u> <u>Cervantez</u>, 24 Cal. 3d at 593.  Moreover, Plaintiff has not alleged that Defendant acted with the intent of causing her distress.  Defendant's motion to dismiss Plaintiff's IIED claim is granted.  If Plaintiff can allege, consistent with her original complaint, additional facts to support her claim, she may replead this claim in her first amended complaint.

    3.   Negligence

    Defendant argues that Plaintiff has not identified any duty owed by it to her, independent of the duties set forth in the Conditions of Carriage, which forms the basis for Plaintiff's breach of contract claim.  Under both California and Texas law, absent the breach of an independent extra-contractual duty, negligence claims are not permitted where a defendant's conduct violates a contractual duty.  <u>See</u> <u>Robinson Helicopter Co. v. Dana Corp.</u>, 34 Cal. 4th 979, 990-91 (2004); <u>DeWitt County Elec. Coop., Inc. v. Parks</u>, 1 S.W.3d 96, 105 (Tex. 1999).  The Court grants Defendant's motion to dismiss Plaintiff's negligence claim. Plaintiff may replead this claim if she can allege facts sufficient to establish the existence of a duty beyond that created by the contract.

    3.   Breach of Contract

    As Defendant argues, Plaintiff's reliance on the Customer Service Plan is misplaced because the document expressly states that it "does not create contractual or legal rights."  Terrell Decl., Ex. B at 20.  Therefore, Plaintiff's breach of contract claim is dismissed to the extent it relies on the Customer Service Plan.  Because amendment would be futile, the dismissal of this

19

1 portion of the claim is with prejudice.[4]

2      Defendant next argues that Plaintiff's breach of contract

3 claim based on the Conditions of Carriage also fails as a matter of

4 law because all of the damages she claims are expressly excluded by

5 the terms of the document.  Moreover, Defendant contends that it

6 does not guarantee its schedule and expressly disclaims liability

7 for weather-related delays.  Plaintiff argues that the complaint

8 "provides sufficient notice of the alleged breaches" but states

9 that she agrees "to provide Defendant with a more definite

10 statement setting forth further details of the breaches of contract

11 cause of action."  Opposition at 24.  As currently plead, the

12 complaint does not state a claim for breach of contract.  Plaintiff

13 may replead this claim with further detail regarding Defendant's

14 failure to comply with specific terms of the Conditions of

15 Carriage.

16      4.    Fraud

17      Defendant argues that Plaintiff's fraud claim is not plead

18 with sufficient particularity.  "In all averments of fraud or

19 mistake, the circumstances constituting fraud or mistake shall be

20 stated with particularity."  Fed. R. Civ. P. 9(b).  The allegations

21 must be "specific enough to give defendants notice of the

22 particular misconduct which is alleged to constitute the fraud

23 charged so that they can defend against the charge and not just

24 deny that they have done anything wrong."  Semegen v. Weidner, 780

25

26      [4]At the hearing, Plaintiff argued that she only relied on the
Customer Service Plan to the extent it was explicitly integrated
27 into the Conditions of Carriage.  If this is so, Plaintiff shall
clarify that position in her amended complaint.

28                                    20

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and
nature of the alleged fraudulent activities are sufficient, <u>Wool v.
Tandem Computers, Inc.</u>, 818 F.2d 1433, 1439 (9th Cir. 1987),
provided the plaintiff sets forth "what is false or misleading
about a statement, and why it is false." <u>In re GlenFed, Inc., Sec.
Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).  Scienter may be
averred generally, simply by saying that it existed.  <u>See</u> <u>id.</u> at
1547; <u>see</u> Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and
other condition of mind of a person may be averred generally").

Plaintiff argues that she has sufficiently identified the
statements she alleges are fraudulent.  However, as the basis for
this claim, she has alleged only that Defendant "assert[ed] a
weather emergency".  She has not identified who made this statement
or how she intends to prove that the statement was false when made.
Moreover, under either California or Texas law, Plaintiff must
demonstrate that she relied to her detriment on the allegedly
fraudulent statements.  <u>Seeger v. Odell</u>, 18 Cal. 2d 409, 414
(1941); <u>Sanchez v. Liggett & Myers, Inc.</u>, 187 F.3d 486 (5th Cir.
19999).  Plaintiff has not made any such allegation.  Plaintiff's
fraud claim is dismissed with leave to amend.  In order to restate
these claims against Defendant, Plaintiff must plead "'the who,
what, where, and how' of the misconduct charged," <u>Vess v.
Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (<u>quoting
Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).  Plaintiff
must also identify who made the allegedly misleading statements,
how she will prove that they were knowingly false when made, and
how she relied on those statements to her detriment.

21

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for leave to file an amended notice of removal (Docket No. 28), DENIES Plaintiff's motion to remand (Docket No. 20) and GRANTS in part Defendant's to dismiss (Docket No. 25).[5]  Plaintiff may file an amended complaint consistent with this order within twenty days of the date of this order.  In her opposition to the motion to dismiss Plaintiff mentions various claims that she wishes to add to her complaint.  Rule 15(a) of the Federal Rules of Civil Procedure provides,  "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."  A motion to dismiss is not a "responsive pleading" within the meaning of Rule 15.  CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1104 n.3 (9th Cir. 2007); Crum v. Circus Circus Enters., 231 F.3d 1129, 1130 n.3 (9th Cir. 2000).  Therefore, Plaintiff may include additional claims in her amended complaint.

IT IS SO ORDERED.

Dated: 4/25/08

_____
CLAUDIA WILKEN
United States District Judge

---

[5]Defendant's motion to strike the declarations of Kathleen Hanni and Paul Hudson (Docket No. 41) is DENIED without prejudice. The Court did not rely on any improper or inadmissible evidence in deciding this motion.

22