LOCKE LORD BISSELL & LIDDELL LLP
MICHAEL V. POWELL (TX SBN 16204400) (appearance *pro hac vice*)
  mpowell@lockelord.com
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-6776
Telephone:  (214) 740-8520
Facsimile:  (214) 756-8520

COOPER, WHITE & COOPER LLP
STEPHEN KAUS (SBN 57454)
  skaus@cwclaw.com
JIE-MING CHOU (SBN 211346)
  jchou@cwclaw.com
201 California Street, 17th Floor
San Francisco, California  94111
Telephone:     (415) 433-1900
Facsimile:      (415) 433-5530

Attorneys for DEFENDANT AMERICAN
AIRLINES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| KATHLEEN HANNI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>AMERICAN AIRLINES, INC., and DOES 1 through 20, inclusive,<br><br>    Defendants. | CASE NO. C 08-00732 CW<br><br>**DEFENDANT AMERICAN AIRLINES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT F.R.C.P. (12(b)(6)**<br><br>**Date:  July 10, 2008**<br>**Time:  2:00 p.m.**<br>**Courtroom: 2, 4th Floor** |

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5

1

C 08-00732 CW

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

III. DISCUSSION .....................................................................................................3

    A.    First Cause of Action: False Imprisonment ...........................................3

          1.    Plaintiff's False Imprisonment Claim is Federally Preempted. ...................3

          2.    Federal Law Preempts Both State Statutory and Common Law Claims. ...................................................................................................6

          3.    Plaintiff's Claim for False Imprisonment Fails to State a Claim Under State Law. ...................................................................................9

    B.    Second Cause of Action: Intentional Infliction of Emotional Distress.................13

    C.    Third Cause of Action: Negligence ......................................................14

    D.    Fourth Cause of Action: Breach of Contract ........................................16

          1.    Paragraph 3: "Responsibility for Schedules and Operations" ...................16

          2.    Paragraph 10: "Refunds" .....................................................................17

          3.    Paragraph 18: "Delays, Cancellations and Diversions".............................17

          4.    Paragraph 19: "Essential Needs During Extraordinary Delays".................19

          5.    Paragraph 5: "Denied Boarding Compensation" ........................................19

    E.    Fifth Cause of Action: Deceit/Fraud ....................................................20

          1.    Plaintiff's Claims for Deceit/Fraud Are Preempted.....................................20

          2.    Rule 9(b) and Failure to State a Claim........................................................21

    F.    Sixth Cause of Action: Conversion.......................................................22

    G.    Seventh Cause of Action: Civil Conspiracy .........................................23

    H.    Eighth Cause of Action: RICO .............................................................23

IV. CONCLUSION....................................................................................................25

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                       i                       C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*Abourezk v. New York Airlines, Inc.*, 705 F. Supp. 656 (D.D.C. 1989), *aff'd*, 895 F.2d 1456 (D.C. Cir. 1990) ................................................................................................................... 10, 11

*Abrego Abrego v. The Dow. Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006) ................................. 12

*Air Transport Ass'n of Am. v. Cuomo*, 520 U.S. 218, 224-25 (2d Cir. 2008) ............................. 2, 15

*American Airlines Inc. v. Wolens*, 513 U.S. 219 (1995) ......................................................... 6, 7, 20

*Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999) ................................................................ 24

*Averbach v. Vnescheconombank*, 280 F. Supp. 2d 945, 960 (N.D. Cal. 2003) ............................. 16

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................................................... 24

*Black v. Bank of America, N.T. & S.A.*, 30 Cal. App. 4th 1, 4 (1994) ........................................ 23

*Black v. Delta Air Lines, Inc.*, 116 S.W. 3d 745, 756 (Tex. 2003) ................................................. 7

*Casas v. American Airlines, Inc.*, 304 F. 3d 517, 522 n.8 (5th Cir. 2002) ................................... 16

*Chrissafis v. Continental Airlines, Inc.*, 940 F. Supp. 1292, 1298 (N.D. Ill. 1996) ....................... 7

*City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624 (1973) ............................................ 5

*Davis & Cox v Summa Corp.*, 751 F.2d 1507, 1526 (9th Cir. 1985) ........................................... 23

*Deterra v. America West Airlines, Inc.*, 226 F. Supp. 2d 274, 276-77 (D. Mass. 2002) ................ 13

*Downing v. Abercrombie & Fitch*, 265 F. 3d 994, 1005-07 (9th Cir. 2001) ................................. 12

*Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 58-59 (2d Cir. 2006) ...................................... 8

*Elliott v. Tilton*, 89 F.3d 260, 264-65 (5th Cir. 1996) .................................................................. 23

*Elnajjar v. Northwest Airlines, Inc.*, 2005 U.S. Dist. LEXIS 36792 (S.D. Tex., Aug. 15, 2005) ........................................................................................................................................ 7

*Erlich v. Menezes*, 21 Cal. 4th 543, 558-59, 87 Cal. Rptr. 2d 886, 896-97 (1999) ..................... 16

*Haynes v. Nat'l RR Passenger Corp.*, 423 F. Supp.2d 1073, 1085-86 (C.D. Cal. 2006) ............... 13

*Hingson v. Pacific Southwest Airlines*, 743 F. 2d 1408, 1413-14 (9th Cir. 1984) ......................... 16

*Keith v. Stoelting, Inc.*, 915 F. 2d 996, 999 (5th Cir. 1990) ....................................................... 16

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5

ii

C 08-00732 CW

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir.
2        2003) ................................................................................................................23

3    *Limestone Dev. Corp. v. Village of Lemont, Illinois*, 520 F. 3d 797, 802-03 (7th Cir. 2008) ..........24

4    *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007) ...........................................2, 14, 15

5    *Morales v. Trans World Airlines*, 504 U.S. 374 (1992) ........................................6, 7, 20, 21

6    *Pardi v. Kaiser Found. Hosps.*, 389 F. 3d 840, 851-52 (9th Cir. 2004) ........................13

7    *Parrino v. FHP, Inc.*, 146 F. 3d 699, 705-06 (9th Cir. 1998) .......................................12

8    *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 821-22 (1985) ..............................12, 13

9    *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008) ..............................................................8

10   *Rowe v. N.H. Motor Transport Ass'n*, 128 S. Ct. 989 (2008) ..................................6, 8, 15

11   *Smith v. Comair, Inc.*, 134 F. 3d 254 (4th Cir. 1998) ....................................................7

12   *Sousanis v. Northwest Airlines, Inc.*, 2000 WL 34015861 (N.D. Cal., Mar. 3, 2000)....................11

13   *Stewart Title Guar. Co. v. Aiello*, 941 S.W. 2d 68, 72 (Tex. 1997).................................16

14   *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir.
         1996) ................................................................................................................7

15   *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F. 3d 605, 607 (7th Cir. 2000)..............................7

16   *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 842 (9th Cir. 2002) ................................13

17   *Weiss v. El Al Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 362 (S.D.N.Y 2006) ...........................13

18   *Zinser v. Accufix Research Inst., Inc.*, 253 F. 3d 1180, 1187 (9th Cir. 2001)................................12

19

20   **STATUTES**

21   14 C.F.R. § 91.11 .....................................................................................................11

22   14 C.F.R. § 91.3 .......................................................................................................11

23   14 C.F.R. §121.533(d) ...........................................................................................11

24   18 U.S.C § 1961(1) ...........................................................................................24, 25

25   21 U.S.C. 360k(a) ...................................................................................................8

26   49 U.S.C. § 40101(a)(1) ..........................................................................................14

27   49 U.S.C. § 41702 ...................................................................................................15

28   49 U.S.C. § 41712(a) ...............................................................................................21

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                   iii                           C 08-00732 CW

49 U.S.C. § 41713(b)(1) ............................................................................................. passim

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 25

Fed. R. Civ. P. 9(b) .............................................................................................. 1, 23

## TREATISES

1 D. Dobbs, THE LAW OF TORTS § 38 (West 2001) ............................................. 10

1 HARPER, JAMES & GRAY ON TORTS § 3.8 (3d ed. 2006) .................................. 10

## REGULATIONS

73 FED. REG. 29426 (May 21, 2008) ...................................................................... 5

*Comair, Inc., d/b/a Delta Connection*, served May 17, 2007, available at 2007 DOT AV
    LEXIS 376 ...................................................................................................... 21

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5

iv

C 08-00732 CW

# I.  <u>INTRODUCTION</u>

Defendant American Airlines, Inc. ("American") moves the Court to dismiss each of the causes of action in Plaintiff's First Amended Class Action Complaint ("FAC") for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  American also moves the Court to dismiss Plaintiff's "Fifth Cause of Action, Deceit/Fraud" and Plaintiff's "Seventh Cause of Action, Civil Conspiracy," insofar as that alleged claim also contains allegations of fraud and deceit, for failure, again, to allege fraud with particularity, as required by Fed. R. Civ. P. 9(b).

# II.    <u>FACTUAL BACKGROUND</u>

By Order dated April 25, 2008 (the "Order"), this Court dismissed Plaintiff's original Class Action Complaint in this action and granted Plaintiff leave to amend.  Plaintiff's First Amended Complaint ("FAC") is now before the Court.  There are very few meaningful differences between the allegations in the original Complaint and the FAC.  In summary form, the differences are:

- Plaintiff added paragraph 59 of the FAC, which purports to recite the "experiences of [unidentified] others similarly situated who would be in the proposed class."  Of course, none of these allegations about different persons, who are not plaintiffs, is pertinent to determining whether Plaintiff Hanni, *herself*, has pleaded viable, non-preempted causes of action.

- Plaintiff added paragraph 60 of the FAC, which purports to list other situations on other days, and for other reasons, in which American diverted planes and allegedly delayed passengers at various points throughout the nation.  Again, none of these allegations is pertinent to determining whether Plaintiff has pleaded viable, non-preempted causes of action for what she claims happened to her in Austin, Texas, and at DFW Airport, Texas, on December 29-30, 2006.

- Plaintiff added several new claims that American's actions while the aircraft was on the ground in Austin endangered the *safety and health* of passengers.  *See, e.g.*, the new allegations in paragraph 71, lines 22-23 ("By unlawfully confining Plaintiff and other passengers diverted from Dallas on December 29, 2006 in inhumane conditions, AA recklessly endangered the safety of Plaintiff and other passengers.") and new paragraphs 77 and 79 of the FAC.  In paragraph 100 of the FAC, Hanni pleads, as part of her alleged false imprisonment claim, that "said confinement endangered the health and safety of Plaintiff and other class members."  On

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                     1                              C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1 | page 9 of this Court's Order, the Court found "that the complaint alleges these decisions [after

2 | Flight 1348 was diverted to Austin] were not directly related to safety and were not the type

3 | regulated by federal air safety regulations." Plaintiff's new allegations starkly change the nature

4 | of her allegations and bring her post-diversion claims squarely within the holding of *Montalvo v.*

5 | *Spirit Airlines,* 508 F.3d 464, 474 (9th Cir. 2007) requiring preemption. *See also Air Transport*

6 | *Ass'n of Am. v. Cuomo,* 520 F.3d 218, 224-25 (2d Cir. 2008).

7 | • Plaintiff added the allegation in paragraph 82 of the FAC that approximately 20

8 | percent of the purported class (but *not* Plaintiff Hanni) were passengers engaged in international

9 | travel. Again, this allegation has nothing to do with whether Plaintiff has stated a valid claim.

10 | • Plaintiff added a few other alleged facts, such as the availability of busses at the

11 | Austin Airport, American's responsibility for its maintenance and staffing decisions, and wildly

12 | incorrect charges that American's management had personal economic motivations for cancelling

13 | and delaying flights throughout its domestic system on December 29, 2006. *See, e.g.,* FAC at

14 | ¶¶80, 81, 83, 85, and 86. None of these allegations helps Plaintiff state viable causes of action.

15 | • Although Plaintiff deleted her claims about compensation for hotel rooms and

16 | alleged "overbooking," which the Court held preempted, she continues to plead that the Court

17 | should review American's response to adverse weather conditions, that American should have

18 | cancelled or delayed departing aircraft rather than having them take off for DFW Airport, and that

19 | the delays of December 29th were "actually due to causes within the control of AA and including

20 | insufficient personnel, lack of equipment, poor maintenance, and lack of planning for ordinary

21 | weather disruptions," *i.e.,* matters that are clearly preempted by federal law. *See* FAC at ¶¶ 52 and

22 | 65. This Court ruled that such claims are preempted, but apparently Plaintiff continues to believe

23 | that those types of claims are essential to her causes of action.

24 | • Plaintiff has attempted to allege new causes of action for alleged conversion of her

25 | luggage (¶¶ 145-48); civil conspiracy (¶¶ 149-52), and federal RICO violations (¶¶ 153-57).

26 | Plaintiff has not corrected the flaws in her original Complaint. She continues to allege

27 | state law claims that are preempted by the FAA and the ADA, and her three alleged new causes of

28 | action also fail to state claims upon which relief can be granted. American organizes this motion

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                             2                                      C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1 | according to Plaintiff's listing of her causes of action.

2 | ### III. DISCUSSION

3 | #### A.    First Cause of Action:  False Imprisonment

4 | 1.    Plaintiff's False Imprisonment Claim is Federally Preempted.

5 | Plaintiff's claim is that although she voluntarily boarded Flight 1348 on December 29,

6 | 2008, she later withdrew her consent to remaining on that aircraft after the aircraft had been

7 | delayed "too long" at the Austin Airport.  Plaintiff's argument is that after she withdrew her

8 | consent, American became obligated, under state common law and state criminal law (see FAC

9 | ¶96, citing criminal statutes from six states), to allow her to deplane, upon penalty of suffering a

10 | judgment for damages (and perhaps punitive damages) for false imprisonment if it failed to do so.

11 | Consequently, Plaintiff seeks to have this Court to utilize state common law to regulate at

12 | least three issues:  (1) how long is too long for an air carrier to retain passengers on a commercial

13 | aircraft parked at an airport; (2) how passengers may effectively withdraw their consent to

14 | remaining on an aircraft; and (3) what actions an air carrier must take when a passenger

15 | "withdraws her consent" to remaining on an aircraft.  Merely stating these issues demonstrates the

16 | importance of these issues to the national air travel system and the mess that will be made of

17 | things if the courts undertake to draw answers to those questions from the tort law of 50 states.

18 | Assume, for example, that an aircraft's takeoff has been delayed for two hours due to

19 | weather or air traffic congestion and it is in a long line of aircraft waiting to takeoff.  A passenger

20 | decides she does not want to wait any longer – perhaps she has already missed the meeting she

21 | was going to or is simply angry and frustrated – and she tells a flight attendant or the pilot that she

22 | revokes her consent to being on the aircraft.  Is the airline now at risk under some state's law

23 | (perhaps the state of which the passenger is a citizen or the state in which the particular runway

24 | delay is occurring) for damages for falsely imprisoning this passenger if the air carrier does not

25 | take that aircraft out of line (probably to the utter dismay of the other passengers), return the

26 | aircraft to the terminal, find a gate, and let the passenger who has "revoked her consent" deplane?

27 | Another example: an aircraft is diverted to another airport because of weather conditions,

28 | (as Plaintiff's flight was) for two hours, but the aircraft is in line for takeoff and will likely be

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                      3                                      C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    airborne before another hour passes.  In order to comply with the state common and criminal laws

2    of all fifty states, must the air carrier honor the decision of a "consent-revoking" passenger and

3    take the plane to the terminal despite the protests of other passengers on board who do not want to

4    lose their place in the takeoff line or incur the additional delay that will inevitably arise from

5    delivering the one consent-revoking passenger to the terminal?

6        There is no principled distinction that can be drawn between those situations and the

7    situation for which Ms. Hanni seeks damages with her false imprisonment claim.  If the courts

8    undertake to regulate air carriers' responses to such situations by employing state tort law, they

9    will add unworkable confusion to air carrier operations.  So, for flights delayed in California for

10   over three hours (or perhaps for all flights with passengers who are California citizens), may a

11   passenger "withdraw her consent" to remaining on the aircraft and, in effect, compel the airline to

12   halt whatever it is doing, get permission from the air traffic controllers, return to terminal, find an

13   open gate, and let her off the flight?  If California can choose three hours as the maximum length

14   of a ground delay, Illinois can choose two, Massachusetts one, and Texas five.  If a California

15   passenger decides not to get off when the aircraft is taken back to the terminal to let another

16   "consent revoking" passenger off after three hours have passed, may that passenger wait another

17   half hour and *then* revoke his consent and force another trip to the terminal?  Neither air carriers

18   nor airports, for that matter, can cope with that sort of uncertainty and disruption.

19       What will it take to "revoke consent?"  Is it enough if the passenger is frustrated, angry, or

20   simply inconvenienced?  Do the wishes of the other passengers matter?  Will the answer to that

21   question change from state to state, court to court, or even jury to jury?  May a passenger simply

22   state to a flight attendant or the pilot that she wants off the plane and thus create a legally-

23   enforceable obligation to comply?  American's purpose in asking these questions is respectfully to

24   show the Court that these matters must be regulated – if they are to be governmentally regulated –

25   by Congress or the Federal Aviation Administration ("FAA") on a nationwide basis, after

26   consideration and balancing of the ramifications of such policy decisions on the efficacy and

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5

4

C 08-00732 CW

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  safety of the nationwide transportation system.[1]

2      For these reasons, Hanni's claim of false imprisonment must be rejected as federally

3  preempted, impliedly by the Federal Aviation Act and expressly by the Airline Deregulation Act,

4  49 U.S.C. § 41713(b)(1).

5      (a)    Federal Aviation Act Preemption.  Congress enacted the Federal Aviation Act to

6  place control of the nation's air transportation system under federal control, specifically the

7  control of the FAA Administrator.  In *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S.

8  624 (1973), the Supreme Court held that the Federal Aviation Act impliedly preempted state and

9  local government imposed curfews on airport operations to control airport noise in urban areas.

10  The Supreme Court wrote:

11      If we were to uphold the Burbank ordinance and a significant number of other
        municipalities followed suit, it is obvious that fractionalized control of the timing of
12      takeoffs and landings would severely limit the flexibility of the FAA in controlling air
        traffic flow.  The difficulties of scheduling flights to avoid congestion and the concomitant
13      decrease in safety would be compounded.

14  *Id.* at 639.

15      The same potential for interference with the decision-making and control of the FAA is

16  present in this case.  If one state may employ its common law tort of false imprisonment to control

17  the decision-making regarding how long a plane, either before departure, during a diversion, or

18  after arrival, may remain on a runway or a tarmac, and to mandate when a passenger revoking her

19  consent must be allowed to deplane, then every state may do the same.

20      (b)    Airline Deregulation Act Preemption.  Whether the Court reads the term "service"

21  in 49 U.S.C. § 41713(b)(1) narrowly or broadly, the matters Hanni places at issue with her false

---

[1]  Such studies are underway.  On May 21, 2008, the U. S. Department of Transportation
promulgated a new regulation requiring reporting on "diverted flights," saying the new regulation
will provide information on "(1) Where diverted flights landed, (2) The total time the flights were
on the ground away from the gates at the diverted airport, (3) The single longest period of time
that the passengers were in the plane, on the ground, and away from the gate, (4) The total time
spent at the diverted airport (wheels-off time minus wheels-on time), (5) Time spent by passengers
in the airport terminal, or in the aircraft at the gate, but with access to the terminal, (6) Whether the
flight reached its final destination, and (7) The total minutes of delay for a diverted flight that
reached its final destination."  73 FED. REG. 29426 (May 21, 2008).

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                    5                    C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1 imprisonment claim "relate to" the core of air carrier "service" and fall squarely within any

2 definition of "service". If the State of Maine cannot prescribe, by enactment of statute, the

3 circumstances under which motor carriers may pick up and release shipments of tobacco, it

4 follows that the states may not dictate – by statute, regulation, or enforcement of common law –

5 the circumstances under which an air carrier must allow passengers to deplane from an incomplete

6 delayed flight. *See Rowe v. N.H. Motor Transport Ass'n*, 128 S. Ct. 989 (2008).

7        In *Rowe*, the Court held that the effect of Maine's regulation would be to require carriers to

8 offer delivery services that "differ significantly from those that in the absence of regulation, the

9 market might dictate." *Id.* at 996. The Court reasoned that since federal law preempts state laws

10 regarding advertising about carrier rates and services (*Morales v. Trans World Airlines*, 504 U.S.

11 374 (1992)), and state regulation of an air carrier's frequent flyer program (*American Airlines Inc.*

12 *v. Wolens*, 513 U.S. 219 (1995)), it must also preempt the attempt to regulate the actual delivery

13 services. *Rowe*, 128 S. Ct. at 998. Applying *Rowe* to this case, there is no logical way to hold

14 these regulations concerning ancillary matters preempted and yet rule differently regarding state

15 regulation of the essential details of an air carrier's system for picking up passengers, deciding

16 how to move them safely from their point of origin to destination, staging and holding its flights

17 on runways, and deplaning passengers and their luggage – essential details of the service itself.

18 The states simply may not impose standards that would require airlines to offer different services.

19        Hanni, however, seeks to bring state law onto the runway and use it to limit to allow

20 individual passengers to unilaterally determine the circumstances under which the air carrier must

21 find a way, upon penalty of an undetermined sum of damages to be awarded sometime in the

22 future, to return a loaded aircraft to the terminal and find a gate or bus to allow a "consent

23 revoking" passenger to deplane.

24        2.    <u>Federal Law Preempts Both State Statutory and Common Law Claims.</u>

25        American respectfully requests that the Court revisit its analysis starting on page 13, line

26 21, and continuing through page 14, line 13 of the Order, in which the Court concludes that while

27 state "affirmative regulations restricting how an air carrier does business" are preempted by 49

28 U.S.C. § 41713(b)(1), state common or decisional law imposing damages for past conduct is not.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                         6                              C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  American regrets that it did not brief this issue more fully in its previous memoranda, but urges

2  that this distinction is untenable for at least two reasons.

3       *First*, section 41713(b) provides that "a State . . . may not enact or *enforce* a law,

4  regulation, *or other provision having the force and effect of law*." (Emphasis added). On its face,

5  the prohibition of this section is not limited to enactment and enforcement of positive law, such as

6  "laws and regulations." It also prohibits enforcement of "other provision[s] having the force and

7  effect of law," i.e. state common law. As the Seventh Circuit has held, "[s]tate common law

8  counts as an 'other provision having the force and effect of law' for the purposes of [§

9  41713(b)(1)]." *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F. 3d 605, 607 (7th Cir. 2000). In

10  *United Airlines*, the Seventh Circuit held that section 41713(b)(1) preempted state common law

11  claims for alleged tortious interference, breach of fiduciary duty, and tortious inducement of

12  contract.

13       State laws need not be statutory or specifically directed at the airline industry in order to be

14  preempted by the ADA. The Supreme Court twice has held that general state consumer protection

15  statutes are preempted by the statute now codified at section 41713(b)(1). *See Wolens*, 513 U.S. at

16  227-28; *Morales*, 504 U.S. at, 386. In *Morales*, the Court expressly rejected the argument that

17  only state laws specifically targeted to the airline industry are preempted. *Id.* Other cases in which

18  courts have held common law false imprisonment, intentional infliction, and fraud claims

19  preempted by section 41713(b)(1) include *Smith v. Comair, Inc.*, 134 F. 3d 254, 259 (4th Cir.

20  1998) (false imprisonment and intentional infliction); *Travel All Over the World, Inc. v. Kingdom

21  of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir. 1996) (fraud, intentional infliction); *Elnajjar v.

22  Northwest Airlines, Inc.*, 2005 U.S. Dist. LEXIS 36792 (S.D. Tex., Aug. 15, 2005) (intentional

23  infliction); *Chrissafis v. Continental Airlines, Inc.*, 940 F. Supp. 1292, 1298 (N.D. Ill. 1996) (false

24  imprisonment); *Black v. Delta Air Lines, Inc.*, 116 S.W. 3d 745, 756 (Tex. 2003)

25  (misrepresentation and fraud).

26       *Second*, the distinction that while federal law preempts state positive law enactments that

27  regulated certain conduct, it does not preempt state common law claims for damages for the same

28  conduct, conflicts with recent and consistent Supreme Court precedent that federal statutes that

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    7                          C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   expressly preempt more than just "laws and regulations" also preempt state common law.  The

2   issue arose most recently in a case the Supreme Court decided on the same day as *Rowe*, *Riegel v.*

3   *Medtronic, Inc.*, 128 S. Ct. 999 (2008).  In *Reigel*, the Supreme Court considered whether the

4   clause in the Medical Device Amendments of 1976 which read that "no State…may establish or

5   continue in effect with respect to a device intended for human use any requirement (1) which is

6   different from or in addition to any requirement applicable under this chapter to the device, and (2)

7   which relates to the safety or effectiveness of the device or to any other matter included in a

8   requirement applicable to the device under this chapter," 21 U.S.C. 360k(a), preempted state

9   common law damages claims in strict liability in tort, breach of implied warranty, and negligence.

10  *Id.* at 1006.  The Supreme Court viewed the "critical question" as whether duties imposed by New

11  York's common law of tort constituted state law "requirements" within the meaning of the statute.

12  *Id.* at 1007.  The Court concluded that they did, writing:

13          common-law liability is premised on the existence of a legal duty, and a tort judgment
            therefore establishes that the defendant has violated a state-law obligation.  And while the
14          common-law remedy is limited to damages, a liability award can be, indeed is designed to
            be, a potent method of governing conduct and controlling policy.

15  *Id.* at 1008 (citations omitted).

16          The Supreme Court further noted that excluding common law torts from preemption

17  "would make little sense" in the context of this statute, as such laws "disrupt the federal regulatory

18  scheme no less than a state regulatory law to the same effect."  Further:

19          Indeed, one would think that tort law, applied by juries under a negligence or strict-
20          liability standard, is less deserving of preservation [from preemption].  A state statute, or a
            regulation adopted by a state agency, could at least be expected to apply cost-benefit
21          analysis similar to that applied by experts at the FDA:  How many more lives will be saved
            by a device which, along with its greater effectiveness, brings a greater risk of harm.  * * *
22          As Justice BREYER explained in [*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)], it is
            implausible that the MDA [Medical Device Amendments] was meant to "grant greater
23          power (to set state standards 'different from, or in addition to' federal standards) to a
            single state jury than to state officials acting through state administrative or legislative
24          lawmaking processes." 518 U.S., at 504.  That perverse distinction is not required or even
            suggested by the broad language Congress chose in the MDA, and we will not turn
25          somersaults to create it.

26  *Id.* (emphasis added).  *See also Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 58-59 (2d Cir.

27  2006) ("[W]e disagree with the district court's conclusion that the preemption clause was 'only

28  intended to bar *positive state enactments*' such as statutes and regulations and was not 'intended to

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    8                                    C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    preclude *any* common law tort claims." (emphasis in original)).

2          The rationale of these cases is that state tort law seeks to regulate conduct just as much as

3    statutes or regulations specifically targeted to the industry.  If an air carrier were to be held liable

4    for false imprisonment in a case such as this, that air carrier (and all others) would have to

5    ascertain what modifications it must make to avoid additional such judgments in the future.  In

6    modifying their policies, air carriers would need to consider the common law and criminal law of

7    all fifty States because if one state can impose judgments for false imprisonment and thereby

8    impose a legal requirement to allow passengers to deplane under certain circumstances, so can

9    each of the other States.  The policies behind those state specific judgments, remedies, and the

10   changes they require the air carrier to make need not be, and likely would not be, uniform.

11   Enforcing state common law for claims that relate to air carriers' prices, routes, or services runs at

12   least the same – and arguably an even greater – risk of creating the "crazy quilt" of different and

13   potentially conflicting laws from state to state that Congress forbade by enacting section

14   41713(b)(1).

15         While the scope of ADA preemption is not so broad as to disallow all tort claims against

16   air carriers, it is broad enough to preempt the tort claims brought by Plaintiff.  American requests

17   the Court to hold Hanni's common law claim for alleged false imprisonment preempted by section

18   41713(b)(1).

19         3.    Plaintiff's Claim for False Imprisonment Fails to State a Claim Under State Law.

20         With respect to Plaintiff's false imprisonment claim, this Court's Order states:  "If Plaintiff

21   can allege, consistent with her original complaint, additional facts sufficient to establish that

22   Defendant lacked legal authority to keep her on the airplane, she may replead this claim in her first

23   amended complaint."  Order pp. 17-18.  Plaintiff has failed to do this.

24         Plaintiff has pleaded no federal statute or Federal Aviation Regulation that authorized her

25   to revoke her consent to remaining on Flight 1348 and thereby compel American to let her

26   deplane.  As shown by the Federal Aviation Regulations cited in footnote 4, below, the American

27   pilot and dispatcher were in complete control of that flight.  Indeed, Plaintiff concedes in that

28   "[t]here . . . was as of December 29th, 2006, no federal law or regulation governing lengthy

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    9                              C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   confinements on the ground of passengers by air carriers." FAC at ¶ 97.

2       The most comprehensive analysis of whether and when a passenger may "revoke consent"

3   and impose a "duty to release" is found in *Abourezk v. New York Airlines, Inc.*, 705 F. Supp. 656

4   (D.D.C. 1989), *aff'd*, 895 F.2d 1456 (D.C. Cir. 1990). A New York Airlines flight was delayed

5   for "over three hours" before it departed D.C. for New York. Abourezk, a passenger, realized he

6   would miss the reception for which he was traveling to New York and demanded to be let off the

7   plane. His request was denied, and the plane departed for LaGuardia. Granting summary

8   judgment, the district court wrote:

9       On the facts at bar, plaintiff entered the plane and gave the pilot the express consent to fly
        him to New York City. Abourezk argues that he revoked or withdrew this consent because
10      of the length of the delay and the fact that he no longer needed to travel to New York.
        However, the original consent that was given by plaintiff was broad enough to cover the
11      pilot's determination that he would fly the plane to New York upon release of the
        indefinite hold. Plaintiff's agreement with the airline did not guarantee arrival at his
12      destination by a specific time nor did it allow or provide that plaintiff could unilaterally
        determine that he should be deplaned in circumstances such as those presented herein.
13
    *Id.* at 664.[2] The court held that the passenger must demonstrate some personal "exigent
14
    circumstance" sufficient to compel the captain of the New York Airlines flight to allow him to
15
    deplane, which he had failed to do. *Id.*
16
        In the only appellate opinion to have addressed a claim similar to Hanni's, the D.C. Circuit
17
    affirmed the district court's decision in *Abourezk*,[3] holding:
18
        There is no dispute that at some point Abourezk was restrained against his will; the sole
19      inquiry is whether this detention was lawful, *i.e.*, whether the airline was justified in its
        refusal to allow Abourezk to deplane. * * *
20
    _____
21
    [2] The common law recognizes that a passenger may withdraw her consent to remaining on the
22   conveyance if the carrier promised her to allow her to disembark on demand, but Plaintiff Hanni
     neither can make, nor has made, any such allegation. *See, e.g.*, 1 D. Dobbs, THE LAW OF TORTS §
23   38 (West 2001); 1 HARPER, JAMES & GRAY ON TORTS § 3.8 (3d ed. 2006) (stating that "[t]his rule
     is not applicable, however, unless the defendant has a legal duty, by reason of some special
24   relationship between the parties, to furnish a means of escape.").

25   [3] While the carrier argued in the district court that the plaintiff's claims were preempted, the
     district court did not mention this issue in its opinion and the carrier did not press the issue on
26   appeal. The concurrence wrote separately to emphasize, "our decision today should not be read as
     a sign that we approve of a district court decision on the merits of a claim like the one brought by
27   the appellant. The preemption at issue in this case is substantial." *Id.* at 1459 (emphasis added).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    10                              C 08-00732 CW
_____
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Abourezk argues that the detention became unlawful once he revoked his consent to
2    remain a passenger, and that the airline must demonstrate a reason why it was *unable* to
     deplane Abourezk once he had revoked his consent to remain aboard the plane.

3    The utter impracticality of such an approach is manifest.  Although this notion of
     withdrawing consent might work in many other false imprisonment contexts, the special
4    concerns that attend the incredibly busy and dangerous business of common-carrier air
     transport requires the sort of approach fashioned by the trial judge.

5

6    895 F.2d 1456, 1458.

7         Such passenger false imprisonment claims have also been dismissed for failure to state a

8    claim.  Judge Patel of this Court dismissed a similar claim in *Sousanis v. Northwest Airlines, Inc.*,

9    2000 WL 34015861 (N.D. Cal., Mar. 3, 2000).  The passenger, Sousanis, was confined to her seat

10   on a Northwest Airlines flight for approximately six hours, from 6:00 p.m., to midnight, because

11   of snow conditions in Detroit and mechanical problems with a plane.  Sousanis claimed that she

12   was falsely imprisoned and that she suffered injury to her back because the Northwest captain

13   required the passengers to remain seated, with seat belts fastened, for the entire six hour period.

14   The flight crew denied her request to stand up and move about the plane.  Judge Patel noted that

15   Federal Aviation Regulations grant the flight crew complete operational control over the aircraft.

16   *Id.* at *5-6, *citing* 14 C.F.R. § 121.533.[4]  Rejecting plaintiff's argument that she had withdrawn her

17   consent, the court held:

18        [H]ere plaintiff's agreement with defendant did not allow for her to withdraw her consent
          to obeying federally mandated safety rules.  Defendant was acting lawfully by confining
19        plaintiff to her seat within the aircraft while the seat belt sign was illuminated.  The court
          finds that plaintiff has failed to plead the elements required to state a false imprisonment
20        claim and thus dismisses that claim with prejudice.

21   *Id.* at *6.

22        As was the case with Mr. Abourezk and Ms. Sousanis, Ms. Hanni's agreement with

23   _____

24   [4] 14 C.F.R. §121.533(d) states:  "Each pilot in command of an aircraft is, during flight time, in
25   command of the aircraft and crew and is responsible for the safety of the passengers,
     crewmembers, cargo, and airplane."  Similarly, 14 C.F.R. § 91.3 states:  "The pilot in command of
26   an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."
     14 C.F.R. § 91.11 states:  "No person may assault, threaten, intimidate, or interfere with a crew
27   member in the performance of the crewmember's duties about an aircraft being operated."

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

1    American did not allow her to withdraw her consent. American's Conditions of Carriage ("COC")

2    state, inter alia, that "American will endeavor to carry you and your baggage with reasonable

3    dispatch, but times shown in timetables or elsewhere are not guaranteed and form no part of this

4    Contract." (COC ¶ 3, attached as Exhibit A to the Declaration of John Terrell, filed in this action

5    February 19, 2008, as Docket No. 14-2).[5]

6        Plaintiff has not done what this Court allowed her to do – plead additional facts sufficient

7    to establish that "Defendant lacked legal authority to keep her on the airplane." For this reason, in

8    addition to federal preemption, Plaintiff's alleged claim in her FAC for false imprisonment should

9    be dismissed without leave to amend.[6]

10    _____

11    [5] American relies on the COC filed as Exhibit A to the Terrell Declaration at Docket No. 14-2 in
support of this motion to dismiss Plaintiff's FAC. Because the COC are expressly referred to in

12    the Amended Complaint and form the basis for Plaintiff's alleged breach of contract claim, the
Court may examine them on a Rule 12(b)(6) motion to dismiss. *See, e.g., Parrino v. FHP, Inc.*,

13    146 F.3d 699, 705-06 (9th Cir. 1998), *superceded by statute on other grounds as recognized in*

14    *Abrego Abrego v. The Dow. Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

15    [6] As to Plaintiff's burden to show that American lacked legal authority in order to state a claim for
false imprisonment, American agrees that the laws of California and Texas are not in conflict so

16    there is no need for additional conflicts analysis at this stage of this action. Nevertheless, if this
action proceeds, American believes that choice of law analyses will become very important. If

17    state law is allowed to provide legal rules governing the situations described in the Amended
Complaint, the applicable law must be that of the state where a particular delay on the runway

18    occurred. It would be wholly unworkable to subject those in charge of a single commercial
airliner loaded with passengers who are citizens of many jurisdictions to the laws of different

19    states from passenger to passenger.

20    This presents a classic case for a governmental interest analysis. Under California's choice of
law principles, if there exists a material conflict in laws, California will select the laws of the state

21    whose interests would be "most impaired" if its law were not applied. *See Zinser v. Accufix

22    Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *Downing v. Abercrombie & Fitch,* 265
F.3d 994, 1005-07 (9th Cir. 2001). If state law may govern these situations, Texas has the greater

23    interest in prescribing the legal standards that control the conduct of air carriers and passengers
delayed at Austin, DFW Airport, and other airports within her borders, just as California has the

24    greater interest in prescribing the legal standards applicable at airports within her boundaries. As
the Ninth Circuit observed in *Downing*, "one of the primary purposes [for a state's] creating a

25    cause of action in tort is to deter misconduct within its borders by persons present within its

26    borders." *Id.* at 1006. Indeed, if this case were to proceed to class certification, it would likely
violate due process of law for a court to apply the law of any single state to the claims of class

27    members from numerous jurisdictions other than, perhaps, that of the state where that
passenger's particular delay actually occurred. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472

28    (footnote continued)

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                    12                    C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    **B.    Second Cause of Action:  Intentional Infliction of Emotional Distress**

2    Plaintiff's claim for intentional infliction of emotional distress ("IIED") fails to state a

3    claim for three reasons.  First, for the same reasons described above in the context of false

4    imprisonment, Plaintiff's alleged claim for IIED, as pleaded in the FAC, is preempted by both the

5    Federal Aviation Act and 49 U.S.C. § 41713(b)(1).  Recent opinions holding state law intentional

6    infliction claims against air carriers preempted by section 41713(b)(1) include *Weiss v. El Al*

7    *Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 362 (S.D.N.Y 2006) and *Deterra v. America West*

8    *Airlines, Inc.*, 226 F. Supp. 2d 274, 276-77 (D. Mass. 2002).

9    Second, and also dispositive, this Court held in its Order that "Plaintiff has not alleged

10   intentional conduct sufficiently extreme to support a claim for IIED."  Order p. 18.  To establish

11   this disfavored tort, both California and Texas require allegations and proof of extreme conduct

12   that exceeds all bounds of that tolerated in a civilized community and emotional distress so severe

13   that no person should be expected to endure it.  *See* Order p. 18.  The Ninth Circuit has stated that

14   this standard "is extremely difficult to meet."  *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 842

15   (9th Cir. 2002); *see also Pardi v. Kaiser Found. Hosps.*, 389 F. 3d 840, 851-52 (9th Cir. 2004).

16   Like her original Complaint, Plaintiff's FAC falls far short of alleging facts that meet either of

17   those threshold requirements.  *See, e.g., Haynes v. Nat'l RR Passenger Corp.*, 423 F. Supp.2d

18   1073, 1085-86 (C.D. Cal. 2006).  Indeed, the FAC does not set forth any new allegations of

19   supposedly extreme or outrageous behavior experienced by Hanni.

20   Finally, this Court also held that Plaintiff failed to plead facts in her original Complaint

21   that American "acted with the intent of causing her distress."  Order at 19.  Plaintiff has now

22   added a boilerplate allegation stating that "Defendant AA acted in reckless disregard of causing

23   emotional distress to Plaintiff." (FAC ¶ 106).  But beyond reciting boilerplate, Plaintiff still fails to

24   allege any facts that if proven true would prove that American's conduct was motivated by an

25   intent to cause emotional distress to this person, Ms. Kathleen Hanni, on December 29, 2006.

26

27   U.S. 797 821-22 (1985).

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5

13

C 08-00732 CW

1   Hanni's allegation in paragraph 107 of the FAC sounds in negligence, *i.e.*, she alleges that

2   "Defendant AA knew or should have known . . . ."

3       Plaintiff has failed to meet both specific requirements in this Court's Order for her re-

4   pleading of an alleged claim IIED.  American requests that Plaintiff's claim for IIED be dismissed

5   without leave to amend.

6       **C.      Third Cause of Action:  Negligence**

7       The negligence claims in the FAC are either federally preempted, or they allege duties that

8   are covered by the COC.  Thus, Plaintiff's negligence claims fail to state a claim on which relief

9   can be granted and should be dismissed without further leave to amend.[7]

10      The FAC shifts the focus of her negligence claims from Plaintiff's original Complaint's

11  allegations of duties to plan for delays and avoid "stranding" passengers, to claims regarding

12  safety.  Plaintiff alleges American had a "high duty of care for the safety and protection of its

13  passengers." (FAC ¶ 115).  Such duty was purportedly breached by American's causing an alleged

14  "unreasonable risk of physical harm," arising from crowded conditions on the aircraft, the alleged

15  lack of adequate water, food, and restroom facilities, and "breathable air at reasonable

16  temperatures."  (FAC ¶¶ 116-117).

17      Plaintiff's safety claims are indistinguishable from the common law negligence claims the

18  Ninth Circuit held preempted in *Montalvo*, 508 F. 3d at 474.  The Ninth Circuit wrote:

19      The FAA, together with federal air safety regulations, establish complete and thorough
        safety standards for interstate and international air transportation that are not subject to
20      supplementation by, or variation among, states.  The district court correctly held that
        because there is no federal requirement that airlines warn passengers about the risk of
21      developing [deep vein thrombosis], Plaintiffs' negligence claim fails as a matter of law.

22  *Id.*  The same is true here.  "[A]ssigning and maintaining safety [ranks] as the highest priority in

23  air commerce." 49 U.S.C. § 40101(a)(1) of the Federal Aviation Act assigns responsibility for air

24  safety to the federal government, acting through the Federal Aviation Administrator, and to the

25

26  ---

    [7] In its Order, this Court held plaintiff's more grandiose claims of negligence, *i.e.*, "those based
27  on Defendant's decision to re-route her flight from the Dallas Fort Worth Airport to the Austin
    Airport rather than delaying or cancelling it" preempted.  *See* FAC ¶¶ 52, 65.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    14                              C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    airlines.  The Federal Aviation Act provides no role for state law in the realm of aviation safety.

2          Similarly, the Second Circuit recently held that the State of New York could not enact

3    positive legislation designed to dictate service requirements such as food, water, and air quality for

4    delayed passengers.  *See Cuomo*, 520 F.3d at 222-25.  The court held the statute dictating such

5    service requirements was preempted by 47 U.S.C. § 41713(b)(1), *Id.*, and also likely preempted by

6    the FAA and its regulations.  *Id.* at 224-25.

7          For the reasons discussed above (in the discussion of the false imprisonment and IIED

8    claims), the states may not impose the same service standards relating to food, water, and air

9    quality indirectly through their tort laws, that New York is preempted from imposing through a

10   positive enactment.  *See also Rowe*, 128 S. Ct. at 996-997 (holding there is no "public health"

11   exception to Airline Deregulation Act preemption of state law).  Additionally, just as the states

12   may not impose common law standards and require warnings about potential onboard maladies

13   like deep vein thrombosis (*see Montalvo,* 508 F. 3d at 474), they may not impose such common

14   law standards to govern other aspects of passenger safety.

15         This Court allowed Plaintiff to replead her negligence claim "if she can allege facts

16   sufficient to establish the existence of a duty beyond that created by the [COC]."  Order at 19:18-

17   20.  Plaintiff has failed to do so – all of her allegations of specific acts or omissions that she claims

18   constituted negligence are covered by paragraphs 18 and 19 of the COC.

19         Paragraph 18 states in relevant part:

20         American Airlines . . . will provide amenities for delayed passengers, necessary to
           maintain the safety and/or welfare of certain passengers such as customers with
21         disabilities, unaccompanied children, the elderly or others to whom such amenities will be
           furnished consistent with special needs and/or circumstances.

22

23         Paragraph 19 states:

24         In the case of extraordinary events that result in very lengthy onboard delays, American
           Airlines . . . will make every reasonable effort to ensure that essential needs of food (snack
25         bar such as a Nutri-Grain), water, restroom facilities and basic medical assistance are met.
           We are not responsible for any special, incidental, or consequential damages if we do not
26         meet this commitment.

27         Plaintiff's purported reliance on 49 U.S.C. § 41702 to establish a negligence cause of

28   action is of no avail.  It is well-established that there is no private right of action under that statute.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                          15                          C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    *See, e.g., Casas v. American Airlines, Inc.,* 304 F. 3d 517, 522 n.8 (5th Cir. 2002); *Hingson v.*

2    *Pacific Southwest Airlines,* 743 F. 2d 1408, 1413-14 (9th Cir. 1984).

3    **D.      Fourth Cause of Action:  Breach of Contract**

4          The Court dismissed Plaintiff's alleged breach of contract claims, with leave to amend,

5    holding: "Plaintiff may replead this claim with further detail regarding Defendant's failure to comply

6    with specific terms of the COC." Order, p. 20.  Although the FAC quotes (with significant and

7    inexplicable omissions) paragraphs of the COC Plaintiff contends American violated, it still fails to

8    state a claim for breach of these provisions.[8]

9          The most critical problem with Plaintiff's alleged breach of contract claim is that she fails to

10   plead any form of damages that are recoverable for such a claim.  Most paragraphs of American's

11   COC that Plaintiff cites expressly disclaim liability for all special, incidental, and consequential

12   damages.  Furthermore, it is well established under both California and Texas law that "emotional

13   distress" damages are not recoverable for a breach of contract. *See, e.g., Averbach v.*

14   *Vnescheconombank,* 280 F. Supp. 2d 945, 960 (N.D. Cal. 2003) (California law); *Erlich v. Menezes,*

15   21 Cal. 4th 543, 558-59 (1999); *Keith v. Stoelting, Inc.,* 915 F. 2d 996, 999 (5th Cir. 1990) (Texas

16   law); *Stewart Title Guar. Co. v. Aiello,* 941 S.W. 2d 68, 72 (Tex. 1997).

17         Plaintiff has not alleged any damages other than emotional distress damages or damages

18   that clearly would be classified as special, incidental, or consequential damages, so she has not

19   stated a claim for breach of contract on which relief can be granted.[9]  The specific paragraphs from

20   American's COC Plaintiff alleges American breached are as follows:

21         1.      Paragraph 3:  "Responsibility for Schedules and Operations"

22   _____

23   [8]  American's COC in effect on December 29, 2006, are attached and authenticated as Exhibit A to
     the Declaration of John Terrell, filed in this action on February 19, 2008, Docket No. 14-2.
24
     [9]  Plaintiff has added several allegations to her breach of contract allegation in the Amended
25   Complaint concerning international passengers whose tickets were subject to the Montreal
     Convention. *See* FAC ¶¶ 82, 125, 126, 127, 128.  Whatever the merits of such allegations,
26   Plaintiff Hanni does not allege *she* was flying on December 29, 2006, on an international flight.
     *See* FAC ¶ 6. So these new allegations about the Montreal Convention have nothing to do with
27   whether Hanni has stated claims upon which relief can be granted *to her,* which is the issue here.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5
16
C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Plaintiff alleges American violated the paragraph of the COC titled "Responsibility for

2   Schedules and Operations," which reads in full as follows (the contract language Plaintiff omits is

3   underlined):

4       American will endeavor to carry you and your baggage with reasonable dispatch, but times
        shown in timetables or elsewhere are not guaranteed and form no part of this Contract.
5       American may, without notice, substitute alternate carriers or aircraft and, if necessary,
        may alter or omit stopping places shown on the ticket. Schedules are subject to change
6       without notice. American is not responsible for or liable for failure to make a connection,
        or to operate any flight according to schedule, or for a change to the schedule of any flight.
7       Under no circumstances shall American be liable for any special, incidental or
        consequential damages arising from the foregoing.

8       Plaintiff fails to state a claim for breach of this provision. Plaintiff alleges American

9   breached this provision because it "failed to 'endeavor' to carry Plaintiff and her baggage…and

10  instead willfully chose not to carry its passengers…" FAC at ¶124(b). However, the provision

11  expressly states that American does not guarantee its schedules and is not liable for the

12  consequences of any failure to operate flights according to schedule. Thus, Plaintiff may not state a

13  claim for any delays, missed connections, or other problems purportedly caused by American's

14  deviation from its flight schedules. Further, even if Plaintiff had stated a claim for breach of this

15  provision, she cannot recover any incidental, special, or consequential damages.

16      2.    Paragraph 10: "Refunds"

17      Plaintiff acknowledges that American did not breach this provision *as to her*. FAC at

18  ¶124(c). Thus, Plaintiff Hanni has not stated a claim for breach of this provision. Her claim that

19  putative class members were denied refunds is irrelevant to whether she has stated a claim.

20      3.    Paragraph 18: "Delays, Cancellations and Diversions"

21      Plaintiff contends American violated paragraph 18, "Delays, Cancellations and

22  Diversions," but omits important parts of American's commitment. Again, the portions of this

23  paragraph Plaintiff omits are underlined:

24      American Airlines…will provide customers at the airport and onboard affected aircraft
        with timely and frequent updates regarding known delays, cancellations, diversions, and
25      will strive to provide the best available information concerning the duration of delays and
        to the extent available, the flight's anticipated arrival time. We are not responsible for any
26      special, incidental, or consequential damages if we do not meet this commitment.

27      Plaintiff alleged American breached this provision because it failed "to strive to provide

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5

17

C 08-00732 CW

DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   Plaintiff…with 'best available information' concerning the duration of delays." Nevertheless, as

2   discussed above, the damages she alleges from breach of this provision are either mental anguish

3   damages, which are not recoverable for breach of contract in either Texas or California, or special,

4   incidental, or consequential damages expressly excluded by this provision.

5          Section 18 further provides:

6          When cancellations and major delays are experienced, you will be rerouted on our next
           flight with available seats.  If the delay or cancellation was caused by events within our
7          control and we do not get you to your final destination on the expected arrival day, we will
           provide reasonable overnight accommodations, subject to availability.
8
           Plaintiff claims it is possible she could have been rerouted on other American flights from
9
    Austin to DFW or other destinations, but that American failed and refused to reroute her.  (FAC at
10
    ¶124 (e)).  She alleges no facts to support this allegation, including whether there were in fact other
11
    American flights departing Austin for DFW or other destinations with available seats.
12
           Section 18 further provides:
13
           In extreme circumstances, it is possible that a flight will cancel while on the ground in the
14         city to which it was diverted.  When this happens, you will be rerouted on the next
           American Airlines or American Eagle flight with available seats, or in some
15         circumstances, on another airline…If we are unable to reroute you, reasonable overnight
           accommodations will be provided…subject to availability.
16
           Plaintiff contends American violated this provision when it did not reimburse Plaintiff for
17
    overnight accommodations. (FAC ¶ 124(g)).  Hanni does not allege or offer any evidence, however,
18
    that she made an affirmative claim for reimbursement with American that was denied.  Hanni also
19
    alleges she was not accommodated on an American Eagle Airlines connecting flight to Mobile on
20
    the morning of December 30, 2006, which she claims departed twenty minutes after she arrived at
21
    DFW Airport.  Again, Plaintiff does not allege that she made a claim for denied boarding
22
    compensation to American that was denied.
23
           The final paragraph of Section 18 reads:
24
           American Airlines…will provide amenities for delayed passengers, necessary to maintain
25         the safety and/or welfare of certain passengers such as customers with disabilities,
           unaccompanied children, the elderly or others to whom such amenities will be furnished
26         consistent with special needs and/or circumstances.

27         Plaintiff fails to allege facts sufficient to state a claim for breach of this provision.  On its

28  face, this provision is applicable to only "certain passengers" such as those with special needs or

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                            18                              C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    circumstances.  Plaintiff alleges she had "special needs and circumstances" but does not allege that

2    she had special needs, of which she had advised American, that were not met.  (FAC ¶124(h)).

3         4.    Paragraph 19:  "Essential Needs During Extraordinary Delays"

4         Plaintiff alleges breach of the paragraph titled "Essential Needs During Extraordinary

5    Delays," which reads, including the underlined sentence omitted in the FAC, as follows:

6         In the case of extraordinary events that result in very lengthy onboard delays,
          American…will make every reasonable effort to ensure that essential needs of food (snack
7         bar such as Nutri-Grain), water, restroom facilities and basic medical assistance are met.
          We are not responsible for any special, incidental, or consequential damages if we do not
8         meet this commitment.

9         Plaintiff merely alleges American "flagrantly" breached this provision, but she concedes

10   elsewhere that American provided food and water on the flight.  *See* FAC at ¶21.  No doubt she

11   disputes the adequacy of the food and water she received.  She does not allege that she sought or

12   was denied basic medical assistance.  Paragraph 19 expressly disclaims special, incidental, and

13   consequential damages, and emotional distress is not recoverable for breach of contract.

14        5.    Paragraph 5:  "Denied Boarding Compensation"

15        The final aspect of Plaintiff's breach of contract claim concerns Denied Boarding

16   Compensation.  The applicable provision provides: "If a flight is oversold . . . and you are denied

17   boarding involuntarily at the airport, you will be entitled to a payment of Denied Boarding

18   Compensation from American" *unless* one of five conditions applies.  COC ¶ 5.

19        Plaintiff alleges she was denied boarding for Flight No. 3821, which was operated by

20   American Eagle Airlines, Inc., to Mobile on December 30, 2006.  She claims that American Eagle

21   flight (departing the day after she was originally scheduled to fly to Mobile) was oversold, but she

22   does not allege facts to demonstrate that the five exceptions do not apply.  (FAC ¶ 124(j)).  For

23   example, the FAC does not plead that she "fully compl[ied] with American's ticketing and check-in

24   requirements, as set forth in the check-in requirements section." *See* COC ¶ 7.  Paragraph 7, the

25   check-in requirements section, provides that seats are subject to cancellation unless the passenger

26   has obtained a boarding pass at least 30 minutes before the scheduled departure.  While Plaintiff

27   alleges she had a "confirmed reservation" she does not allege she had obtained a boarding pass for

28   the American Eagle Mobile flight at least 30 minutes prior to the scheduled departure, as required.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    19                              C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  (*See* FAC at ¶ 39).  Indeed, Plaintiff alleges she arrived *at DFW Airport* only "20 minutes before"

2  the departure of the flight to Mobile.

3       Nevertheless, if Plaintiff has a claim for denied boarding compensation on an American

4  Eagle Airlines flight from DFW Airport to Mobile, Alabama, on December 30, 2006, she should

5  present that claim to American Eagle Airlines, Inc., and seek the compensation allowed by

6  paragraph 5 of the COC.  Plaintiff's alleged breach of contract claims fail to state a claim against

7  American on which relief can be granted.

8       **E.**    **Fifth Cause of Action:  Deceit/Fraud**

9       1.    Plaintiff's Claims for Deceit/Fraud Are Preempted.

10       Ms. Hanni's alleged claim for fraud is preempted by both the Federal Aviation Act and 49

11  U.S.C. § 41713(b)(1).  Plaintiff alleges that American's flight crew made false or misleading

12  statements to its passengers, during a flight, about flight delays, weather conditions, anticipated

13  take-off times, and the timing of baggage delivery.  She alleges she was told the "aircraft would

14  take off, return to the airport terminal, and/or they would be allowed to exit the aircraft shortly."

15  (FAC ¶ 135).  In other words, Plaintiff alleges that there were knowing and intentional

16  misrepresentations in announcements made to passengers on Flight 1348 about that flight and its

17  progress, by the pilot-in-command of that flight and other unidentified American employees, that

18  directly related to the air carrier service being provided to those passengers at the time.

19       In *Morales*, the Supreme Court held that consumer fraud claims brought by states' attorneys

20  general alleging that airline advertising contained false and misleading statements were preempted

21  by the statutory predecessor to section 41713(b)(1).  504 U.S. at 387-91.  In *Wolens*,  the Supreme

22  Court held that alleged consumer fraud claims brought by participants in American's frequent flyer

23  program were preempted by the same statute.  513 U.S. at 226-28.  The fraud claims in both

24  *Morales* and *Wolens* did not pertain to where or when an aircraft was going to take-off, fly, or land.

25  They were, indeed, far more peripheral to the essential service of an air carrier.  They pertained to

26  airline advertising and statements allegedly made concerning a frequent flyer program.  The case is

27  stronger—and substantially so—for holding the alleged misrepresentations at issue here preempted

28  than were the cases in either *Morales* or *Wolens*.

1    For the reasons set forth above under American's briefing regarding Plaintiff's alleged

2  claim for false imprisonment, Plaintiff's state law claims for fraud are federally preempted.[10]

3    2.    <u>Rule 9(b) and Failure to State a Claim.</u>

4    The FAC fails to allege fraud with particularity.  The only "speaker" Plaintiff identifies is

5  Captain Fodero, whom she identifies as the pilot on Flight 1348.  She makes the same allegations

6  about alleged statements by Captain Fodero as in her original Complaint, *i.e.*, that he announced the

7  flight was being diverted to Austin due to weather, "but only for a brief time," (FAC ¶ 8), that he

8  announced every so often that "it will be just a few more minutes," (¶ 11), that he had asked for

9  busses (¶ 12), that he is sure they will take off shortly and that anyone who exits will not be able to

10  get another flight and will not receive their baggage (¶ 14), that he insisted the flight could not go to

11  the gates, but that food and busses were coming (¶¶ 24, 27), and that "I promise we will get your

12  bags off this plane quickly and efficiently and there will be someone from American to help you

13  when you get off the plane." (¶ 34).  These are not new allegations.  The only new allegations are

14  the Rule 9(b)-defying claims in paragraphs 135, 136 and 137 of the FAC.

15    Plaintiff has not stated "how she intends to prove that [Captain Fodero's or anyone else's]

16  statements were knowingly false when made," Order p. 21, or how she relied to her detriment on

17  the allegedly fraudulent statements.  Order, p. 21.  Indeed, the FAC negates Hanni's personal

18  reliance.  She asserts in several paragraphs of the FAC that despite Captain Fodero's statements,

19  she "expressed her desire to exit the aircraft," (FAC ¶ 18) and she revoked her consent to remaining

20  on the aircraft after three hours (FAC ¶ 89).  Her pleading states that she was retained on the

21  aircraft against her will, not that she was misled by American's statements into staying on Flight

22

23  _____

[10]  Plaintiff has the forum for making her claims that Congress has provided, should she choose to
24  use it.  The United States Department of Transportation ("DOT") has broad statutory authority to
investigate and take action against any unfair or deceptive practice by an air carrier.  *See* 49 U.S.C.
25  § 41712(a); *Morales*, 504 U.S. at 390-91.  Acting under § 41712, DOT took enforcement action
against Comair, Inc., based on a system-wide cancellation of flights Comair experienced on
26  December 24, 2004, as a result of computer failures.  By a Consent Order, DOT assessed a penalty
against Comair.  *See* DOT Order No. 2007-5-9, *Comair, Inc., d/b/a Delta Connection*, served May
27  17, 2007, available at 2007 DOT Av LEXIS 376.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                21                                C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    1348. In light of Plaintiff's principal claim that she was "falsely imprisoned," her fraud claim

2    simply cannot state a claim on which relief can be granted.

3        American moves the Court to dismiss Plaintiff's alleged fraud claim for her continued

4    failure to comply with Rule 9(b), for failure to state a claim on which relief can be granted, and to

5    dismiss the FAC without leave to amend.

6    **F.    Sixth Cause of Action: Conversion**

7        Plaintiff's new claim for alleged conversion of her baggage is preempted by 47 U.S.C. §

8    41713(b)(1). Plaintiff alleges that American "wrongfully exercised dominion and control [over

9    her baggage] when it refused to return their baggage to them that was readily available." Plaintiff

10   does not plead how, if at all, she suffered any monetary damages from this alleged conversion.

11       American's liability arising from checking Ms. Hanni's baggage is governed

12   comprehensively and exclusively by the COC, and Ms. Hanni may not bring a state law tort suit

13   that would alter or add to express provisions of the COC. Paragraph 3 of the COC make clear that

14   American did not undertake to deliver Plaintiff's baggage to her in accordance with published flight

15   schedules. Paragraph 6 of the COC provides, *inter alia*, that:

16       American assumes no liability for any indirect, consequential, incidental, punitive or
         special damages resulting from loss, damage or delayed delivery of checked or transferred
17       baggage, including without limitation, damages for lost revenue or profits, loss of use or
         business interruption.

18

19       Although Plaintiff does not plead what, if any, damages she contends she suffered from

20   American's "refusal," as she puts it, to return her baggage to her on December 29th and 30th, 2006,

21   apparently at Austin or DFW Airport, the only possible damages would be her "loss of use" of her

22   baggage. American contracted in paragraph 6 of the COC that it is not liable for such damages.

23   Additionally, Plaintiff has not pleaded that she complied with the terms of the COC regarding

24   claims for lost or delayed baggage. If Plaintiff had a claim for "delayed" baggage, she was

25   required by paragraph 13 of the COC to report that claim to American at the Mobile, Alabama,

26   Airport when American returned her baggage to her there. She then was then obligated to file a

27   written claim with American, on American's claim form, within forty-five days after her initial

28   report. (COC ¶ 13). Hanni has not pleaded that she reported her "delayed baggage" claim to

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                22                          C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    American at Mobile, and she has not pleaded that she timely filed a proper claim for "delayed

2    baggage." Thus, she has stated no claim upon which relief can be granted and her conversion claim

3    should be dismissed without leave to amend.

4           **G.**     **Seventh Cause of Action:  Civil Conspiracy**

5         Plaintiff asserts a new claim for an alleged civil conspiracy ( FAC ¶¶ 148-52) to cause,

6    apparently, "false imprisonment coupled with fraud and deceit, and intentional infliction of

7    emotional distress."  (FAC ¶ 150).

8         First, this alleged claim of civil conspiracy is preempted by the Federal Aviation Act and

9    47 U.S.C. § 41713(b)(1) for the same reasons the alleged substantive torts mentioned in paragraph

10    150 are preempted.  Additionally, to the extent that there is an alleged conspiracy to defraud claim

11    buried in the civil conspiracy allegation, American also objects that Plaintiff has not pleaded fraud

12    with particularity, as required by Fed. R. Civ. P. 9(b).

13         But fundamentally, Plaintiff's alleged civil conspiracy allegation fails to state a claim for

14    civil conspiracy.  Plaintiff alleges that American and its "operations managers of AA on duty on

15    December 29th and 30th, 2006," and "the executive officers of AA" conspired.  In other words,

16    Hanni alleges that American conspired with its own executive officers and corporate managers.

17    However, under both California and Texas law, a corporation cannot "conspire" with its own

18    employees.  *See, e.g., Davis & Cox v Summa Corp.*, 751 F.2d 1507, 1526 (9th Cir. 1985)

19    (California law); *Black v. Bank of America, N.T. & S.A.*, 30 Cal. App. 4th 1, 4 (1994); *Leasehold*

20    *Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003) (Texas law);

21    *Elliott v. Tilton*, 89 F.3d 260, 264-65 (5th Cir. 1996) (Texas law).  American moves the Court to

22    dismiss Plaintiff's new, alleged civil conspiracy claim without leave to amend.

23           **H.**     **Eighth Cause of Action: RICO**

24         The Eighth Cause of Action is a futile attempt to state a RICO violation.  After

25    incorporating the previous 152 paragraphs by reference, the FAC alleges, in conclusory form, that:

26            154.   Defendants [sic] engaged in a pattern of racketeering activity affecting interstate
           commerce in the conduct of its enterprise by violating criminal laws against false

27               imprisonment and reckless endangerment through lengthy involuntary confinements of
           passengers on numerous occasions over the past ten years.

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                23                                C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    155.    A list of predicate acts illegal acts [sic] is set forth in paragraph 60 above.

2  (FAC ¶¶ 154-155).  Plaintiff then alleges that she and "some other class members" were injured in

3  their business or property."  Plaintiff alleges, without elaboration, that "but for" the December 29,

4  2006 incident, she would have been able to re-establish her real estate business.

5          There is simply nothing viable about Plaintiff's alleged RICO claim.  A claim for a RICO

6  violation requires specific allegations establishing each of the basic elements of the cause of action,

7  specifically that (1) a "person," (2) has used a "pattern of racketeering activity" or the proceeds

8  therefrom, (3) to "infiltrate" an interstate criminal enterprise, (4) by (a) investing the income

9  derived from a pattern of racketeering activity in the enterprise, (b) acquiring or maintaining an

10  interest in the enterprise through a pattern of racketeering activity, (c) conducting the affairs of the

11  enterprise through a pattern of racketeering activity or (d) conspiring to commit any of these acts.

12  18 U.S.C 1961 *et seq.*  A plaintiff in a private RICO case must also plead and prove that she was

13  injured in her business or property *as a result of* the pattern of racketeering activity.

14          The more demanding pleading standards recently described by the Supreme Court in *Bell*

15  *Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), apply to RICO claims.  Thus Plaintiff must plead

16  enough facts to "raise a reasonable expectation" that discovery will reveal illegal conduct.  *Id.* at

17  1965.  The Seventh Circuit recently examined that question, and speaking through Judge Posner,

18  held that *Twombly* applies to RICO claims.  *Limestone Dev. Corp. v. Village of Lemont, Illinois*,

19  520 F. 3d 797, 802-03 (7th Cir. 2008).  Judge Posner's opinion states that the concerns the

20  Supreme Court expressed for antitrust claims in *Twombly* are:

21          . . . as applicable to a RICO case, which resembles an antitrust case in point of complexity
            and the availability of punitive damages and attorneys' fees to the successful plaintiff.
22          RICO cases, like antitrust cases, are "big" cases, and the defendant should not be put to the
            expense of big-case discovery on the basis of a threadbare claim.
23
    *Id.* at 803.
24
25          The most obvious deficiency of Ms. Hanni's alleged RICO claim is that she does not allege

26  any "pattern of racketeering activity," as defined by the RICO statute.  "Racketeering activity" is

27  defined in 18 U.S.C § 1961(1) to include only certain specified state and federal crimes, and that

28  listing is exhaustive.  *See, e.g., Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999).  A "pattern

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

601465.5                                    24                        C 08-00732 CW
DEFENDANT'S MPA IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    of racketeering activity" must include two or more such crimes.

2           Paragraph 60, which per paragraph 155 sets out the alleged "predicate acts," is nothing

3    more than a listing of several situations in which Hanni alleges that American delayed flights,

4    "confining passengers on aircraft without survival necessities for lengthy periods of time on the

5    ground." There are no allegations of any *crimes* enumerated in section 1961(1) that could

6    constitute "racketeering activity." Hanni admits elsewhere that "there . . . was as of December 29,

7    2006, no federal law or regulation governing lengthy confinements on the ground of passengers by

8    air carriers," much less (American would add) a federal *criminal* statute. So, there are no *federal*

9    crimes alleged to be predicate acts.

10           As to possible state crimes, Plaintiff does not refer in her RICO allegations to paragraph 36

11    of her FAC, but giving her the benefit of the doubt, perhaps she is contending that the state statutes

12    listed in paragraph 96, which generally define state crimes of "false imprisonment," supply the

13    specific crimes that must be alleged to plead "racketeering activity." However, the *only* state law

14    crimes that constitute "racketeering activity" under section 1961(1) are "any act or threat involving

15    murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or

16    dealing in a controlled substance or listed chemical) . . .which is chargeable under State law and

17    punishable by imprisonment for more than one year." Even assuming Hanni's mischaracterization

18    of what happened to her on December 29, 2006 constitutes a state law crime, none of the state

19    statutes she lists in paragraph 36 of the FAC is within RICO's definition of "racketeering activity."

20    American thus moves to dismiss Plaintiff's RICO claim as frivolous, without leave to amend.

21                          **IV.  CONCLUSION**

22           For the reasons stated, American respectfully requests the Court dismiss the FAC under

23    Federal Rule of Civil Procedure 12(b)(6).

24    DATED: June 5, 2008              COOPER, WHITE & COOPER LLP

25

26                        By: _____

27                           Jie-Ming Chou
                         Attorneys for DEFENDANT AMERICAN

28                             AIRLINES, INC.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111