IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HANNI, individually and on behalf of all others similarly situated, TIMOTHY T. HANNI, CHASE L. COSTELLO, and LANDEN T. HANNI, a minor, by and through his parent and Natural Guardian, Kathleen Hanni, | No. C 08-00732 CW |
| | ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING COLLEEN O'CONNER'S MOTION FOR INTERVENTION |
| Plaintiffs, | |
| v. | |
| AMERICAN AIRLINES, INC., and DOES 1 through 20, inclusive, | |
| Defendants. | |
| _____/ | |

On December 29, 2006, the Dallas-Fort Worth area experienced unseasonably severe weather that generated massive lightning storms and a tornado warning, all of which caused the airport to shut down. As a result, American Airlines diverted over 100 flights and many passengers were stranded on the tarmac for several hours. Only September 11, 2001 recorded more diversions than December 29, 2006. Plaintiffs were some of the many passengers on diverted American Airlines' aircraft on that date. They sued Defendant American Airlines under many legal theories for its conduct surrounding the delays.

After several rounds of motions to dismiss, Plaintiffs' claims have been narrowed to three:

> (1) A negligence claim based on Defendant's failure to provide adequate food, water, restroom facilities and ventilation in violation of its duties as a common carrier,
>
> (2) a breach of contract claim based on paragraph five of the Conditions of Carriage (COC) or the portions of paragraph eighteen of the COC identified in paragraphs 124(e) and (g) of the First Amended Complaint and
>
> (3) a conversion claim.

Defendant has moved to adjudicate these claims summarily and to deny class certification. Plaintiffs have moved for summary judgment on the contract claim, class certification and leave to file a motion to reconsider the Court's order dismissing Plaintiffs' false imprisonment cause of action. Colleen O'Connor has also filed a motion to intervene. The Court addresses these motions in detail below but, in sum, the Court (1) denies O'Connor's motion to intervene; (2) grants Defendant's motion to deny class certification and denies Plaintiffs' motion for class certification; (3) grants Defendant's motion for summary judgment and denies Plaintiffs' motion for partial summary; and (4) grants Plaintiffs' motion for leave to file a motion for reconsideration.

BACKGROUND

Throughout December 29, 2006, successive waves of thunderstorms buffeted the Dallas-Fort Worth International Airport. These thunderstorms greatly impacted the flow of air-traffic to and from DFW.

The Department of Transportation Inspector General described the events that day as follows:

> On December 29, 2006, severe weather that generated massive lightning storms and a tornado warning in the Dallas-Fort Worth area caused American to cancel, divert, or delay over 1,100 of its 1,600 (69 percent) scheduled flights into DFW, disrupting holiday travel plans for over 13,000 passengers system-wide. American diverted 130 flights; 124 flights were bound for DFW but had to be diverted to 24 nearby airports. The number of diversions on December 29 ranked as the second largest in American's history, the first being September 11, 2001.

Office of Inspector General Report No. AV-2007-077. These flights originated from airports in Arizona, California, Colorado, Florida, Illinois, Indiana, Iowa, Kentucky, Maryland, Mississippi, North Carolina, Ohio, New Jersey, New York, Virginia and Puerto Rico. The aircraft were diverted to the following airports: Little Rock and Northwest Arkansas Regional Airport, Arkansas; Baton Rouge and Shreveport, Louisiana; Oklahoma City and Tulsa, Oklahoma; Abilene, Austin, Houston, Longview, Lubbock, Midland, San Antonio and Waco, Texas; and Nashville and Memphis, Tennessee. The passengers on these aircraft have mailing addresses in forty-eight states, several United States territories and twenty foreign countries.

Named Plaintiffs Kathleen Hanni, Timothy Hanni, Landen Hanni and Chase Costello were on one of those diverted planes. Their flight left San Francisco and was to arrive in Mobile, Alabama, connecting at Dallas-Fort Worth Airport (DFW). In San Francisco, the flight was delayed by approximately one hour due to mechanical difficulty. Toward the end of the flight to Dallas, the captain notified the passengers that bad weather in Dallas prevented the plane from landing there. Instead, the plane was diverted to Austin to wait for the weather to clear. While on the ground in Austin, the flight attendants handed out bags of snacks and served

3

beverages. After the plane was on the ground in Austin for approximately three or four hours, the pilot announced that a bus would come to the airplane and allow the elderly, individuals traveling with small children, the sick, and people whose final destination was Austin to disembark. After the announcement, passengers stood up and filled the aisles. Plaintiffs were seated towards the front of the plane, in row 11, and were not able to get to the back of the plane where people were disembarking. As a consequence, Plaintiffs missed the opportunity to leave the plane.

While the plane was on the ground in Austin, the bathroom at the front of the plane smelled of human waste and the toilet was overflowing. During their last three hours on the plane, Plaintiffs could smell the stench of the bathroom from their seats. At some point, Plaintiff Kathleen Hanni told a flight attendant and the pilot that being confined on the airplane for so long was triggering a strong emotional response that she related back to an attack she suffered six months earlier. The pilot offered to arrange for an ambulance to take her to the terminal, but she declined because she did not want to separate from her family. After four more hours of waiting on the plane, the pilot taxied the aircraft to a gate and Plaintiffs disembarked. In total, Plaintiffs waited over nine hours on the tarmac in Austin.

Defendant handed out hotel vouchers to the passengers of the flight, but Plaintiffs did not want to wait in the long line for a voucher and they thought the voucher was only for a ten dollar

4

discount.[1]  Plaintiffs then waited for their luggage in the baggage area for three hours, but their luggage never arrived.

The next morning, December 30, Plaintiffs took a plane to Dallas but were not able to board a connecting flight from there to Mobile because the flight was overweight due to excess baggage. However, Plaintiffs' bags made it onto the flight.  Plaintiffs spent another night in Dallas and caught a flight to Mobile the next day, December 31.  Plaintiffs picked up their bags in Mobile when they arrived.

The first complaint filed in this case was on behalf of Kathleen Hanni only.  Her complaint included claims for false imprisonment, intentional infliction of emotional distress, negligence, breach of contract and intentional misrepresentation. Defendant moved pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the complaint.  The Court granted the motion in part and denied it in part, giving Ms. Hanni leave to file an amended complaint.  April 25, 2008 Order.  On May 15, 2008, Ms. Hanni filed her first amended complaint (FAC).  She again alleged claims for false imprisonment, negligence, breach of contract and fraud, and included additional causes of action for conversion, civil conspiracy and a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961.

---

[1]Plaintiffs cannot remember if an airport official or Defendant told them that the voucher was for ten dollars.  Ms. Hanni told a Department of Transportation Investigator that "Mr. [Timothy] Hanni attempted to obtain [a voucher], but decided not to remain in a long line for what was rumored to be a $10 voucher." Kaus Decl. in Support of Motion to Deny Class Cert., Exh. D at TH000196.

Defendant again moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the FAC.

On July 11, 2008, the Court issued an order granting the motion in part and denying it in part. The Court dismissed with prejudice Ms. Hanni's claims for false imprisonment, intentional infliction of emotional distress and fraud and dismissed her claim for breach of contract to the extent it was based on paragraphs three, ten, nineteen or the specified portions of paragraph eighteen of the Conditions of Carriage (COC). The Court dismissed without prejudice Ms. Hanni's claims for civil conspiracy and RICO. July 11, 2008 Order at 6, 16, 19-20. The Court gave Ms. Hanni leave to file a second amended complaint that could include: (1) a negligence claim based on Defendant's failure to provide adequate food, water, restroom facilities and ventilation in violation of its duties as a common carrier; (2) a breach of contract claim based on paragraph five of the COC or the portions of paragraph eighteen of the COC identified in paragraphs 124(e) and (g) of the FAC; and (3) a conversion claim. The Court also allowed Ms. Hanni to include a claim for civil conspiracy if, consistent with Rule 11, she could name at least one alleged conspirator as a defendant and allege facts to support a finding that the individual conspired with other individuals with unlawful intent. July 11, 2008 Order at 20.

On July 31, 2008, Ms. Hanni filed her second amended complaint (SAC). On August 12, 2008, the parties stipulated that Ms. Hanni would file a third amended complaint (TAC) that included Ms. Hanni's husband, Timothy Hanni, and sons, Chase Costello and Landen

6

Hanni, as plaintiffs and that modified the allegations of the complaint.  Stipulation to File an Amended Complaint, August 12, 2008.  On August 13, 2008, Plaintiffs filed their TAC alleging claims for negligence, breach of contract, conversion and civil conspiracy.  TAC, August 13, 2008 ¶ 87-109.  The Court dismissed many of the causes of action in the TAC; however Plaintiffs were allowed pursue the negligence, breach of contract and conversion causes of action outlined above.  November 21, 2008 Order at 17.

On July 10, 2009, in response to discovery orders issued by a Magistrate Judge compelling the production of Ms. Hanni's medical records, Kathleen and Landen Hanni moved voluntarily to dismiss their claims.  The Court granted their motion on July 20, 2009.  Thus, Timothy Hanni and Chase Costello remain as Plaintiffs in this case.[2]

In sum, Plaintiffs represent classes of passengers who allege that, after their flights were diverted, they were confined to their respective aircraft for a period of two to twelve hours.  They allege that, during this time, Defendant did not provide passengers with adequate food, hydration, ventilation or properly working toilets.  They allege that Defendant purposefully confined passengers for extended lengths of time to prevent costly "passenger migration" to other airlines or modes of transportation.  Plaintiffs allege that airlines prevent "passenger migration" by holding an aircraft on the tarmac, which (1) prohibits passengers from exiting so that the airline may avoid obligations and expenses

---

[2]Hereinafter, Timothy Hanni and Chase Costello will be referred to as Plaintiffs unless otherwise specified.

7

associated with mass flight delays and cancellations and

(2) prevents passengers from obtaining alternate transportation.

Plaintiffs also claim that Defendant withheld their baggage and failed to provide or fully reimburse them for overnight lodging, meals, ground transportation, telephone and other passenger expenses incurred due to the events of December 29, 2006.

Plaintiffs now seek certification pursuant to Rule 23(b)(3) to represent the following classes:

> Breach of Contract Class: All domestic travelers who traveled on an American Airlines flight scheduled to land at DFW on December 29, 2006, that was diverted to another airport, who did not reach his/her final destination on the scheduled date of arrival, and who incurred unreimbursed out-of-pocket expenses as a result of the delay;

> Negligence Class: All domestic travelers who traveled on an American Airlines flight scheduled to land at DFW on December 29, 2006, that was diverted to another airport, and whose flight was stranded on the tarmac for a period of hours; and

> Conversion Class: All domestic travelers who traveled on an American Airlines flight scheduled to land at DFW on December 29, 2006, that was diverted to another airport, who did not reach his/her final destination on the scheduled date of arrival, and whose luggage was not returned to him/her on December 29, 2006.

If the Court declines to certify one or more of the above-proposed classes, Plaintiffs seek certification pursuant to Rule 23(b)(2) to represent the following class:

> Declaratory/Injunctive Relief Class: All domestic travelers who traveled on an American Airlines flight scheduled to land at DFW on December 29, 2006, that was diverted to another airport, whose flight was stranded on the tarmac for a period of hours, and who were not provided with the essential needs identified in Section 19 of the Conditions of Carriage contract.

Excluded from the proposed classes are Defendant, any entity or division in which Defendant has a controlling interest, and its

8

legal representatives, officers, directors, assigns and successors, as well as the judges to whom this case is assigned and any member of the judges' immediate families. Plaintiffs seek the appointment of Timothy Hanni and Colleen O'Connor as class representatives. Law Offices of Paul S. Hudson, P.C. and Andrus Anderson, LLP seek appointment as class counsel.

DISCUSSION

## I. Intervention

Before Plaintiffs moved for class certification, Colleen O'Connor moved to intervene as a plaintiff in this action as of right under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b)(2).

To intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2), "an applicant must claim an interest the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without" the applicant. <u>Forest Conservation Council v. United States Forest Serv.</u>, 66 F.3d 1489, 1493 (9th Cir. 1995). The Ninth Circuit applies a four-part test to motions under Rule 24(a). An applicant seeking intervention as of right must show that:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action;
> (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

<u>Donnelly v. Glickman</u>, 159 F.3d 405, 409 (9th Cir. 1998) (citing <u>Cabazon Band of Mission Indians v. Wilson</u>, 124 F.3d 1050, 1061 (9th

9

Cir. 1997), <u>cert. denied</u>, 524 U.S. 926 (1998)).

The Ninth Circuit interprets Rule 24(a) broadly in favor of intervention.  <u>Id.</u>  In evaluating a motion to intervene under Rule 24(a), a district court is required "to take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections."  <u>Southwest Ctr. for Biological Diversity v. Berg</u>, 268 F.3d 810, 820 (9th Cir. 2001).

A court may also at its discretion permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  In exercising its discretion, a court is to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  <u>Id.</u>

A.    Intervention as of Right

1.    Timeliness

The most important consideration in evaluating the timeliness of a motion to intervene is whether any delay in moving for intervention may prejudice existing parties; as long as prejudice is not likely to result from the timing of the motion, courts interpret the timeliness requirement liberally.  <u>See, e.g.</u>, <u>Cummings v. United States</u>, 704 F.2d 437, 439 (9th Cir. 1983) (motion to intervene timely even though made after interrogatories and two weeks before date set for close of discovery).  The Court considers three factors in evaluating whether a motion to intervene is timely:  "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length the delay."  <u>California Dep't of Toxic</u>

10

Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir. 2002) (quoting United States v. State of Washington, 86 F.3d 1499, 1503 (9th Cir. 1996)).

Defendant argues that the motion to intervene is untimely, based on the length of time between the original complaint and the instant motion. As Defendant notes, over seventeen months have passed since the filing of the original complaint and this intervention motion. However, this fact alone is not dispositive. In analyzing timeliness, the "focus is on the date the person attempting to intervene should have been aware his 'interest[s] would no longer be protected adequately by the parties,' rather than the date the person learned of the litigation." Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 934 F.2d 1092, 1095 (9th Cir. 1991) (quoting Legal Aid Soc'y v. Dunlop, 618 F.2d 48, 50 (9th Cir. 1980)). Here, O'Connor claims to have learned of the present litigation only when she received a letter dated April 9, 2009 from Plaintiffs' attorneys notifying her about the lawsuit. Moreover, O'Connor moved to intervene within two days after Kathleen Hanni filed her motion to withdraw from the case.

However, the matter is no longer in the early stages of its life-cycle. In this order the Court rules on the parties' summary judgment motions and determines class certification. Moreover, fact discovery for class certification has closed.

Defendant would be prejudiced by the intervention of O'Connor because she seeks to add three new causes of action to the case. The deadline to add new claims or parties was April 16, 2009.

11

O'Connor asserts that any additional discovery required by these claims will be minimal because they arise out of the same events and conduct as those alleged in the TAC. While O'Connor's claims indeed arise from the events on December 29, 2006, they concern several significantly different factual allegations. These new allegations would require Defendant to depose many new witnesses. The purpose of intervention is to allow outsiders with an interest in a lawsuit to come in as a party, not to allow an outsider to side-step discovery rules and deadlines in order to assert new claims and facts.

For these reasons, the Court finds the motion to intervene is untimely.

2. Protectable Interests and Impairment of Ability to Protect Interests

As noted above, under Rule 24(a)(2), an applicant may intervene as of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action." The interest asserted need not be a "specific legal or equitable interest," but it must be "significantly protectable." Portland Audubon Soc'y v. Hodel, 866 F.2d 302, 309 (9th Cir. 1989), cert. denied, 492 U.S. 911 (1989) (citations omitted). Applicants must also be situated such that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect" its asserted interests. Forest Conservation Council, 66 F.3d at 1493.

Interests the Ninth Circuit has held sufficient to support intervention as of right include a city's interest in preventing

12

modification of water permits held under the Clean Water Act, Sierra Club, 995 F.2d at 1482; a state's interest in preventing action on federal lands that could impair the state's legal duty to manage its own adjacent lands, Forest Conservation Council, 66 F.3d at 1497; a power company's interest in preventing federal action that could hinder construction of a power plant and the company's duty to ensure a water supply, Churchill County v. Babbitt, 150 F.3d 1072, 1084 (9th Cir. 1998), as amended by 158 F.3d 491 (9th Cir. 1998); and a city's interests in taxing and regulating contested land, Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States, 921 F.2d 924, 927-28 (9th Cir. 1990). In contrast, the Ninth Circuit has held that timber companies' economic interest in ensuring an ongoing supply of timber was not a "protectable" interest sufficient for intervention as of right when those companies did not assert existing contracts for the timber in question. Portland Audubon, 866 F.2d at 309; see also Sierra Club, 995 F.2d at 1482.

O'Connor asserts that her interest in this action is that her "experiences and claims are nearly identical to those alleged in the Hanni Third Amended Complaint." Motion at 7. She claims that her ability to protect her interests will be impaired because, without her presence, there would not be a class representative. Without a class representative, the class action may not be certified and litigation of these claims individually would be "highly inefficient and waste judicial resources." Id. However, O'Connor's fear that the Court will decline to certify the class but for intervention of a new proposed class representative is

13

unfounded. Timothy Hanni and Chase Costello remain as Plaintiffs in the case and Plaintiffs have proposed that Timothy Hanni serve as the class representative. The Court addresses the question of a class representative when it considers the motion for class certification below. Accordingly, the Court concludes that O'Connor's protectable interests will not be impaired.

Therefore, O'Connor's motion to intervene as of right is denied.

B.    Permissive Intervention

As for permissive intervention, the Court declines to exercise its discretion to permit O'Connor to intervene in the case. As noted above, O'Connor seeks to add new claims and make her complaint the operative pleading in the case. Her intervention would require additional discovery which would push back deadlines and delay the resolution of this case. Judicial economy would suffer with the addition of O'Connor's new claims and issues.

II.    Class Certification

Plaintiffs move for class certification proposing Timothy Hanni and Colleen O'Connor as class representatives. Although the Court denies O'Connor's motion to intervene, Plaintiffs did not have the benefit of the Court's ruling on that motion before filing their motion for class certification. Nevertheless, in the interest of judicial economy, the Court will address the merits of both O'Connor and Timothy Hanni as class representatives.

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule

14

23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In making this determination, the court may not consider the merits of the plaintiffs' claims. Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991). Rather, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through a class action. Burkhalter, 141 F.R.D. at 152. In addition, the court may consider supplemental evidentiary submissions of the parties. In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a);" however, "it is improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a

16

class should be certified.  <u>Burkhalter</u>, 141 F.R.D. at 152.

As a preliminary matter, Defendant does not dispute Plaintiffs' assertion that this action satisfies the numerosity requirement of Rule 23(a)(1), and the Court finds that it does. <u>See</u> 1 Alba Cone & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 3.3 (4th ed. 2002) (where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied").

Defendant asserts that class certification must fail because (1) Plaintiffs cannot meet the commonality and typicality requirements of Rule 23(a)(2) and (3); (2) Plaintiffs cannot protect the interests of all class members as required by Rule 23(a)(4); and (3) Plaintiffs cannot meet the requirements of Rule 23(b).  The Court addresses each argument in turn.

A.   Class Definition

"[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." <u>DeBremaeker v. Short</u>, 433 F.2d 733, 734 (5th Cir. 1970) (citing <u>Weisman v. MCA Inc.</u>, 45 F.R.D. 258 (D. Del. 1968)).  "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description."  <u>Moreno v. Autozone, Inc.</u>, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (quoting <u>Bartold v. Glendale Federal Bank</u>, 81 Cal. App. 4th 816, 828 (2000).  "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person

17

is a member of the class."  5 James W. Moore, <u>Moore's Federal</u>
<u>Practice</u> § 23.21[3][c] (2001).

Defendant claims that Plaintiffs have failed to propose a
proper class definition in that each of the proposed definitions
would require one or more individualized fact-finding proceeding,
per passenger, merely to determine whether that passenger is in the
proposed class.  Plaintiffs note that the breach of contract class
"consists of passengers whose claims for damages arise from
Defendant's failure to provide or fully reimburse them for
reasonable overnight accommodations, including meals, lodging and
transportation."  Plaintiffs' Motion at 8.  Under that definition,
the Court, before ascertaining whether a passenger is in this
proposed class, would have to take evidence from each prospective
class member as to (1) whether that passenger incurred "out of
pocket expenses" that (2) resulted from the "delay," (3) what those
expenses were, (4) whether the expenses were "reasonable,"
(5) whether that passenger made a demand on Defendant to defray or
reimburse the expenses, (6) whether Defendant did defray or
reimburse those expenses, and (7) whether Defendant's defrayal or
reimbursement was "full."  A class that is dependant on so many
individualized variables is not sufficiently ascertainable.

Similarly, Plaintiffs' negligence class is not clearly
ascertainable.  Plaintiffs note that the negligence class "consists
of passengers who suffered injury as a consequence of Defendant's
negligent failure to provide adequate food, water, restrooms and
ventilation during their confinement on December 29, 2006."
Plaintiffs' Motion at 8.  Under this definition, the Court would

have to determine first which proposed class members have injuries before proceeding with the case. Plaintiffs argue that Defendant bears the burden to proffer evidence that "some of the members of the proposed Class suffered no injury or enjoyed their hours-long confinement." Reply at 4. However, it is Plaintiffs who bear the burden to show that all class members suffered an injury. See General Tel. Co., 457 U.S. at 158-61.

Moreover, the negligence class is also defined vaguely. The amorphous concept of Defendant's failure to provide "adequate" food, water, restrooms and ventilation will vary from passenger to passenger and aircraft to aircraft. See, e.g., 5 Moore's Federal Practice § 23.21[3][c] ("[T]he class could not be determined in terms of whether its members were treated 'properly,' 'adequately,' 'reasonably,' or 'constitutionally,' because then class membership depends on a determination of the merits as to each potential class member."). Further, the phrase, "for a period of hours," is equally vague. This definition presumably includes any time period two hours and above. Individuals in an aircraft sitting on the tarmac for two hours did not necessarily suffer the same types of injuries as individuals in an aircraft sitting on the tarmac for ten hours. These groups of individuals should not be in a class together.

Plaintiffs' conversion class does not suffer from the same faults as the breach of contract and negligence classes. Those class members can easily discern whether their bags were returned to them on December 29, 2006. See Moreno, 251 F.R.D. at 421.

19

1    C.   Class Certification: Commonality

2        "A class has sufficient commonality 'if there are questions of

3   fact and law which are common to the class.'" <u>Hanlon v. Chrysler</u>

4   <u>Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P.

5   23(a)(2)).  "All questions of fact and law need not be common to

6   satisfy this rule.  The existence of shared legal issues with

7   divergent factual predicates is sufficient, as is a common core of

8   salient facts coupled with disparate legal remedies within the

9   class." <u>Id.</u>  Thus, the fact that class members have suffered

10  different degrees of injury and damages will not preclude a finding

11  of commonality.  <u>Blackie v. Barrack</u>, 524 F.2d 891, 905 (9th Cir.

12  1975).

13       Here, all of Plaintiffs' claims emanate from the grounding of

14  flights on December 29, 2006.  The decision to hold flights on the

15  tarmac was made by Defendant's System Operations Control Center at

16  DFW, which is the "nerve center of the worldwide American Airlines

17  route network, coordinating the day-to-day, minute-by-minute

18  operation of the airline . . . [where] decisions on a centralized,

19  system-wide basis" are made.  Anderson Decl., Exh. D at 2-3; <u>see</u>

20  <u>also</u> Anderson Reply Decl. Ex. A at AA 000472.  However, while it is

21  true that Defendant's decision to keep aircraft on the tarmac

22  affected all class members in some way, it did not affect each

23  class member similarly.  Some class members were grounded for ten

24  hours, while others were waiting for two hours; some class members

25  complained of a lack of food and water, while others saw the

26  experience as a mere inconvenience.  Class members' varied

27  experiences of sitting on a tarmac during a storm are not

28
                                    20

sufficiently "common" to fulfill Rule 23(a)(2)'s commonality requirement with respect to the negligence claim. Moreover, the manner in which Defendant returned proposed class members' luggage and reimbursed them for overnight accommodations is similarly too varied to satisfy Rule 23(a)(2) with respect to the breach of contract and conversion claims.

D.   Class Certification: Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Here, it is not clear whether representative Plaintiffs' claims are typical of the claims of the class members. Mr. Hanni, one of the proposed class representatives, testified that he suffered no physical or emotional injuries from his experience on the aircraft. The other proposed representative, Colleen O'Connor, claims to have suffered hunger, thirst and exhaustion during her confinement, but it is not clear that she suffered any physical or

21

United States District Court
For the Northern District of California

emotional injuries.  As discussed below, without any claim of an injury, the negligence claims of Plaintiffs' proposed class representatives cannot survive.

As to the breach of contract claim, Mr. Hanni did not stand in line to request a hotel voucher on December 29, and he did not provide any receipts to Defendant when he requested reimbursement for a hotel charge.  Ms. O'Connor received a hotel voucher.  These circumstances are not typical of class members who made claims for unreimbursed out-of-pocket expenses.

E.   Class Certification:  Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement consists of two inquiries: "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 958 (9th Cir. 2003).

Nothing in the record shows that Mr. Hanni and Ms. O'Connor and their counsel have any conflicts of interest with other class members.  However, they will not be able to prosecute the action vigorously because, as noted above, their claims are not typical of all the class members' claims.  Therefore, Plaintiffs have not satisfied Rule 23(a)(4).

F. Class Certification:  Predominance

Plaintiffs assert that this action falls under the ambit of Rule 23(b) because common issues will predominate over any

22

individualized issues and because a class action is the superior method of adjudicating this matter. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).

To determine whether the predominance requirement is satisfied, "courts must identify the issues involved in the case and determine which are subject to 'generalized proof,' and which must be the subject of individualized proof." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at *6 (N.D. Cal.).

There are individualized issues about what happened on December 29th from diversion airport to airport, from aircraft to aircraft, and from person to person. For instance, the amount of food on each aircraft differed depending on an aircraft's estimated travel time to its next destination. Short commuter flights from Dallas stocked less food than flights to coastal cities. Further, some aircraft were permitted to dock during their delay whereas others waited on the tarmac. Some passengers on aircraft on the tarmac were removed from the aircraft and transported by bus to the terminal whereas others stayed on the aircraft during the entirety of the delay.

23

Specifically as to the negligence claim, Mr. Hanni noted that everybody on his plane was affected differently by the delay. T. Hanni Depo. at 53-54. He observed that some people were sanguine and dealt with it better than others. Id. Further, Plaintiffs cannot prove, through generalized evidence, that each member of the class suffered an actual injury proximately caused by Defendant's breach of a legal duty. Mr. Hanni testified that he himself did not suffer any physical or mental harm from the incident. Similarly, Andrew Welch, another passenger on the same plane as Mr. Hanni, testified that neither he nor his wife suffered any physical illness from the events. Kaus Decl., Exh. C at 43:16-21. Thus, the Court concludes that common issues do not predominate with respect to Plaintiffs' negligence claim.

Similarly, each passenger's breach of contract claim will be highly dependant on the individual facts pertaining to his or her experiences. Individual class members plan to sue for breach of contract under various sections of Defendant's Conditions of Carriage (COC). For example, Mr. Hanni claims a breach of the "bumping" provision of the COC because he claims that he had a reserved seat on a December 30th flight to Mobile, but was not allowed to board. Ms. O'Connor does not make a bumping claim. Rather, she claims that Defendant failed to provide her with "reasonable overnight accommodations," because, although she received a hotel voucher, she was not separately reimbursed for out-of-pocket expenses. Each individual claim by class members will turn on a variety of clauses within the COC. Specific facts pertaining to each individual class member and his or her

24

experiences with respect to breaches of various provisions of the COC predominate with respect to the contract claim.

Individual questions also predominate in Plaintiffs' proposed conversion class. Plaintiffs have not carried their burden to show that there will be generalized proof of whether each class member checked baggage, received baggage at the diversion airport, or even made a demand for return of his or her baggage that Defendant refused.

G.    Superiority

Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997). However, if "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1192 (2001). The complexities of this class action weigh heavily against class certification. The evidence suggests that there are just too many individual issues for the Court to manage for class adjudication to be deemed superior.

H. Rule 23(b)(2)

Plaintiffs request in the alternative that the Court certify a class pursuant to Rule 23(b)(2) for the claims arising from

Defendant's breach of the Conditions of Carriage contract clause guaranteeing, "In the case of extraordinary events that result in very lengthy onboard delays, American Airlines and American Eagle will make every reasonable effort to ensure that essential needs of food (snack bar such as Nutri-Grain®), water, restroom facilities and basic medical assistance are met." Because the Court concludes that Plaintiffs have failed to meet the requirements of Rule 23(a), their request to certify a class under Rule 23(b)(2) also fails.

In sum, the Court concludes that Plaintiffs' claims are not appropriate for determination on a class-wide basis. The Court GRANTS Defendant's motion to deny class certification and DENIES Plaintiffs' motion for class certification.[3]

II.   Summary Judgment Motions

Defendant has moved for summary judgment on all of Plaintiffs' claims and Plaintiffs have moved for summary judgment on the breach of contract claim. Although the parties dispute whether Texas or California law governs this case, neither party has argued that the law of the two states conflicts with respect to any of the underlying causes of action in any way relevant to a decision on these motions. Therefore, the Court will apply California law.

A.   Negligence Claim

Plaintiffs allege that Defendant negligently failed to provide adequate food, water, restroom facilities and ventilation in violation of its duties as a common carrier. Defendant counters

---

[3]Because the Court denies certification on the above-mentioned grounds, it need not determine whether Plaintiffs' choice of law proposal would violate due process.

United States District Court

For the Northern District of California

that it owes no duty to Plaintiffs apart from the contractual
provisions of its COC. The COC states that Defendant will provide
food, water and other basic necessities in the case of
extraordinary events that result in very lengthy onboard delays.
COC, ¶ 19.

Under California law, "conduct amounting to a breach of
contract becomes tortious only when it also violates a duty
independent of the contract arising from principles of tort law."
Erlich v. Menezes, 21 Cal. 4th 543, 552 (1999). Here, as a common
carrier, Defendant owes Plaintiffs "both a duty of utmost care and
the vigilance of a very cautious person towards [its] passengers."
Acosta v. Southern Cal. Rapid Transit Dist., 2 Cal. 3d 19, 27
(1970); see Cal. Civ. Code § 2100 ("a carrier of persons for reward
must use the utmost care and diligence for safe carriage, to
provide everything necessary for that purpose, and to exercise to
that end a reasonable degree of skill"). Although Defendant is
"responsible for any, even the slightest, negligence and [is]
required to do all that human care, vigilance, and foresight
reasonably can do under all the circumstances," Acosta, 2 Cal. 3d
at 27, it is not an insurer of its passengers' safety, Lopez v.
Southern Cal. Rapid Transit Dist., 40 Cal. 3d 780, 785 (1985).
"[T]he degree of care and diligence which [it] must exercise is
only such as can reasonably be exercised consistent with the
character and mode of conveyance adopted and the practical
operation of [its] business . . . ." Lopez, 40 Cal. 3d at 785.
Thus, as a common carrier, Defendant may be liable for "failure to
act affirmatively to prevent harm." Ingham v. Luxor Cab Co.,

93 Cal. App. 4th 1045, 1050 (2001).

Defendant argues that Plaintiffs' negligence claim fails because, while it has a duty to exercise care for their safety, Defendant does not have a duty to provide passengers with food, drink, operational lavatory services and fresh air.  Defendant characterizes Plaintiffs' negligence claim as asking for a "legal requirement that a common carrier ensure that passengers never suffer discomfort or inconvenience."  Motion at 10.

However, Plaintiffs' negligence claim fails for a different reason.  Plaintiffs have not suffered any physical injuries and it is not even clear that they suffered emotional injuries.  Without evidence of physical injuries, an individual may sue under negligence with emotional injuries in very limited circumstances.  See Burgess v. Superior Court of Los Angeles County, 2 Cal. 4th 1064, 1077 (1992) (defendant doctor liable for "damages for emotional distress suffered by mothers whose children were harmed or died as a result of obstetrical malpractice"); Molien v. Kaiser Foundation Hospitals, 27 Cal. 3d 916, 933 (1980) ("severe" emotional injury from an erroneous diagnosis of syphilis).  Plaintiffs have not presented evidence that they have suffered such an emotional injury.  The only individual that arguably may have suffered such a severe emotional injury, Kathleen Hanni, is no longer a plaintiff in this case.

Plaintiffs cite many cases for the proposition that similarly situated plaintiffs have "recovered damages for 'inconvenience' and 'mental' or 'emotional distress' without physical harm."  Opposition at 12.  However, none of the cases Plaintiffs cite

1  actually stands for this proposition.  Ingham v. Luxor Cab Co., 93

2  Cal. App. 4th 1045 (plaintiff suffered hip and knee injury after

3  walking away from cab); McGettigan v. Bay Area Rapid Transit Dist.,

4  57 Cal. App. 4th 1011 (1979) (plaintiff physically injured on train

5  platform after exiting train); Lopez, 40 Cal. 3d 780 (plaintiff

6  physically injured from fight on bus); Tameny v. Atlantic Richfield

7  Co., 27 Cal. 3d 167 (1980) (not a common carrier case); J'Aire

8  Corp. v. Gregory, 24 Cal. 3d 799 (1979) (not a common carrier

9  case); Lathigra v. British Airways PLC, 41 F. 3d 535, 538 (9th Cir.

10  1994) (no discussion of whether plaintiff can bring negligence

11  claim without asserting physical injuries); Rogers v. American

12  Airlines, 192 F. Supp. 2d 661, 665 (N.D. Tex. 2001) (same);

13  Chendrimada v. Air India, 802 F. Supp. 1089 (S.D.N.Y. 1992) (same);

14  Sassouni v. Olympic Airways, 769 F. Supp. 537, 539-40 (S.D.N.Y.

15  1991) (same); Kupferman v. Pakistan Int'l. Airlines, 438 N.Y.S. 2d

16  189 (Civ. Ct. 1981) (same).  Because Plaintiffs did not suffer any

17  physical damages, the Court grants summary judgment against

18  Plaintiffs on the negligence claim.

19  III. Conversion

20      Conversion is the wrongful exercise of dominion over personal

21  property of another.  Farmers Ins. Exchange v. Zerin, 53 Cal. App.

22  4th 445, 451 (1997).  The elements of a conversion are (1) the

23  plaintiff's ownership or right to possession of the property at the

24  time of the conversion, (2) the defendant's conversion by a

25  wrongful act or disposition of property rights and (3) damages.

26  Id.  "To establish a conversion, it is incumbent upon the plaintiff

27  to show an intention or purpose to convert the goods and to

28                                29

**United States District Court**

For the Northern District of California

exercise ownership over them, or to prevent the owner from taking possession of the property." <u>Zaslow v. Kroenert</u>, 29 Cal. 2d 541, 550 (1946). The "act of removing personal property from one place to another, without an assertion of ownership or preventing the owner from exercising all rights of ownership in such personal property, is not enough to constitute a conversion." <u>Itano v. Colonial Yacht Anchorage</u>, 267 Cal. App. 2d 84, 89 (1968). Further, a "common carrier incurs no liability for conversion in receiving and forwarding goods tendered in the usual course of business." <u>Simonian v. Patterson</u>, 27 Cal. App. 4th 773, 782 (1994).

Here, Defendant did nothing more than move Plaintiffs' personal property from their point of origin to their destination. At no point did Defendant exercise dominion, assert ownership, or prevent Plaintiffs from asserting ownership of their luggage. Plaintiffs have not presented any evidence to the contrary. Therefore, the Court grants Defendant summary judgment against Plaintiffs on the conversion claim.

IV.   Breach of Contract for Denied Boarding Compensation

Plaintiffs assert a breach of contract claim under paragraph five of the Conditions of Carriage (COC). That paragraph provides:

> If a flight is oversold (more passengers hold confirmed reservations than there are seats available), and you are denied boarding involuntarily at the airport, you will be entitled to a payment of Denied Boarding Compensation from American . . . .

Defendant argues that Plaintiffs have no breach of contract claim under this provision because they were not confirmed passengers on the flight from Dallas to Mobile on December 30. Defendant relies on the passenger name record (PNR), which is a regularly updated

30

United States District Court

For the Northern District of California

document that Defendant maintains for each flight and which includes the travel itinerary for each passenger. The PNR for the flight in question did not include Plaintiffs' names. Moreover, nothing in Plaintiffs' depositions supports their allegation that they had a reservation for the flight on December 30. At most, Plaintiff Timothy Hanni noted that "to the best of my recollection, we were un-ticketed, but to go standby for that [flight] to see if we could get on it." Decl. Stephen Kaus, Exh. B at 74. Mr. Hanni could not "recall if we were re-ticketed or not, or if we were just using the ticket from the [] previous day's flight." Id. at 75. However, in a declaration filed along with Plaintiffs' opposition to Defendant's summary judgment motion, Mr. Hanni states that Defendant told him that his "reservation on the 12/30/06 flight from DFW to Mobile Alabama . . . was still good" as long as he arrived at the airport on time. Hanni Decl. ¶ 4. Mr. Hanni's more recent declaration contradicts his deposition testimony. Mr. Hanni "cannot create a triable issue by contradicting his own sworn testimony." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). Therefore, the Court grants Defendant's summary judgment motion as it relates to Plaintiffs' breach of contract claim for denied boarding compensation.

V.   Breach of Contract for Reasonable Accommodations and Re-routing

Plaintiffs assert a breach of contract claim under two sections of paragraph eighteen of the COC. The paragraph provides:

When cancellations and major delays are experienced, you will be rerouted on our next flight with available seats. If the delay or cancellation was caused by events within our control and we do not get you to your final destination on the

31

expected arrival day, we will provide reasonable overnight
accommodations, subject to availability.

In extreme circumstances, it is possible that a flight will
cancel while on the ground in the city to which it was
diverted.  When this happens you will be rerouted on the next
American Airlines or American Eagle flight with available
seats, or in some circumstances on another airline or some
other alternative means of transportation.  If we are unable
to reroute you, reasonable overnight accommodations will be
provided by American Airlines or American Eagle, subject to
availability.

Defendant argues that it did not breach its obligation to provide

Plaintiffs with a voucher for an overnight accommodation on

December 29 in Austin because Plaintiffs never asked Defendant for

such a voucher.  Further, Defendant has presented evidence that it

provided vouchers for hotel stays to at least eighteen other

passengers on Plaintiffs' flight.  Plaintiffs respond that the line

for the vouchers was too long and that an official at the airport

said that the vouchers were for only ten dollars.  However,

Plaintiffs cannot recall whether the airport official was an

American Airline employee or an airport official or if instead they

learned this information from a "rumor."  See Kaus Decl. in Support

of Motion to Deny Class Cert., Exh. D at TH000196.  Such an

ambiguous assertion does not support Plaintiffs' contention that

Defendant made this statement to Plaintiffs.  Without proof that

Plaintiffs sought a voucher from Defendant, Defendant cannot be

responsible for failing to provide such a voucher that night.

Moreover, when Plaintiffs later requested a refund from Defendant

for their overnight accommodation, Defendant requested proof of the

expense in the form of receipts.  Plaintiffs did not provide

Defendant with such receipts.  Therefore, Plaintiffs' breach of

contract claim for failing to provide Plaintiffs with a reasonable accommodation fails. Further, Plaintiffs do not present any evidence to dispute Defendant's assertion that they were rerouted on the next available flight to Mobile. Thus, the Court grants Defendant's summary judgment motion as it relates to Plaintiffs' breach of contract claim under paragraph eighteen of the COC. For the same reasons, the Court denies Plaintiffs' summary judgment motion.

VI.  Rule 56(f) Motion

Rule 56(f) of the Federal Rules of Civil Procedure provides that the court may deny or continue a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." The requesting party must show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist and (3) the sought-after facts are essential to oppose summary judgment. Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp., 525 F.3d 822, 827 (9th Cir. 2008).

Because the Court grants summary judgment on the negligence and conversion claims based solely on issues of law, further discovery on these claims would be fruitless. Further, the Court also finds that further discovery on the claims for breach of the COC paragraphs regarding reasonable accommodations and rerouting would not reveal essential facts that would successfully oppose summary judgment. Plaintiffs have not shown that further discovery on this issue will uncover evidence that Plaintiffs did in fact

request a voucher from Defendant or that Defendant told Plaintiffs
that the travel voucher was for only ten dollars. Moreover,
Plaintiffs have not presented any argument as to how further
discovery would establish that Plaintiffs had a reservation on
December 30.

VII. Motion For Leave to Seek Reconsideration

Plaintiffs move for leave to file a motion to reconsider the
July 11, 2008 Order dismissing the false imprisonment cause of
action. In that Order the Court concluded that Plaintiff Kathleen
Hanni did not sufficiently allege that her confinement on the
aircraft was unlawful. In the instant motion, Plaintiffs argue
that discovery uncovered new material facts that permit Plaintiffs
to make factual allegations which would establish Defendant's lack
of legal authority to keep Plaintiffs on the tarmac for over nine
hours. See Civ. L.R. 7-9(b)(1) and (2). In light of Plaintiffs'
arguments and the exhibits attached in support thereof, the Court
grants Plaintiffs leave to file a motion for reconsideration.
Plaintiffs shall combine this motion in a single brief with a
motion for leave to file a fourth amended complaint and a motion to
certify a false imprisonment class. Plaintiffs' motion will be due
two weeks from the date of this order; Defendant's opposition will
be due two weeks thereafter; and Plaintiffs' reply will be due one
week later. The motion will taken under submission and decided on
the papers.

CONCLUSION

For the foregoing reasons, the Court (1) DENIES O'Connor's
motion to intervene (Docket No. 302), (2) GRANTS Defendant's motion

34

to deny class certification (Docket No. 201) and DENIES Plaintiffs'
motion for class certification (Docket No. 311), (3) GRANTS
Defendant's motion for summary judgment (Docket No. 196), DENIES
Plaintiffs' motion to continue Defendant's motion for summary
judgment (Docket No. 259) and DENIES Plaintiffs' motion for partial
summary judgment (Docket No. 351) and (4) GRANTS Plaintiffs' motion
for leave to file a motion for reconsideration (Docket No. 337).

    IT IS SO ORDERED.

Dated: 01/15/10

_____
CLAUDIA WILKEN
United States District Judge